# EXHIBIT 54



**CRITERION**
WEALTH MANAGEMENT

# Memo

**To:** Investor Services Department @ Woodfield Fund Administration, LLC

**From:** Carolina Arriaga

**Date:** 6/30/2014

**Re:** T2 Strategic Real Estate Income Fund, LLC– David C. Chow and Vicky W. Chow (TD Acct. xxxxxx341)

---

Enclosed are the following original documents regarding the purchase of **$320,000** (200 units @ $1k each) of **T2 Strategic Real Estate Income Fund, LLC** in **David C. Chow and Vicky W. Chow JTWROS (Acct. #xxxxxx341):**

    *1. Subscription*
        *a. Letter of Direction: Regarding registration and payments.*
        *b. For both joint tenants*
            *i. Copy of Driver's License*
            *ii. W-9*

The purchase will be processed through TD Ameritrade, Inc. The wire should be processed by TD Ameritrade, Inc. no later than Friday, July 11, 2014.

Please follow TD Ameritrade's Non-Standard Assets Team instructions in regards to confirmation of purchase. Reminder their third party administrator, Robert Stanger and Co. (email: valuations@rastanger.com) must always receive a confirmation of purchase and monthly valuations. Instructions regarding TD Ameritrade's protocol should and will be provided by TD Ameritrade.

Upon fund closing and/or acceptance, please provide <u>fully executed copies and any correspondence</u> pertaining to this purchase to us the advisor, Criterion Wealth Management.

As per our broker dealer's, Ausdal Financial Partners, Inc., contract with T2 SREI Fund, GP, LLC please provide them with <u>fully executed copies of the enclosed documents.</u>

    Ausdal Financial Partners, Inc.
    Attn: Mary Sigala
    3250 Lacey Rd., Ste. 130,
    Downers Grove, IL 60515

If you have any questions, please feel free to call me or Jason Stauffer at (661) 254-2543.

Thank you.

T 661 254 2543   TF 800 550 1095
25830 The Old Road • Ste 210 • Valencia • CA • 91381
CriterionWealth.com

Securities and advisory services are offered through Ausdal Financial Partners, Inc., Member FINRA/SIPC, 5187 Utica Ridge Road, Davenport, IA, 52807, (563) 326-2064. Investment Advisory services offered through Criterion Wealth Management are independent of Ausdal Financial Partners, Inc. and are not endorsed or affiliated. CA Insurance License # 0789742.

Exhibit 54 Page 1520
FOIA CONFIDENTIAL TREATMENT REQUESTED BY T2 CAPITAL MANAGEMENT   T2CAPITAL_SEC_00001415

Date: June 24, 2014

Woodfield Fund Administration, LLC
Attention: Investor Services Department
1 N. Wacker Drive, Ste. 2150
Chicago, IL 60606

Re: T2 Strategic Real Estate Income Fund, LP
    David C. Chow and Vicky W. Chow JTWROS

To Whom It May Concern:

We, David C. Chow and Vicky W. Chow, joint tenants authorize T2 Strategic Real Estate
Income Fund, LP to register our interests/units at TD Ameritrade, Inc. as **TD Ameritrade
Clearing Inc., FBO: David C. Chow and Vicky W. Chow JTWROS Acct.** ▮▮▮4341
**(SSN:** ▮▮▮**-1556 and/or** ▮▮▮**-3818).**

In case the reinvesting options is removed, please accept this letter as our authorization to
T2 Strategic Real Estate Income Fund, LP to send all future distributions/payments of
income, dividends and/or principal earned from this asset as follows:

**Overnight mailing instructions:**
        TD Ameritrade Institutional
        Attention: Limited Partnerships
        200 S. 108th Avenue, Omaha, NE 68103-2207
        **OR**
        Submit per TD Ameritrade, Inc.'s Non-Standard Assets Team's Instructions
        Check Payable: TD Ameritrade, Inc.
                FBO: **David C. Chow and Vicky W. Chow JTWROS**
                Account: ▮▮▮**4341**

This should be effective immediately upon receipt of this direction. Should you have any
questions, please contact my financial advisor, Criterion Wealth Management at
(661) 254-2543.

Sincerely,

David C. Chow                              Vicky W. Chow
Joint Tenant/Investor                      Joint Tenant/Investor
SSN: xxx-xx-1556                           SSN: xxx-xx-3818

cc:    Criterion Wealth Management
       Ausdal Financial Partners

Re: Letter of Direction regarding new purchase in joint account of $320,000 (320 units @$1k per unit) of T2
Strategic Real Estate Income Fund, LP.

Exhibit 54 Page 1521
FOIA CONFIDENTIAL TREATMENT REQUESTED BY T2 CAPITAL MANAGEMENT          T2CAPITAL_SEC_00001416

PPM #  110



T2 | CAPITAL MANAGEMENT™

# T2 Strategic Real Estate Income Fund, LLC

*Subscription Documents for Limited Liability Company Units*

Exhibit 54 Page 1522

FOIA CONFIDENTIAL TREATMENT REQUESTED BY T2 CAPITAL MANAGEMENT          T2CAPITAL_SEC_00001417

## T2 Strategic Real Estate Income Fund, LLC
### Instructions for Completion of the Subscription Documents

To purchase Units in T2 Strategic Real Estate Income Fund, LLC (the "Fund"), please review and complete all of the Subscription Documents contained in this package. By signing the attached Subscription Agreement, the Investor also agrees to become a party to, and be bound and governed by, the Fund's Limited Liability Company Agreement dated as of April 1, 2014 (the "LLC Agreement").

A.  Completing the Subscription Documents: *If you have any questions regarding the completion of the Subscription Documents, please call Jeff Baxter at (630) 590-9511.*

  1.  On the first page, fill in the legal name of the individual or entity making the investment (the "Investor") and the total amount of the investment.

  2.  On page 14, following your careful review of the Subscription Agreement, fill in the date and the amount of your investment. *If the Investor is an individual:* The Investor must sign and print the Investor's name. *If the Investor is an entity:* An authorized party of the Investor must print the entity's legal name, sign and print the authorized party's name and title or capacity in which such party is signing on behalf of the investing entity.

  3.  On pages 16 through 18, please complete the investor identification, distribution, contact information, and private fund reporting information as requested. *This information must be completed in full.*

  4.  On Exhibit A, complete the Benefit Plan Investor representations (pages A-1 to A-2).

  5.  On Exhibit B:

   ·  If the Investor is an individual (including IRAs and revocable trusts), please (a) complete the *Eligibility Questionnaire for Individuals* (two pages) AND (b) sign the *Eligibility Questionnaire Signature Page for Individuals* (immediately following the Eligibility Questionnaire for Individuals).

   ·  If the Investor is an entity (excluding IRAs and revocable trusts), please (a) complete the *Eligibility Questionnaire for Entities*, including the supplemental data questions (two pages) AND (b) sign the *Eligibility Questionnaire Signature Page for Entities* (immediately following the Eligibility Questionnaire for Entities).

  6.  On Exhibit E, complete the Electronic Delivery of Schedules K-1 Consent and Disclosures Statement (2 pages).

  7.  Review Annex A, the Privacy Statement of T2 SREI Fund GP, LLC, the Fund's manager.

  8.  If the Investor is a United States individual or entity, please complete Form W-9.

  9.  If the Investor is a non-United States individual, non-United States corporation, non-United States partnership or other non-United States entity, please complete Form W-8BEN, W-8ECI, W-8IMY or W-8EXP, as applicable. Each of these forms can be found on the Internal Revenue Service's website at www.irs.gov or by contacting Jeff Baxter at (630) 590-9511.

i

Exhibit 54 Page 1523
FOIA CONFIDENTIAL TREATMENT REQUESTED BY T2 CAPITAL MANAGEMENT          T2CAPITAL_SEC_00001418

B.   Delivery of the Subscription Documents:  Please deliver one completed and signed copy of the Subscription Documents either in hard copy, electronic .pdf format or facsimile as soon as possible to Woodfield Fund Administration, LLC (the "Administrator") at the following address:

Woodfield Fund Administration, LLC
1 N. Wacker Drive, Suite 2150
Chicago, IL 60606
Attn:  Investor Services Department
T2admin@woodfieldllc.com
Facsimile:  (847) 255-3566
Phone: (847) 255-3500

C.   Capital Contributions to the Fund:  A capital call notice will be provided at least ten (10) days prior to the due date for the initial capital call. The capital call notice will include ACH transfer instructions.

D.   Additional Required Documents.  The Fund reserves the right to request any additional documentation reasonably necessary to verify the identity of a prospective limited partner.  Please be aware that your failure to provide such documentation may delay the acceptance of your subscription or cause your subscription request to be rejected entirely.  The Fund shall be held harmless by any such prospective limited partner against loss arising as a result of a failure to provide requested documentation.  If the subscription is rejected, the Fund will refund (without interest) to the subscriber any subscription payments received by the Fund.

ii

Exhibit 54 Page 1524

FOIA CONFIDENTIAL TREATMENT REQUESTED BY T2 CAPITAL MANAGEMENT          T2CAPITAL_SEC_00001419

**T2 Strategic Real Estate Income Fund, LLC**
**SUBSCRIPTION AGREEMENT**

David C. Chow and Vicky W. Chow JTWROS
_____
Legal Name of Investor

$ 320,000
_____
Amount of Commitment

Class C

To:   T2 Strategic Real Estate Income Fund, LLC
      c/o T2 SREI Fund GP, LLC
      111 W. Wesley Street, Suite 5
      Wheaton, IL 60187

Ladies and Gentlemen:

The undersigned subscribing investor (the "Investor") acknowledges receipt of the Confidential Private Placement Memorandum dated as of April, 2014, as updated from time to time and as supplemented by the Class C Units Supplement (the "Memorandum"), of T2 Strategic Real Estate Income Fund, LLC, a Delaware limited liability company (the "Fund"), with respect to the offering of the limited liability company units in the Fund.  To achieve its investment objective, the Fund will invest all of its assets in T2 Strategic Real Estate Income Fund Master, LP (the "Master Fund"), except those assets needed for cash management purposes.  References to the Fund shall include the Master Fund unless the context requires otherwise.  The Investor hereby agrees as follows:

1.    **Subscription for Units**.  Subject to the terms and conditions set forth in this Subscription Agreement, the Limited Liability Company Agreement dated as of April 1, 2014 of the Fund (the "LLC Agreement") and the Agreement of Limited Partnership dated as of April 1, 2014 of the Master Fund (the "Partnership Agreement"), the Investor agrees to (a) subscribe for and irrevocably purchase from the Fund Class C limited liability company units (the "Units" or the "Class C Units") in the Fund in the aggregate amount of its Commitment (as set forth above), payable in the manner and at the times provided in the LLC Agreement, (b) become a party to and be governed and bound by the terms and conditions of the LLC Agreement, and (c) become a Member of the Fund.  Capitalized terms used but not defined herein shall have the respective meanings given to them in the LLC Agreement.  The Memorandum, LLC Agreement, Partnership Agreement, this Subscription Agreement and the other written materials furnished to the Investor by the Fund are sometimes referred to herein collectively as the "Offering Materials."

Units issued in connection with initial subscriptions to the Fund will be offered at $100 per Unit. Thereafter, Units will be offered at the NAV per Unit of the relevant class, as determined on the last business day of the immediately preceding month.  "NAV per Unit" means, as of a particular date, the net asset value of the Fund attributable to a class as of such date, divided by the number of Units in the class then outstanding.

2.    **Terms Specific to the Class C Units**.  The terms specific to the Class C Units are set forth in the Class C Supplement.  Prospective investors must read the Supplement prior to subscribing for Units in the Fund.  Subject to the other terms and restrictions set forth in the Memorandum, the Investor understands that it may only redeem all or part of its Units after a period of twelve (12) months from the date of the purchase of such Units.

T2 Strategic Real Estate Income Fund, LLC
Class C Subscription Documents
CHICAGO/#2566689.1

FOIA CONFIDENTIAL TREATMENT REQUESTED BY T2 CAPITAL MANAGEMENT

Exhibit 54 Page 1525

T2CAPITAL_SEC_00001420

3.     **Representations, Covenants and Warranties of the Investor.**  The Investor hereby represents, covenants and warrants to the Fund, Master Fund, Investment Manager and to T2 SREI Fund GP, LLC (the "Manager") and to each other person or entity who acquires an interest in the Fund as follows:

(a)     **Suitability. THE INVESTOR HAS READ CAREFULLY AND UNDERSTANDS THE OFFERING MATERIALS AND HAS CONSULTED ITS OWN ATTORNEY, ACCOUNTANT OR INVESTMENT ADVISOR WITH RESPECT TO THE INVESTMENT CONTEMPLATED HEREBY AND ITS SUITABILITY FOR THE INVESTOR. ANY SPECIFIC ACKNOWLEDGMENT SET FORTH BELOW WITH RESPECT TO ANY STATEMENT CONTAINED IN THE OFFERING MATERIALS SHALL NOT BE DEEMED TO LIMIT THE GENERALITY OF THESE REPRESENTATIONS AND WARRANTIES. THE INVESTOR IS PURCHASING UNITS IN THE FUND RELYING SOLELY ON THE INFORMATION CONTAINED IN THE OFFERING MATERIALS, AND NOT ON ANY OTHER STATEMENT (WHETHER ORAL OR WRITTEN) WITH RESPECT TO THE OFFERING OF UNITS MADE BY THE FUND, THE MANAGER OR ANY OFFICER, DIRECTOR, EMPLOYEE, STOCKHOLDER, MEMBER, PARTNER OR AFFILIATE OF EITHER OF THEM. NEITHER THE MANAGER NOR ANY OTHER PERSON ACTING ON THE FUND'S BEHALF OFFERED TO SELL THE INVESTOR UNITS IN THE FUND BY MEANS OF ANY FORM OF GENERAL SOLICITATION OR ADVERTISING, SUCH AS MEDIA ADVERTISING OR PUBLIC SEMINARS.**

(b)     **Opportunity to Verify Information.**  The Investor acknowledges that representatives of the Fund have made available to the Investor, during the course of this transaction and prior to the purchase of the Units, the opportunity to ask questions of and receive answers from them concerning the terms and conditions of the offering described in the Offering Materials and to obtain any additional information necessary to verify the information contained in the Offering Materials or otherwise relative to the proposed activities of the Fund. The Investor acknowledges having received satisfactory answers to all of its questions from representatives of the Fund and having obtained all additional information requested by it of the Fund and its representatives.

(c)     **Fee Arrangements.**  The Investor acknowledges and understands the fee arrangements discussed in the Memorandum and the LLC Agreement.

(d)     **Purchase for Investment; Transferability.**

(i)     The Investor understands that the Investor must bear the economic risk of its investment until the termination of the Fund, and that the Units have not been registered under the Securities Act of 1933, as amended (the "Securities Act") in reliance on the exemption contained in Section 4(2) thereof and the provisions of Rule 506 of Regulation D promulgated thereunder, and, therefore, cannot be resold or otherwise disposed of unless they are subsequently registered under the Securities Act or unless an exemption from such registration is available. The Investor also acknowledges and understands that (1) the offering and sale of the Units has not been registered under the securities laws of any state or any other jurisdiction and that the Offering Materials have not been subject to review or comment by the United States Securities and Exchange Commission ("SEC") or any state securities commission or any similar body or agency of any other jurisdiction; (2) the Fund is not being registered as an "investment company" as the term is defined in Section 3(a) of the Investment Company Act of 1940, as amended (the "Investment Company Act"); and (3) the Investor is purchasing the Units for its own account and without a view towards resale or distribution thereof. The Investor agrees not to resell or otherwise dispose of all or any part of the Units purchased by the Investor, except as permitted by law, including, without limitation, any regulations under the Securities Act, and any and all applicable provisions of the LLC Agreement.

(ii)     The Investor understands that the Fund does not have any obligation or intention to register the Units for sale under the Securities Act or any state securities laws or of

2

T2 Strategic Real Estate Income Fund, LLC
Class C Subscription Documents
CHICAGO/#2566689.1

Exhibit 54 Page 1526
FOIA CONFIDENTIAL TREATMENT REQUESTED BY T2 CAPITAL MANAGEMENT

supplying the information which may be necessary to enable the Investor to sell its Units; and that the Investor has no right to require the registration of the Units under the Securities Act, any state securities laws or other applicable securities regulations. The Investor also understands that sales or transfers of Units are further restricted by the provisions of the LLC Agreement. There is no public or other market for the Units, and none is expected to develop. For the foregoing reasons, the Investor may be required to retain ownership of the Units and bear the economic risk of this investment for an indefinite period.

(iii)    The Investor represents and warrants further that it has no contract, understanding, agreement or arrangement with any person to sell, transfer or pledge to such person or anyone else any of the Units for which the Investor hereby subscribes (in whole or in part); and the Investor represents and warrants that it has no present plans to enter into any such contract, undertaking, agreement or arrangement.

(iv)    The Investor understands that the Units cannot be sold or transferred without the prior written consent of the Manager, which consent may be withheld in its sole and absolute discretion and which consent will be withheld if any such transfer could cause the Fund to become subject to regulation under federal law as an investment company or would subject the Fund to adverse tax consequences.

(v)    By executing this Subscription Agreement, the Subscriber affirmatively consents to the description of the Fund set forth in the Offering Materials, the actual and potential risks and conflicts of interest involved with an investment in the Fund, and the costs and charges involved in an investment in the Fund.

**(e)    Full Contribution.** The Investor understands that, except as otherwise provided in the LLC Agreement, the Investor is not permitted to make less than the full amount of any required investment, and that the LLC Agreement contains default provisions with respect thereto pursuant to which the Investor may lose a material portion of its investment in the Fund.

**(f)    Eligible Purchaser Status.** The Investor is an "accredited investor" within the meaning of Regulation D under the Securities Act and is a "qualified client" as defined in Rule 203-5 of the Investment Advisers Act of 1940, as amended ("Advisers Act"). The Investor has completed and signed, or had its authorized representative complete and sign, the applicable Eligibility Questionnaire attached hereto as Exhibit B and all statements, answers and information therein are correct.

