# EXHIBIT D

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

SECURITIES AND )
EXCHANGE COMMISSION, )
)
Plaintiff, )
) Case No.
-vs- ) 2:20-cv-01402-ODW-JEM
)
CRITERION WEALTH )
MANAGEMENT INSURANCE )
SERVICES, INC., et al., )
)
Defendants. )
________________________)

VIDEOTAPED DEPOSITION OF
JANE JARCHO
Chicago, Illinois

Tuesday, November 9, 2021
11:15 A.M. TO 5:18 P.M.

Reported by:
Carla P. Letellier,
CSR No. 084-003315
JOB No. 211109LAK

they need to have enough disclosure that the client has an understanding of the conflict.

Q. Okay. The client -- the disclosure needs to be sufficient to inform the client of the conflict to understand the conflict; right?

A. Right.

Q. In your report, you rely upon the SEC's regulation Best Interest relief, and then we mentioned the other 2019 relief was actually issued the same day and in conjunction with Regulation Best Interest, the Commission interpretation regarding the standard of conduct.

Why do you rely on those materials to form your opinion in this case?

A. Well, I think the most definitive statement on sort of the standards of conduct of advisers and broker-dealers, and I think my view is that the SEC was trying to give sort of guidance on -- on various things about -- well, the behavior of -- you know, of each, that for years I think the SEC, they were pondering, you know, to try to help customers understand the difference. I think there was a recognition that sometimes customers didn't understand the difference between a broker-dealer and an

12:17

adviser, and this was an attempt to give some guidance on that and, you know, how to -- how to present to clients so that they, you know, would know what -- which capacity they were acting as.

Q. You understand that the conduct alleged in the complaint occurred several years before the -- the relief was in 2019; right?

A. Yes, absolutely. It's just that it is a -- it wasn't a new -- advisers, there was nothing new. It was really just trying to give guidance in a document that -- in one place with the most -- much of it was -- had been before 2019, but it's sort of the definitive SEC statement on adviser behavior and on broker-dealer conduct.

Q. So do you understand that the SEC guidance was intended to define a limit of the investment, of an investment adviser's duties to their clients?

A. I don't think there was ever an attempt to define the limit because things are always changing, so I think it was an attempt to have in a single document sort of the -- an explanation of adviser conduct and to -- an explanation of adviser conduct to make it clear whether -- I mean, you know, certainly, something different

could happen that wasn't anticipated in the guidance. Anybody who spent a lot of years at the SEC, and I think you've probably been there a while, knows that you can't predict the behavior
12:19 of registrants and though it wasn't meant to be 100 percent capture any activity, but it was meant as sort of the best compilation of adviser duties and behavior.

Q. So would you agree that Regulation Best
12:19 Interest imposed new obligations on broker-dealers?

A. Yes.

Q. In certain transactions. Okay.

A. Yes.

12:19 Q. So would you say that as it relates to the Regulation Best Interest relief and the preamble to that, that one of the SEC's motivations would have been to describe when those new obligations would apply to a duly
12:20 registered broker-dealer investment adviser and when they would not?

A. Can you just say that one more time? Sorry.

Q. Yeah, so with Regulation Best Interest
12:20 there is new obligations and duties promulgated

for broker-dealers when they are engaging in certain transactions with respect to retail investors. Is that a fair representation of it?

A. Yes.

12:20 Q. All right. So would you say that the SEC, in promulgating such a regulation, would then be motivated -- the context in which they're providing this guidance regarding dual registrants was to delineate when a duly 12:21 registered broker-dealer investment adviser would be subject to this new regulation and when that dual registrant would not be subject to that regulation?

A. I'm not sure that that's -- that I would 12:21 say it -- that that's what I would say, but I think it was creating the Best Interest standard and explaining the Best Interest standard and when it applied.

It gave a lot of examples and 12:21 commentary in some of that, as did the relevant divisions would frequently ask questions, and some of that went to dual registrant capacity, but that wasn't the primary focus, but there were pieces of information in there that did give some 12:22 guidance on that, but it certainly wasn't the

primary focus of it.

Q. Are you familiar with the definition of investment adviser set forth in the Adviser's Act?

A. I'm familiar with it, yeah. I mean, I --

Q. And you did not analyze that definition in your report; is that right?

A. That's right. Because in my opinion, and my experience at the SEC, we would go to -- look at the definition when somebody said they were not acting -- when they were not registered as an investment adviser, and that they may only be registered as a broker-dealer, and it was believed by the SEC that they also should -- that some of what they were doing was -- fell into the investment adviser bucket.

But in this case, the defendants acknowledged and admitted that they were duly registered; so to me, the definition was not important, because they were not denying that they were investment advisers.

Q. But under the definition, would you agree that an investment adviser can be at the same time a broker-dealer, and the broker-dealer can at the same time be an investment adviser?

A. I agree that an individual and/or entity can at the same time be a registered investment adviser and a registered broker-dealer, the rep of them, and not just agree, but it is extremely common and has been for ages.

12:24

Q. And so, for example, if a -- if a broker-dealer is providing advice that is not solely incidental to their broker-dealer business and they receive special compensation for that advice, then they are investment advisers under the Advisers Act; is that right? Is that your understanding?

12:24

A. Then -- no, I mean, I'm not really sure. If they hadn't registered, then they would need to register as an investment adviser, is my understanding, not that -- that it is about -- I do not believe that -- that the determination -- that every time a -- how do I say this. To me, that section is aimed at individuals or entities that hold themselves out only as broker-dealers and not as investment advisers, and the activities that they conduct and they may conduct -- the activities they conduct may bleed into the activities of an investment adviser; and to the extent they bleed into the activities of

12:25
12:25
12:25

an investment adviser, then they are required to register.

