CHARLES CANTER (Cal. Bar No. 263197)
Email: canterc@sec.gov
DANIEL S. LIM (Cal. Bar No. 292406)
Email: limda@sec.gov
DOHOANG T. DUONG (Cal. Bar No. 219127)
Email: duongdo@sec.gov

Attorneys for Plaintiff
Securities and Exchange Commission
Michele Wein Layne, Regional Director
Katherine Zoladz, Associate Regional Director
Gary Y. Leung, Regional Trial Counsel
444 S. Flower Street, Suite 900
Los Angeles, California 90071
Telephone: (323) 965-3998
Facsimile: (213) 443-1904

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

vs.

CRITERION WEALTH MANAGEMENT INSURANCE SERVICES, INC.; ROBERT ALLEN GRAVETTE; and MARK ANDREW MACARTHUR

Defendants.

Case No. 2:20-cv-01402-SPG-JEM

**REPLY IN SUPPORT OF MOTION BY PLAINTIFF SECURITIES AND EXCHANGE COMMISSION TO EXCLUDE EXPERT TESTIMONY OF JANE JARCHO**

Date: March 15, 2023
Time: 1:30 p.m.
Courtroom: 5C
Judge: Hon. Sherilyn Peace Garnett

Pre-Trial Conf. Date: April 26, 2023
Trial Date: May 16, 2023

# I. INTRODUCTION

Defendants' opposition, ECF No. 113, only bolsters the SEC's motion to exclude the testimony of their proffered expert, Jane Jarcho. Defendants admit not only that Ms. Jarcho will testify on issues already considered and decided by the Court, but, remarkably, that Ms. Jarcho's testimony will contradict those very rulings. This alone is sufficient ground to exclude her testimony. In addition, Defendants propose to have Ms. Jarcho testify on matters not addressed in her report except in the form of legal conclusions that, again, were rejected by the Court. Finally, Defendants fumble the issues on Ms. Jarcho's lack of reliability. Specifically, they conflate an expert's qualifications to offer opinion testimony with the reliability of those opinions, relying solely on Ms. Jarcho's experience (the basis for her asserted qualifications) and ignoring the absence of any methodology or standards by which Ms. Jarcho reached her opinions.

In short, Ms. Jarcho's proffered testimony is inadmissible and should be excluded.

# II. ARGUMENT

## A. Ms. Jarcho's testimony would contradict the Courts prior rulings and is irrelevant and inadmissible to show good faith.

The Court has already determined that, as a matter of law, Defendants Gravette and MacArthur acted as investment advisers. ECF No. 81 at 19-22. In doing so, the Court flatly rejected Defendants' reliance on SEC guidance for the proposition that a dual-registrant acts only as a broker-dealer or only as an investment adviser for purposes of the registrant's legal duties:

> Nothing about the SEC's guidance or anything in case law suggests that an individual cannot act in both these capacities at various times within the context of a given client relationship … The question is whether, regardless of when and to what extent they acted as broker-dealers, they were *also* acting as investment advisers *when they recommended to a Criterion/Ausdal client that the client invest in a particular private placement offering*.

ECF No. 81 at 19-20, 22 (emphasis in original).

The Court's rejection of the defense's "two hats" conceit is plain, yet Ms. Jarcho's testimony goes against this ruling. Defendants state in their opposition that Ms. Jarcho will still testify:

> [T]hat a dual-registrant's duty is determined by the capacity in which the dual-registrant is acting [and] that Gravette and MacArthur acted as registered representatives of a broker dealer and *not* as investment adviser representatives with respect to the recommendations at issue.

ECF No. 113 at 1; *see also* Jarcho Rep. ¶ 31 ("[I]n my opinion, it is clear that Defendants acted in their capacity of a broker dealer and not an investment adviser and therefore could not have violated the Investment Advisers Act provisions cited in the claims for relief in the SEC's complaint"), ECF No. 105-3; Jarcho Dep. Tr. at 50:1-13 (stating her opinion that, when a dually registered investment adviser acts as a broker-dealer for an advisory client, "they do not have the obligations of an investment adviser"), ECF No. 105-6.

