CHARLES CANTER (Cal. Bar No. 263197)
Email:  canterc@sec.gov
DANIEL S. LIM (Cal. Bar No. 292406)
Email:  limda@sec.gov
DOHOANG T. DUONG (Cal. Bar No. 219127)
Email:  duongdo@sec.gov

Attorneys for Plaintiff
Securities and Exchange Commission
Michele Wein Layne, Regional Director
Katherine Zoladz, Associate Regional Director
Gary Y. Leung, Regional Trial Counsel
444 S. Flower Street, Suite 900
Los Angeles, California 90071
Telephone: (323) 965-3998
Facsimile: (213) 443-1904

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>CRITERION WEALTH MANAGEMENT INSURANCE SERVICES, INC.; ROBERT ALLEN GRAVETTE; and MARK ANDREW MACARTHUR<br><br>Defendants. | Case No. 2:20-cv-01402-SPG-JEM<br><br>**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**<br><br>Pre-Trial Conf. Date: April 26, 2023<br><br>Trial Date: May 16, 2023 |

# **TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................................1

II.     PROCEDURAL HISTORY ....................................................................1

III.    THE SEC'S CLAIMS FOR RELIEF .....................................................2

    A.      Summary Statement of Each Claim ............................................2

        First Claim for Relief: Violations of Section 206(1) of the Advisers Act ...........................................................................................2

        Second Claim for Relief: Violations of Section 206(2) of the Advisers Act ...........................................................................................2

        Third Claim for Relief: Violations of Section 207 of the Advisers Act ...2

        Fourth Claim for Relief: Violations of Section 206(4) of the Advisers Act and Rule 206(4)-7 ..................................................................3

        Fifth Claim for Relief: Aiding and Abetting Violations of Sections 206(1), 206(2), and 207 of the Advisers Act ...............................................3

        Sixth Claim for Relief: Aiding and Abetting Violations of Sections 206(1) and 206(2) of the Advisers Act ..........................................3

    B.      Elements Required to Establish Each Claim................................3

        1.      First Claim—Section 206(1) of the Advisers Act .........................3

            Investment Adviser ........................................................4

            Device, Scheme, or Artifice...........................................5

            Scienter........................................................................5

        2.      Second Claim—Section 206(2) of the Advisers Act.....................7

        3.      Third Claim—Section 207 of the Advisers Act .........................7

        4.      Fourth Claim—Section 206(4) of the Advisers Act and Rule 206(4)-7..................................................................................8

        5.      Fifth and Sixth Claims—Section 209(f) of the Advisers Act.........8

    C.      Brief Description of Key Evidence in Support of Each Claim ................9

        1.      First Claim—Section 206(1) of the Advisers Act .........................9

        2.      Second Claim—Section 206(2) of the Advisers Act....................11

        3.      Third Claim—Section 207 of the Advisers Act .........................11

        4.      Fourth Claim—Section 206(4) of the Advisers Act and Rule 206(4)-7..................................................................................12

5.     Fifth and Sixth Claims—Section 209(f) of the Advisers Act.......13

D.    Defendants' Affirmative Defenses.............................................................14

E.    Remedies .......................................................................................................15

     1.     Injunctions.....................................................................................15

     2.     Disgorgement ................................................................................16

     3.     Civil Penalties ...............................................................................17

F.    Anticipated Evidentiary Issues and Issues of Law...............................18

G.    Bifurcated Issues ........................................................................................21

H.    Jury Trial ......................................................................................................21

I.    Attorney's Fees...........................................................................................21

J.    Abandonment of Issues .............................................................................21

## **TABLE OF AUTHORITIES**

**Cases**

*Aaron v. SEC,*
    446 U.S. 680 (1980)......................................................................7, 19

*Abrahamson v. Fleschner,*
    568 F.2d 862 (2d Cir. 1977) ..............................................................4

*United States v. Brown,*
    578 F.2d 1280 (9th Cir. 1978) .....................................................7, 19

*Arthur Lipper Corp. v. SEC,*
    547 F.2d 171 (2d Cir. 1978) .........................................................6, 20

*Financial Planning Ass'n. v. SEC,*
    482 F.3d 481 (D.C. Cir. 2007)............................................................4

*Gabelli v. SEC,*
    568 U.S. 442 (2013)...........................................................................14

*Hollinger v. Titan Capital Corp.,*
    914 F.2d 1564 (9th Cir. 1990) ..........................................................5

*Liu v. SEC,*
    140 S. Ct. 1936 (2020)......................................................................16

*Lowe v. SEC,*
    472 U.S. 181 (1984)............................................................................4

*Ponce v. SEC,*
    345 F.3d 722 (9th Cir. 2003) .............................................................9

*Reese v. Malone,*
    747 F.3d 557 (9th Cir. 2014) .............................................................6

*SEC v. Apuzzo,*
    689 F.3d 204, 212 (2d Cir. 2012) ......................................................9

*SEC v. Burns,*
    816 F.2d 471 (9th Cir. 1987) .............................................................6

*SEC v. Capital Gains Research Bureau, Inc.*,
    375 U.S. 180 (1963)........................................................................5, 6

*SEC v. CMKM Diamonds, Inc.*,
    635 F. Supp. 2d 1185 (D. Nev. 2006) ........................................17, 18

*SEC v. Coates*,
    137 F. Supp. 2d 413 (S.D.N.Y. 2001) ..............................................18

*SEC v. Falstaff Brewing Corp.*,
    629 F.2d 62, 77 (D.C. Cir. 1980).................................................6, 20

*SEC v. Fehn*,
    97 F.3d 1276, 1295-96 (9th Cir. 1996)............................................15

*SEC v. First Pac. Bancorp*,
    142 F.3d 1186 (9th Cir. 1998) ..........................................................17

*SEC v. Janus Spectrum LLC*,
    2020 U.S. App. LEXIS 20710 (9th Cir. July 1, 2020) .....................16

*SEC v. Manor Nursing Centers, Inc.*,
    458 F.2d 1082, 1105 (2d Cir. 1972) .................................................17

*SEC v. Merrill Scott & Assocs., Ltd.*,
    505 F. Supp. 2d 1193, 1215 (D. Utah 2007) ......................................7

*SEC v. Murphy*,
    50 F. 4th 832, 851 (9th Cir. 2022)....................................................15

*SEC v. Murphy*,
    626 F.2d 633, 655 (9th Cir. 1980) ..............................................15, 18

*SEC v. Platform Wireless Int'l Corp.*,
    617 F.3d 1072 (9th Cir. 2010) .......................................................6, 17

*SEC v. Roberts*,
    No. 8:21-CV-01615-DOC, 2022 WL 2203676 (C.D. Cal. Jan. 25, 2022) .........9