**(g)    No Need for Liquidity and Suspension of Redemptions.** The Investor has no need for liquidity in connection with its purchase of the Units, can bear the substantial economic risks of its investment in the Fund for an indefinite period of time and can afford to suffer the complete loss thereof. The Investor acknowledges the limited rights of redemption provided in the LLC Agreement. The Fund may suspend redemption rights, payments or the calculation of Net Asset Value, in whole or in part, as set forth in the Memorandum. In addition, the Fund, by written notice to any Member, may suspend the payment of redemption proceeds payable to such Member if the Fund reasonably deems it necessary to do so to comply with anti-money laundering regulations applicable to the Fund, the Manager and their affiliates, subsidiaries or associates or any of the Fund's other service providers. Finally, the undersigned acknowledges that distributions, including, without limitation, the proceeds of redemptions, may be paid in cash, in kind or partly in cash and partly in kind.

**(h)    Investment Objectives.** The purchase of the Units by the Investor is consistent with the general long-term investment objectives of the Investor.

**(i)    Investment Management Agreement.** The Investor consents to the terms of the Investment Management Agreement among the Investment Manager, the Master Fund and the Fund.

3

Exhibit 54 Page 1527

FOIA CONFIDENTIAL TREATMENT REQUESTED BY T2 CAPITAL MANAGEMENT       T2CAPITAL_SEC_00001422

(j)   **Investment Company Act**.   Unless otherwise permitted under the Investment Company Act, if the Investor is a corporation, trust, partnership, limited liability company or other organization or entity, (i) it has not been formed, organized, reorganized, capitalized or recapitalized for the purpose of acquiring or holding the Units, or the Investor's Commitment is less than 40% of its total assets and committed capital; (ii) its stockholders, partners, members or other beneficial owners do not have and will not have individual discretion as to their participation in particular investments made by the Investor; and (iii) it is not an investment company registered or required to register under the Investment Company Act; provided, that if the Investor is unable to make any of the representations set forth in this paragraph (j), it shall have so notified the Manager in writing and shall have provided to the Manager such additional information as the Manager may reasonably request.

(k)   **Knowledge and Experience**.   The Investor and its purchaser representative (if any) currently have, and (unless the Investor has a purchaser representative) the Investor had immediately prior to receipt of any offer regarding the Fund, such knowledge and experience in tax, financial and business matters as to be able to evaluate the merits and risks of an investment in the Fund and, in making a decision to proceed with this investment (unless the Investor has a purchaser representative), the Investor has not relied upon any representations, warranties or agreements other than those set forth in this Subscription Agreement and the other Offering Materials, if any.

(l)   **Investment Risks**.   The Investor is aware that an investment in the Fund involves substantial risks, including the risks summarized in the Memorandum under "Risk Factors," and has determined that the purchase of the Units is a suitable investment for it. The Investor is aware that (i) the Fund has no financial or operating history, (ii) any historical or projected investment returns set forth in the Offering Materials or any supplemental materials are not necessarily comparable to or indicative of returns, if any, that may be achieved on investments made by the Fund, and (iii) the Manager or a person or entity selected by the Manager (which may be a manager, member or affiliate thereof) will receive substantial compensation in connection with the management of the Fund. The Investor has sufficient financial resources to bear the loss of its entire investment in the Fund.

(m)   **Purchaser Representative**.   If the Investor has utilized a purchaser representative for the purpose of evaluating an investment in the Fund, the Investor has previously given the Fund written notice of such fact, specifying that such representative would be acting as the Investor's "purchaser representative" as defined in Rule 501(h) of Regulation D under the Securities Act.

(n)   **Special Purpose Entities**.   The Investor is not an entity that has been organized, reorganized, capitalized, recapitalized for the principal or specific purpose (or as one of the principal or specific purposes) of investing in the Fund, or a substantial portion of its assets consist (or will consist) of an interest in the Fund (a "Special Purpose Entity"); provided that if the Investor is a Special Purpose Entity, the Investor shall (i) so indicate in its Eligibility Questionnaire and (ii) provide the Manager with such information (including such representations and warranties) relating to such entity and its ultimate beneficial owners as may be reasonably requested in order to assure compliance with all applicable laws, rules and regulations (including those under the Securities Act, the Investment Company Act, the "publicly traded partnership" provisions of the United States Internal Revenue Code of 1986, as amended (the "Code"), and the United States Treasury Regulations promulgated thereunder). Restrictions (substantially similar to the restrictions contained in the LLC Agreement on the assignment or transfer of Units in the Fund) shall be imposed on the ability of the direct or indirect beneficial or record owners of such special purpose entity (or entities) to transfer directly or indirectly their Units in such entity (or entities).

(o)   **Certain Flow-Through Entities**.   If the Investor is (or will be at any time during the period which the Investor holds any interest in the Fund) a partnership, limited liability company, grantor trust or S corporation for United States federal income tax purposes (a "flow-through entity"), then either (i) less than seventy percent (70%) of the value of the Investor (as well as the value of any flow-through entity that is a direct or indirect beneficial owner of the Investor) is attributable to the Investor's interest in the Fund or (ii) the Investor was not formed, availed of or reorganized for the principal purpose to

4

FOIA CONFIDENTIAL TREATMENT REQUESTED BY T2 CAPITAL MANAGEMENT

Exhibit 54 Page 1528

T2CAPITAL_SEC_00001423

permit the Fund to satisfy (or have as one of its principal purposes the satisfaction of) the 100 partner limitation of United States Treasury Regulation Section 1.7704-1(h)(ii).

**(p)**   **Covenant to Provide Tax Information.**   The Investor covenants that it (1) will provide any form, certification or other information reasonably requested by and acceptable to the Manager that is necessary for the Fund (x) to prevent, qualify for a reduced rate of, and/or otherwise determine the proper rate of withholding or backup withholding in any jurisdiction from or through which the Fund receives payments or (y) to satisfy reporting or other obligations under the Code and the Treasury Regulations, (2) will update or replace such form, certification or other information in accordance with its terms or subsequent amendments, and (3) will otherwise comply with any reporting obligations imposed by the U.S. or any other jurisdiction with respect to Investor's investment in the Fund, including reporting obligations that may be imposed by future legislation.

**(q)**   **No View to Tax Benefits.**   The Investor is not acquiring the Units with a view to realizing any benefits under U.S. federal income tax laws, and no representations have been made to the Investor that any such benefits will be available as a result of the Investor's acquisition, ownership or disposition of the Units.

**(r)**   **No Borrowings.**   The Investor has not borrowed and will not borrow any portion of its contribution to the Fund, either directly or indirectly, from the Fund, the Manager or any affiliate of the foregoing.

**(s)**   **No Independent Counsel to Represent Investors.**   The Investor understands that Vedder Price P.C. ("Vedder Price") has been engaged as legal counsel by the Manager and the Investment Manager to represent them and the Fund and their affiliates in connection with the organization of the Fund and the Master Fund and the offering of Units.  The Investor also understands that no separate counsel has been engaged to independently represent the Members in connection with the formation of the Fund and the Master Fund or the offering of Units.  The Investor understands that other counsel may also be retained where the Manager or Investment Manager on their own behalf or on behalf of the Fund determines that to be appropriate.

The Investor understands that, in advising the Fund, the Master Fund, the Manager and the Investment Manager with respect to the preparation of the Memorandum, Vedder Price has relied upon information that has been furnished to it by the Fund, the Master Fund, the Manager and the Investment Manager and their affiliates, and has not independently investigated or verified the accuracy or completeness of the information set forth in the Memorandum.  In addition, the Investor understands that Vedder Price does not monitor the compliance of the Fund, the Master Fund, the Manager or the Investment Manager with the investment guidelines set forth in the Memorandum, the Fund's or the Master Fund's terms or applicable laws.

The Investor acknowledges that there may be situations in which there is a "conflict" between the interests of the Manager or the Investment Manager and those of the Fund and the Master Fund.  The Investor understands that, in these situations, the Manager, the Investment Manager, the Fund and the Master Fund will determine the appropriate resolution thereof, and may seek advice from Vedder Price in connection with such determinations.  The Manager, the Investment Manager, the Fund and the Master Fund have consented to Vedder Price's concurrent representation of such parties in such circumstances.

**(t)**   **Final Form of Agreements.**   The Investor understands and acknowledges that its investment in the Fund shall be subject to the terms and conditions of this Subscription Agreement and the LLC Agreement in such final forms as shall be executed by the parties thereto, and as the same may be amended from time to time in accordance with their respective terms.

**(u)**   **Certain Tax Matters.**   The Investor acknowledges and understands that the Fund is being organized and managed so as to avoid being classified as a "publicly traded partnership" taxable as a corporation under Section 7704 of the Code, the effect of which shall be to restrict the transferability of the Investor's Units.

5

Exhibit 54 Page 1529

FOIA CONFIDENTIAL TREATMENT REQUESTED BY T2 CAPITAL MANAGEMENT          T2CAPITAL_SEC_00001424

(v) **Authorization**. If the Investor is an individual, the Investor has the legal capacity and authority to execute, deliver and perform the Investor's obligations under this Subscription Agreement. If the Investor is a corporation, partnership, limited liability company, trust or other entity, (i) the person executing this Subscription Agreement has the full power and authority to execute and deliver this Subscription Agreement on behalf of the subscribing entity; (ii) such entity is duly formed and organized, validly existing, and in good standing under the laws of its jurisdiction of formation; (iii) such entity is authorized by its governing documents to execute, deliver and perform its obligations under this Subscription Agreement and to become a Member in the Fund; and (iv) the Investor shall deliver to the Fund such evidence of such authority as the Fund may reasonably require.

(w) **Electronic Delivery of Reports**. The Investor consents to receiving the periodic financial reports and tax information described in the LLC Agreement by e-mail or by means of having access to a database or other forum hosted on a website designated by the Manager (the "Reporting Site"), with such parameters regarding access and availability of information for review as the Manager deems reasonably necessary to protect the confidentiality and proprietary nature of the information contained therein. If at any time the Investor cannot or does not want to access such reports and information by email or via the Reporting Site, the Investor will notify the Manager, in which case the Manager will provide the Investor paper copies of such reports.

(x) **Master-Feeder Structure**. The Investor acknowledges that all of the Fund's assets will be invested in the Master Fund, except for those assets needed for cash management purposes, and the Fund will not make any independent investments. The Fund will report the level of investment by benefit plan investors in the Fund to the Master Fund for purposes of determining whether the Master Fund is a "plan assets entity" within the meaning of Employee Retirement Income Security Act of 1974, as amended.

(y) **Indemnification and Exculpation**. The Investor specifically agrees to and acknowledges the exculpation and indemnification provisions set forth in the LLC Agreement and that such provisions shall survive the undersigned's withdrawal as a Member and the Fund's dissolution. The undersigned hereby waives any personal liability on the part of the Manager, Investment Manager or its officers, employees and agents, in connection with the Fund's management, provided that the acts or omissions of the person in question did not constitute fraud, gross negligence or willful misconduct.

(z) **"Bad Actor" Disqualification**. The Investor has not engaged in a "disqualifying event" as defined within Rule 506 of Regulation D under the Securities Act, including:

(i) being convicted of a felony or misdemeanor within the last ten (10) years that was in connection with the purchase or sale of a security, involving the making of a false filing with the SEC or arose out of the conduct of the business of an underwriter, broker, dealer, municipal securities dealer, investment adviser or paid solicitor of securities;

(ii) being subject to an order, judgment or decree of any court of competent jurisdiction, entered within the last five (5) years, that restrains or enjoins the Investor from engaging or continuing to engage in any conduct or practice (whether or not appealable or subject to a pending appeal) in connection with the purchase or sale of a security, involving the making of a false filing with the SEC or arising out of the conduct of the business of an underwriter, broker, dealer, municipal securities dealer, investment adviser or paid solicitor of securities;

(iii) being subject to a final order of a state securities commission (or any agency or officer of a state performing similar functions), a state authority that supervises or examines banks, savings associations or credit unions, a state insurance commission (or any agency or officer of a state performing similar functions), an appropriate federal banking agency, the CFTC or the National Credit Union Administration that bars the Investor from association with an entity regulated by such commission, authority, agency or officer, or is barred from engaging in the business of securities, insurance or banking or engaging in savings association or credit union activities or whereby such final order is based on a violation of any law or regulation

6

T2 Strategic Real Estate Income Fund, LLC
Class C Subscription Documents
CHICAGO/#2566689.1

Exhibit 54 Page 1530
FOIA CONFIDENTIAL TREATMENT REQUESTED BY T2 CAPITAL MANAGEMENT

that prohibits fraudulent, manipulative, or deceptive conduct and was issued within ten years of the date of this Subscription Agreement;

           (iv)     being subject to an SEC order entered pursuant to Section 15(b) or 15B(c) of the Securities Exchange Act of 1934, as amended (the "Exchange Act"), or Section 203(e) or (f) of the Advisers Act that suspends or revokes the Investor's registration as a broker, dealer, municipal securities dealer or investment adviser, places limitations on the activities, functions or operations in connection with such activities, or bars the Investor from being associated with any entity or from participating in the offering of any penny stock;

           (v)     being subject to any order of the SEC entered within the last five (5) years that, as of the date of this Subscription Agreement, orders the Investor to cease and desist from committing or causing a violation or future violation of any scienter-based anti-fraud provision of the federal securities laws, including without limitation Section 17(a)(1) of the Securities Act, Section 10(b) of the Exchange Act and 17 CFR 240.10b-5, Section 15(c)(1) of the Exchange Act and Section 206(1) of the Advisers Act, or any other rule or regulation thereunder or Section 5 of the Securities Act;

           (vi)     is suspended or expelled from membership in, or suspended or barred from association with a member of, a registered national securities exchange or a registered national or affiliated securities association for any act or omission to act constituting conduct inconsistent with just and equitable principles of trade;

           (vii)     has filed (as a registrant or issuer), or was or was named as an underwriter in, any registration statement or Regulation A offering statement filed with the SEC that, within the last five (5) years, was the subject of a refusal order, stop order, or order suspending the Regulation A exemption, or is, at the time of such sale, the subject of an investigation or proceeding to determine whether a stop order or suspension order should be issued; or

           (viii)     is subject to a United States Postal Service false representation order entered within five (5) years of the date of this Subscription Agreement, or is, as of the date of this Subscription Agreement, subject to a temporary restraining order or preliminary injunction with respect to conduct alleged by the United States Postal Service to constitute a scheme or device for obtaining money or property through the mail by means of false representations.

        If the Investor engaged in one of the "disqualifying events" described above or as otherwise set forth in Rule 506 of Regulation D, it must inform the Manager and provide information regarding the disqualifying event including the date of such event.   If in the future, the Investor can no longer make this representation, it must promptly notify the Manager and provide information regarding the disqualifying event including the date of any such event.  The Investor specifically consents to the disclosure of any such disqualifying event to any other Member and third-parties as the Manager may deem necessary to ensure the Fund can continue to claim the Rule 506 safe harbor.

**4.**     **ERISA Representations**.  If the Investor is a Benefit Plan Investor (as defined below), the Investor represents and warrants that the Investor's purchase of the Units and the subsequent holding of the Units do not and will not constitute a "non-exempt prohibited transaction" under the Employee Retirement Income Security Act of 1974, as amended ("ERISA") or the Code.  The term "Benefit Plan Investor" refers to (i) any "employee benefit plan" as defined in, and subject to the fiduciary responsibility provisions of ERISA, (ii) any "plan" as defined in and subject to Section 4975 of the Code and (iii) any entity ("Plan Assets Entity") deemed for any purpose of ERISA or Section 4975 of the Code to hold assets of any such employee benefit plan or plan due to investments made in such entity by already-described Benefit Plan Investors.  If the Investor is a Benefit Plan Investor and if the Fund or the Master Fund is or becomes a Plan Assets Entity, the investment by such Benefit Plan Investor in the Fund constitutes the appointment by the Named Fiduciary as described below, in accordance with the written requirements governing the underlying plan(s), of the Manager as an "investment manager" as defined in Section 3(38)

7

Exhibit 54 Page 1531

FOIA CONFIDENTIAL TREATMENT REQUESTED BY T2 CAPITAL MANAGEMENT    

of ERISA, with the authority to manage the Fund's assets and the authority to appoint other "investment managers" with respect to any Fund assets which are deemed to be plan assets of the Benefit Plan Investor. The Manager hereby acknowledges to each Benefit Plan Investor subject to Title I of ERISA or Section 4975 of the Code its status, for any period during which the Fund and/or the Master Fund is a Plan Assets Entity, as a "fiduciary" as defined by Section 3(21) of ERISA with respect to such Plan Assets.

Furthermore, by executing this Subscription Agreement, any Investor that is a Benefit Plan Investor represents and warrants to the Fund and the Manager that:

   **(a)**   The person(s) or entities responsible for the investment decision (the "Named Fiduciary") has determined that, in view of such considerations, the purchase of an Interest in the Fund is consistent with the Named Fiduciary's responsibility under ERISA, Section 4975 of the Code or similar law and has considered the following with respect to the Benefit Plan Investor's investment in the Fund: (i) the role such investment or investment course of action plays in that portion of the Benefit Plan Investor's portfolio that the Named Fiduciary manages; (ii) whether the investment or investment course of action is reasonably designed as part of that portion of the Benefit Plan Investor's portfolio managed by the Named Fiduciary to further the purposes of the Benefit Plan Investor, taking into account both the risk of loss and the opportunity for gain that could result therefrom; (iii) the composition of that portion of the portfolio that the Named Fiduciary manages with regard to diversification; (iv) the liquidity and current rate of return of that portion of the Benefit Plan Investor's portfolio managed by the Named Fiduciary relative to its anticipated cash flow requirements; (v) the projected return of that portion of the portfolio managed by the Named Fiduciary relative to the Benefit Plan Investor's funding objectives; (vi) the risks associated with an investment in the Fund, including the limited right to withdraw from the Fund; (vii) whether the risk, structure and operation of the fee arrangements have been adequately disclosed and whether such arrangements further the interests of the Benefit Plan Investor; (viii) that the investment in the Fund and the investment program employed by the Manager as described in the Memorandum are not prohibited by ERISA, Code Section 4975 or similar law; and (ix) whether the investment is permitted under the Benefit Plan Investor's governing documents.