Having registered as both, they have different obligations and duties when they wear one hat versus the other.

12:26 I do not believe, in my opinion, that every duly registered entity or individual -- that everything they do is therefore that they are an investment adviser, because it wouldn't make any sense to me. There are -- because there are, you know, many thousands of people who wear both hats.

12:26 So I just -- I don't -- in my opinion, I just see that definition being used for something else. That definition is when someone has avoided registering as an investment adviser.

12:26 And I know sort of that comes from, my experience, in that there were -- I saw all the time entities and individuals who -- who were broker -- who were registered only as brokers, and didn't want to register as advisers, because they didn't want SEC scrutiny. And so they figured if they didn't register as an adviser, they wouldn't need SEC scrutiny. And -- but in

12:27

12:27

that situation we felt they were acting as investment adviser, and they were unregistered and we would go to that definition as the, you know, hook to tell them they had to register, and that they had been acting as an unregistered investment adviser.

12:27

Here --

Q. So when -- I'm sorry.

A. No, no.

12:27

Q. I didn't mean to cut you off.

A. No. Go on.

Q. So when you have a duly registered investment adviser and a broker-dealer, you said they wear different hats, do you believe it is possible for them to wear both hats at the same time with respect to a given client?

12:28

A. They can wear -- I guess I look at it more from what activity they're conducting. They can be acting as -- that it's determined that each activity they conduct falls under one or the other. So I don't view them -- I mean, I view those as distinct capacities, and the goal of disclosure in the now disclosure forms that came out in 2019, is to let clients know which of the -- which of the capacities they are acting in.

12:28

12:29

Q. And so is it your, then, understanding that when they are acting as a broker-dealer client -- as a broker-dealer for a particular capacity for an advisory client, they do not owe fiduciary duties to that client as investment advisers?

A. If the client has a relationship with both -- with the individual as both an adviser and a broker-dealer or a rep, a broker-dealer rep, then their obligation -- then they would not -- when they act as in the capacity of a broker-dealer, they do not have the obligations of an investment adviser. That's my opinion.

Q. So going to the Commission interpretation regarding standard of conduct for investment advisers that we talked about, that you relied on in your -- in forming your opinions, is it fair to say you agree with the statements in that relief?

A. That --

MR. THOMAS: Objection. Vague and ambiguous.

BY THE WITNESS:

A. I --

BY MR. CANTER:

BY THE WITNESS:
A. I'm aware that as registered reps of Ausdal, they requested or worked with Ausdal to have that to enter into that relationship.
03:08 I can't speak to whether anybody else had that relationship. I can't tell you what percentage of -- of the deal was purchased directly from the manager, what percentage was from advisers, and what percentage was from
03:08 broker-dealers or any other type of placement person.
BY MR. CANTER:
Q. Okay. So do you think that before arranging for this particular compensation
03:08 arrangement with T2, and only Criterion's clients invested, that an investment adviser should undertake an analysis of whether that arrangement is, in fact, in the client's best interest?
MR. THOMAS: Objection. Form.
03:09 BY THE WITNESS:
A. Well, I suppose -- I don't know what analysis -- what sort of formal analysis that you're talking about. I believe based on what I've been told, that the individual defendants
03:09 believed that the agreement they had with T2 on

how -- and the compensation agreement they -- that Ausdal negotiated with T2, aligned their interests -- aligned their individual interests with their clients.

03:10 I do not know how they got to that decision and that impression, but I have -- I have been told that that's what -- why they did it that way.

I don't know if they did a formal analysis. 03:10 I don't know if they did a back of the napkin analysis, I don't know if they hired -- I just don't know.

Q. Okay. Thank you.

If T2 informed the defendants that 03:10 their compensation arrangement would result in lower returns for their clients, is that something that a defendant should have disclosed to their clients?

MR. THOMAS: Objection. Foundation.

03:11 BY THE WITNESS:

A. I don't know how anybody could have known that given the hurdle rate.

BY MR. CANTER:

Q. Is it your understanding that only actual 03:11 conflicts need to be disclosed or must potential

I, CARLA P. LETELLIER, CSR, RPR, within and for the County of Lake, State of Illinois, do hereby certify that I am a Certified Shorthand Reporter and Registered Professional Reporter doing business in the County of Lake and State of Illinois; certify that on the 9th day of November 2021, personally appeared before me at Hinshaw & Culbertson, 151 North Franklin Street, Chicago, Illinois, JANE JARCHO, in a cause now pending and undetermined in the United States District Court for the Central District of California, wherein the SECURITIES AND EXCHANGE COMMISSION is the Plaintiff, and CRITERION WEALTH MANAGEMENT INSURANCE SERVICES, INC., et al., are the Defendants; that I reported by means of machine shorthand the testimony given at the foregoing proceedings, and that the foregoing is a true and correct transcript to the best of my ability of the testimony given by the witness pursuant to my shorthand notes so taken as aforesaid.

I further certify that the taking of this deposition was pursuant to subpoena and that there were present at the taking of this deposition counsel on behalf of the plaintiff and counsel on behalf of the defendant.

I further certify that I am not counsel for nor in any way related to any of the parties to this suit, nor am I in any way interested in the outcome thereof.

IN WITNESS WHEREOF, I have hereunto set my hand on this 15th day of November 2021.

CERTIFIED SHORTHAND REPORTER
CSR No. 084-003315