Despite this unbridgeable divide, Defendants make no attempt to explain how—and provide no authority suggesting that—an expert's incorrect legal conclusions on an issue already decided by the Court is admissible. Indeed, it is not. *Breitenbach v. United States*, No. 1:16-CV-00011-NAM, 2019 WL 5727476, at *4 (N.D.N.Y. Nov. 5, 2019) (granting motion to preclude expert testimony "related to issues previously decided on summary judgment"); *Godinez v. Huerta*, No. 16-CV-0236-BAS-NLS, 2018 WL 2018048, at *7 (S.D. Cal. May 1, 2018) (concluding that expert testimony was not relevant because claim corresponding to opinion was dismissed at summary judgment). And Ninth Circuit law is clear that an expert's opinion on an ultimate issue of law (*e.g.*, whether Defendants are investment advisers subject to the Adviser's Act) is impermissible. *See Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1059 (9th Cir. 2008) (affirming exclusion of expert testimony that contained conclusions of law such as duties and laws opposing party needed to follow); *United States v. Brodie*, 858 F.2d 492, 497 (9th Cir. 1988) (expert testimony setting forth incorrect legal conclusions "would have been not only

superfluous but mischievous”), *overruled on other grounds by United States v. Morales*, 108 F.3d 1031 (9th Cir. 1997) (en banc).

Defendants attempt to elide the conflict between Ms. Jarcho’s erroneous opinions and the Court’s prior rulings by asserting that Ms. Jarcho’s testimony is “directly relevant to the reasonableness of [Defendants’] belief that they were not subject to a fiduciary duty when recommending the investments at issue and, consequently, whether they acted in good faith.” ECF No. 113 at 5. This is just a failed reliance on professionals defense, because Defendants cannot show that they sought and received Ms. Jarcho’s advice—paid for in this case—at the time of their disclosure failures. And Defendants provide no other explanation for how Ms. Jarcho’s current *after-the-fact* views are relevant to the purported “reasonableness” of their past belief, nor do they cite any authority for the implied proposition that reasonableness of belief is relevant to good faith.

Indeed, in other contexts, the Ninth Circuit has held that reasonableness is not relevant to a good faith defense to scienter. *See United States ex rel. Oliver v. Parsons Co.*, 195 F.3d 457, 464 (9th Cir. 1999) (holding that, under the False Claims Act, “a contractor relying on a good faith interpretation of a regulation is not subject to liability, not because his or her interpretation was correct or ‘reasonable’ but because the good faith nature of his or her action forecloses the possibility that the scienter requirement is met”). As this Court recognized, “[s]cienter . . . is a subjective inquiry[, which] turns on the defendant’s actual state of mind.” ECF No. 81 at 32 (quoting *Gebhart v. SEC*, 595 F.3d 1034, 1042 (9th Cir. 2010)). Because it is subjective, the reasonableness of a defendant’s asserted good faith is irrelevant.

But more fundamentally, Defendants’ bald assertion that a reasonable and good-faith belief that they did not owe fiduciary duties—*i.e.*, that they were not acting as investment advisers—precludes Section 206(1) liability is wrong. As the Ninth Circuit has held in the context of securities fraud under Section 17(a) of the Securities Act:

> [T]he government is required to prove specific intent only as it relates to the action constituting the fraudulent, misleading or deceitful conduct, but not as to the knowledge that the instrument used is a security under the Securities Act. The government need only prove that the object sold or offered is, in fact, a security; it need not be proved that the defendant had specific knowledge that the object sold or offered was a security.

*United States v. Brown*, 578 F.2d 1280, 1284 (9th Cir. 1978). The undisputed facts establish that, for purposes of Section 206, Defendants are investment advisers as a matter of law. The only remaining issue for trial on the Section 206(a) claim is whether Defendants "engaged in 'knowing or reckless conduct' in their failures to fully disclose their conflicts of interest." Order, ECF No. 81 at 35 (quoting *Vernazza v. SEC*, 327 F.3d 851, 860 (9th Cir. 2003)). In other words, the question at trial will be whether Defendants knowingly or recklessly breached their fiduciary duties to disclose their additional compensation, not whether Defendants specifically knew they were acting as investment advisers. Accordingly, expert testimony intended to bolster Defendants' alleged "good faith" belief that they were not investment advisers is irrelevant. *Cf. United States v. Tucker*, 345 F.3d 320, 330-31 (5th Cir. 2003) (affirming exclusion of expert testimony that defendant believed instruments of fraud were not securities).[1]

In any event, the offering party bears the burden of demonstrating the admissibility of expert testimony, *In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 549 (C.D. Cal. 2014), and Defendants' assertion of relevance, leaving the Court and the SEC to guess at its meaning, is insufficient given the many other defects in Ms.