*SEC v. Steadman*,
    967 F.2d 636, 647 (D.C. Cir. 1992)....................................................8

iv

*SEC v. Stubos*,

    No. 22-CV-04674 (LJL), 2022 WL 6776741 (S.D.N.Y. Oct. 11, 2022) ..........14

*SEC v. Wenke*,

    622 F.2d 1363 (9th Cir. 1980) ...................................................................16

*SEC v. Westport Capital Markets, LLC*,

    408 F. Supp. 3d 93 (D. Conn. 2019) ...........................................................6, 7

SEC v. Westport Capital Markets, LLC,

    No. 3:17-cv-02064-JAM (D. Conn. Mar. 16, 2020) .........................................7

*SEC v. Yang*,

    2020 WL 4530630 (9th Cir. Aug. 6, 2020) .....................................................17

*The Robare Group, Ltd. v. SEC*,

    922 F.3d 468 (D.C. Cir. 2019) ..................................................................5, 8

*Thomas v. Metropolitan Life Ins. Co.*,

    631 F.3d 1153 (10th Cir. 2011) ..................................................................4

*Transamerica Mortgage Advisors, Inc. v. Lewis*,

    444 U.S. 11 (1979) ....................................................................................5

*United States v. Elliott*,

    62 F.3d 1304 (11th Cir. 1995) *as amended by* 82 F.3d 989 (11th Cir. 1996) .....4

*United States v. Lloyd*,

    807 F.3d 1128 (9th Cir. 2015) ...................................................................8

*United States v. Tagliaferri*,

    820 F.3d 568 (2d Cir. 2016) .....................................................................6

*Vernazza v. SEC*,

    327 F.3d 851 *as amended by* 335 F.3d 1096 (9th Cir. 2003) ....................5, 7, 19

*Wonsover v. SEC*,

    205 F.3d 408 (D.C. Cir. 2000) ...................................................................8

**Securities Act of 1933**

Section 5

     [15 U.S.C. § 77e] ...................................................................................8

Section 17(a)(1)

     [15 U.S.C. § 77q(a)(1)]......................................................................7, 19

**Securities Exchange Act of 1934**

Section 21(d)(3)

     [15 U.S.C. § 78u(d)(3)] .........................................................................17

Section 21(d)(5)

     [15 U.S.C. § 78u(d)(5)] ....................................................................16, 17

Section 21(d)(7)

     [15 U.S.C. § 78u(d)(7)] .........................................................................17

Section 21(d)(8)(A)

     [15 U.S.C. § 78u(d)(8)(A)].....................................................................14

Section 21(d)(8)(B)

     [15 U.S.C. § 78u(d)(8)(B)].....................................................................14

**Investment Advisers Act of 1940**

Section 202(a)(11)

     [15 U.S.C. § 80b-2(a)(11)] ......................................................................4

Section 203(c)

     [15 U.S.C. § 80b-3(c)].............................................................................8

Section 206

     [15 U.S.C. § 80b-6] ...............................................................................19

Section 207

     [15 U.S.C. § 80b-7]..................................................................................7

Section 209(d)

     [15 U.S.C § 80b-9(d)].............................................................................15

Section 209(e)
      [15 U.S.C. § 80b-9(e)]...........................................................................17
Section 209(e)(2)
      [15 U.S.C. § 80b-9(e)(2)]. ....................................................................17
Section 209(e)(2)(B)
      [15 U.S.C. § 80b-9(e)(2)(B)]. ...............................................................18
Section 209(e)(2)(C)
      [15 U.S.C. § 80b-9(e)(2)(C)]. ...............................................................18
Section 209(f)
      [15 U.S.C. § 80b-9(f)] ...........................................................................9

**Federal Regulations**

17 C.F.R. § 201.1003 ...................................................................................18
17 C.F.R. § 275.203-1(a) ..............................................................................8
17 C.F.R. § 275.206(4)-7(a)(b).....................................................................8
17 C.F.R. § 279.1 .........................................................................................8

**Other Authorities**

National Defense Authorization Act for Fiscal Year 2021,
      Pub. L. No. 116-283, Section 6501 ......................................................17
Compliance Programs of Investment Companies & Investment Advisers,
      68 Fed. Reg. 74714 (Dec. 24, 2003)......................................................8

## I.    **INTRODUCTION**

Pursuant to Local Rule 16-4, Plaintiff Securities and Exchange Commission ("SEC") hereby submits this Memorandum of Contentions of Fact and Law. This case arises out of Defendants' failures to disclose additional commission compensation they negotiated and received from two fund managers—T2 and Bird Rock—when their clients invested in four private real estate fund offerings. The SEC asserts violations of Section 206(1) of the Investment Advisers Act of 1940 ("Advisers Act"), 15 U.S.C. § 80b-6(1), Section 206(2), 15 U.S.C. § 80b-6(2), Section 206(4) and Rule 206(4)-7, 15 U.S.C. § 80b-6(4) and 17 C.F.R. § 275.206(4)-7, Section 207, 15 U.S.C. § 80b-7, and, in the alternative, Section 209(f), 15 U.S.C. § 80b-9(d). The SEC seeks permanent injunctions, including conduct-based injunctions, disgorgement with prejudgment interest, and civil penalties. As explained below, the facts that will be established at trial and the law entitle the SEC to relief on all of its claims.

## II.  **PROCEDURAL HISTORY**

The SEC filed its Complaint on February 12, 2020, ECF No. 1, and Defendants filed their Answers on May 13, 2020, ECF Nos. 21-22. The SEC moved for partial summary judgment against all Defendants on its First, Second, and Fourth Claims for Relief, ECF No. 41, and Defendants moved for partial summary judgment on the First, Second, Fifth, and Sixth Claims for Relief, ECF Nos. 50-51. On April 25, 2022, the Court granted, in part, and denied, in part, the SEC's motion, concluding that Defendants failed to adequately disclose their conflicts of interest to their clients in violation of Section 206(2) of the Investment Advisers Act of 1940 ("Advisers Act"), 15 U.S.C. § 80b-6(2). ECF No. 81. The Court determined that genuine issues of material fact regarding whether Defendants acted with scienter in failing to disclose their conflicts precluded summary judgment on the SEC's Section 206(1) claim. Similarly, the Court could not determine, as a matter of law, whether Criterion was negligent in failing to adopt and maintain written policies and procedures reasonably

designed to prevent violations of the Advisers Act, as required by Section 206(4) and Rule 206(4)-7, 15 U.S.C. § 80b-6(4) and 17 C.F.R. 275.206(4)-7. The Court denied Defendants' motions in their entirety. Defendants sought reconsideration, ECF No. 87, which the Court denied on June 24, 2022, ECF No. 92. Defendants moved to certify the summary judgment order for interlocutory appeal, ECF No. 99, and the Court denied that motion on February 1, 2023, ECF NO. 109.