   **(b)**   The Named Fiduciary (i) is authorized to make, and responsible for, the decision to invest in the Fund; (ii) is independent of the Fund, the Manager, any sales agent and each of their affiliates; (iii) is qualified to make such investment decision and has, to the extent it deems necessary, consulted its own investment advisors and legal counsel regarding the investment in the Fund; (iv) in making its decision to invest in the Fund has not relied on any advice or recommendation of the Fund, the Manager, any sales agent or any of their affiliates; and (v) if the Named Fiduciary is subject to Title I of ERISA, the Named Fiduciary is a named fiduciary as defined in Section 402(a)(2) of ERISA authorized by the underlying plan documents to appoint the Manager as a fiduciary and investment manager to the plan or is otherwise authorized to appoint the Investment Manager as a fiduciary and investment manager to the plan.

   **(c)**   The Named Fiduciary agrees to deliver to the Manager all of the information that it may request in order to avoid violations of any provisions of ERISA or any other laws applicable to the Investor, and promptly will notify the Manager, in writing, of any change in the information so furnished; and

   **(d)**   If the Named Fiduciary is subject to Title I of ERISA, the Named Fiduciary understands and represents that (i) its copy of this Subscription Agreement is the Investor's indicia of ownership of the Units in the Fund for purposes of Section 403(a) of ERISA and (ii) a copy of this Subscription Agreement will be held in trust by the Benefit Plan Investor's trustee.

5.   **Closing; Capital Contributions and Fees.**

   **(a)**   **Closing.** The closing of the sale and purchase of the Investor's Units (the "Closing") shall take place at such date and time as the Manager may determine as set detailed in the Offering Materials. As soon as practicable following the Closing, the Manager will deliver to the Investor a copy of the LLC

8

Exhibit 54 Page 1532

FOIA CONFIDENTIAL TREATMENT REQUESTED BY T2 CAPITAL MANAGEMENT          T2CAPITAL_SEC_00001427

Agreement and a counterpart of this Subscription Agreement, which shall be executed by the Investor, the Manager and the Fund.

(b) **Capital Contributions and Fees**. The initial capital contribution for the purchase of the Investor's Units, each subsequent capital contribution and the payment of fees to the Fund and the Manager, as the case may be, shall take place at such times and in the manner specified in the Offering Materials.

6. **Agreements with Other Members**. The Manager and the Fund represent that each other Member has executed and delivered or will execute and deliver a subscription agreement substantially identical to this Subscription Agreement (except as to the differences between the classes of Units and the amount of the Units to be purchased), in which each such other Member agrees to subscribe for and purchase Units from the Fund and makes substantially identical representations and warranties as are made by the Investor in Section 3. The purchases of the Units by the Investor and the other Members are to be separate purchases from the Fund and the sales of the Units to the Investor and the other Members are to be separate sales by the Fund.

7. **Survival of Agreements and Representations and Warranties**. All agreements, representations and warranties of the parties contained herein, or made in writing by or on behalf of the Manager or the Fund in connection with the transactions contemplated by this Subscription Agreement, shall survive the execution and delivery of this Subscription Agreement, any investigation at any time made by the Investor or on its behalf, and the sale and purchase of the Investor's Units in the Fund and payment therefor.

8. **Further Assurances**.

(a) The Investor acknowledges that, unless it notifies the Fund and the Manager in writing to the contrary prior to such time as it acquires the Units, all of its representations and warranties contained herein (including, without limitation, the answers, statements and information set forth in the Eligibility Questionnaire) will be deemed to have been repeated as of the date it purchases the Units. If at any time during the term of the Fund, the Investor is no longer in compliance with any of its representations, warranties and acknowledgments contained herein (including, without limitation, the answers, statements and information set forth in the Eligibility Questionnaire), the Investor shall so advise the Manager promptly in writing.

(b) Under penalties of perjury, the Investor declares that the following statements are true, correct and complete: (i) that unless an Internal Revenue Service Form W-8BEN, W-8ECI, W-8IMY, or W-8EXP, as applicable, has been completed, the Investor is not a foreign person for purposes of U.S. income taxation (i.e., the Investor is not a nonresident alien, nor executing this document as an officer of a foreign corporation, as a partner in a foreign partnership, or as a fiduciary of a foreign employee benefit plan, foreign trust or foreign estate); (ii) that the following information contained elsewhere in the subscription documents is true, correct and complete: the U.S. taxpayer identification number (i.e., social security number or employer identification number), the home address (in the case of an individual) or office address (in the case of an entity) and the place of incorporation (in the case of a corporation); and (iii) that the Investor agrees to inform the Manager promptly if the Investor becomes a nonresident alien (in the case of an individual) or other foreign person (in the case of an entity) following the date hereof.

(c) The Investor will provide the Manager with such information as it may reasonably request from time to time with respect to its citizenship, residency, ownership or control so as to permit the Manager to evaluate and comply with any legal, regulatory and tax requirements applicable to the Fund, the Investor's investment in the Fund or any of the investments (or proposed investments) to be made by the Fund or the Master Fund.

(d) The attached Investor Information page and Eligibility Questionnaire (collectively, the "Investor Questionnaire") that the Investor has completed is incorporated herein by reference in its entirety and made a part hereof, and all of the statements, answers and information in the Investor

9

T2 Strategic Real Estate Income Fund, LLC
Class C Subscription Documents
CHICAGO/#2566689.1

Exhibit 54 Page 1533

FOIA CONFIDENTIAL TREATMENT REQUESTED BY T2 CAPITAL MANAGEMENT                         T2CAPITAL_SEC_00001428

Questionnaire are true and correct as of the date hereof, and will be true and correct as the date of acceptance of this subscription, and do not omit to state any material fact necessary in order to make the statements contained therein not misleading.

**9.** **Indemnification.** The Investor (i) acknowledges that the Fund, Master Fund, Investment Manager and the Manager (as well as their officers, directors, managers, employees, stockholders, partners, members, counsel and affiliates) are relying on the representations, warranties and acknowledgments of the Investor contained herein (including, without limitation, the answers, statements and information set forth in the Eligibility Questionnaire), and (ii) agrees to indemnify each of them and their agents, representatives, officers, directors, managers, employees, stockholders, partners, members and affiliates against any and all claims, demands, losses, damages, costs and expenses whatsoever arising as a result of, or in connection with, any breach by the Investor of any such representations, warranties or acknowledgments.

**10.** **Compliance with Anti-Money Laundering Regulations, etc.** The Investor acknowledges that due to anti-money laundering regulations within their respective jurisdictions, the Fund, its Manager, and/or any administrator acting on behalf of the Fund may require further documentation verifying the Investor's identity and the source of funds used to purchase the Units before this Subscription Agreement can be processed or accepted. To comply with applicable U.S. anti-money laundering legislation and regulations, the Investor agrees that all payments by the Investor to the Fund and all distributions to the Investor from the Fund will only be made in the Investor's name and to and from a bank account of a bank based or incorporated in or formed under the laws of the United States or a bank that is not a "foreign shell bank" within the meaning of the United States Bank Secrecy Act (31 U.S.C. § 5311 et seq.), as amended (the "Bank Secrecy Act"), and the regulations promulgated thereunder by the United States Department of the Treasury, as such regulations may be amended from time to time. The Investor further agrees to provide the Manager at any time during the term of the Fund with such information as the Manager determines to be necessary and appropriate to verify compliance with the anti-money laundering regulations of any applicable jurisdiction or to respond to requests for information concerning the identity of Members from any governmental authority, self-regulatory organization or financial institution in connection with its anti-money laundering compliance procedures, and to update such information as necessary.

The Investor represents that the amounts to be contributed by the Investor to the Fund will not be directly or indirectly derived from activities that may contravene federal, state or international laws and regulations, including anti-money laundering laws and regulations.[1] The Investor represents and warrants that none of: (i) the Investor; (ii) any Person controlling or controlled by the Investor; (iii) if the Investor is a privately held entity, any Person having a beneficial interest in the Investor; (iv) any Person for whom the Investor is acting as agent or nominee in connection with the purchase of the Units is (1) a country, territory, individual or entity named on a list maintained by OFAC, (2) a Person prohibited under the OFAC Programs, (3) a senior foreign political figure,[2] or any immediate family member or close

---

[1] Federal regulations and executive orders administered by the U.S. Department of the Treasury's Office of Foreign Assets Control ("OFAC") prohibit, among other things, the engagement in transactions with, and the provision of services to, certain foreign countries, territories, entities and individuals. These individuals include specially designated nationals, specially designated narcotics traffickers and other parties subject to OFAC sanctions and embargo programs, including the List of Specially Designated Nationals and Blocked Persons, as such list may be amended from time to time, or any executive order administered by OFAC. The lists of OFAC prohibited countries, territories, persons and entities can be found on the OFAC website at www.treasury.gov/resource-center/sanctions. In addition, certain programs administered by OFAC (the "OFAC Programs") prohibit dealing with individuals or entities in certain countries regardless of whether such individuals or entities appear on the lists maintained by OFAC.

[2] A "senior foreign political figure" is defined as a senior official in the executive, legislative, administrative, military, or judicial branches of a foreign government (whether elected or not), a senior official of a major foreign political party, or a senior executive of a foreign government-owned corporation. In addition, a "senior foreign political figure" (cont'd)

10

Exhibit 54 Page 1534

FOIA CONFIDENTIAL TREATMENT REQUESTED BY T2 CAPITAL MANAGEMENT          T2CAPITAL_SEC_00001429

associate[3] of a senior foreign political figure as such terms are defined in the footnotes below, (4) a "foreign shell bank" within the meaning of the Bank Secrecy Act and the regulations promulgated thereunder by the United States Department of the Treasury or (5) a person or entity subject to additional restrictions imposed by the following statutes or regulations and executive orders issued thereunder: the Trading with the Enemy Act, the Iraq Sanctions Act, the National Emergencies Act, the Antiterrorism and Effective Death Penalty Act of 1996, the International Emergency Economic Powers Act, the United Nations Participation Act, the International Security and Development Cooperation Act, the Nuclear Proliferation Prevention Act of 1994, the Foreign Narcotics Kingpin Designation Act, the Iran and Libya Sanctions Act of 1996, the Cuban Democracy Act, the Cuban Liberty and Democratic Solidarity Act and the Foreign Operations, Export Financing and Related Programs Appropriations Act, or any other law of similar import as to any non-U.S. country, as each such act or law has been or may be amended, adjusted, modified or reviewed from time to time or (6) a person or entity resident in or whose subscription funds are transferred through a jurisdiction identified as non-cooperative[4] by the Financial Action Task Force." Such Persons in (1) through (6) are collectively referred to as "Prohibited Persons."

In addition, if the Investor is a "financial institution" as such term is defined in the Bank Secrecy Act and the regulations promulgated thereunder by the United States Department of the Treasury, as such regulations may be amended from time to time, the Investor represents and warrants that the Investor has anti-money laundering policies and procedures in place reasonably designed to collect information with respect to and verify the identity of the Investor's investors or customers. In this regard, the Investor hereby represents and warrants that it is not a Prohibited Person. The representations and warranties set forth in this Section 10 shall be deemed repeated and reaffirmed by the Investor as of each date that the Investor is required to make a contribution of capital to the Fund, and if at any time during the term of the Fund the representations and warranties set forth in this Section 10 shall cease to be true, the Investor shall promptly so notify the Manager of the Fund in writing.

To the extent the Investor has beneficial owners or is an intermediary subscribing for an Interest on behalf of one or more investors or beneficial owners (collectively, "Owners"): (i) the Investor has carried out due diligence as required by applicable law to establish the identities of all such Owners; (ii) based on such due diligence, the Investor reasonably believes that no such Owners are Prohibited Persons; (iii) the Investor has conducted enhanced due diligence on any Owner who is a senior foreign political figure; (iv) based on such enhanced due diligence, the Investor has no reason to believe that the funds invested by each such senior foreign political figure involve the proceeds of official corruption; (v) the Investor has no reason to believe that the funds invested or to be invested by Owners were derived from activities that may contravene any U.S. or non-U.S. anti-money laundering laws or regulations; (vi) the Investor holds the evidence of such identities and status and will maintain all such evidence for at least five (5) years from the date of the Investor's complete withdrawal from the Fund; and (vii) the Investor will make available such information and any additional information requested by the Fund or the Manager that is required under applicable regulations, to the extent permitted by applicable law.

---

(cont'd)
includes any corporation, business or other entity that has been formed by, or for the benefit of, a senior foreign political figure.

3 A "close associate" of a senior foreign political figure is a person who is widely and publicly known to maintain an unusually close relationship with the senior foreign political figure, and includes a person who is in a position to conduct substantial domestic and international financial transactions on behalf of the senior foreign political figure.

4 Non-cooperative jurisdictions are non-U.S. countries that have been designated as high-risk or non-cooperative with international anti-money laundering principles or procedures by an intergovernmental group or organization, such as the Financial Action Task Force on Money Laundering ("FATF"), of which the U.S. is a member and with which designation the U.S. representative to the group or organization continues to concur. The FATF list of non-cooperative jurisdictions is found at http://www.fatf-gafi.org.

11

T2 Strategic Real Estate Income Fund, LLC
Class C Subscription Documents
CHICAGO/#2566689.1

Exhibit 54 Page 1535

FOIA CONFIDENTIAL TREATMENT REQUESTED BY T2 CAPITAL MANAGEMENT          T2CAPITAL_SEC_00001430

The Investor understands and agrees that the Fund may not accept any amounts from a prospective Member if such Member cannot make the representations set forth in this Section 10. If an existing Member cannot make these representations at any time after the admission of such Member to the Fund, the Manager may require the withdrawal of such Member's Units. The Investor further understands and agrees that, by law, the Fund may be obligated to "freeze" the Investor's account, by prohibiting additional contributions from the Investor, declining any withdrawal requests and/or segregating the assets in the account in compliance with governmental regulations and the Fund may also be required to report such action and to disclose the Investor's identity to OFAC. The Investor further acknowledges that the Manager may, by written notice to the Investor, suspend the Investor's withdrawal rights if the Manager reasonably deems it necessary to do so to comply with anti-money laundering regulations applicable to the Fund, its Manager, the Manager or any of the Fund's other service providers.

**11.     Non-Disclosure.** The Investor acknowledges that the Fund and the Master Fund are furnishing or have furnished to the Investor certain proprietary information ("Confidential Information") relating to the business affairs and current and proposed operations of the Fund and the Master Fund for study and evaluation by the Investor for possibly investing in the Units. The Investor acknowledges that the information provided by the Fund or the Master Fund is confidential; therefore, the Investor agrees not to disclose it and not to disclose that any discussions or contracts with the Fund or the Master Fund have occurred or are intended, other than as provided for in the following paragraph.

The Investor acknowledges that the information furnished is in all respects confidential in nature, other than information which is in the public domain through other means and that any disclosure or use of same by the Investor, except as provided in this Subscription Agreement, may cause serious harm or damage to the Fund, the Master Fund, the Manager, the Investment Manager and the Members. Therefore, the Investor agrees that the Investor will not use the information furnished for any purpose other than as otherwise permitted herein, and agrees that the Investor will not either directly or indirectly including through any agent, employee, or representative, disclose this information, either in whole or in part, to any third party; provided, however that (a) information furnished may be disclosed to those directors, officers and employees of the Investor and to the Investor's advisors who need such information for the purpose of evaluating the investment in the Units (it being understood that those directors, officers, employees and advisors shall be informed by the Investor of the confidential nature of such information and shall be directed by the Investor to treat such information confidentially), and (b) any disclosure of information may be made to which the Fund consents in writing.

**12.     Expenses.** Each party hereto will pay its own expenses relating to this Subscription Agreement and the purchase of the Investor's Units in the Fund hereunder.

**13.     Amendments.** Neither this Subscription Agreement nor any term hereof may be changed, waived, discharged or terminated except with the written consent of the Investor and the Manager.

**14.     Rejection of Subscription.** The Investor acknowledges that the subscription for the Units contained herein may be rejected by the Manager in its sole discretion at any time prior to the Closing.

**15.     Acceptance of Subscription.** The Manager may accept in its sole discretion all or any portion of the amount of the Commitment set forth on the signature page hereto by delivery to the Fund of a counterpart signature page hereto setting forth the portion of the Investor's Commitment accepted by the Manager. Prompt notice of such acceptance also will be given to the Investor either by delivery of this Subscription Agreement countersigned by the Manager or by notice of such execution.

**16.     Counterparts.** This Subscription Agreement may be executed in any number of counterparts, each of which shall be an original but all of which taken together shall constitute one Subscription Agreement.

**17.     General.** This Subscription Agreement (i) shall be irrevocable by the Investor and binding upon the Investor and the legal representatives, successors and assigns of the Investor, (ii) shall survive the admission of the Investor as a Member of the Fund, and (iii) shall, if the Investor consists of more than

12

Exhibit 54 Page 1536

FOIA CONFIDENTIAL TREATMENT REQUESTED BY T2 CAPITAL MANAGEMENT          T2CAPITAL_SEC_00001431

one person, be the joint and several obligation of all such persons. This Subscription Agreement shall be governed by the internal laws of the State of Delaware, except insofar as affected by the "Blue Sky" laws of the jurisdiction in which the offering described herein has been made to the Investor or applicable federal securities law as set forth in Section 3.

**18.     Jurisdiction.** To the fullest extent permitted by applicable law, any action or proceeding brought by the Investor against the Manager or Investment Manager (or their respective direct or indirect owners, officers, directors, managers, employees or consultants in their capacity as such, or in any related capacity) or the Fund or Master Fund, or relating in any way to this Subscription Agreement or the Offering Materials, shall be brought and enforced in the courts of the State of Illinois located in DuPage County, or (to the fullest extent subject matter jurisdiction exists therefore) the United States District Court for the Northern District of Illinois and, to the extent permitted by applicable law, the Investor irrevocably submits to the non-exclusive jurisdiction of both courts in respect of any action or proceedings between it and the Manager (or their respective direct or indirect owners, officers, directors, managers, employees or consultants in their capacity as such, or in any related capacity) or the Fund, or relating in any way to this Subscription Agreement or the Offering Materials. The Investor irrevocably waives, to the fullest extent permitted by applicable law, any objection that it may now or hereafter have to the laying of venue of any such action or proceeding in the courts of the State of Illinois located in DuPage County or the United States District Court for the Northern District of Illinois and any claim and any such action or proceeding brought in either court has been brought in an inconvenient forum. THE INVESTOR AND THE MANAGER, ON BEHALF OF ITSELF AND THE FUND, IRREVOCABLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT TO A JURY TRIAL IN CONNECTION WITH ANY ACTION OR PROCEEDING BY OR AGAINST THE MANAGER (OR ITS RESPECTIVE DIRECT OR INDIRECT OWNERS, OFFICERS, DIRECTORS, MANAGERS, EMPLOYEES OR CONSULTANTS IN THEIR CAPACITY AS SUCH, OR IN ANY RELATED CAPACITY) OR THE FUND, OR IN ANY WAY RELATING TO THIS SUBSCRIPTION AGREEMENT OR THE OFFERING MATERIALS.