---

[1] There is no reason to conclude that Gravette's and McArthur's good-faith belief with respect to their fiduciary duties has any bearing on the aiding and abetting claims since those claims involve aiding and abetting *Criterion's* breaches of its fiduciary duties. Criterion was never a broker-dealer and at all times a registered investment adviser. And courts are clear that the mental state required for aiding and abetting focuses on the conduct of the adviser. *See SEC v. Batterman*, No. 00 CIV. 4835 (LAP), 2002 WL 31190171, at *1 (S.D.N.Y. Sept. 30, 2002) ("[Co-defendant] also assisted [Principal, who opened a trading account at a BD in Company A's name, controlled the transfer of funds in and out of Company A's accounts, and made investment management decisions for Company A] in making investment management decisions . . . and knew, or was reckless in not knowing, that [Principal] was acting as an investment adviser.").

Jarcho's testimony as explained here and in the SEC's motion to exclude.

**B. Ms. Jarcho has offered no opinions on the extent to which Defendants' disclosures departed from the applicable standards or any reliable basis on which she would opine on this issue.**

Defendants state that Ms. Jarcho will testify "as to the adequacy of Defendants' conflict disclosures." ECF No. 113 at 1. The SEC does not dispute that the extent to which Defendants conduct departed from the standards of ordinary care is relevant to Defendants' recklessness. *Cf.* ECF No. 113 at 5-6 ("the extent to which those disclosures departed from [the applicable legal] standard is relevant to determining whether Defendants acted with scienter"). But Ms. Jarcho's report contains no opinions about the applicable standard of care or how Defendants' disclosures departed from them. In fact, Ms. Jarcho's only opinion "as to the adequacy of Defendants' conflict disclosure" is her opinion that "the compensation received by Defendants was fully disclosed." Jarcho Report ¶ 36; *see also id.*at 16-17 ("[I]n my opinion, they satisfied their fiduciary duty to clients. . . . [I]n my opinion, Defendants did not violate the provisions of the securities laws alleged in the SEC Complaint."). Yet the Court has already decided that Defendants' failed to adequately disclose their conflicts, ECF No. 81 at 24-31, and her testimony on this issue should be excluded for that reason. And as with her opinion on Defendants' status as investment advisers, Ms. Jarcho's opinion about their disclosures is an impermissible legal conclusion. *See Nationwide*, 523 F.3d at 1058-59 (affirming exclusion of opinions that party's actions were "wrongful").

Nothing in Defendants' opposition identifies any opinions by Ms. Jarcho regarding the "extent to which" Defendants' disclosures "departed from the applicable standard." ECF No. 113 at 5. Indeed, Defendants say nothing about Ms. Jarcho's opinions on this issue at all, but merely quote the Court's Order explaining how the issue is relevant. *Id.* at 6-7. A review of Ms. Jarcho's Expert Report reveals no such opinions, but a review does demonstrate that Ms. Jarcho has applied no

reliable methodology for her conclusory opinion and has no reliable basis on which to testify on the "extent to which" Defendants' disclosures "departed from the applicable standard."

Other than a summary paragraph, Jarcho Report ¶ 12, and the conclusion, *id.* at 16-17, Ms. Jarcho's discussion of Defendants' disclosures is set forth in three paragraphs in her report. The first, paragraph 36, simply asserts her conclusion that "the compensation received by Defendants was fully disclosed." In the second paragraph, Ms. Jarcho states that disclosures of conflicts of interest can be made through multiple documents, relying on a single footnote in the SEC's 2019 Guidance, *Commission Interpretation Regarding Standards of Conduct for Investment Advisers*, Release No. IA-5248, 84 Fed. Reg. 33669, 33677 n.68 (July 19, 2019). Jarcho Report ¶ 37. She then states, without explanation or analysis, that "through a series of documents, Defendants' clients received full disclosure." *Id.*

Finally, in paragraph 38, Ms. Jarcho provides conclusory statements with no corresponding analysis:

- "As the documents show, the compensation . . . was disclosed."
- "[t]he fact that Defendants were dually registered was not hidden. The Forms ADV were clear . . . ."
- "Criterion's Forms ADV were clear . . . ."
- "The selling agreements between T2 and Bird Rock [*sic*] are with Ausdal and an officer of Ausdal, not Gravette or MacArthur."
- "The [Alternative Investment Fee] was appropriate . . . ."
- "Criterion received a fully disclosed fee for its activities . . . as an investment adviser."
- "[T]he SEC's theory hangs on a badly shredded thread that asks the Court to ignore the plain reading of all the documents and perfectly permissible conduct under the securities laws . . . ."