## III.   THE SEC'S CLAIMS FOR RELIEF

### A.   Summary Statement of Each Claim

**First Claim for Relief: Violations of Section 206(1) of the Advisers Act**

The SEC's first claim alleges that, in violation of Section 206(1) of the Advisers Act, Defendants employed a device, scheme, or artifice to defraud their clients by arranging for compensation to be paid by fund managers and failing to fairly and fully disclose all material facts about the resulting conflicts of interest inherent in these compensation arrangements.

**Second Claim for Relief: Violations of Section 206(2) of the Advisers Act**

The SEC's second claim alleges that, in violation of Section 206(2) of the Advisers Act, Defendants engaged in transactions, practices, or courses of business that operated as a fraud or deceit on their clients by arranging for the aforementioned compensation arrangement without full disclosure of the resulting conflicts. As noted above, the Court has granted summary judgment on this claim, finding that Defendants violated Section 206(2) as a matter of law. ECF No. 81.

**Third Claim for Relief: Violations of Section 207 of the Advisers Act**

The SEC's third claim alleges that, in violation of Section 207 of the Advisers Act, Criterion and Gravette willfully omitted statements of material fact required to be stated in Criterion's Forms ADV filed with the SEC by failing to disclose all material facts about the compensation arrangements with the fund managers and by failing to explain why those arrangements created conflicts of interest.

**Fourth Claim for Relief: Violations of Section 206(4) of the Advisers Act and Rule 206(4)-7**

The SEC's fourth claim alleges that, in violation of Section 206(4) of the Advisers Act and Rule 206(4)-7, Criterion failed to adopt and maintain written policies and procedures reasonably designed to prevent violations of the Advisers Act by:

- failing to address in its compliance manual or other written policy due diligence and valuation of private placements;
- failing to update its compliance manual from 2008 through 2016; and
- failing to adopt written policies and procedures to fully and accurately disclose all conflicts of interest in its Form ADV.

**Fifth Claim for Relief: Aiding and Abetting Violations of Sections 206(1), 206(2), and 207 of the Advisers Act**

The SEC's fifth claim alleges that, in violation of Section 209(f) of the Advisers Act, Gravette knowingly and recklessly provided substantial assistance to, and thereby aided and abetted, Criterion in its violations of Sections 206(1), 206(2) and 207 of the Advisers Act. The SEC's fifth claim is pleaded in the alternative to primary liability under claims one, two, and three.

**Sixth Claim for Relief: Aiding and Abetting Violations of Sections 206(1) and 206(2) of the Advisers Act**

The SEC's sixth claim alleges that, in violation of Section 209(f) of the Advisers Act, MacArthur knowingly and recklessly provided substantial assistance to, and thereby aided and abetted, Criterion in its violations of Sections 206(1) and 206(2) of the Advisers Act. The SEC's sixth claim is pleaded in the alternative to primary liability under claims one and two.

**B.     Elements Required to Establish Each Claim**

      **1.     First Claim—Section 206(1) of the Advisers Act**

To establish a violation of Section 206(1) of the Advisers Act, the SEC must

prove that:

    (1) Defendants were investment advisers;

    (2) they used the mails or instrumentalities of interstate commerce to employ a device, scheme, or artifice;

    (3) the device, scheme, or artifice violated Defendants' fiduciary duty to their clients in that they made false and misleading statements or omissions of material fact to their clients; and

    (4) Defendants acted with scienter.

Order, ECF No. 81 at 16 (citing *SEC v. Merrill Scott & Assocs., Ltd.*, 505 F. Supp. 2d 1193, 1215 (D. Utah 2007)).

## **Investment Adviser**

An "investment adviser" is "any person who, for compensation, engages in the business of advising others, either directly or through publications or writings, as to the value of securities or as to the advisability of investing in, purchasing, or selling securities, or who, for compensation and as part of a regular business, issues or promulgates analyses or reports concerning securities." 15 U.S.C. § 80b-2(a)(11); *see also Lowe v. SEC*, 472 U.S. 181, 203 (1984) ("The legislative history plainly demonstrates that Congress was primarily interested in regulating the business of rendering personalized investment advice."); *United States v. Elliott*, 62 F.3d 1304, 1311 (11th Cir. 1995), *amended*, 82 F.3d 989 (11th Cir. 1996) (holding that because defendants "receive[d] compensation for providing investment advice" and "were also 'in the business of advising others,' they qualif[ied] as investment advisers under [15 U.S.C. §] 80b-2(a)(11)]"); *Abrahamson v. Fleschner*, 568 F.2d 862, 870 (2d Cir. 1977) ("persons who managed the funds of others for compensation are 'investment advisers' within the meaning of the statute"); *Thomas v. Metropolitan Life Ins. Co.*, 631 F.3d 1153, 1163-64 (10th Cir. 2011) (discussing legislative history of the Advisers Act); *Financial Planning Ass'n. v. SEC*, 482 F.3d 481, 485 (D.C. Cir. 2007).

### Device, Scheme, or Artifice

The Advisers Act establishes "enforceable fiduciary obligations" on investment advisers with respect to their advisory clients. *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 17 (1979). In establishing these fiduciary duties in federal law, Congress intended "to eliminate, or at least expose, all conflicts of interest that might incline an investment adviser—consciously or unconsciously—to render advice which was not disinterested." *SEC v. Capital Gains Research Bureau, Inc.*, 375 U.S. 180, 191-92 (1963). The Advisers Act requires "full and fair disclosure of all material facts," *id.* at 194, and "[f]ailure to disclose material facts must be deemed fraud or deceit" within the meaning of section 206, *id.* at 200. "[P]otential conflicts of interest are 'material' facts with respect to clients and the Commission." *Vernazza v. SEC*, 327 F.3d 851, 859 (9th Cir. 2003), *amended by*, 335 F.3d 1096 (9th Cir. 2003). Investment advisers thus owe a fiduciary duty to disclose all potential conflicts of interests "accurately and completely," *id.* at 860, "in a manner that would enable their clients to understand the source and nature of the conflicts," *The Robare Group, Ltd. v. SEC*, 922 F.3d 468, 477 (D.C. Cir. 2019).