**19.     Severability.** Each provision of this Subscription Agreement, including each representation made in the Investor Questionnaire incorporated herein, shall be considered severable. If it is determined by a court of competent jurisdiction that any provision of this Subscription Agreement is invalid under applicable law, such provision shall be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of this Subscription Agreement.

* * * SIGNATURE PAGE FOLLOWS * * *

13

T2 Strategic Real Estate Income Fund, LLC
Class C Subscription Documents
CHICAGO/#2566689.1

FOIA CONFIDENTIAL TREATMENT REQUESTED BY T2 CAPITAL MANAGEMENT

Exhibit 54 Page 1537

T2CAPITAL_SEC_00001432

## SIGNATURE PAGE

IN WITNESS WHEREOF, the Investor has executed this Subscription Agreement for the purchase of Units in T2 Strategic Real Estate Income Fund, LLC (the "Fund") and represents that the execution of this signature page constitutes the execution of the signature page of each of (i) the Subscription Agreement for the purchase of the Units in the Fund in the aggregate amount set forth below, and (ii) the Limited Liability Company Agreement of the Fund dated as of April 1, 2014 and as may be amended from time to time (the "LLC Agreement") in which the Investor agrees to become a Member of the Fund and be bound and governed by the LLC Agreement as if the Investor were an original signatory thereto. Upon acceptance below by the Manager on behalf of the Fund, the Investor shall be admitted as a Member of the Fund and hereby authorizes the signature page to be attached to a counterpart of the LLC Agreement executed by the Manager.

The foregoing Subscription Agreement is hereby accepted by and agreed to by the Investor as of the date first above written:

**Distribution Election**: Net cash flow of the Fund is generally expected to be distributed to Investors quarterly and will be allocated among Investors pro rata in accordance with their Units. At the option of the Investor, such distributions may be made in the form of cash or as additional Units in the Fund. Accordingly, please elect one of the following (your election will continue in effect until otherwise revoked in accordance with procedures to be determined by the Manager in its sole discretion):

☒ The Investor hereby elects to receive Fund distributions in the form of *cash*, rather than as additional Units in the Fund.

☑ The Investor hereby elects to receive Fund distributions in the form of additional *Units* in the Fund, rather than as cash.

Date: ___June 24, 2014___          Commitment Amount: $320,000

If Investor is an individual:          *Joint Signature, if applicable:*

Sign: ___David C. Chow___          Sign: _____

Print Name: ___David C. Chow___          Print Name: ___Vicky W. Chow___

If Investor is an entity (fund, partnership, corporation, LLC, etc.):

Print legal name of investing entity: _____

Signature of authorized person: _____

Print name and title: _____

*Additional signature, if applicable:*

Signature: _____

Print name and title: _____

14

T2 Strategic Real Estate Income Fund, LLC
Class C Subscription Documents
CHICAGO/#2566689.1

Exhibit 54 Page 1538

FOIA CONFIDENTIAL TREATMENT REQUESTED BY T2 CAPITAL MANAGEMENT          T2CAPITAL_SEC_00001433

**T2 STRATEGIC REAL ESTATE INCOME FUND, LLC**

**SUBSCRIPTION AGREEMENT**
**MANAGER ACCEPTANCE PAGE**

T2 SREI Fund GP, the Manager of T2 Strategic Real Estate Income Fund, LLC, hereby accepts the foregoing subscription on behalf of T2 Strategic Real Estate Income Fund, LLC either (a) for the Capital Commitment amount set forth below or (b) if the Capital Commitment amount below is left blank, then the Investor's requested Capital Commitment amount set forth above the Investor's signature on its signature page to the Subscription Agreement.

Capital Commitment Amount: $_____

**T2 STRATEGIC REAL ESTATE INCOME FUND, LLC**

By: T2 SREI Fund GP, LLC,
    its Manager

By:_____
    Name:  Jeff Brown
    Title:   Manager

**T2 SREI FUND GP, LLC**

By:_____
    Name:  Jeff Brown
    Title:   Manager

Exhibit 54 Page 1539

FOIA CONFIDENTIAL TREATMENT REQUESTED BY T2 CAPITAL MANAGEMENT

## I. Distribution Information

**A.** **Investor ACH Instructions:** *Please indicate below where you would like to receive distributions from the Fund.*

***NOTE: TD Ameritrade, Inc. will provide instructions. Interim please review the attached Letter of Direction.

Bank Name:_____

Bank City/State/Country:_____

Bank ABA#:_____

Account Name:_____

Account #:_____

Swift Code**:_____

For Further Credit to:_____

Account Name: David C. Chow and Vicky W. Chow JTWROS

Account #: ▮4341

**Required for U.S. dollar ACH transfer to non-U.S. banks. Please contact your bank for more information.

☐ Check this box if you require a wire transfer instead of an ACH transfer and instead list your wire instructions above.

## II. Investor Contact Information

### A. Investor's Domicile (*for tax purposes*)

Name: David C. Chow and Vicky W. Chow JTWROS

Address: ▮

City: Woodland Hills   State: CA   Zip: ▮

SSN/Tax ID: ▮-1556 / ▮-3818

Telephone: (818) ▮

Fax:_____

E-mail: ▮'@gmail.com

☐ Check this box if you do not have an e-mail address.

(A substantial amount of correspondence and reporting related to this investment will be provided electronically. If you cannot access such electronic communications, please check this box to receive paper copies.)

### B. Investor's Adviser (if any)

If applicable, please provide the name of the investment adviser firm, wealth manager or consultant that is working with you in connection with this investment: Criterion Wealth Management _____.

If you would like the above-named entity or person to be copied on all correspondence related to this investment, please provide this entity's or person's full contact information below:

Company: Criterion Wealth Management

Attention: Jason Stauffer

Address: 26650 The Old Rd., Ste. 212

City: Valencia   State: CA

Zip: 91381

Telephone: (661) 254-2543 ext. 122

Fax:_____

E-mail: Jason@criterionwealth.com

☐ Check this box if you do not have an e-mail address.

(A substantial amount of correspondence and reporting related to this investment will be provided electronically. If you cannot access such electronic communications, please check this box to receive paper copies.)

16

T2 Strategic Real Estate Income Fund, LLC
Class C Subscription Documents
CHICAGO/#2566689.1

Exhibit 54 Page 1540

FOIA CONFIDENTIAL TREATMENT REQUESTED BY T2 CAPITAL MANAGEMENT     T2CAPITAL_SEC_00001435

### C.   Additional Correspondence Contacts (if any)

Name: Mark A. Mac Arthur
Address: 26650 The Old Rd., Ste. 212

City: Valencia          State: CA   Zip: 91381

Telephone: (661) 254-2543 ext. 111
Fax:
E-mail: Mark@criterionwealth.com
☐ Check this box if you do not have an e-mail address.
(A substantial amount of correspondence and reporting related to this investment will be provided electronically.  If you cannot access such electronic communications, please check this box to receive paper copies.)

Name: Carolina Arriaga
Address: 26650 The Old Rd., Ste. 212

City: Valencia          State: CA   Zip: 91381

Additional Administrative Assistants to be emailed:
Rose@criterionwealth.com
Reception@criterionwealth.com
Yumiko@criterionwealth.com

Telephone: (661) 254-2543
Fax: (661) 254-5190
E-mail: carolina@criterionwealth.com
☐ Check this box if you do not have an e-mail address.
(A substantial amount of correspondence and reporting related to this investment will be provided electronically.  If you cannot access such electronic communications, please check this box to receive paper copies.)

### D.   Contact Person for Tax Matters (including K-1 distribution) if different from primary contact

*Please note that K-1's will be mailed only to the Primary Correspondence Contact or to the contact denoted below.*   Note: This is in addtion to Primary Contact/Account Holder.

Name: Criterion Wealth Management
Address: 26650 The Old Rd., Ste. 212

City: Valencia          State: CA   Zip: 91381

Telephone: (661) 254-2543
Fax:
E-mail: Jason@criterionwealth.com & Mark@criterionwealth.com
☐ Check this box if you do not have an e-mail address.
(A substantial amount of correspondence and reporting related to this investment will be provided electronically.  If you cannot access such electronic communications, please check this box to receive paper copies.)

17

Exhibit 54 Page 1541

FOIA CONFIDENTIAL TREATMENT REQUESTED BY T2 CAPITAL MANAGEMENT          T2CAPITAL_SEC_00001436

III.   **Private Fund Reporting Information**

**PRIVATE FUND REPORTING INFORMATION**

*To enable the Manager to complete Form PF (if applicable), please indicate which <u>one</u> of the following categories best describes Subscriber* **[initial only one blank]**:

_____   Individual that is a United States person[5] (including their trust)

_____   Individual that is not a United States person (including their trust)

_____   Broker-dealer

_____   Insurance company

_____   Investment company registered with the SEC

_____   Private fund[6]

_____   Non-profit

_____   Pension plan (excluding government pension plans)

_____   Banking or thrift institution (proprietary)

_____   State or municipal government entity[7] (excluding government pension plans)

_____   State or municipal government pension plan

_____   Sovereign wealth fund or foreign official institution

_____   Investor that is not a United States person and about which the foregoing beneficial ownership information is not known and cannot reasonably be obtained because the beneficial interest is held through a chain involving one or more third-party intermediaries

_____   Other   JTWROS

If Subscriber indicated "Other," please describe the nature of Subscriber:

_____

---

[5] A "United States Person" for this purpose means (a) any natural person resident in the United States; (b) any partnership or corporation organized or incorporated under the laws of the United States; (c) any estate of which any executor or administrator is a U.S. person; (d) any trust of which any trustee is a U.S. person; (e) any agency or branch of a foreign entity located in the United States; (f) any non-discretionary account or similar account (other than an estate or trust) held by a dealer or other fiduciary for the benefit or account of a U.S. person; (g) any discretionary account or similar account (other than an estate or trust) held by a dealer or other fiduciary organized, incorporated, or (if an individual) resident in the United States; and (h) any partnership or corporation if: (i) organized or incorporated under the laws of any foreign jurisdiction; and (ii) formed by a U.S. person principally for the purpose of investing in securities not registered under the Securities Act of 1933, unless it is organized or incorporated, and owned, by accredited investors who are not natural persons, estates or trusts. Any discretionary account or similar account that is held for the benefit of a United States person by a dealer or other professional fiduciary is a United States person if the dealer or professional fiduciary is a related person of the Investment Manager and is not organized, incorporated, or (if an individual) resident in the United States.

[6] A "private fund" means any issuer that would be an investment company as defined in the Investment Company Act, section 3 but for the Investment Company Act, section 3(c)(1) or 3(c)(7) .

[7] A "government entity" means any state or political subdivision of a state, including (a) any agency, authority, or instrumentality of the state or political subdivision; (b) a plan or pool of assets controlled by the state or political subdivision or any agency, authority, or instrumentality thereof; and (c) any officer, agent, or employee of the state or political subdivision or any agency, authority, or instrumentality thereof, acting in their official capacity.

18

T2 Strategic Real Estate Income Fund, LLC
Class C Subscription Documents
CHICAGO/#2566689.1

Exhibit 54 Page 1542

FOIA CONFIDENTIAL TREATMENT REQUESTED BY T2 CAPITAL MANAGEMENT          T2CAPITAL_SEC_00001437

**EXHIBIT A**

## BENEFIT PLAN INVESTOR STATUS

The Memorandum states that the Manager will use commercially reasonable efforts to operate the Fund as a "real estate operating company" or "venture capital operating company" under the "plan asset" regulations of the U.S. Employee Retirement Income Security Act of 1974, as amended ("ERISA") or the Manager may decide to limit Units held by Partners subject to ERISA to less than 25% of aggregate Units (not including any investments by the Manager and certain other persons and their respective affiliates).

The term "Benefit Plan Investor" refers to (i) any "employee benefit plan" as defined in, and subject to the fiduciary responsibility provisions of, the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), (ii) any "plan" as defined in and subject to Section 4975 of the Code and (iii) any entity ("Plan Assets Entity") deemed for any purpose of ERISA or Section 4975 of the Code to hold assets of any such employee benefit plan or plan due to investments made in such entity by already-described benefit plan investors.  Benefit Plan Investors include, but are not limited to, corporate pension and profit sharing plans, "simplified employee pension plans," Keogh plans for self-employed individuals (including partners), individual retirement accounts ("IRAs"), medical benefit plans, life insurance plans, church plans that have elected to be subject to ERISA, bank commingled trust funds, insurance company separate accounts for such plans and accounts and, under certain circumstances, all or a portion of the general account of an insurance company.

The Investor represents that it is (please check all applicable boxes):

(i)     ☑    <u>not</u> a Benefit Plan Investor; or

(ii)    ☐    a Benefit Plan Investor that is:

    (1)    ☐    an employee benefit plan or trust that is subject to the fiduciary responsibility provisions of ERISA – this includes U.S. pension plans and U.S. profit-sharing and 401(k) plans, "Multiemployer Plans" and "Taft-Hartley Plans" but does not include U.S. governmental plans, church plans that have not made the election under Section 410(d) of the Code and non-U.S. employee pension and welfare benefit plans;

    (2)    ☐    an IRA, Keogh Plan and/or other plan subject to Section 4975 of the Code, but not subject to the fiduciary responsibility provisions of ERISA; or

    (3)    ☐    a Plan Assets Entity (as defined above) (including an entity in which 25% or more of the total value of any class of equity interests in the entity is held by other Benefit Plan Investors).

If the Investor is a Plan Assets Entity, the percentage of such entity's assets that constitutes "plan assets" within the meaning of Section 3(42) of ERISA is not more than the amount indicated below (please check an applicable box).  To ease the administrative burden related to monitoring and updating this percentage, the Fund recommends that the Investor build in some cushion so that the Investor will not have to notify the Manager if the percentage changes slightly.

☐ 10% **    ☐ 20% **    ☐ 30%    ☐ 40%    ☐ 50%
☐ 60%    ☐ 70%    ☐ 80%    ☐ 90%    ☑ 100%

A-1

Exhibit 54 Page 1543
FOIA CONFIDENTIAL TREATMENT REQUESTED BY T2 CAPITAL MANAGEMENT    T2CAPITAL_SEC_00001438

\*\*Applicable to entities with multiple classes, one of which exceeds the 25% threshold for Benefit Plan Investors.

 The Investor agrees to promptly notify the Manager in writing if there is any change to the foregoing representations, including in the percentages as set forth above and at such time or times as the Manager may request.

A-2

T2 Strategic Real Estate Income Fund, LLC
Class C Subscription Documents
CHICAGO/#2566689.1

Exhibit 54 Page 1544

FOIA CONFIDENTIAL TREATMENT REQUESTED BY T2 CAPITAL MANAGEMENT  T2CAPITAL_SEC_00001439

<b><u>EXHIBIT B</u></b>

<b>ELIGIBILITY QUESTIONNAIRE FOR INDIVIDUALS</b>

Name of Investor:  <u>David C. Chow and Vicky W. Chow JTWROS</u>

<b><u>INDIVIDUALS (including IRA and Revocable Trust Investors)</u></b>:  *Please complete Parts I and II of this Questionnaire*

**I.    Verification of Status as "Accredited Investor" under Regulation D**

*The Investor represents and warrants that he/she is an "accredited investor" within the meaning of Regulation D under the Securities Act and has checked the applicable statement or statements below pursuant to which the Investor so qualifies.  (Please check all that apply.)*

1.   ☑   The Investor is a natural person whose net worth, taken together with the net worth of such person's spouse, exceeds $1,000,000.  For purposes of this Questionnaire, "net worth" means the excess of total assets at fair market value (excluding the value of the Investor's primary residence) over total liabilities.  Total liabilities may exclude the amount of indebtedness secured by the Investor's primary residence up to its fair market value, but must include any indebtedness in excess of the primary residence's fair market value.[1]

2.   ☐   The Investor is a natural person who had an individual income in excess of $200,000 in each of the two previous years, or joint income with such person's spouse in excess of $300,000 in each of those years, and who reasonably expects to reach the same income level in the current year.

3.   ☐   The Investor is a revocable trust and the settler(s) or grantor(s) of the trust meet the criteria set forth in either 1 or 2 above.

<u>Note</u>:  To qualify as an "accredited investor," at least one of the first three statements must be checked.

<u>Disclosure of Foreign Citizenship.</u>

1.   ☑   The Investor is a citizen of a country other than the United States.

2.        If you checked the box next to the preceding question, specify the country of which the Investor is a citizen._____

---

[1] Any increase in the amount of debt secured by the primary residence in the 60 days prior to the date of the Subscription Agreement associated with this Questionnaire that was incurred other than in connection with the purchase of your primary residence should be included as a liability, even if the value of the primary residence exceeds the amount of debt secured by such primary residence.

B-1 (Individuals)

T2 Strategic Real Estate Income Fund, LP
Class C Subscription Documents
CHICAGO/#2566689.1

Exhibit 54 Page 1545

FOIA CONFIDENTIAL TREATMENT REQUESTED BY T2 CAPITAL MANAGEMENT        T2CAPITAL_SEC_00001440

## II.   Verification of Status as a "Qualified Client"

*The Investor represents and warrants that he/she is a "qualified client" as defined in Rule 203-5 under the Advisers Act and has checked the applicable statement or statements below pursuant to which the Investor so qualifies.  (Please check all that apply.)*

1.  ☐   The Investor is a natural person who immediately after investing in the Fund has or will have at least $1,000,000 of assets under the management of the Manager.

2.  ☑   The Investor is a natural person who immediately after investing in the Fund has or will have a net worth (together with assets held jointly with a spouse) of more than $2,000,000 (excluding the value of the Investor's primary residence).  (See I.1. above for a definition of "net worth.")

3.  ☐   The Investor is a "qualified purchaser" under the Investment Company Act of 1940.  The Fund may request information on the basis for which the representation is made.

Question 4 to be answered ONLY by "insiders" of the Fund or the Manager.