Jarcho Report ¶ 38. Nothing in Ms. Jarcho's report assists the trier of fact in assessing

the extent to which Defendants failed to conform to the applicable standard. Nothing in the report elucidates what Ms. Jarcho understands that standard to be or how she assesses Defendants' disclosures relative to that standard. All that can be discerned from her report is that she does not think reference to industry customs and practices is appropriate. *See* Jarcho Rebuttal Report ¶ 2, ECF No. 105-5. *But see Vernazza v. SEC*, 327 F.3d 851, 861 (9th Cir. 2003) (generally, "industry practice is relevant to show the standard of care necessary to a recklessness inquiry"). In fact, on Ms. Jarcho's telling, there is only the record evidence itself to consider, but the trier of fact can review that evidence without the help of expert testimony. *See SEC v. Ambassador Advisors, LLC*, 576 F. Supp. 3d 250, 259 (E.D. Pa. 2021) (excluding expert's "recitation of the documents containing disclosure statements" because "quite simply, the jury can review the evidence in the record themselves").

In sum, while expert testimony on how far Defendants' disclosures departed from the standard of care may be relevant, Ms. Jarcho offered no such opinions in her report, and Defendants have otherwise failed to disclose any opinions by Ms. Jarcho on the issue. The opinions that have been disclosed are impermissible legal conclusions on issues already decided by the Court. Moreover, they evince no methodology or standard and provide nothing to assist the trier of fact in assessing how far Defendants fell short in satisfying their disclosure obligations.

### C. Defendants conflate qualification to testify as an expert with reliability of the offered testimony.

In its motion to exclude, the SEC explained that Ms. Jarcho's testimony is unreliable because she misapprehends the law in several respects, she speculates about Defendants' state of mind, and she employs no discernable methodology or standard in reaching her conclusion that Defendants adequately disclosed their conflicts, as just discussed. ECF No. 105-1 at 6-11. In their opposition, Defendants ignore that Ms. Jarcho admitted in her deposition that she did not analyze the statutory definition of "investment adviser" in the Advisers Act because she

thought—erroneously—that "the definition was not important." Jarcho Dep. Tr. at 46:19-20. Defendants' also ignore that Ms. Jarcho believes—erroneously—that when a dually registered investment adviser acts as a broker-dealer for an advisory client, "they do not have the obligations of an investment adviser." *Id.* at 50:1-13. *Cf.* Order, ECF No. at 20 (Defendants' "roles as investment advisers did not cease" just because Gravette and MacArthur also stepped into their roles as broker-dealers).

Undeterred by the Court's clear holding that Defendants were acting as investment advisers as a matter of law, Defendants propose to offer Ms. Jarcho's testimony that she thinks they were not. As noted above, this impermissible and incorrect legal conclusion should be excluded. But Defendants resist the contention that Ms. Jarcho's legal errors render her testimony unreliable because they are based on experience as a former SEC employee. ECF No. 9-10. To the contrary, an expert's opinions may be excluded as unreliable even though the expert is qualified.

The SEC takes no issue with Ms. Jarcho's purported qualifications, based on her experience, to testify as an expert. But qualification as an expert based on knowledge, skill, experience, training, or education is not carte blanche to offer any testimony whatsoever. An expert must still base her opinions on reliable "methods and procedures" and not "subjective belief or unsupported speculation." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 742 (3d Cir. 1994). If, despite the expert's qualifications, the court doubts the reliability of the methods and procedures employed, the testimony should be excluded. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 153 (1999) (affirming exclusion of unreliable testimony from qualified expert); *In re Silicone Gel Breast Implants Prod. Liab. Litig.*, 318 F. Supp. 2d 879, 916 (C.D. Cal. 2004) ("The real issue with Shanklin is not his qualifications, but whether his testimony is sufficiently reliable."); *Ambassador Advisors*, 576 F. Supp. 3d at 261-62 (rejecting as unreliable portions of otherwise qualified expert's testimony). Since Ms. Jarcho's *ipse dixit*, "in my experience" opinions are untethered from any discernable methodology, they should be excluded.