### Scienter

Scienter is "a mental state embracing intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976). Intent in this context, however, encompasses recklessness, which is a form of intent "less culpable than 'deliberately and cold-bloodedly . . . conceal[ing] information.'" *Hollinger v. Titan Capital Corp.*, 914 F.2d 1564, 1569 (9th Cir. 1990) (en banc) (quoting *Nelson v. Serwold*, 576 F.2d 1332, 1337 (9th Cir. 1978)). Thus, scienter may be proven by a showing of "deliberate recklessness" or "conscious recklessness," which is an extreme departure from the standards of ordinary care presenting a danger of misleading investors, which is either known to the defendant or is so obvious that the defendant must have been aware of it. While this is a "subjective inquiry turning on the defendant's actual state of mind," a defendant who is aware of the facts

surrounding the failure to disclose "cannot ignore the facts and plead ignorance of the risk." *SEC v. Platform Wireless Int'l Corp.*, 617 F.3d 1072, 1093-94 (9th Cir. 2010); *see also Reese v. Malone*, 747 F.3d 557, 569 (9th Cir. 2014) ("An actor is deliberately reckless if he had reasonable grounds to believe material facts existed that were misstated or omitted, but nevertheless failed to obtain and disclose such facts although he could have done so without extraordinary effort.") (quotation and alterations omitted); *accord Weinstein v. McClendon*, 757 F.3d 1110, 1113 (10th Cir. 2014) ("'[T]o establish scienter in a securities fraud case alleging non-disclosure of potentially material facts, the plaintiff must demonstrate: (1) the defendant knew of the potentially material fact, and (2) the defendant knew that failure to reveal the potentially material fact would likely mislead investors.'") (quoting *City of Phila. v. Fleming Cos., Inc.,* 264 F.3d 1245, 1261 (10th Cir. 2001)). Recklessness may be inferred from circumstantial evidence, *Platforms Wireless*, 617 F.3d at 1092.

Because the Advisers Act prohibits failure to disclose material facts, not just affirmative frauds, "an investment adviser may violate Section 206(1) by failing to disclose material information about the adviser's conflict of interest even if the adviser had no intent to injure his clients and even if his clients were not injured at all." *SEC v. Westport Capital Markets, LLC*, 408 F. Supp. 3d 93, 103-04 (D. Conn. 2019) (citing *Capital Gains*, 375 U.S. at 192; *United States v. Tagliaferri*, 820 F.3d 568, 572 (2d Cir. 2016)). Furthermore, in the context of the antifraud provisions of the securities laws, "there must be proof of intention 'to deceive, manipulate, or defraud'—not an intention to do this in knowing violation of the law." *Arthur Lipper Corp. v. SEC*, 547 F.2d 171, 181 (2d Cir. 1978). "Knowledge means awareness of the underlying facts, not the labels that the law places on those facts. . . . A knowledge of what one is doing and the consequences of those actions suffices." *SEC v. Falstaff Brewing Corp.*, 629 F.2d 62, 77 (D.C. Cir. 1980). Accordingly, in the context of Section 206(1), the SEC must demonstrate knowledge or recklessness with respect to the failure to disclose conflicts of interest; proof that defendants knew or were

6

reckless in not knowing they were investment advisers is unnecessary. *Accord United States v. Brown*, 578 F.2d 1280, 1284 (9th Cir. 1978) (affirming conviction for violation of Section 17(a)(1) of the Securities Act of 1933, 15 U.S.C. § 77q(a)(1), and holding: "The government need only prove that the object sold or offered is, in fact, a security; it need not be proved that the defendant had specific knowledge that the object sold or offered was a security."); *see also Vernazza*, 327 F.3d at 860 (holding that Section 206(1) requires scienter because "its language is nearly identical to that of Securities Act § 17(a)(1)"); *Aaron v. SEC*, 446 U.S. 680, 695-696 (holding that Section 17(a)(1) requires scienter, but not Section 17(a)(2) or Section 17(a)(3)).

### 2. Second Claim—Section 206(2) of the Advisers Act

The elements of Section 206(2) are the same as the elements of Section 206(1) except that Section 206(2) does not require a showing of scienter. Order, ECF No. 81 at 16 (citing *SEC v. Merrill Scott & Assocs., Ltd.*, 505 F. Supp. 2d 1193, 1215 (D. Utah 2007)); *see also Westport Capital*, 408 F. Supp. 3d at 106.

### 3. Third Claim—Section 207 of the Advisers Act

To establish a violation of Section 207 of the Adviser Act, the SEC must prove that:

(1) Criterion and Gravette filed a required registration form or report with the SEC;

(2) The form or report Criterion and Gravette filed contained an untrue statement of a material fact, or omitted to state a material fact that was required to be stated; and

(3) Criterion and Gravette willfully made a statement that they knew to be untrue or willfully omitted to state a material fact that they knew must be stated.

15 U.S.C. § 80b-7. *See also* Jury Instructions, *SEC v. Westport Capital Markets, LLC*, No. 3:17-cv-02064-JAM (D. Conn. Mar. 16, 2020), ECF No. 125 at 10-11.

The Form ADV, the adviser registration application, is a required registration

form or report within the meaning of Section 207. 15 U.S.C. § 80b-3(c); 17 C.F.R. § 275.203-1(a); 17 C.F.R. § 279.1; *see also Robare Group*, 922 F.3d at 472-73. "Willfulness" means an intent to commit the act that constitutes the violation, but does not require knowledge of the rule or statute violated. *Robare Group*, 922 F.3d at 479 (citing *Wonsover v. SEC*, 205 F.3d 408, 413-15 (D.C. Cir. 2000)); *accord United States v. Lloyd*, 807 F.3d 1128, 1166 (9th Cir. 2015) (in criminal prosecution for selling unregistered securities in violation of Section 5 of the Securities Act, 15 U.S.C. § 77e, "willfully" does not require actor to have known conduct was unlawful). Omitting disclosure of the receipt of commission compensation constitutes an omission of material fact under Section 207. *Westport Capital*, 408 F. Supp. 3d at 110.

### 4.     Fourth Claim—Section 206(4) of the Advisers Act and Rule 206(4)-7

To establish a violation of Rule 206(4)-7, the SEC must prove either that:

(1) Criterion failed to adopt and implement written policies and procedures reasonably designed to prevent violations of the Advisers Act; or

(2) Criterion failed to review at least annually the adequacy and effectiveness these policies and procedures.

17 C.F.R. § 275.206(4)-7(a) & (b). While Rule 206(4)-7 does not define "reasonably designed," the SEC has stated:

> Each adviser should adopt policies and procedures that take into consideration the nature of that firm's operations. The policies and procedures should be designed to prevent violations from occurring, detect violations that have occurred, and correct promptly any violations that have occurred.