4.  ☐   With respect to Fund or the Manager, the Investor is:

(a)   a director, trustee, Manager, managing member or advisory board member;

(b)   an executive officer; OR

(c)   an employee who regularly participates in the investment activities of the Manager and/or its affiliates (or affiliated funds) and has performed such role  for at least 12 months.

B-2 (Individuals)

T2 Strategic Real Estate Income Fund, LP
Class C Subscription Documents
CHICAGO/#2566689.1

Exhibit 54 Page 1546

FOIA CONFIDENTIAL TREATMENT REQUESTED BY T2 CAPITAL MANAGEMENT     T2CAPITAL_SEC_00001441

## ELIGIBILITY QUESTIONNAIRE SIGNATURE PAGE FOR INDIVIDUALS

The Investor understands that the foregoing information will be relied upon by the Fund, the Master Fund, the Manager and the Investment Manager for the purpose of determining the eligibility of the Investor to purchase and own Units in the Fund.  The Investor agrees to notify the Manager immediately if any representation or warranty contained in this Subscription Agreement, including this Eligibility Questionnaire, becomes untrue at any time.  The Investor agrees to provide, if requested, any additional information that may reasonably be required to substantiate the Investor's status as an accredited investor or to otherwise determine the eligibility of the Investor to purchase Units in the Fund. To the fullest extent permitted by law, the Investor agrees to indemnify and hold harmless the Fund, the Master Fund, the Manager, the Investment Manager and each Member thereof from and against any loss, damage or liability due to or arising out of a breach of any representation, warranty or agreement of the Investor contained herein.

Signature: _David C. Chow_

Print Name: _David C. Chow_

Joint signature, if applicable: _Vicky W. Chow_

Print Name: _Vicky W. Chow_

B-3 (Individuals)

T2 Strategic Real Estate Income Fund, LP
Class C Subscription Documents
CHICAGO/#2566689.1

Exhibit 54 Page 1547

FOIA CONFIDENTIAL TREATMENT REQUESTED BY T2 CAPITAL MANAGEMENT          T2CAPITAL_SEC_00001442

*n/a*

## ELIGIBILITY QUESTIONNAIRE FOR ENTITIES

Name of Investor: _____

***ENTITIES (non-individuals, other than IRA and Revocable Living Trust Investors): Please complete Parts I and II of this Questionnaire***

**I.**   **Verification of Status as "Accredited Investor" under Regulation D**

*The Investor represents and warrants that it is an "accredited investor" within the meaning of Regulation D under the Securities Act and has checked the applicable statement or statements below, pursuant to which the Investor so qualifies. (Please check all that apply.)*

1. ☐   The Investor has total assets in excess of $5 million AND was not formed for the specific purpose of acquiring the Units, AND is any of the following:
   - ☐ a corporation;·
   - ☐ a partnership;·
   - ☐ a limited liability company;
   - ☐ a Massachusetts or similar business trust; or
   - ☐ an organization described in Section 501(c)(3) of the Code.

2. ☐   The Investor is any of the following:
   - ☐ a bank, or any savings and loan association or other institution acting in its individual or fiduciary capacity;
   - ☐ a broker or dealer registered pursuant to Section 15 of the Securities Exchange Act of 1934;
   - ☐ an insurance company;
   - ☐ an investment company registered under the Investment Company Act;·
   - ☐ a business development company as defined under the Investment Company Act;
   - ☐ a Small Business Investment Company licensed by the U.S. Small Business Administration;
   - ☐ an employee benefit plan (within the meaning of ERISA) whose investment decision is being made by a plan fiduciary, which is either a bank, savings and loan association, insurance company or registered investment adviser, or an employee benefit plan whose total assets are in excess of $5 million or a self-directed employee benefit plan whose investment decisions are made solely by persons that are accredited investors; or
   - ☐ a plan established and maintained by a state, its political subdivisions, or any agency or instrumentality of a state or its political subdivisions, for the benefit of its employees, if such plan has total assets in excess of $5 million.

3. ☐   The Investor is a trust, not formed for the specific purpose of acquiring the Units, with total assets in excess of $5 million and whose purchase is directed by a sophisticated person (i.e., a person who has such knowledge and experience in financial and business matters that he or she is capable of evaluating the merits and risks of investing in the Units).

4. ☐   The Investor is an entity as to which all the equity owners (for example, in a limited partnership, all of the limited partners) are accredited investors. *If only statement (4) has been checked, please have each equity owner fill out the Eligibility Questionnaire for Individuals or this Eligibility Questionnaire for Entities, as applicable. Please feel free to make copies of these pages for each equity owner.*

B-1 (Entities)

T2 Strategic Real Estate Income Fund, LP
Class C Subscription Documents
CHICAGO/#2566689.1

FOIA CONFIDENTIAL TREATMENT REQUESTED BY T2 CAPITAL MANAGEMENT

Exhibit 54 Page 1548

T2CAPITAL_SEC_00001443

**II.     Verification of Status as a "Qualified Client"**

*The Investor represents and warrants that he/she is a "qualified client" as defined in Rule 203-5 under the Advisers Act and has checked the applicable statement or statements below pursuant to which the Investor so qualifies.  (Please check all that apply.)*

1.     ☐     The Investor is an entity that immediately after investing in the Fund has or will have at least $1,000,000 of assets under the management of the Manager.

2.     ☐     The Investor is an entity that immediately after investing in the Fund has or will have a net worth of more than $2,000,000.

3.     ☐     The Investor is a "qualified purchaser" under the Investment Company Act of 1940.  The Fund may request information on the basis for which the representation is made.

**III.     Supplemental Data**

1.     Legal form of entity (corporation, partnership, trust, etc.):_____ _____

       Jurisdiction of organization:_____ _____

2.     Is the Investor a registered investment company or a private investment fund which is not registered under the Investment Company Act in reliance on Section 3(c)(1) or 3(c)(7) thereof?  Note:  If the answer is "Yes," the Fund may be required to limit your investment such that your investment in the Fund constitutes less than 10% of the Fund.

                       _____ Yes        _____ No

3.     If the Investor is a Section 3(c)(1) or Section 3(c)(7) fund and was formed prior to June 19, 1996, has it obtained all requisite consents from its equity holders to be treated as a Qualified Purchaser?

                       _____ Yes        _____ No

4.     The fiscal year-end of the Investor is _____
                                            (Month/Day)

5.     The taxable year-end of the Investor, for purposes of reporting any income tax or filing tax information returns, is _____
                                            (Month/Day)

B-2 (Entities)

Exhibit 54 Page 1549

FOIA CONFIDENTIAL TREATMENT REQUESTED BY T2 CAPITAL MANAGEMENT          T2CAPITAL_SEC_00001444

## ELIGIBILITY QUESTIONNAIRE SIGNATURE PAGE FOR ENTITIES

The Investor understands that the foregoing information will be relied upon by the Fund, the Master Fund, the Manager and the Investment Manager for the purpose of determining the eligibility of the Investor to purchase and own Units in the Fund.  The Investor agrees to notify the Manager immediately if any representation or warranty contained in this Subscription Agreement, including this Eligibility Questionnaire, becomes untrue at any time.  The Investor agrees to provide, if requested, any additional information that may reasonably be required to substantiate the Investor's status as an accredited investor or to otherwise determine the eligibility of the Investor to purchase Units in the Fund. To the fullest extent permitted by law, the Investor agrees to indemnify and hold harmless the Fund, the Master Fund, the Manager, the Investment Manager and each Member thereof from and against any loss, damage or liability due to or arising out of a breach of any representation, warranty or agreement of the Investor contained herein.

Name of Entity: _____

By (signature): _____

Print Name: _____

Print Title: _____

Additional signature, if applicable: _____

Print Name: _____

Print Title: _____

B-3 (Entities)

T2 Strategic Real Estate Income Fund, LP
Class C Subscription Documents
CHICAGO/#2566689.1

FOIA CONFIDENTIAL TREATMENT REQUESTED BY T2 CAPITAL MANAGEMENT

Exhibit 54 Page 1550

T2CAPITAL_SEC_00001445

Exhibit C

## T2 STRATEGIC REAL ESTATE FUND, LLC

### REDEMPTION REQUEST FORM

_____,
*(Please Date)*

T2 Strategic Real Estate Fund, LLC
c/o Woodfield Fund Administration, LLC
3601 Algonquin Road, Suite 900
Rolling Meadows, IL 60008
Attn: Frank Yavaraski

The undersigned hereby requests redemption of all or the following portion of its limited liability company interests ("Units") as may be redeemed for $_____⁹ from the T2 Strategic Real Estate Fund, LLC (the "Fund").

(*Note:* Redemption requests must be received by the Manager at least sixty (60) days prior to calendar quarter end.)

The undersigned hereby represents and warrants that it is the true and lawful owner of the Units to which this request relates with full power and authority to request a redemption with respect to such Units. Such Units are not subject to any pledge or otherwise encumbered in any fashion. This redemption will be governed by the terms of the Fund's Confidential Private Placement Memorandum, as updated from time to time and as supplemented by the Class C Units Supplement (the "Memorandum"), the Fund's Limited Liability Company Agreement, as amended from time to time (the "LLC Agreement") and the Subscription Agreement executed by the Investor. Subject to the terms of the Memorandum and the LLC Agreement, the Fund will generally honor redemption requests provided that the Fund has sufficient liquid assets to satisfy the redemption request and the Lock-Up with respect to the Units has expired. For the avoidance of doubt, Members will be subject to a separate Lock-Up for Units issued in connection with additional Capital Contributions to the Fund. The Manager will consider (but is not required to approve) redemptions at other times. No interest is payable on any redemption proceeds.

*The undersigned acknowledges that bank wiring fees will be deducted from redemption proceeds.*

---

⁹ Units will be redeemed at the NAV per Unit of the relevant class, as determined on the last business day of the immediately preceding month. "NAV per Unit" means, as of a particular date, the net asset value of the Fund attributable to a class as of such date, divided by the number of Units in the class then outstanding.

Exhibit C
Page 1

T2 Strategic Real Estate Income Fund, LP
Class C Subscription Documents
CHICAGO/#2566689.1

FOIA CONFIDENTIAL TREATMENT REQUESTED BY T2 CAPITAL MANAGEMENT

Exhibit 54 Page 1551

T2CAPITAL_SEC_00001446

Please forward redemption proceeds by ACH transfer to the undersigned's account at the bank below.

_____
Name of Bank

_____
ABA/BIC Number

_____
Account Name

_____
Account Number

MEMBER'S SIGNATURE(S) MUST BE IDENTICAL TO NAME IN WHICH UNITS ARE REGISTERED

_____
Name

_____
Partner, Trustee or Authorized Officer Signature(s)

Exhibit C
Page 2

T2 Strategic Real Estate Income Fund, LP
Class C Subscription Documents
CHICAGO/#2566689.1

Exhibit 54 Page 1552

FOIA CONFIDENTIAL TREATMENT REQUESTED BY T2 CAPITAL MANAGEMENT          T2CAPITAL_SEC_00001447

Exhibit D

## T2 STRATEGIC REAL ESTATE FUND, LLC

### ADDITIONAL SUBSCRIPTION FORM

_____, _____
_(Please Date)_

T2 Strategic Real Estate Fund, LLC
c/o Woodfield Fund Administration, LLC
3601 Algonquin Road, Suite 900
Rolling Meadows, IL 60008
Attn:  Frank Yavaraski

The undersigned (the "Investor") hereby subscribes for and agrees to purchase as many additional limited liability company interests ("Units") as may be purchased for an additional commitment of $_____[10] in T2 Strategic Real Estate Fund, LLC (the "Fund").

Such additional investment is subject to the relevant terms and conditions set forth in the Fund's Confidential Private Placement Memorandum, as updated from time to time and as supplemented by the Class C Units Supplement (the "Memorandum"), the Fund's Limited Liability Company Agreement, as amended from time to time (the "LLC Agreement"), and the Subscription Agreement executed by the Investor. The Investor acknowledges that the Units are subject to the Management Fee and Performance Allocation set forth in the Memorandum.  Any capitalized term undefined on this form shall have the meaning set forth in the Memorandum.

Representations, Warranties and Covenants.  All representations, warranties and covenants which the Investor has made in the Subscription Agreement and all information which the Investor has provided to the Fund, the Manager or the Investment Manager concerning itself, its status, financial condition and knowledge and experience of financial, tax and business matters, or, in the case of an investor that is an entity, the knowledge and experience of the person making the investment decision on behalf of such entity, are true, correct and complete as of the date hereof.  The Investor agrees to notify the Fund immediately should the Investor become aware that any of the foregoing representations, warranties, covenants and other information provided to the Fund, the Manager or the Investment Manager is no longer true, correct or complete.

### Payment Instructions:

No interest will be paid on subscription amounts received prior to the effective date of investment.  To the extent the Manager has issued a capital call in connection with this additional subscription, payment may be made by ACH transfer to:

| | |
|---|---|
| Bank: | [_____] |
| ABA#: | [_____] |
| F/A/O: | [_____] |
| A/C#: | [_____] |
| F/F/C Account Name: | |
| Account Number: | [_____] |
| Address: [_____] | |

---

[10] Units will be offered at the NAV per Unit of the relevant class, as determined on the last business day of the immediately preceding month.  "NAV per Unit" means, as of a particular date, the net asset value of the Fund attributable to a class as of such date, divided by the number of Units in the class then outstanding.

Exhibit D
Page 1

T2 Strategic Real Estate Income Fund, LP
Class C Subscription Documents
CHICAGO/#2566689.1

Exhibit 54 Page 1553

FOIA CONFIDENTIAL TREATMENT REQUESTED BY T2 CAPITAL MANAGEMENT          T2CAPITAL_SEC_00001448

Unless otherwise agreed to by the Manager, subscriptions are payable in full, in readily available funds, at least one (1) business day prior to the closing date specified by the Manager. The acceptance or rejection of subscriptions is within the sole discretion of the Manager. The Subscriber may be required to provide additional information prior to an acceptance determination by the Manager.

### Additional Information:

Please contact Jeff Baxter, Vice President -- Investor Relations at (630) 590-9511.


MEMBER'S SIGNATURE(S) MUST BE IDENTICAL TO NAME IN WHICH EXISTING UNITS ARE REGISTERED

_____
Name

By:_____


Accepted:

By:_____
     T2 SREI Fund GP, the Manager


Exhibit D
Page 2

T2 Strategic Real Estate Income Fund, LP
Class C Subscription Documents
CHICAGO/#2566689.1

FOIA CONFIDENTIAL TREATMENT REQUESTED BY T2 CAPITAL MANAGEMENT

Exhibit 54 Page 1554

T2CAPITAL_SEC_00001449

Exhibit E

## ELECTRONIC DELIVERY OF SCHEDULES K-1
## CONSENT AND DISCLOSURE STATEMENT

Pursuant to IRS Revenue Procedure 2012-17, intended recipients of Schedules K-1 who wish to receive their Schedules K-1 solely through electronic transmission are required to provide affirmative consent.

In order to receive your Schedules K-1 from T2 Strategic Real Estate Fund, LLC (the "Fund") through electronic transmission you must affirmatively consent in writing by properly reviewing, completing, executing and delivering this Consent and Disclosure Statement to Woodfield Fund Administration, LLC (the "Administrator") at the address noted below.

**Paper Statement.** If you do not consent to receive your Schedules K-1 electronically, they will be furnished to you on paper instead.

**Scope and Duration of Consent & Notice of Termination.** If you do consent to the electronic delivery of your Schedules K-1, all Schedules K-1 will only be furnished by such method for the Fund until the earliest of: (A) your withdrawal of consent (in the manner described below); (B) the full redemption of your Units in the Fund; (C) the dissolution and winding up of the Fund; or (D) any other date effective as of which we notify you that we will no longer provide such Schedules K-1 electronically (which effective date is generally expected to be no earlier than the date we send out such notice).

**Post-Consent Request for a Paper Statement.** If you consent to electronic delivery of Schedules K-1 and you wish to obtain a paper copy, please contact the Administrator at the address noted below. A request for a paper copy (or copies) of Schedules K-1 will not be considered to be a withdrawal of consent to receive Schedules K-1 electronically.

**Withdrawal of Consent.** You may withdraw your consent to receive Schedules K-1 electronically by writing (electronically or on paper) to the Administrator at the address noted below. The withdrawal of your consent will take effect on the date your correspondence is received by us. We will confirm your withdrawal of consent and the date on which it takes effect in writing (either electronically or on paper). Please note that a withdrawal of consent will not apply to a statement that is furnished electronically in the manner described above before the effective date of such withdrawal of consent.

**Notice of Termination.** We will cease to provide Schedules K-1 electronically to you (and, except as required by law, cease to provide Schedules K-1 in any other form) upon your withdrawal from the Fund.

**Updating Information.** In the event that your contact information changes, please furnish your updated information in writing (either electronically or on paper) to the Administrator at the address noted below. We will inform you of any change to this contact information.

**Hardware & Software Requirements.** After you consent to receive your Schedules K-1 electronically, you will need a computer, access to email, a printer and available memory on your computer hard drive in order to access, print and retain your electronic Schedule K-1. Your Schedule K-1 will be attached to that email.

**Please note that, notwithstanding electronic delivery, a Schedule K-1 may be required to be printed and attached for a Federal, State or local income tax return.**

Exhibit E
Page 1

FOIA CONFIDENTIAL TREATMENT REQUESTED BY T2 CAPITAL MANAGEMENT

Exhibit 54 Page 1555

T2CAPITAL_SEC_00001450

Please fill in the name of the investor below and check the following and return a copy of this consent by email to T2admin@woodfieldllc.com:

Investor Name: David C. Chow and Vicky W. Chow JTWROS

☑    consents to electronic delivery of Schedules K-1 on such terms and conditions as described in this Consent and Disclosure Statement.

If you have any questions or concerns, please do not hesitate to contact the Fund's Administrator at the following address, phone and email:

Woodfield Fund Administration, LLC
1 N. Wacker Drive, Suite 2150
Chicago, IL 60606
Attn: Investor Services Department
T2admin@woodfieldllc.com
Facsimile: (847) 255-3566
Phone: (847) 255-3500

Exhibit E
Page 2

T2 Strategic Real Estate Income Fund, LP
Class C Subscription Documents
CHICAGO/#2566689.1

Exhibit 54 Page 1556

FOIA CONFIDENTIAL TREATMENT REQUESTED BY T2 CAPITAL MANAGEMENT          T2CAPITAL_SEC_00001451

ANNEX A



## PRIVACY STATEMENT

The following privacy statement is issued by T2 Capital Management, LLC ("T2 Capital") and each of the funds (collectively, the "Funds") managed or advised by T2 Capital or its affiliates.