Regardless of her experience, Ms. Jarcho is wrong on the law in at least four ways: on the application of the definition of investment adviser; on the scope of an investment adviser's fiduciary duties when also acting as a broker-dealer; on her reading of the 2019 SEC guidance; and on the relevance of industry customs and practices. It is therefore unreliable. *See Loeffel Steel Prod., Inc. v. Delta Brands, Inc.*, 387 F. Supp. 2d 794, 806 (N.D. Ill. 2005); *see Imperial Trading Co., Inc. v. Travelers Prop. Cas. Co. of Am.*, 654 F. Supp. 2d 518, 523 (E.D. La. 2009). Her testimony is similarly unreliable because it is based on speculation about Defendants' state of mind. *See Barillas v. City of Los Angeles*, No. CV 18-08740-CJC, 2021 WL 4434977, at *12 (C.D. Cal. Apr. 12, 2021) (excluding testimony to the extent that it "speculate[d] about a party's subjective intentions"); *Godinez*, 2018 WL 2018048, at *7 (excluding testimony on defendant's "subjective knowledge or state of mind"); *see also SEC v. Life Wealth Mgmt., Inc.*, No. CV 10-4769 RSWL, 2013 WL 1660860, at *7-8 (C.D. Cal. Apr. 17, 2013) (excluding opinion testimony that defendants were "unbiased and acting in good faith" as improperly invading the province of the trier of fact). Finally, as explained above, her testimony is unreliable because it sets forth no methodology, but merely recites record evidence and arrives at a legal conclusion. *See, e.g.*, *Ambassador Advisors*, 576 F. Supp. 3d at 261-62; *Brodie*, 858 F.2d at 497.

## III. CONCLUSION

For all these reasons and the reasons set forth in the SEC's motion, the Court should exclude Ms. Jarcho's testimony in its entirety.

Dated: March 1, 2023

Respectfully submitted,

*/s/ Charles E. Canter*

CHARLES CANTER
DANIEL S. LIM
DOHOANG T. DUONG
Attorneys for Plaintiff
Securities and Exchange Commission

# PROOF OF SERVICE

I am over the age of 18 years and not a party to this action. My business address is:

U.S. SECURITIES AND EXCHANGE COMMISSION,
444 S. Flower Street, Suite 900, Los Angeles, California 90071
Telephone No. (323) 965-3998; Facsimile No. (213) 443-1904.

On March 1, 2023, I caused to be served the document entitled **REPLY IN SUPPORT OF MOTION BY PLAINTIFF SECURITIES AND EXCHANGE COMMISSION TO EXCLUDE EXPERT TESTIMONY OF JANE JARCHO** on all the parties to this action addressed as stated on the attached service list:

☐ **OFFICE MAIL:** By placing in sealed envelope(s), which I placed for collection and mailing today following ordinary business practices. I am readily familiar with this agency's practice for collection and processing of correspondence for mailing; such correspondence would be deposited with the U.S. Postal Service on the same day in the ordinary course of business.

☐ **PERSONAL DEPOSIT IN MAIL:** By placing in sealed envelope(s), which I personally deposited with the U.S. Postal Service. Each such envelope was deposited with the U.S. Postal Service at Los Angeles, California, with first class postage thereon fully prepaid.

☐ **EXPRESS U.S. MAIL:** Each such envelope was deposited in a facility regularly maintained at the U.S. Postal Service for receipt of Express Mail at Los Angeles, California, with Express Mail postage paid.

☐ **HAND DELIVERY:** I caused to be hand delivered each such envelope to the office of the addressee as stated on the attached service list.

☐ **UNITED PARCEL SERVICE:** By placing in sealed envelope(s) designated by United Parcel Service ("UPS") with delivery fees paid or provided for, which I deposited in a facility regularly maintained by UPS or delivered to a UPS courier, at Los Angeles, California.

☐ **ELECTRONIC MAIL:** By transmitting the document by electronic mail to the electronic mail address as stated on the attached service list.

☒ **E-FILING:** By causing the document to be electronically filed via the Court's CM/ECF system, which effects electronic service on counsel who are registered with the CM/ECF system.

☐ **FAX:** By transmitting the document by facsimile transmission. The transmission was reported as complete and without error.

I declare under penalty of perjury that the foregoing is true and correct.

Date: March 1, 2023

*/s/ Charles E. Canter*
Charles E. Canter

***SEC v. Criterion Wealth Management Insurance Services, Inc., et al.***
**United States District Court for the Central District of California**
**Case No. 2:20-cv-01402-ODW-JEM**

## SERVICE LIST

Kenneth E. Yeadon, Esq.
Hinshaw & Culbertson LLP
151 N. Franklin Blvd., Ste. 2500
Chicago, IL 60606
Email: kyeadon@hinshawlaw.com
***Attorney for Defendants Criterion Wealth Management Insurance Services, Inc., and Robert Allen Gravette***

Jeffrey R. Thomas, Esq.
Thomas Law LLC
3773 Cherry Creek North Dr., Ste. 717
Denver, CO 80209
Email: jthomas@thomaslawllc.com
***Attorney for Defendant Mark Andrew MacArthur***