*Compliance Programs of Inv. Cos. & Inv. Adv.*, 68 Fed. Reg. 74714, 74715 (Dec. 24, 2003). A showing of scienter is not required under Section 206(4) of the Advisers Act or Rule 206(4)-7. *See SEC v. Steadman,* 967 F.2d 636, 647 (D.C. Cir. 1992).

### 5.     Fifth and Sixth Claims—Section 209(f) of the Advisers Act

To establish a violation of Section 209(f) of the Advisers Act, the SEC must

prove:

      (1) an underlying violation of the securities laws;

      (2) that the defendant knew of or recklessly disregarded the primary violation and his own role in furthering it; and

      (3) that the defendant provided substantial assistance in the primary violation.

*See Ponce v. SEC*, 345 F.3d 722, 737 (9th Cir. 2003); 15 U.S.C. § 80b-9(f). A defendant provides substantial assistance when he "associated himself with the venture, participated in it as something he wished to bring about, and sought by his action to make the venture succeed." *SEC v. Roberts*, No. 8:21-CV-01615-DOC, 2022 WL 2203676, at *5 (C.D. Cal. Jan. 25, 2022) (citing *SEC v. Apuzzo*, 689 F.3d 204, 212 (2d Cir. 2012)).

### C. Brief Description of Key Evidence in Support of Each Claim

#### 1. First Claim—Section 206(1) of the Advisers Act

The Court has already determined that Defendants were at all relevant times investment advisers who, by use of the mails and instrumentalities of interstate commerce, breached their fiduciary duties to their clients by failing to disclose all material facts about their conflicts of interest. ECF No. 81. The only remaining issue of fact for trial under the SEC's first claim for relief is whether Defendants breached their fiduciary duties with scienter. The evidence will show that they did.

First, Defendants' own Forms ADV in 2014, 2015, and 2016 acknowledged—while deliberately holding back the material particulars—that their broker-dealer compensation created conflicts of interest, and both Gravette and MacArthur admitted as much in their depositions. The SEC's expert, Dr. Sunil Wahal, will testify that Defendants' disclosures were inconsistent with industry customs and practices in that they omitted material facts about Defendants' compensation arrangements and what little disclosure was provided was discretely conflicting and piecemeal over numerous documents, including documents such as the private placement memoranda that were not even drafted by Defendants. Moreover, Larry Nakamura, who consulted

for Criterion on its compliance policies, will testify that he recommended enhanced controls and disclosures surrounding private placements as early as 2014, but that Defendants did not implement his recommendations until after the SEC's examination of Criterion in 2017. Most significantly, Nakamura will testify that although he was retained by Criterion to ensure the firm and its principals were meeting their compliance obligations under the law, Defendants never disclosed to him the full facts and circumstances of their compensation arrangements with T2 and Birdrock either

Moreover, testimony from representatives of T2 will show that Defendants' conflicts arose out of their own deliberate conduct: Defendants could have recommended to their clients T2's funds without taking commissions, but Defendants suggested to T2 the creation of separate share classes and feeder funds that provided for compensation to Defendants and personally negotiated the compensation arrangements. T2 representatives will also testify, and contemporaneous emails will confirm, that Defendants knew their arrangements would directly depress their clients' return by reducing the profit share due to investors and by increasing the administrative costs borne by the smaller, Criterion-only investment pools. In addition, audited financial statements, which were provided to Defendants, will show the Criterion-only classes/feeders markedly underperforming the generally available classes/feeders.

Further, representatives from T2 will testify, and the placement agreements between T2 and Ausdal will confirm, that Defendants, as Ausdal's representatives, were specifically required to provide to their clients a fee disclosure statement, but Defendants never attempted to provide such a document. Testimony will also show that Defendants directed T2 not to communicate with Criterion clients. Dr. Patrick Denard, a former client, will testify that, when considering a recommendation to invest in one of the T2 funds, Gravette deflected a question about how profits would be allocated, concealing Gravette's own financial interest in Denard's investment

decision. As to the Bird Rock funds, the evidence will show that Defendants earned an automatic 2% per year, on top of the "discounted" alternative investment fee Criterion also charged, but Defendants never told their clients that 95% of this on-going 2% payment went to them personally. Nor did Defendants disclose that this compensation would be higher than advisory fees alone, giving them a strong incentive to recommend those funds over other products. Finally, the SEC's second expert, Andy Richmond, will explain how Defendants' deliberate conduct reduced their clients' returns and benefitted Defendants handsomely. Mr. Richmond will show that, for years, Gravette and MacArthur earned over $600,000 each from their undisclosed compensation arrangements.

In other words, the evidence will show that Defendants' failure to disclose conflicts of this magnitude—conflicts of their own making—for years was not merely negligent; it was intentional. Defendants created the conflicts, understood the conflicts, knew they had to disclose the conflicts, and knew what their various documents did, and did not, disclose. At the very minimum, the evidence will demonstrate Defendants' reckless disregard for their fiduciary duties owed to their clients.

### 2.     Second Claim—Section 206(2) of the Advisers Act

Liability is established on the SEC's second claim for relief. ECF No. 81.

### 3.     Third Claim—Section 207 of the Advisers Act

It is undisputed that the Gravette signed and filed Criterion's Forms ADV. The instructions for completed Item 10 of the Form ADV stated:

> Describe any relationship or arrangement that is material to your advisory business or to your *clients* that you or any of your *management persons* have with any *related person* listed below. Identify the *related person* and if the relationship or arrangement creates a material conflict of interest with *clients*, describe the nature of the conflict and how you address it.

General Instructions for Part 2 of Form ADV at 5. It is undisputed that Criterion's

Forms ADV did not "identify the related person," *i.e.* Gravette and MacArthur. It is also undisputed that the Forms ADV did not disclose all material facts about Defendants' compensation. Moreover, in describing how Criterion addressed its (inadequately disclosed) conflicts of interest, the Forms ADV stated that "we disclose to clients the existence of all material conflicts of interest." As established in the Court's summary judgment order, this statement was false.

Accordingly, the remaining fact issue for the SEC's third claim is whether Gravette and Criterion "willfully" omitted required information (the identity of related broker-dealers and all material facts about Defendants' conflicts), and whether they "willfully" made a false statement about disclosing "to clients the existence of all material conflicts of interest." Much of the same evidence that demonstrates scienter for purposes of Section 206(1) also demonstrates Gravette's willfulness and, because Criterion acted through Gravette, Criterion's willfulness. Gravette knew what was and was not stated in the Forms ADV, knew that he and MacArthur were broker-dealers, and knew all the material facts about the conflicts arising from the compensation agreements. Finally, Mr. Nakamura's testimony will show that Gravette was told as early as 2014 that Criterion's written disclosures were incomplete and/or inaccurate and should be corrected. In short, the omissions and statements in the Forms ADV were willful.