T2 Capital considers privacy a fundamental right of the Fund's limited partners and takes seriously the obligation to safeguard limited partner information. Accordingly, we do not share any non-public personal information of any current or former limited partner with any unaffiliated third parties, except as permitted by law or as authorized by our limited partners.

In the course of providing investment products and services to you, we collect non-public personal information about you from sources such as subscription agreements and related documents as well as from transactions related to your account. In the normal course of serving our limited partners, information we collect may be shared with companies that perform various services such as custodians, accountants, attorneys, broker-dealers and financial institutions for the Fund. Specifically, we may disclose to these service providers all non-public information we collect, including:

- Information we receive on subscription agreements or other forms, such as a limited partner's name, address, social security or tax identification number, amount of investment(s), and bank account information; and

- Information about transactions with us, such as a limited partner's capital account balance and other account data.

Finally, as required or permitted by the Funds' respective governing agreements, we may distribute to the investors in a Fund certain personal financial information of the investors, such as commitment amounts, which may be recorded in schedules attached to such Fund's governing agreements.

Any service provider or organization receiving your personal information will be authorized to use such information only to perform the services required and as permitted by applicable law. Access to limited partners' non-public personal information is restricted to those employees and managers of T2 Capital who require access to provide services to the Funds and their limited partners. A limited partner's right to privacy extends to all forms of contact with T2 Capital, including telephone, written correspondence and electronic media, such as the Internet.

For questions concerning this policy, please contact Jeff Baxter at (630) 590-9511 or via email at jbaxter@t2investments.com.

Annex A-1

FOIA CONFIDENTIAL TREATMENT REQUESTED BY T2 CAPITAL MANAGEMENT

Exhibit 54 Page 1557

T2CAPITAL_SEC_00001452



June 18, 2014

**Re:**   T2 Strategic Real Estate Income Fund, LLC
Wiring Instructions

Dear T2 SREI Fund Investor,

Thank you for your investment in the T2 Strategic Real Estate Income Fund.  Below are the wiring instructions related to your investment:

| Wiring instructions |
|---|
| MB Financial Bank, N. A. |
| 6111 N. River Road |
| Rosemont, IL  60018 |
| Routing #:  071 001 737 |
| Account #:  184 000 5282 |
| Account name: T2 Strategic Real Estate Income Fund, LLC |
| Reference: (Investor Name) |
| Bank Contact: Cecilia Romanowski 847-653-1024 |

Thank you for your partnership!  Please feel free to call me with any questions at 630-590-9511 ext. 103.

Sincerely,

Jeff Baxter
Vice President, Investor Relations

111 W. Wesley Street, Suite #5
Wheaton, IL  60187                            www.t2investments.com                            P  630.590.9511
                                                                                                                         F  630.590.9533

Exhibit 54 Page 1558

FOIA CONFIDENTIAL TREATMENT REQUESTED BY T2 CAPITAL MANAGEMENT          T2CAPITAL_SEC_00001453



Chow JTWROS
Re: T2 Strategic Real Estate
Income Fund, LP.

Exhibit 54 Page 1559

FOIA CONFIDENTIAL TREATMENT REQUESTED BY T2 CAPITAL MANAGEMENT



Chow JTWROS)
Re: T2 Strategic Real Estate
Income Fund, L.P.

Exhibit 54 Page 1560

FOIA CONFIDENTIAL TREATMENT REQUESTED BY T2 CAPITAL MANAGEMENT     T2CAPITAL_SEC_00001455

| Form **W-9** (Rev. August 2013)<br>Department of the Treasury<br>Internal Revenue Service | **Request for Taxpayer<br>Identification Number and Certification** | **Give Form to the<br>requester. Do not<br>send to the IRS.** |
|---|---|---|

Name (as shown on your income tax return)

**David C. Chow**

Business name/disregarded entity name, if different from above

Check appropriate box for federal tax classification:

☑ Individual/sole proprietor  ☐ C Corporation  ☐ S Corporation  ☐ Partnership  ☐ Trust/estate

☐ Limited liability company. Enter the tax classification (C=C corporation, S=S corporation, P=partnership) ▶ _____

☐ Other (see instructions) ▶

**Exemptions (see instructions):**

Exempt payee code (if any) _____

Exemption from FATCA reporting code (if any) _____

Address (number, street, and apt. or suite no.)

City, state, and ZIP code

**Woodland Hills, CA 91364**

Requester's name and address (optional)

List account number(s) here (optional)

**4341: T2 Strategic Real Estate Fund, LLC**

*Print or type — See Specific Instructions on page 2.*

## Part I   Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. The TIN provided must match the name given on the "Name" line to avoid backup withholding. For individuals, this is your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the Part I instructions on page 3. For other entities, it is your employer identification number (EIN). If you do not have a number, see *How to get a TIN* on page 3.

**Note.** If the account is in more than one name, see the chart on page 4 for guidelines on whose number to enter.

**Social security number**

■ ■ ■ – 1 5 5 6

**Employer identification number**

## Part II   Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and

2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and

3. I am a U.S. citizen or other U.S. person (defined below), and

4. The FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN. See the instructions on page 3.

**Sign<br>Here**   Signature of<br>U.S. person ▶ *David C. Chow*   Date ▶ *June 24, 2014*

## General Instructions

Section references are to the Internal Revenue Code unless otherwise noted.

**Future developments.** The IRS has created a page on IRS.gov for information about Form W-9, at *www.irs.gov/w9*. Information about any future developments affecting Form W-9 (such as legislation enacted after we release it) will be posted on that page.

### Purpose of Form

A person who is required to file an information return with the IRS must obtain your correct taxpayer identification number (TIN) to report, for example, income paid to you, payments made to you in settlement of payment card and third party network transactions, real estate transactions, mortgage interest you paid, acquisition or abandonment of secured property, cancellation of debt, or contributions you made to an IRA.

Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN to the person requesting it (the requester) and, when applicable, to:

1. Certify that the TIN you are giving is correct (or you are waiting for a number to be issued),

2. Certify that you are not subject to backup withholding, or

3. Claim exemption from backup withholding if you are a U.S. exempt payee. If applicable, you are also certifying that as a U.S. person, your allocable share of any partnership income from a U.S. trade or business is not subject to the

withholding tax on foreign partners' share of effectively connected income, and

4. Certify that FATCA code(s) entered on this form (if any) indicating that you are exempt from the FATCA reporting, is correct.

**Note.** If you are a U.S. person and a requester gives you a form other than Form W-9 to request your TIN, you must use the requester's form if it is substantially similar to this Form W-9.

**Definition of a U.S. person.** For federal tax purposes, you are considered a U.S. person if you are:

• An individual who is a U.S. citizen or U.S. resident alien,

• A partnership, corporation, company, or association created or organized in the United States or under the laws of the United States,

• An estate (other than a foreign estate), or

• A domestic trust (as defined in Regulations section 301.7701-7).

**Special rules for partnerships.** Partnerships that conduct a trade or business in the United States are generally required to pay a withholding tax under section 1446 on any foreign partners' share of effectively connected taxable income from such business. Further, in certain cases where a Form W-9 has not been received, the rules under section 1446 require a partnership to presume that a partner is a foreign person, and pay the section 1446 withholding tax. Therefore, if you are a U.S. person that is a partner in a partnership conducting a trade or business in the United States, provide Form W-9 to the partnership to establish your U.S. status and avoid section 1446 withholding on your share of partnership income.

Cat. No. 10231X                                                                 Form **W-9** (Rev. 8-2013)

Exhibit 54 Page 1561

FOIA CONFIDENTIAL TREATMENT REQUESTED BY T2 CAPITAL MANAGEMENT                    T2CAPITAL_SEC_00001456

Form W-9 (Rev. 8-2013)

In the cases below, the following person must give Form W-9 to the partnership for purposes of establishing its U.S. status and avoiding withholding on its allocable share of net income from the partnership conducting a trade or business in the United States:

• In the case of a disregarded entity with a U.S. owner, the U.S. owner of the disregarded entity and not the entity;

• In the case of a grantor trust with a U.S. grantor or other U.S. owner, generally, the U.S. grantor or other U.S. owner of the grantor trust and not the trust, and

• In the case of a U.S. trust (other than a grantor trust), the U.S. trust (other than a grantor trust) and not the beneficiaries of the trust.

**Foreign person.** If you are a foreign person or the U.S. branch of a foreign bank that has elected to be treated as a U.S. person, do not use Form W-9. Instead, use the appropriate Form W-8 or Form 8233 (see Publication 515, Withholding of Tax on Nonresident Aliens and Foreign Entities).

**Nonresident alien who becomes a resident alien.** Generally, only a nonresident alien individual may use the terms of a tax treaty to reduce or eliminate U.S. tax on certain types of income. However, most tax treaties contain a provision known as a "saving clause." Exceptions specified in the saving clause may permit an exemption from tax to continue for certain types of income even after the payee has otherwise become a U.S. resident alien for tax purposes.

If you are a U.S. resident alien who is relying on an exception contained in the saving clause of a tax treaty to claim an exemption from U.S. tax on certain types of income, you must attach a statement to Form W-9 that specifies the following five items:

1. The treaty country. Generally, this must be the same treaty under which you claimed exemption from tax as a nonresident alien.

2. The treaty article addressing the income.

3. The article number (or location) in the tax treaty that contains the saving clause and its exceptions.

4. The type and amount of income that qualifies for the exemption from tax.

5. Sufficient facts to justify the exemption from tax under the terms of the treaty article.

*Example.* Article 20 of the U.S.-China income tax treaty allows an exemption from tax for scholarship income received by a Chinese student temporarily present in the United States. Under U.S. law, this student will become a resident alien for tax purposes if his or her stay in the United States exceeds 5 calendar years. However, paragraph 2 of the first Protocol to the U.S.-China treaty (dated April 30, 1984) allows the provisions of Article 20 to continue to apply even after the Chinese student becomes a resident alien of the United States. A Chinese student who qualifies for the exception (under paragraph 2 of the first protocol) and is relying on this exception to claim an exemption from tax on his or her scholarship or fellowship income would attach to Form W-9 a statement that includes the information described above to support that exemption.

If you are a nonresident alien or a foreign entity, give the requester the appropriate completed Form W-8 or Form 8233.

**What is backup withholding?** Persons making certain payments to you must under certain conditions withhold and pay to the IRS a percentage of such payments. This is called "backup withholding." Payments that may be subject to backup withholding include interest, tax-exempt interest, dividends, broker and barter exchange transactions, rents, royalties, nonemployee pay, payments made in settlement of payment card and third party network transactions, and certain payments from fishing boat operators. Real estate transactions are not subject to backup withholding.

You will not be subject to backup withholding on payments you receive if you give the requester your correct TIN, make the proper certifications, and report all your taxable interest and dividends on your tax return.

**Payments you receive will be subject to backup withholding if:**

1. You do not furnish your TIN to the requester,

2. You do not certify your TIN when required (see the Part II instructions on page 3 for details),

3. The IRS tells the requester that you furnished an incorrect TIN,

4. The IRS tells you that you are subject to backup withholding because you did not report all your interest and dividends on your tax return (for reportable interest and dividends only), or

5. You do not certify to the requester that you are not subject to backup withholding under 4 above (for reportable interest and dividend accounts opened after 1983 only).

Certain payees and payments are exempt from backup withholding. See *Exempt payee code* on page 3 and the separate Instructions for the Requester of Form W-9 for more information.

Also see *Special rules for partnerships* on page 1.

**What is FATCA reporting?** The Foreign Account Tax Compliance Act (FATCA) requires a participating foreign financial institution to report all United States account holders that are specified United States persons. Certain payees are exempt from FATCA reporting. See *Exemption from FATCA reporting code* on page 3 and the Instructions for the Requester of Form W-9 for more information.

**Updating Your Information**

You must provide updated information to any person to whom you claimed to be an exempt payee if you are no longer an exempt payee and anticipate receiving reportable payments in the future from this person. For example, you may need to provide updated information if you are a C corporation that elects to be an S corporation, or if you no longer are tax exempt. In addition, you must furnish a new Form W-9 if the name or TIN changes for the account, for example, if the grantor of a grantor trust dies.

**Penalties**

**Failure to furnish TIN.** If you fail to furnish your correct TIN to a requester, you are subject to a penalty of $50 for each such failure unless your failure is due to reasonable cause and not to willful neglect.

**Civil penalty for false information with respect to withholding.** If you make a false statement with no reasonable basis that results in no backup withholding, you are subject to a $500 penalty.

**Criminal penalty for falsifying information.** Willfully falsifying certifications or affirmations may subject you to criminal penalties including fines and/or imprisonment.

**Misuse of TINs.** If the requester discloses or uses TINs in violation of federal law, the requester may be subject to civil and criminal penalties.

**Specific Instructions**

**Name**

If you are an individual, you must generally enter the name shown on your income tax return. However, if you have changed your last name, for instance, due to marriage without informing the Social Security Administration of the name change, enter your first name, the last name shown on your social security card, and your new last name.

If the account is in joint names, list first, and then circle, the name of the person or entity whose number you entered in Part I of the form.

**Sole proprietor.** Enter your individual name as shown on your income tax return on the "Name" line. You may enter your business, trade, or "doing business as (DBA)" name on the "Business name/disregarded entity name" line.

**Partnership, C Corporation, or S Corporation.** Enter the entity's name on the "Name" line and any business, trade, or "doing business as (DBA) name" on the "Business name/disregarded entity name" line.

**Disregarded entity.** For U.S. federal tax purposes, an entity that is disregarded as an entity separate from its owner is treated as a "disregarded entity." See Regulation section 301.7701-2(c)(2)(iii). Enter the owner's name on the "Name" line. The name of the entity entered on the "Name" line should never be a disregarded entity. The name on the "Name" line must be the name shown on the income tax return on which the income should be reported. For example, if a foreign LLC that is treated as a disregarded entity for U.S. federal tax purposes has a single owner that is a U.S. person, the U.S. owner's name is required to be provided on the "Name" line. If the direct owner of the entity is also a disregarded entity, enter the first owner that is not disregarded for federal tax purposes. Enter the disregarded entity's name on the "Business name/disregarded entity name" line. If the owner of the disregarded entity is a foreign person, the owner must complete an appropriate Form W-8 instead of a Form W-9. This is the case even if the foreign person has a U.S. TIN.

**Note.** Check the appropriate box for the U.S. federal tax classification of the person whose name is entered on the "Name" line (Individual/sole proprietor, Partnership, C Corporation, S Corporation, Trust/estate).

**Limited Liability Company (LLC).** If the person identified on the "Name" line is an LLC, check the "Limited liability company" box only and enter the appropriate code for the U.S. federal tax classification in the space provided. If you are an LLC that is treated as a partnership for U.S. federal tax purposes, enter "P" for partnership. If you are an LLC that has filed a Form 8832 or a Form 2553 to be taxed as a corporation, enter "C" for C corporation or "S" for S corporation, as appropriate. If you are an LLC that is disregarded as an entity separate from its owner under Regulation section 301.7701-3 (except for employment and excise tax), do not check the LLC box unless the owner of the LLC (required to be identified on the "Name" line) is another LLC that is not disregarded for U.S. federal tax purposes. If the LLC is disregarded as an entity separate from its owner, enter the appropriate tax classification of the owner identified on the "Name" line.

**Other entities.** Enter your business name as shown on required U.S. federal tax documents on the "Name" line. This name should match the name shown on the charter or other legal document creating the entity. You may enter any business, trade, or DBA name on the "Business name/disregarded entity name" line.

**Exemptions**

If you are exempt from backup withholding and/or FATCA reporting, enter in the *Exemptions* box, any code(s) that may apply to you. See *Exempt payee code* and *Exemption from FATCA reporting code* on page 3.

Exhibit 54 Page 1562
FOIA CONFIDENTIAL TREATMENT REQUESTED BY T2 CAPITAL MANAGEMENT

**Exempt payee code.** Generally, individuals (including sole proprietors) are not exempt from backup withholding. Corporations are exempt from backup withholding for certain payments, such as interest and dividends. Corporations are not exempt from backup withholding for payments made in settlement of payment card or third party network transactions.

**Note.** If you are exempt from backup withholding, you should still complete this form to avoid possible erroneous backup withholding.

The following codes identify payees that are exempt from backup withholding:

1—An organization exempt from tax under section 501(a), any IRA, or a custodial account under section 403(b)(7) if the account satisfies the requirements of section 401(f)(2)

2—The United States or any of its agencies or instrumentalities

3—A state, the District of Columbia, a possession of the United States, or any of their political subdivisions or instrumentalities

4—A foreign government or any of its political subdivisions, agencies, or instrumentalities

5—A corporation

6—A dealer in securities or commodities required to register in the United States, the District of Columbia, or a possession of the United States

7—A futures commission merchant registered with the Commodity Futures Trading Commission

8—A real estate investment trust

9—An entity registered at all times during the tax year under the Investment Company Act of 1940

10—A common trust fund operated by a bank under section 584(a)

11—A financial institution

12—A middleman known in the investment community as a nominee or custodian

13—A trust exempt from tax under section 664 or described in section 4947

The following chart shows types of payments that may be exempt from backup withholding. The chart applies to the exempt payees listed above, 1 through 13.

| IF the payment is for . . . | THEN the payment is exempt for . . . |
| --- | --- |
| Interest and dividend payments | All exempt payees except for 7 |
| Broker transactions | Exempt payees 1 through 4 and 6 through 11 and all C corporations. S corporations must not enter an exempt payee code because they are exempt only for sales of noncovered securities acquired prior to 2012. |
| Barter exchange transactions and patronage dividends | Exempt payees 1 through 4 |
| Payments over $600 required to be reported and direct sales over $5,000¹ | Generally, exempt payees 1 through 5² |
| Payments made in settlement of payment card or third party network transactions | Exempt payees 1 through 4 |

¹ See Form 1099-MISC, Miscellaneous Income, and its instructions.