**4.   Fourth Claim—Section 206(4) of the Advisers Act and Rule 206(4)-7**

Following the Court's summary judgment order, only Criterion's negligence remains to be determined on the SEC's claim for violation of Rule 206(4)-7. It is undisputed that Criterion's compliance manual was not updated between 2008 and 2017, and thus failed to include policies and procedures designed to detect and address issues arising from Defendants' recommendations of private placements offerings to their advisory clients. As above, Mr. Nakamura's testimony will establish that Defendants were notified of these shortcomings in their compliance program but

did nothing to address them. And Dr. Wahal will explain how Criterion's policies fell short of industry customs and practice. Further demonstrating Criterion's negligence, by 2017 when it was finally updated, the 2008 compliance manual contained numerous factual errors and outdated information.

### 5.     Fifth and Sixth Claims—Section 209(f) of the Advisers Act

Because the SEC has pleaded the aiding and abetting claims in the alternative, the Court need not reach them if the Court finds the Defendants committed the primary violations, as the Court has done regarding liability under Section 206(2). Nevertheless, as to the fifth and sixth claims, the evidence offered in support of the Section 206(1) claim establishes that Gravette and MacArthur knew Criterion owed a fiduciary duty to disclose all material facts about its conflicts of interest to its clients, knew what disclosures Criterion did and did not make to its clients in its Forms ADV, advisory agreements, and other documents, and knew of the conflicts they themselves created when they negotiated the compensation agreements with T2 and Bird Rock. Finally, it is undisputed that Gravette and MacArthur controlled Criterion and the disclosures to Criterion's clients, and Gravette and MacArthur recommended the investments giving rise to the conflicts to Criterion's clients. In short, Gravette and MacArthur knowingly or recklessly provided substantial assistance to Criterion in its violation of Section 206(1).

Similarly, with respect Criterion's violation of Section 207, it is undisputed that Gravette knew the contents of the Forms ADV, signed them, and filed them on Criterion's behalf. And as set forth above, the evidence will demonstrate that Gravette knew about the conflicts, knew that he and MacArthur were the unidentified broker-dealers, and knew or was reckless in not knowing that Criterion did not provide full disclosure of all material facts to its advisory clients. This evidence and the undisputed facts establish Gravette's knowing or reckless substantial assistance to Criterion's violation of Section 207.

**D.      Defendants' Affirmative Defenses**

In their Answers, Defendants assert three affirmative defenses—failure to state a claim upon which relief can be granted; statute of limitations; and failure to plead fraud with particularity. ECF No. 21 at 60, ECF No. 22 at 9. All of these defenses have been foreclosed by the Court's summary judgment order or abandoned by Defendants. In any event, the SEC is aware of no evidence that supports any of these defenses.

Regarding a failure to state a claim upon which relief can be granted, the SEC has pleaded sufficient facts to support its allegations and has adduced sufficient evidence to establish most facts as a matter of law, leaving only factual questions regarding Defendants' state of mind and the reasonableness of their conduct for trial. For the same reason, any defense based on failure to plead must fail because state of mind can be alleged generally—all the other facts regarding Defendants' fraud under Section 206(1) are established as a matter of law.

Finally, the SEC generally has five years from the date of a violation to bring an enforcement action for penalties. *Gabelli v. SEC*, 568 U.S. 442 (2013). However, the SEC may bring a claim for disgorgement within 10 years of a violation of Section 206(1) or other scienter-based violation of the securities laws. 15 U.S.C. § 78u(d)(8)(A). And the SEC can bring a claim for injunctive relief within 10 years of the latest date on which a violation occurs. *Id.* § 78u(d)(8)(B); *see also SEC v. Sharp*, No. 21-CV-11276-WGY, 2022 WL 4085676, at *8 (D. Mass. Sept. 6, 2022) (10-year statute of limitations applies retroactively to cases pending on or after January 1, 2021); *SEC v. Stubos*, No. 22-CV-04674 (LJL), 2022 WL 6776741, at *12 (S.D.N.Y. Oct. 11, 2022) (same). Here, the SEC's claims involve conduct occurring since 2014. Defendants entered tolling agreements to toll the limitations period until March 2, 2020. The Complaint was filed on February 12, 2020. Moreover, Defendants did not disclose their conflicts until at least mid-2017. All of the SEC's claims, therefore, are timely.

### E.      Remedies

Upon a finding of liability (liability having already been found on the SEC's second claim under Section 206(2)), the SEC requests that the Court enter permanent injunctions against violations of the Advisers Act and conduct-based injunctions, full disgorgement of the commissions received along with prejudgment interest, and civil penalties. Before counsel for the SEC can request specific civil penalty and disgorgement amounts, the Commissioners of the SEC must authorize those amounts. Undersigned counsel has begun the process to obtain that authorization, and should have received authorization by the commencement of trial. The SEC will amend this Memorandum once that authorization is obtained.

### 1.      Injunctions

Section 209(d) of the Advisers Act, 15 U.S.C § 80b-9(d), provides that, upon proper showing, a permanent injunction "shall be granted" in an enforcement action brought by the SEC. To obtain an injunction, the SEC has the burden of showing that there is a reasonable likelihood of future violations of the securities laws. *SEC v. Murphy,* 50 F. 4th 832, 851 (9th Cir. 2022); *SEC v. Fehn*, 97 F.3d 1276, 1295-96 (9th Cir. 1996); *SEC v. Murphy*, 626 F.2d 633, 655 (9th Cir. 1980). "The existence of past violations may give rise to an inference that there will be future violations; and the fact that the defendant is currently complying with the securities laws does not preclude an injunction." *Murphy*, 50 F. 4th at 851; *Murphy*, 626 F.2d at 655. In predicting the likelihood of future violations a court must assess the totality of the circumstances, considering such factors as degree of scienter involved, the isolated or recurrent nature of the infraction, the defendant's recognition of the wrongful nature of the conduct, the likelihood that future violations might occur in light of defendant's professional occupation, and the sincerity of assurances against future violations. *Id*. Here, the application of each of those factors demonstrates that injunctive relief is appropriate.

First, Defendants acted with scienter, and much of their conduct, particularly

negotiating the creation of share classes and feeder funds that benefitted themselves at their clients' expense. Second, Defendants' violations were recurrent and spread over four separate funds for multiple years. Third, Defendants demonstrated no recognition of the wrongful nature of their conduct. To the contrary, they remarkably continue to insist that they owed *no* fiduciary duties to disclose their conflicts to their clients, even after the Court ruled otherwise. Finally, MacArthur continues to act as an investment adviser with clients in multiple states, increasing the likelihood of future violations.