² However, the following payments made to a corporation and reportable on Form 1099-MISC are not exempt from backup withholding: medical and health care payments, attorneys' fees, gross proceeds paid to an attorney, and payments for services paid by a federal executive agency.

**Exemption from FATCA reporting code.** The following codes identify payees that are exempt from reporting under FATCA. These codes apply to persons submitting this form for accounts maintained outside of the United States by certain foreign financial institutions. Therefore, if you are only submitting this form for an account you hold in the United States, you may leave this field blank. Consult with the person requesting this form if you are uncertain if the financial institution is subject to these requirements.

A—An organization exempt from tax under section 501(a) or any individual retirement plan as defined in section 7701(a)(37)

B—The United States or any of its agencies or instrumentalities

C—A state, the District of Columbia, a possession of the United States, or any of their political subdivisions or instrumentalities

D—A corporation the stock of which is regularly traded on one or more established securities markets, as described in Reg. section 1.1472-1(c)(1)(i)

E—A corporation that is a member of the same expanded affiliated group as a corporation described in Reg. section 1.1472-1(c)(1)(i)

F—A dealer in securities, commodities, or derivative financial instruments (including notional principal contracts, futures, forwards, and options) that is registered as such under the laws of the United States or any state

G—A real estate investment trust

H—A regulated investment company as defined in section 851 or an entity registered at all times during the tax year under the Investment Company Act of 1940

I—A common trust fund as defined in section 584(a)

J—A bank as defined in section 581

K—A broker

L—A trust exempt from tax under section 664 or described in section 4947(a)(1)

M—A tax exempt trust under a section 403(b) plan or section 457(g) plan

## Part I. Taxpayer Identification Number (TIN)

**Enter your TIN in the appropriate box.** If you are a resident alien and you do not have and are not eligible to get an SSN, your TIN is your IRS individual taxpayer identification number (ITIN). Enter it in the social security number box. If you do not have an ITIN, see *How to get a TIN* below.

If you are a sole proprietor and you have an EIN, you may enter either your SSN or EIN. However, the IRS prefers that you use your SSN.

If you are a single-member LLC that is disregarded as an entity separate from its owner (see *Limited Liability Company (LLC)* on page 2), enter the owner's SSN (or EIN, if the owner has one). Do not enter the disregarded entity's EIN. If the LLC is classified as a corporation or partnership, enter the entity's EIN.

**Note.** See the chart on page 4 for further clarification of name and TIN combinations.

**How to get a TIN.** If you do not have a TIN, apply for one immediately. To apply for an SSN, get Form SS-5, Application for a Social Security Card, from your local Social Security Administration office or get this form online at *www.ssa.gov*. You may also get this form by calling 1-800-772-1213. Use Form W-7, Application for IRS Individual Taxpayer Identification Number, to apply for an ITIN, or Form SS-4, Application for Employer Identification Number (EIN), to apply for an EIN. You can apply for an EIN online by accessing the IRS website at *www.irs.gov/businesses* and clicking on Employer Identification Number (EIN) under Starting a Business. You can get Forms W-7 and SS-4 from the IRS by visiting IRS.gov or by calling 1-800-TAX-FORM (1-800-829-3676).

If you are asked to complete Form W-9 but do not have a TIN, apply for a TIN and write "Applied For" in the space for the TIN, sign and date the form, and give it to the requester. For interest and dividend payments, and certain payments made with respect to readily tradable instruments, generally you will have 60 days to get a TIN and give it to the requester before you are subject to backup withholding on payments. The 60-day rule does not apply to other types of payments. You will be subject to backup withholding on all such payments until you provide your TIN to the requester.

**Note.** Entering "Applied For" means that you have already applied for a TIN or that you intend to apply for one soon.

**Caution:** *A disregarded U.S. entity that has a foreign owner must use the appropriate Form W-8.*

## Part II. Certification

To establish to the withholding agent that you are a U.S. person, or resident alien, sign Form W-9. You may be requested to sign by the withholding agent even if items 1, 4, or 5 below indicate otherwise.

For a joint account, only the person whose TIN is shown in Part I should sign (when required). In the case of a disregarded entity, the person identified on the "Name" line must sign. Exempt payees, see *Exempt payee code* earlier.

**Signature requirements.** Complete the certification as indicated in items 1 through 5 below.

**1. Interest, dividend, and barter exchange accounts opened before 1984 and broker accounts considered active during 1983.** You must give your correct TIN, but you do not have to sign the certification.

**2. Interest, dividend, broker, and barter exchange accounts opened after 1983 and broker accounts considered inactive during 1983.** You must sign the certification or backup withholding will apply. If you are subject to backup withholding and you are merely providing your correct TIN to the requester, you must cross out item 2 in the certification before signing the form.

**3. Real estate transactions.** You must sign the certification. You may cross out item 2 of the certification.

**4. Other payments.** You must give your correct TIN, but you do not have to sign the certification unless you have been notified that you have previously given an incorrect TIN. "Other payments" include payments made in the course of the requester's trade or business for rents, royalties, goods (other than bills for merchandise), medical and health care services (including payments to corporations), payments to a nonemployee for services, payments made in settlement of payment card and third party network transactions, payments to certain fishing boat crew members and fishermen, and gross proceeds paid to attorneys (including payments to corporations).

**5. Mortgage interest paid by you, acquisition or abandonment of secured property, cancellation of debt, qualified tuition program payments (under section 529), IRA, Coverdell ESA, Archer MSA or HSA contributions or distributions, and pension distributions.** You must give your correct TIN, but you do not have to sign the certification.

Exhibit 54 Page 1563

FOIA CONFIDENTIAL TREATMENT REQUESTED BY T2 CAPITAL MANAGEMENT                T2CAPITAL_SEC_00001458

Form W-9 (Rev. 8-2013)                                                                                                   Page **4**

## What Name and Number To Give the Requester

| For this type of account: | Give name and SSN of: |
|---|---|
| 1. Individual | The individual |
| 2. Two or more individuals (joint account) | The actual owner of the account or, if combined funds, the first individual on the account [1] |
| 3. Custodian account of a minor (Uniform Gift to Minors Act) | The minor [2] |
| 4. a. The usual revocable savings trust (grantor is also trustee) | The grantor-trustee [1] |
| b. So-called trust account that is not a legal or valid trust under state law | The actual owner [1] |
| 5. Sole proprietorship or disregarded entity owned by an individual | The owner [3] |
| 6. Grantor trust filing under Optional Form 1099 Filing Method 1 (see Regulation section 1.671-4(b)(2)(i)(A)) | The grantor* |

| For this type of account: | Give name and EIN of: |
|---|---|
| 7. Disregarded entity not owned by an individual | The owner |
| 8. A valid trust, estate, or pension trust | Legal entity [4] |
| 9. Corporation or LLC electing corporate status on Form 8832 or Form 2553 | The corporation |
| 10. Association, club, religious, charitable, educational, or other tax-exempt organization | The organization |
| 11. Partnership or multi-member LLC | The partnership |
| 12. A broker or registered nominee | The broker or nominee |
| 13. Account with the Department of Agriculture in the name of a public entity (such as a state or local government, school district, or prison) that receives agricultural program payments | The public entity |
| 14. Grantor trust filing under the Form 1041 Filing Method or the Optional Form 1099 Filing Method 2 (see Regulation section 1.671-4(b)(2)(i)(B)) | The trust |

[1] List first and circle the name of the person whose number you furnish. If only one person on a joint account has an SSN, that person's number must be furnished.

[2] Circle the minor's name and furnish the minor's SSN.

[3] You must show your individual name and you may also enter your business or "DBA" name on the "Business name/disregarded entity" name line. You may use either your SSN or EIN (if you have one), but the IRS encourages you to use your SSN.

[4] List first and circle the name of the trust, estate, or pension trust. (Do not furnish the TIN of the personal representative or trustee unless the legal entity itself is not designated in the account title.) Also see *Special rules for partnerships* on page 1.

*Note. Grantor also must provide a Form W-9 to trustee of trust.

**Note.** If no name is circled when more than one name is listed, the number will be considered to be that of the first name listed.

## Secure Your Tax Records from Identity Theft

Identity theft occurs when someone uses your personal information such as your name, social security number (SSN), or other identifying information, without your permission, to commit fraud or other crimes. An identity thief may use your SSN to get a job or may file a tax return using your SSN to receive a refund.

To reduce your risk:

- Protect your SSN,
- Ensure your employer is protecting your SSN, and
- Be careful when choosing a tax preparer.

If your tax records are affected by identity theft and you receive a notice from the IRS, respond right away to the name and phone number printed on the IRS notice or letter.

If your tax records are not currently affected by identity theft but you think you are at risk due to a lost or stolen purse or wallet, questionable credit card activity or credit report, contact the IRS Identity Theft Hotline at 1-800-908-4490 or submit Form 14039.

For more information, see Publication 4535, Identity Theft Prevention and Victim Assistance.

Victims of identity theft who are experiencing economic harm or a system problem, or are seeking help in resolving tax problems that have not been resolved through normal channels, may be eligible for Taxpayer Advocate Service (TAS) assistance. You can reach TAS by calling the TAS toll-free case intake line at 1-877-777-4778 or TTY/TDD 1-800-829-4059.

**Protect yourself from suspicious emails or phishing schemes.** Phishing is the creation and use of email and websites designed to mimic legitimate business emails and websites. The most common act is sending an email to a user falsely claiming to be an established legitimate enterprise in an attempt to scam the user into surrendering private information that will be used for identity theft.

The IRS does not initiate contacts with taxpayers via emails. Also, the IRS does not request personal detailed information through email or ask taxpayers for the PIN numbers, passwords, or similar secret access information for their credit card, bank, or other financial accounts.

If you receive an unsolicited email claiming to be from the IRS, forward this message to *phishing@irs.gov*. You may also report misuse of the IRS name, logo, or other IRS property to the Treasury Inspector General for Tax Administration at 1-800-366-4484. You can forward suspicious emails to the Federal Trade Commission at: *spam@uce.gov* or contact them at *www.ftc.gov/idtheft* or 1-877-IDTHEFT (1-877-438-4338).

Visit IRS.gov to learn more about identity theft and how to reduce your risk.

## Privacy Act Notice

Section 6109 of the Internal Revenue Code requires you to provide your correct TIN to persons (including federal agencies) who are required to file information returns with the IRS to report interest, dividends, or certain other income paid to you; mortgage interest you paid; the acquisition or abandonment of secured property; the cancellation of debt; or contributions you made to an IRA, Archer MSA, or HSA. The person collecting this form uses the information on the form to file information returns with the IRS, reporting the above information. Routine uses of this information include giving it to the Department of Justice for civil and criminal litigation and to cities, states, the District of Columbia, and U.S. commonwealths and possessions for use in administering their laws. The information also may be disclosed to other countries under a treaty, to federal and state agencies to enforce civil and criminal laws, or to federal law enforcement and intelligence agencies to combat terrorism. You must provide your TIN whether or not you are required to file a tax return. Under section 3406, payers must generally withhold a percentage of taxable interest, dividend, and certain other payments to a payee who does not give a TIN to the payer. Certain penalties may also apply for providing false or fraudulent information.

Exhibit 54 Page 1564

FOIA CONFIDENTIAL TREATMENT REQUESTED BY T2 CAPITAL MANAGEMENT          T2CAPITAL_SEC_00001459

| Form **W-9**<br>(Rev. August 2013)<br>Department of the Treasury<br>Internal Revenue Service | **Request for Taxpayer**<br>**Identification Number and Certification** | **Give Form to the**<br>**requester. Do not**<br>**send to the IRS.** |
|---|---|---|

Name (as shown on your income tax return)

**Vicky W. Chow**

Business name/disregarded entity name, if different from above

Check appropriate box for federal tax classification:

☑ Individual/sole proprietor ☐ C Corporation ☐ S Corporation ☐ Partnership ☐ Trust/estate

☐ Limited liability company. Enter the tax classification (C=C corporation, S=S corporation, P=partnership) ▶ _____

☐ Other (see instructions) ▶

**Exemptions (see instructions):**

Exempt payee code (if any) _____

Exemption from FATCA reporting code (if any) _____

Address (number, street, and apt. or suite no.)

Requester's name and address (optional)

City, state, and ZIP code

**Woodland Hills, CA 91364**

List account number(s) here (optional)

**4341: T2 Strategic Real Estate Fund, LLC**

### Part I   Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. The TIN provided must match the name given on the "Name" line to avoid backup withholding. For individuals, this is your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the Part I instructions on page 3. For other entities, it is your employer identification number (EIN). If you do not have a number, see *How to get a TIN* on page 3.

**Note.** If the account is in more than one name, see the chart on page 4 for guidelines on whose number to enter.

Social security number

| | | | – | 3 | 8 | 1 | 8 |

Employer identification number

| | – | | | | | | |

### Part II   Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and

2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and

3. I am a U.S. citizen or other U.S. person (defined below), and

4. The FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN. See the instructions on page 3.

| Sign<br>Here | Signature of<br>U.S. person ▶ _____ | Date ▶ _____ |
|---|---|---|

### General Instructions

Section references are to the Internal Revenue Code unless otherwise noted.

**Future developments.** The IRS has created a page on IRS.gov for information about Form W-9, at *www.irs.gov/w9*. Information about any future developments affecting Form W-9 (such as legislation enacted after we release it) will be posted on that page.

### Purpose of Form

A person who is required to file an information return with the IRS must obtain your correct taxpayer identification number (TIN) to report, for example, income paid to you, payments made to you in settlement of payment card and third party network transactions, real estate transactions, mortgage interest you paid, acquisition or abandonment of secured property, cancellation of debt, or contributions you made to an IRA.

Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN to the person requesting it (the requester) and, when applicable, to:

1. Certify that the TIN you are giving is correct (or you are waiting for a number to be issued),

2. Certify that you are not subject to backup withholding, or

3. Claim exemption from backup withholding if you are a U.S. exempt payee. If applicable, you are also certifying that as a U.S. person, your allocable share of any partnership income from a U.S. trade or business is not subject to the

withholding tax on foreign partners' share of effectively connected income, and

4. Certify that FATCA code(s) entered on this form (if any) indicating that you are exempt from the FATCA reporting, is correct.

**Note.** If you are a U.S. person and a requester gives you a form other than Form W-9 to request your TIN, you must use the requester's form if it is substantially similar to this Form W-9.

**Definition of a U.S. person.** For federal tax purposes, you are considered a U.S. person if you are:

• An individual who is a U.S. citizen or U.S. resident alien,

• A partnership, corporation, company, or association created or organized in the United States or under the laws of the United States,

• An estate (other than a foreign estate), or

• A domestic trust (as defined in Regulations section 301.7701-7).

**Special rules for partnerships.** Partnerships that conduct a trade or business in the United States are generally required to pay a withholding tax under section 1446 on any foreign partners' share of effectively connected taxable income from such business. Further, in certain cases where a Form W-9 has not been received, the rules under section 1446 require a partnership to presume that a partner is a foreign person, and pay the section 1446 withholding tax. Therefore, if you are a U.S. person that is a partner in a partnership conducting a trade or business in the United States, provide Form W-9 to the partnership to establish your U.S. status and avoid section 1446 withholding on your share of partnership income.

Cat. No. 10231X

Form **W-9** (Rev. 8-2013)

Exhibit 54 Page 1565

FOIA CONFIDENTIAL TREATMENT REQUESTED BY T2 CAPITAL MANAGEMENT

T2CAPITAL_SEC_00001460

In the cases below, the following person must give Form W-9 to the partnership for purposes of establishing its U.S. status and avoiding withholding on its allocable share of net income from the partnership conducting a trade or business in the United States:

• In the case of a disregarded entity with a U.S. owner, the U.S. owner of the disregarded entity and not the entity;

• In the case of a grantor trust with a U.S. grantor or other U.S. owner, generally, the U.S. grantor or other U.S. owner of the grantor trust and not the trust; and

• In the case of a U.S. trust (other than a grantor trust), the U.S. trust (other than a grantor trust) and not the beneficiaries of the trust.

**Foreign person.** If you are a foreign person or the U.S. branch of a foreign bank that has elected to be treated as a U.S. person, do not use Form W-9. Instead, use the appropriate Form W-8 or Form 8233 (see Publication 515, Withholding of Tax on Nonresident Aliens and Foreign Entities).

**Nonresident alien who becomes a resident alien.** Generally, only a nonresident alien individual may use the terms of a tax treaty to reduce or eliminate U.S. tax on certain types of income. However, most tax treaties contain a provision known as a "saving clause." Exceptions specified in the saving clause may permit an exemption from tax to continue for certain types of income even after the payee has otherwise become a U.S. resident alien for tax purposes.

If you are a U.S. resident alien who is relying on an exception contained in the saving clause of a tax treaty to claim an exemption from U.S. tax on certain types of income, you must attach a statement to Form W-9 that specifies the following five items:

1. The treaty country. Generally, this must be the same treaty under which you claimed exemption from tax as a nonresident alien.

2. The treaty article addressing the income.

3. The article number (or location) in the tax treaty that contains the saving clause and its exceptions.

4. The type and amount of income that qualifies for the exemption from tax.

5. Sufficient facts to justify the exemption from tax under the terms of the treaty article.

*Example.* Article 20 of the U.S.-China income tax treaty allows an exemption from tax for scholarship income received by a Chinese student temporarily present in the United States. Under U.S. law, this student will become a resident alien for tax purposes if his or her stay in the United States exceeds 5 calendar years. However, paragraph 2 of the first Protocol to the U.S.-China treaty (dated April 30, 1984) allows the provisions of Article 20 to continue to apply even after the Chinese student becomes a resident alien of the United States. A Chinese student who qualifies for this exception (under paragraph 2 of the first protocol) and is relying on this exception to claim an exemption from tax on his or her scholarship or fellowship income would attach to Form W-9 a statement that includes the information described above to support that exemption.

If you are a nonresident alien or a foreign entity, give the requester the appropriate completed Form W-8 or Form 8233.

**What is backup withholding?** Persons making certain payments to you must under certain conditions withhold and pay to the IRS a percentage of such payments. This is called "backup withholding." Payments that may be subject to backup withholding include interest, tax-exempt interest, dividends, broker and barter exchange transactions, rents, royalties, nonemployee pay, payments made in settlement of payment card and third party network transactions, and certain payments from fishing boat operators. Real estate transactions are not subject to backup withholding.