In addition, the SEC requests a conduct-based injunction against Defendants , from receiving any compensation, beyond an advisory fee paid by or on behalf of a client, from an advisory client's purchase or sale of securities or other investment products unless the following is disclosed, in writing, before the completion of each transaction:  (i) the type of compensation; (ii) the recipients of the compensation; (iii) the amount of compensation (or an annual approximation of any compensation, such as with trailing referral fees); (iv) the potential or actual impact of the compensation if any on clients' investment returns; and (v) the corresponding conflict of interest. Section 21(d)(5) of the Exchange Act authorizes courts to grant "any equitable relief that may be appropriate or necessary for the benefit of investors." 15 U.S.C. § 78u(d)(5); *see also SEC v. Wenke*, 622 F.2d 1363, 1369 (9th Cir. 1980) ("[F]ederal courts have inherent authority to issue a variety of 'ancillary relief' measures in actions brought by the SEC to enforce the federal securities laws"). A conduct-based injunction is warranted here to ensure that any future commission compensation received by Defendants is fully disclosed.

### 2.    Disgorgement

In *Liu v. SEC*, the Supreme Court reaffirmed the Commission's authority to seek and the Court's authority to order disgorgement "that does not exceed a wrongdoer's net profits and is awarded for victims." *Liu v. SEC*, 140 S. Ct. 1936, 1940 (2020); *see SEC v. Janus Spectrum LLC*, Nos. 17-17042, 18-15403, 811 Fed.

App. 432, 433 (9th Cir. 2020) (unpublished). *Liu* did not disturb the principle that "[d]isgorgement need be 'only a reasonable approximation of profits causally connected to the violation.'" *SEC v. Platforms Wireless Int'l Corp*., 617 F.3d 1072, 1096 (9th Cir. 2010) (quoting *SEC v. First Pac. Bancorp*, 142 F.3d 1186, 1191 (9th Cir. 1998)); *SEC v. Yang*, 2020 WL 4530630, at *2 (9th Cir. Aug. 6, 2020) (applying this standard after *Liu*). In addition, after the Supreme Court decided *Liu*, Congress amended Exchange Act Section 21(d) to amend Section 21(d)(3) and add new subsections (d)(5) and (d)(7), which expressly authorize courts to award disgorgement in Commission actions. *See* 15 U.S.C. § 78u(d)(3), (d)(5) and (d)(7); *see also* National Defense Authorization Act (NDAA") for Fiscal Year 2021, Pub. L. No. 116-283, Section 6501. In light of both long-standing equitable principles and the NDAA's amendments to Section 21(d) and the addition of subsections (d)(5) and (d)(7), Defendants should be ordered to disgorge all of their ill-gotten gains.

Defendants should also pay prejudgment interest on the disgorgement amounts. Disgorgement usually includes prejudgment interest to ensure that the wrongdoer does not profit from the illegal activity. *See SEC v. Manor Nursing Centers, Inc*., 458 F.2d 1082, 1105 (2d Cir. 1972); *SEC v. CMKM Diamonds, Inc*., 635 F. Supp. 2d 1185, 1190 (D. Nev. 2006).

### 3.    Civil Penalties

The SEC also seeks civil penalties against Defendants under Section 209(e) of the Advisers Act, 15 U.S.C. § 80b-9(e). Civil penalties are meant to punish wrongdoers and to deter them and others from future securities law violations. *See SEC v. Kenton Capital*, 69 F. Supp. 2d 1, 17 (D.D.C. 1998). The amount of any civil penalty "shall be determined by the court in light of the facts and circumstances." 15 U.S.C. § 80b-9(e)(2)(A).

The Advisers Act provides that penalties should be assessed according to a three-tier system. *See* 15 U.S.C. §80b-9(e)(2). Second-tier penalties apply to violations that "involved fraud, deceit, manipulation or deliberate or reckless

17

disregard of a regulatory requirement." *Id.* § 80b-9(e)(2)(B). Third-tier penalties apply to violations that (i) involve "fraud, deceit, manipulation, or reckless disregard of a regulatory requirement" and (ii) "directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons." *Id.* § 80b-9(e)(2)(C). A penalty may also equal to "the gross amount of pecuniary gain to such defendant as the result of the violation." *Id.* § 80b-9(e)(2). Second-tier penalties for the violations here, adjusted for inflation, are $111,614 for natural persons and $558,071 for entities. *See id.* § 80b-9(e)(2)(B). 17 C.F.R. § 201.1003 (SEC rule setting forth the inflation adjustments). For third-tier penalties, the statutory amount, adjusted for inflation, is $223,229 for natural persons, and $1,116,140 for entities. *See* 15 U.S.C. § 80b-9(e)(2)(C); 17 C.F.R. § 201.1003. The Court may multiply a defendant's violations by the dollar amount of the appropriate tier. *See SEC v. CMKM Diamonds, Inc.*, 635 F. Supp. 2d 1185 (D. Nev. 2009) (*citing SEC v. Coates*, 137 F. Supp. 2d 413, 430 (S.D.N.Y. 2001)).

The factors set forth in *SEC v. Murphy*, 626 F.2d 633, 655 (9th Cir. 1980), which courts in the Ninth Circuit use to consider imposing both injunctions and civil penalties, weigh heavily in favor of imposing penalties against Defendants.

### F.   Anticipated Evidentiary Issues and Issues of Law

The SEC does not anticipate any evidentiary issues at trial apart from the relevance of Defendants purported belief that they were acting only as broker-dealers and not investment advisers in recommending the funds at issue in this case. This *ex post* and self-serving account of the subjective beliefs Defendants' held in their minds dating back nearly a decade ago, from 2014 to 2019, remains unproven. And besides that, the contention is irrelevant.

In the first place, the SEC is aware of no case that supports Defendants' position that to prove Section 206 liability, the SEC must show that Defendants knew they were acting as investment advisers. Indeed, that position is contrary to decades of settled law regarding scienter and knowledge in the securities cases. Instead, as

explained in the scienter section above, the SEC does not need to prove Defendants

believed—correctly—that they were acting as investment advisers, only that they

were, in fact, acting as investment advisers, which the SEC has already proven as a

matter of law.

> Section 206 provides:

> It shall be unlawful for any investment adviser by use of the mails or any
> means or instrumentality of interstate commerce, directly or indirectly--

>> (1) to employ any device, scheme, or artifice to defraud any client or
>> prospective client;

>> (2) to engage in any transaction, practice, or course of business which
>> operates as a fraud or deceit upon any client or prospective client . . . .