You will not be subject to backup withholding on payments you receive if you give the requester your correct TIN, make the proper certifications, and report all your taxable interest and dividends on your tax return.

**Payments you receive will be subject to backup withholding if:**

1. You do not furnish your TIN to the requester,

2. You do not certify your TIN when required (see the Part II instructions on page 3 for details),

3. The IRS tells the requester that you furnished an incorrect TIN,

4. The IRS tells you that you are subject to backup withholding because you did not report all your interest and dividends on your tax return (for reportable interest and dividends only), or

5. You do not certify to the requester that you are not subject to backup withholding under 4 above (for reportable interest and dividend accounts opened after 1983 only).

Certain payees and payments are exempt from backup withholding. See *Exempt payee code* on page 3 and the separate Instructions for the Requester of Form W-9 for more information.

Also see *Special rules for partnerships* on page 1.

**What is FATCA reporting?** The Foreign Account Tax Compliance Act (FATCA) requires a participating foreign financial institution to report all United States account holders that are specified United States persons. Certain payees are exempt from FATCA reporting. See *Exemption from FATCA reporting code* on page 3 and the Instructions for the Requester of Form W-9 for more information.

## Updating Your Information

You must provide updated information to any person to whom you claimed to be an exempt payee if you are no longer an exempt payee and anticipate receiving reportable payments in the future from this person. For example, you may need to provide updated information if you are a C corporation that elects to be an S corporation, or if you no longer are tax exempt. In addition, you must furnish a new Form W-9 if the name or TIN changes for the account, for example, if the grantor of a grantor trust dies.

## Penalties

**Failure to furnish TIN.** If you fail to furnish your correct TIN to a requester, you are subject to a penalty of $50 for each such failure unless your failure is due to reasonable cause and not to willful neglect.

**Civil penalty for false information with respect to withholding.** If you make a false statement with no reasonable basis that results in no backup withholding, you are subject to a $500 penalty.

**Criminal penalty for falsifying information.** Willfully falsifying certifications or affirmations may subject you to criminal penalties including fines and/or imprisonment.

**Misuse of TINs.** If the requester discloses or uses TINs in violation of federal law, the requester may be subject to civil and criminal penalties.

## Specific Instructions

### Name

If you are an individual, you must generally enter the name shown on your income tax return. However, if you have changed your last name, for instance, due to marriage without informing the Social Security Administration of the name change, enter your first name, the last name shown on your social security card, and your new last name.

If the account is in joint names, list first, and then circle, the name of the person or entity whose number you entered in Part I of the form.

**Sole proprietor.** Enter your individual name as shown on your income tax return on the "Name" line. You may enter your business, trade, or "doing business as (DBA)" name on the "Business name/disregarded entity name" line.

**Partnership, C Corporation, or S Corporation.** Enter the entity's name on the "Name" line and any business, trade, or "doing business as (DBA) name" on the "Business name/disregarded entity name" line.

**Disregarded entity.** For U.S. federal tax purposes, an entity that is disregarded as an entity separate from its owner is treated as a "disregarded entity." See Regulation section 301.7701-2(c)(2)(iii). Enter the owner's name on the "Name" line. The name of the entity entered on the "Name" line should never be a disregarded entity. The name on the "Name" line must be the name shown on the income tax return on which the income should be reported. For example, if a foreign LLC that is treated as a disregarded entity for U.S. federal tax purposes has a single owner that is a U.S. person, the U.S. owner's name is required to be provided on the "Name" line. If the direct owner of the entity is also a disregarded entity, enter the first owner that is not disregarded for federal tax purposes. Enter the disregarded entity's name on the "Business name/disregarded entity name" line. If the owner of the disregarded entity is a foreign person, the owner must complete an appropriate Form W-8 instead of a Form W-9. This is the case even if the foreign person has a U.S. TIN.

**Note.** Check the appropriate box for the U.S. federal tax classification of the person whose name is entered on the "Name" line (Individual/sole proprietor, Partnership, C Corporation, S Corporation, Trust/estate).

**Limited Liability Company (LLC).** If the person identified on the "Name" line is an LLC, check the "Limited liability company" box only and enter the appropriate code for the U.S. federal tax classification in the space provided. If you are an LLC that is treated as a partnership for U.S. federal tax purposes, enter "P" for partnership. If you are an LLC that has filed a Form 8832 or a Form 2553 to be taxed as a corporation, enter "C" for C corporation or "S" for S corporation, as appropriate. If you are an LLC that is disregarded as an entity separate from its owner under Regulation section 301.7701-3 (except for employment and excise tax), do not check the LLC box unless the owner of the LLC (required to be identified on the "Name" line) is another LLC that is not disregarded for U.S. federal tax purposes. If the LLC is disregarded as an entity separate from its owner, enter the appropriate tax classification of the owner identified on the "Name" line.

**Other entities.** Enter your business name as shown on required U.S. federal tax documents on the "Name" line. This name should match the name shown on the charter or other legal document creating the entity. You may enter any business, trade, or DBA name on the "Business name/disregarded entity name" line.

## Exemptions

If you are exempt from backup withholding and/or FATCA reporting, enter in the *Exemptions* box, any code(s) that may apply to you. See *Exempt payee code* and *Exemption from FATCA reporting code* on page 3.

Exhibit 54 Page 1566

Form W-9 (Rev. 8-2013)                                                                                   Page **3**

**Exempt payee code.** Generally, individuals (including sole proprietors) are not exempt from backup withholding. Corporations are exempt from backup withholding for certain payments, such as interest and dividends. Corporations are not exempt from backup withholding for payments made in settlement of payment card or third party network transactions.

**Note.** If you are exempt from backup withholding, you should still complete this form to avoid possible erroneous backup withholding.

The following codes identify payees that are exempt from backup withholding:

1—An organization exempt from tax under section 501(a), any IRA, or a custodial account under section 403(b)(7) if the account satisfies the requirements of section 401(f)(2)

2—The United States or any of its agencies or instrumentalities

3—A state, the District of Columbia, a possession of the United States, or any of their political subdivisions or instrumentalities

4—A foreign government or any of its political subdivisions, agencies, or instrumentalities

5—A corporation

6—A dealer in securities or commodities required to register in the United States, the District of Columbia, or a possession of the United States

7—A futures commission merchant registered with the Commodity Futures Trading Commission

8—A real estate investment trust

9—An entity registered at all times during the tax year under the Investment Company Act of 1940

10—A common trust fund operated by a bank under section 584(a)

11—A financial institution

12—A middleman known in the investment community as a nominee or custodian

13—A trust exempt from tax under section 664 or described in section 4947

The following chart shows types of payments that may be exempt from backup withholding. The chart applies to the exempt payees listed above, 1 through 13.

| IF the payment is for . . . | THEN the payment is exempt for . . . |
|---|---|
| Interest and dividend payments | All exempt payees except for 7 |
| Broker transactions | Exempt payees 1 through 4 and 6 through 11 and all C corporations. S corporations must not enter an exempt payee code because they are exempt only for sales of noncovered securities acquired prior to 2012. |
| Barter exchange transactions and patronage dividends | Exempt payees 1 through 4 |
| Payments over $600 required to be reported and direct sales over $5,000[1] | Generally, exempt payees 1 through 5[2] |
| Payments made in settlement of payment card or third party network transactions | Exempt payees 1 through 4 |

[1] See Form 1099-MISC, Miscellaneous Income, and its instructions.

[2] However, the following payments made to a corporation and reportable on Form 1099-MISC are not exempt from backup withholding: medical and health care payments, attorneys' fees, gross proceeds paid to an attorney, and payments for services paid by a federal executive agency.

**Exemption from FATCA reporting code.** The following codes identify payees that are exempt from reporting under FATCA. These codes apply to persons submitting this form for accounts maintained outside of the United States by certain foreign financial institutions. Therefore, if you are only submitting this form for an account you hold in the United States, you may leave this field blank. Consult with the person requesting this form if you are uncertain if the financial institution is subject to these requirements.

A—An organization exempt from tax under section 501(a) or any individual retirement plan as defined in section 7701(a)(37)

B—The United States or any of its agencies or instrumentalities

C—A state, the District of Columbia, a possession of the United States, or any of their political subdivisions or instrumentalities

D—A corporation the stock of which is regularly traded on one or more established securities markets, as described in Reg. section 1.1472-1(c)(1)(i)

E—A corporation that is a member of the same expanded affiliated group as a corporation described in Reg. 1.1472-1(c)(1)(i)

F—A dealer in securities, commodities, or derivative financial instruments (including notional principal contracts, futures, forwards, and options) that is registered as such under the laws of the United States or any state

G—A real estate investment trust

H—A regulated investment company as defined in section 851 or an entity registered at all times during the tax year under the Investment Company Act of 1940

I—A common trust fund as defined in section 584(a)

J—A bank as defined in section 581

K—A broker

L—A trust exempt from tax under section 664 or described in section 4947(a)(1)

M—A tax exempt trust under a section 403(b) plan or section 457(g) plan

## Part I. Taxpayer Identification Number (TIN)

**Enter your TIN in the appropriate box.** If you are a resident alien and you do not have and are not eligible to get an SSN, your TIN is your IRS individual taxpayer identification number (ITIN). Enter it in the social security number box. If you do not have an ITIN, see How to get a TIN below.

If you are a sole proprietor and you have an EIN, you may enter either your SSN or EIN. However, the IRS prefers that you use your SSN.

If you are a single-member LLC that is disregarded as an entity separate from its owner (see Limited Liability Company (LLC) on page 2), enter the owner's SSN (or EIN, if the owner has one). Do not enter the disregarded entity's EIN. If the LLC is classified as a corporation or partnership, enter the entity's EIN.

**Note.** See the chart on page 4 for further clarification of name and TIN combinations.

**How to get a TIN.** If you do not have a TIN, apply for one immediately. To apply for an SSN, get Form SS-5, Application for a Social Security Card, from your local Social Security Administration office or get this form online at www.ssa.gov. You may also get this form by calling 1-800-772-1213. Use Form W-7, Application for IRS Individual Taxpayer Identification Number, to apply for an ITIN, or Form SS-4, Application for Employer Identification Number, to apply for an EIN. You can apply for an EIN online by accessing the IRS website at www.irs.gov/businesses and clicking on Employer Identification Number (EIN) under Starting a Business. You can get Forms W-7 and SS-4 from the IRS by visiting IRS.gov or by calling 1-800-TAX-FORM (1-800-829-3676).

If you are asked to complete Form W-9 but do not have a TIN, apply for a TIN and write "Applied For" in the space for the TIN, sign and date the form, and give it to the requester. For interest and dividend payments, and certain payments made with respect to readily tradable instruments, generally you will have 60 days to get a TIN and give it to the requester before you are subject to backup withholding on payments. The 60-day rule does not apply to other types of payments. You will be subject to backup withholding on all such payments until you provide your TIN to the requester.

**Note.** Entering "Applied For" means that you have already applied for a TIN or that you intend to apply for one soon.

**Caution:** A disregarded U.S. entity that has a foreign owner must use the appropriate Form W-8.

## Part II. Certification

To establish to the withholding agent that you are a U.S. person, or resident alien, sign Form W-9. You may be requested to sign by the withholding agent even if items 1, 4, or 5 below indicate otherwise.

For a joint account, only the person whose TIN is shown in Part I should sign (when required). In the case of a disregarded entity, the person identified on the "Name" line must sign. Exempt payees, see Exempt payee code earlier.

**Signature requirements.** Complete the certification as indicated in items 1 through 5 below.

**1. Interest, dividend, and barter exchange accounts opened before 1984 and broker accounts considered active during 1983.** You must give your correct TIN, but you do not have to sign the certification.

**2. Interest, dividend, broker, and barter exchange accounts opened after 1983 and broker accounts considered inactive during 1983.** You must sign the certification or backup withholding will apply. If you are subject to backup withholding and you are merely providing your correct TIN to the requester, you must cross out item 2 in the certification before signing the form.

**3. Real estate transactions.** You must sign the certification. You may cross out item 2 of the certification.

**4. Other payments.** You must give your correct TIN, but you do not have to sign the certification unless you have been notified that you have previously given an incorrect TIN. "Other payments" include payments made in the course of the requester's trade or business for rents, royalties, goods (other than bills for merchandise), medical and health care services (including payments to corporations), payments to a nonemployee for services, payments made in settlement of payment card and third party network transactions, payments to certain fishing boat crew members and fishermen, and gross proceeds paid to attorneys (including payments to corporations).

**5. Mortgage interest paid by you, acquisition or abandonment of secured property, cancellation of debt, qualified tuition program payments (under section 529), IRA, Coverdell ESA, Archer MSA or HSA contributions or distributions, and pension distributions.** You must give your correct TIN, but you do not have to sign the certification.

Exhibit 54 Page 1567

Form W-9 (Rev. 8-2013)

Page **4**

## What Name and Number To Give the Requester

| For this type of account: | Give name and SSN of: |
|---|---|
| 1. Individual | The individual |
| 2. Two or more individuals (joint account) | The actual owner of the account or, if combined funds, the first individual on the account [1] |
| 3. Custodian account of a minor (Uniform Gift to Minors Act) | The minor [2] |
| 4. a. The usual revocable savings trust (grantor is also trustee) | The grantor-trustee [1] |
| b. So-called trust account that is not a legal or valid trust under state law | The actual owner [1] |
| 5. Sole proprietorship or disregarded entity owned by an individual | The owner [3] |
| 6. Grantor trust filing under Optional Form 1099 Filing Method 1 (see Regulation section 1.671-4(b)(2)(i)(A)) | The grantor* |

| For this type of account: | Give name and EIN of: |
|---|---|
| 7. Disregarded entity not owned by an individual | The owner |
| 8. A valid trust, estate, or pension trust | Legal entity [4] |
| 9. Corporation or LLC electing corporate status on Form 8832 or Form 2553 | The corporation |
| 10. Association, club, religious, charitable, educational, or other tax-exempt organization | The organization |
| 11. Partnership or multi-member LLC | The partnership |
| 12. A broker or registered nominee | The broker or nominee |
| 13. Account with the Department of Agriculture in the name of a public entity (such as a state or local government, school district, or prison) that receives agricultural program payments | The public entity |
| 14. Grantor trust filing under the Form 1041 Filing Method or the Optional Form 1099 Filing Method 2 (see Regulation section 1.671-4(b)(2)(i)(B)) | The trust |

[1] List first and circle the name of the person whose number you furnish. If only one person on a joint account has an SSN, that person's number must be furnished.

[2] Circle the minor's name and furnish the minor's SSN.

[3] You must show your individual name and you may also enter your business or "DBA" name on the "Business name/disregarded entity" name line. You may use either your SSN or EIN (if you have one), but the IRS encourages you to use your SSN.

[4] List first and circle the name of the trust, estate, or pension trust. (Do not furnish the TIN of the personal representative or trustee unless the legal entity itself is not designated in the account title.) Also see *Special rules for partnerships* on page 1.

*Note. Grantor also must provide a Form W-9 to trustee of trust.

**Note.** If no name is circled when more than one name is listed, the number will be considered to be that of the first name listed.

## Secure Your Tax Records from Identity Theft

Identity theft occurs when someone uses your personal information such as your name, social security number (SSN), or other identifying information, without your permission, to commit fraud or other crimes. An identity thief may use your SSN to get a job or may file a tax return using your SSN to receive a refund.

To reduce your risk:

* Protect your SSN,
* Ensure your employer is protecting your SSN, and
* Be careful when choosing a tax preparer.

If your tax records are affected by identity theft and you receive a notice from the IRS, respond right away to the name and phone number printed on the IRS notice or letter.

If your tax records are not currently affected by identity theft but you think you are at risk due to a lost or stolen purse or wallet, questionable credit card activity or credit report, contact the IRS Identity Theft Hotline at 1-800-908-4490 or submit Form 14039.

For more information, see Publication 4535, Identity Theft Prevention and Victim Assistance.

Victims of identity theft who are experiencing economic harm or a system problem, or are seeking help in resolving tax problems that have not been resolved through normal channels, may be eligible for Taxpayer Advocate Service (TAS) assistance. You can reach TAS by calling the TAS toll-free case intake line at 1-877-777-4778 or TTY/TDD 1-800-829-4059.

**Protect yourself from suspicious emails or phishing schemes.** Phishing is the creation and use of email and websites designed to mimic legitimate business emails and websites. The most common act is sending an email to a user falsely claiming to be an established legitimate enterprise in an attempt to scam the user into surrendering private information that will be used for identity theft.

The IRS does not initiate contacts with taxpayers via emails. Also, the IRS does not request personal detailed information through email or ask taxpayers for the PIN numbers, passwords, or similar secret access information for their credit card, bank, or other financial accounts.

If you receive an unsolicited email claiming to be from the IRS, forward this message to *phishing@irs.gov*. You may also report misuse of the IRS name, logo, or other IRS property to the Treasury Inspector General for Tax Administration at 1-800-366-4484. You can forward suspicious emails to the Federal Trade Commission at: *spam@uce.gov* or contact them at *www.ftc.gov/idtheft* or 1-877-IDTHEFT (1-877-438-4338).

Visit IRS.gov to learn more about identity theft and how to reduce your risk.

## Privacy Act Notice

Section 6109 of the Internal Revenue Code requires you to provide your correct TIN to persons (including federal agencies) who are required to file information returns with the IRS to report interest, dividends, or certain other income paid to you; mortgage interest you paid; the acquisition or abandonment of secured property; the cancellation of debt; or contributions you made to an IRA, Archer MSA, or HSA. The person collecting this form uses the information on the form to file information returns with the IRS, reporting the above information. Routine uses of this information include giving it to the Department of Justice for civil and criminal litigation and to cities, states, the District of Columbia, and U.S. commonwealths and possessions for use in administering their laws. The information also may be disclosed to other countries under a treaty, to federal and state agencies to enforce civil and criminal laws, or to federal law enforcement and intelligence agencies to combat terrorism. You must provide your TIN whether or not you are required to file a tax return. Under section 3406, payers must generally withhold a percentage of taxable interest, dividend, and certain other payments to a payee who does not give a TIN to the payer. Certain penalties may also apply for providing false or fraudulent information.

Exhibit 54 Page 1568

FOIA CONFIDENTIAL TREATMENT REQUESTED BY T2 CAPITAL MANAGEMENT

T2CAPITAL_SEC_00001463