15 U.S.C. § 80b-6. Section 206(1)'s scienter requirement pertains to the language "to

employ any device, scheme, or artifice to defraud," which is nearly identical to the

language of Section 17(a)(1) of the Securities Act, 15 U.S.C. § 77q(a)(1). *See

Vernazza*, 327 F.3d at 860. The Supreme Court has held that this language—found in

both Securities Act Section 17(a)(1) and Advisers Act Section 206(1) but not the

other provisions of section 17(a)—"plainly evinces an intent on the part of Congress

to proscribe only knowing or intentional misconduct." *Aaron*, 446 U.S. at 696. Thus,

for example, the Ninth Circuit has held that, in criminal prosecutions of Section

17(a), the government need not prove that a defendant had specific knowledge that

their fraudulent conduct involved a "security" within the meaning of the securities

laws. *Brown*, 578 F.2d at 1284.

      The same reasoning applies to Section 206(1). Just as Securities Act Section

17(a) is an antifraud provision directed at "securities," Section 206 is an analogous

antifraud provision that applies to "any investment adviser." The scienter

requirement, however, applies only to the conduct proscribed in Section 206(1)

because intention is contained within the meaning of "employ[ing] any device,

scheme, or artifice to defraud." To hold otherwise would mean a defendant violates

Section 206(1) only when he knows he is acting as an investment adviser within the
meaning of the Act. But the law has never required that degree of knowledge,
especially in the civil context. *See Falstaff Brewing Corp.*, 629 F.2d at 77
("Knowledge means awareness of the underlying facts, not the labels that the law
places on those facts."); *Arthur Lipper Corp.*, 547 F.2d at 181 ("[T]here must be
proof of intention 'to deceive, manipulate, or defraud'—not an intention to do this in
knowing violation of the law.").

Secondly, the evidence does not support a finding that Defendants believed in
good faith that they were not acting as investment advisers and thus owed no
fiduciary duties to their clients. Defendants' disclosures in their Forms ADV and their
advisory agreements—though vague, partial, and inadequate—evince an
understanding that they needed to make disclosures of their conflicts. Indeed, as the
Court noted in its summary judgment order, Defendants acted as investment advisers
both before and after effecting the transactions in the private placement offerings:
Gravette and MacArthur "explained the upside and downside risks of the offering,"
"discussed whether the private placement would be a wise addition to the investor's
portfolio," and, after the transactions, Criterion "manage[d] those investments," and
"collect[ed] management fees." ECF No. 81 at 20. In other words, the
recommendation of the private placement offerings were bound up in and
inextricably linked to Defendants' broader advisory business with Criterion, which
was at all times only a registered investment adviser, never a broker-dealer. Indeed,
Criterion's Form ADV listed "advice regarding"  "Private Placement Offerings"
among its services. Finally, Defendants have failed to provide the basis for their
alleged "good faith" belief apart from 2019 SEC guidance that postdates the conduct
at issue and which the Court has already rejected as inapposite. ECF No. 81 at 22.
Defendants have not asserted a reliance on counsel defense or even proffered a
contemporaneous document memorializing their self-serving understanding of their
compartmentalized roles as investment advisers and broker-dealers.

20

In sum, even if Defendants' purported subjective belief that they were acting solely as broker-dealers were relevant, the evidence shows that they were, at a minimum, reckless in their belief that they could somehow shed their fiduciary duties as soon as they recommended the funds at issue and also collect an advisory fee to cover monitoring and managing those same investments.

### G. Bifurcated Issues

None.

### H. Jury Trial

All issues will be tried by the Court. ECF Nos. 111 & 114.

### I. Attorney's Fees

The SEC does not seek attorney's fees.

### J. Abandonment of Issues

The SEC does not abandon any claims.

Dated:  March 22, 2023

Respectfully submitted,

*/s/ Charles E. Canter*
CHARLES CANTER
DANIEL S. LIM
DOHOANG T. DUONG
Attorneys for Plaintiff
Securities and Exchange Commission

21

## **PROOF OF SERVICE**

I am over the age of 18 years and not a party to this action. My business address is:

U.S. SECURITIES AND EXCHANGE COMMISSION,
444 S. Flower Street, Suite 900, Los Angeles, California 90071
Telephone No. (323) 965-3998; Facsimile No. (213) 443-1904.

On March 22, 2023, I caused to be served the document entitled **PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW** on all the parties to this action addressed as stated on the attached service list:

☐ **OFFICE MAIL:** By placing in sealed envelope(s), which I placed for collection and mailing today following ordinary business practices. I am readily familiar with this agency's practice for collection and processing of correspondence for mailing; such correspondence would be deposited with the U.S. Postal Service on the same day in the ordinary course of business.

☐ **PERSONAL DEPOSIT IN MAIL:** By placing in sealed envelope(s), which I personally deposited with the U.S. Postal Service. Each such envelope was deposited with the U.S. Postal Service at Los Angeles, California, with first class postage thereon fully prepaid.

☐ **EXPRESS U.S. MAIL:** Each such envelope was deposited in a facility regularly maintained at the U.S. Postal Service for receipt of Express Mail at Los Angeles, California, with Express Mail postage paid.

☐ **HAND DELIVERY:** I caused to be hand delivered each such envelope to the office of the addressee as stated on the attached service list.

☐ **UNITED PARCEL SERVICE:** By placing in sealed envelope(s) designated by United Parcel Service ("UPS") with delivery fees paid or provided for, which I deposited in a facility regularly maintained by UPS or delivered to a UPS courier, at Los Angeles, California.

☐ **ELECTRONIC MAIL:** By transmitting the document by electronic mail to the electronic mail address as stated on the attached service list.

☒ **E-FILING:** By causing the document to be electronically filed via the Court's CM/ECF system, which effects electronic service on counsel who are registered with the CM/ECF system.

☐ **FAX:** By transmitting the document by facsimile transmission. The transmission was reported as complete and without error.

I declare under penalty of perjury that the foregoing is true and correct.

Date: March 22, 2023                           */s/ Charles E. Canter*
                                                Charles E. Canter

22

*SEC v. Criterion Wealth Management Insurance Services, Inc., et al.*
**United States District Court for the Central District of California**
**Case No. 2:20-cv-01402-SPG-JEM**

## SERVICE LIST

Kenneth E. Yeadon, Esq.
Hinshaw & Culbertson LLP
151 N. Franklin Blvd., Ste. 2500
Chicago, IL 60606
Email:  kyeadon@hinshawlaw.com
*Attorney for Defendants Criterion Wealth Management Insurance Services, Inc., and Robert Allen Gravette*

Jeffrey R. Thomas, Esq.
Thomas Law LLC
3801 E. Florida Ave.
Suite 107
Denver, CO 80210
Email:  jthomas@thomaslawllc.com
*Attorney for Defendant Mark Andrew MacArthur*