COACHMAN energy

**B. Signature(s) - This section must be signed for your instructions to be executed.**

If you have chosen to have your cash distributions fully or partially reinvested into Units and you have completed Section A, you must sign this form as follows in the space provided:

- **Individual:** Sign in the space provided in the first column below.
- **Joint Holding:** Where the holding is in more than one name, all of the unitholders must sign.
- **Power of Attorney:** To sign under Power of Attorney, you must have already filed this document with the Company. If you have not previously filed this document, please attached a certified photocopy of the Power of Attorney to this form when you return it.

I authorize you to act in accordance with my instructions set forth above. I acknowledge that these instructions supersede and have priority over all previous instructions with respect to my/our securities. Where I have indicated participation in the DRP, I hereby agree to be bound by the terms and conditions of the DRP.

| Individual or Unitholder 1 | Unitholder 2 (if applicable) | Unitholder 3 (if applicable) |
|---|---|---|
| ______________________ | ______________________ | ______________________ |
| Date: ________________ | Date: ________________ | Date: ________________ |

Note: When signed under Power of Attorney, the attorney states that they have not received any notice of revocation.

COACHMAN energy

SCHEDULE V

**For Subscribers Investing in the Fund Prior to the Minimum Offering Amount**
**FORM W-9 AND INSTRUCTIONS**

Please complete the attached Form W-9 and review the instructions attached thereto. Return the completed Form W-9 to the Fund and not to the Internal Revenue Service. Subscribers are also required to submit to the Fund a copy of a form of identification.

[*Form W-9 attached.*]

Coachman Energy VI, LP
Patrick J. Denard
TD Acct. 934046100



Form **W-9**
(Rev. December 2014)
Department of the Treasury
Internal Revenue Service

# Request for Taxpayer Identification Number and Certification

**Give Form to the requester. Do not send to the IRS.**

Print or type
See Specific Instructions on page 2.

1 Name (as shown on your income tax return). Name is required on this line; do not leave this line blank.
Patrick J. Denard

2 Business name/disregarded entity name, if different from above

3 Check appropriate box for federal tax classification; check only **one** of the following seven boxes:
☑ Individual/sole proprietor or single-member LLC ☐ C Corporation ☐ S Corporation ☐ Partnership ☐ Trust/estate
☐ Limited liability company. Enter the tax classification (C=C corporation, S=S corporation, P=partnership) ▶
**Note.** For a single-member LLC that is disregarded, do not check LLC; check the appropriate box in the line above for the tax classification of the single-member owner.
☐ Other (see instructions) ▶

4 Exemptions (codes apply only to certain entities, not individuals; see instructions on page 3):
Exempt payee code (if any)
Exemption from FATCA reporting code (if any)
*(Applies to accounts maintained outside the U.S.)*

5 Address (number, street, and apt. or suite no.)
420 G. Street

Requester's name and address (optional)

6 City, state, and ZIP code
Jacksonville, OR 97530

7 List account number(s) here (optional)
TD Acct. 934046100: Coachman Energy VI, LP

## Part I Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. The TIN provided must match the name given on line 1 to avoid backup withholding. For individuals, this is generally your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the Part I instructions on page 3. For other entities, it is your employer identification number (EIN). If you do not have a number, see *How to get a TIN* on page 3.

**Note.** If the account is in more than one name, see the instructions for line 1 and the chart on page 4 for guidelines on whose number to enter.

**Social security number**
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

**or**

**Employer identification number**
– 

## Part II Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me); and
2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding; and
3. I am a U.S. citizen or other U.S. person (defined below); and
4. The FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN. See the instructions on page 3.

**Sign Here** **Signature of U.S. person ▶** [signature] **Date ▶** 4/19/16

## General Instructions

Section references are to the Internal Revenue Code unless otherwise noted.

**Future developments**. Information about developments affecting Form W-9 (such as legislation enacted after we release it) is at *www.irs.gov/fw9*.

### Purpose of Form

An individual or entity (Form W-9 requester) who is required to file an information return with the IRS must obtain your correct taxpayer identification number (TIN) which may be your social security number (SSN), individual taxpayer identification number (ITIN), adoption taxpayer identification number (ATIN), or employer identification number (EIN), to report on an information return the amount paid to you, or other amount reportable on an information return. Examples of information returns include, but are not limited to, the following:

- Form 1099-INT (interest earned or paid)
- Form 1099-DIV (dividends, including those from stocks or mutual funds)
- Form 1099-MISC (various types of income, prizes, awards, or gross proceeds)
- Form 1099-B (stock or mutual fund sales and certain other transactions by brokers)
- Form 1099-S (proceeds from real estate transactions)
- Form 1099-K (merchant card and third party network transactions)
- Form 1098 (home mortgage interest), 1098-E (student loan interest), 1098-T (tuition)
- Form 1099-C (canceled debt)
- Form 1099-A (acquisition or abandonment of secured property)

Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN.

*If you do not return Form W-9 to the requester with a TIN, you might be subject to backup withholding. See What is backup withholding? on page 2.*

By signing the filled-out form, you:

1. Certify that the TIN you are giving is correct (or you are waiting for a number to be issued),
2. Certify that you are not subject to backup withholding, or
3. Claim exemption from backup withholding if you are a U.S. exempt payee. If applicable, you are also certifying that as a U.S. person, your allocable share of any partnership income from a U.S. trade or business is not subject to the withholding tax on foreign partners' share of effectively connected income, and
4. Certify that FATCA code(s) entered on this form (if any) indicating that you are exempt from the FATCA reporting, is correct. See *What is FATCA reporting?* on page 2 for further information.

**Note.** If you are a U.S. person and a requester gives you a form other than Form W-9 to request your TIN, you must use the requester's form if it is substantially similar to this Form W-9.

**Definition of a U.S. person.** For federal tax purposes, you are considered a U.S. person if you are:

- An individual who is a U.S. citizen or U.S. resident alien;
- A partnership, corporation, company, or association created or organized in the United States or under the laws of the United States;
- An estate (other than a foreign estate); or
- A domestic trust (as defined in Regulations section 301.7701-7).

**Special rules for partnerships.** Partnerships that conduct a trade or business in the United States are generally required to pay a withholding tax under section 1446 on any foreign partners' share of effectively connected taxable income from such business. Further, in certain cases where a Form W-9 has not been received, the rules under section 1446 require a partnership to presume that a partner is a foreign person, and pay the section 1446 withholding tax. Therefore, if you are a U.S. person that is a partner in a partnership conducting a trade or business in the United States, provide Form W-9 to the partnership to establish your U.S. status and avoid section 1446 withholding on your share of partnership income.

In the cases below, the following person must give Form W-9 to the partnership for purposes of establishing its U.S. status and avoiding withholding on its allocable share of net income from the partnership conducting a trade or business in the United States:

- In the case of a disregarded entity with a U.S. owner, the U.S. owner of the disregarded entity and not the entity;
- In the case of a grantor trust with a U.S. grantor or other U.S. owner, generally, the U.S. grantor or other U.S. owner of the grantor trust and not the trust; and
- In the case of a U.S. trust (other than a grantor trust), the U.S. trust (other than a grantor trust) and not the beneficiaries of the trust.

**Foreign person.** If you are a foreign person or the U.S. branch of a foreign bank that has elected to be treated as a U.S. person, do not use Form W-9. Instead, use the appropriate Form W-8 or Form 8233 (see Publication 515, Withholding of Tax on Nonresident Aliens and Foreign Entities).

**Nonresident alien who becomes a resident alien.** Generally, only a nonresident alien individual may use the terms of a tax treaty to reduce or eliminate U.S. tax on certain types of income. However, most tax treaties contain a provision known as a "saving clause." Exceptions specified in the saving clause may permit an exemption from tax to continue for certain types of income even after the payee has otherwise become a U.S. resident alien for tax purposes.

If you are a U.S. resident alien who is relying on an exception contained in the saving clause of a tax treaty to claim an exemption from U.S. tax on certain types of income, you must attach a statement to Form W-9 that specifies the following five items:

1. The treaty country. Generally, this must be the same treaty under which you claimed exemption from tax as a nonresident alien.
2. The treaty article addressing the income.
3. The article number (or location) in the tax treaty that contains the saving clause and its exceptions.
4. The type and amount of income that qualifies for the exemption from tax.
5. Sufficient facts to justify the exemption from tax under the terms of the treaty article.

***Example.*** Article 20 of the U.S.-China income tax treaty allows an exemption from tax for scholarship income received by a Chinese student temporarily present in the United States. Under U.S. law, this student will become a resident alien for tax purposes if his or her stay in the United States exceeds 5 calendar years. However, paragraph 2 of the first Protocol to the U.S.-China treaty (dated April 30, 1984) allows the provisions of Article 20 to continue to apply even after the Chinese student becomes a resident alien of the United States. A Chinese student who qualifies for this exception (under paragraph 2 of the first protocol) and is relying on this exception to claim an exemption from tax on his or her scholarship or fellowship income would attach to Form W-9 a statement that includes the information described above to support that exemption.

If you are a nonresident alien or a foreign entity, give the requester the appropriate completed Form W-8 or Form 8233.

## Backup Withholding

**What is backup withholding?** Persons making certain payments to you must under certain conditions withhold and pay to the IRS 28% of such payments. This is called "backup withholding." Payments that may be subject to backup withholding include interest, tax-exempt interest, dividends, broker and barter exchange transactions, rents, royalties, nonemployee pay, payments made in settlement of payment card and third party network transactions, and certain payments from fishing boat operators. Real estate transactions are not subject to backup withholding.

You will not be subject to backup withholding on payments you receive if you give the requester your correct TIN, make the proper certifications, and report all your taxable interest and dividends on your tax return.

**Payments you receive will be subject to backup withholding if:**

1. You do not furnish your TIN to the requester,
2. You do not certify your TIN when required (see the Part II instructions on page 3 for details),
3. The IRS tells the requester that you furnished an incorrect TIN,
4. The IRS tells you that you are subject to backup withholding because you did not report all your interest and dividends on your tax return (for reportable interest and dividends only), or
5. You do not certify to the requester that you are not subject to backup withholding under 4 above (for reportable interest and dividend accounts opened after 1983 only).

Certain payees and payments are exempt from backup withholding. See *Exempt payee code* on page 3 and the separate Instructions for the Requester of Form W-9 for more information.

Also see *Special rules for partnerships* above.

## What is FATCA reporting?

The Foreign Account Tax Compliance Act (FATCA) requires a participating foreign financial institution to report all United States account holders that are specified United States persons. Certain payees are exempt from FATCA reporting. See *Exemption from FATCA reporting code* on page 3 and the Instructions for the Requester of Form W-9 for more information.

## Updating Your Information

You must provide updated information to any person to whom you claimed to be an exempt payee if you are no longer an exempt payee and anticipate receiving reportable payments in the future from this person. For example, you may need to provide updated information if you are a C corporation that elects to be an S corporation, or if you no longer are tax exempt. In addition, you must furnish a new Form W-9 if the name or TIN changes for the account; for example, if the grantor of a grantor trust dies.

## Penalties

**Failure to furnish TIN.** If you fail to furnish your correct TIN to a requester, you are subject to a penalty of $50 for each such failure unless your failure is due to reasonable cause and not to willful neglect.

**Civil penalty for false information with respect to withholding.** If you make a false statement with no reasonable basis that results in no backup withholding, you are subject to a $500 penalty.

**Criminal penalty for falsifying information.** Willfully falsifying certifications or affirmations may subject you to criminal penalties including fines and/or imprisonment.

**Misuse of TINs.** If the requester discloses or uses TINs in violation of federal law, the requester may be subject to civil and criminal penalties.

# Specific Instructions

### Line 1

You must enter one of the following on this line; **do not** leave this line blank. The name should match the name on your tax return.

If this Form W-9 is for a joint account, list first, and then circle, the name of the person or entity whose number you entered in Part I of Form W-9.

a. **Individual.** Generally, enter the name shown on your tax return. If you have changed your last name without informing the Social Security Administration (SSA) of the name change, enter your first name, the last name as shown on your social security card, and your new last name.

**Note. ITIN applicant:** Enter your individual name as it was entered on your Form W-7 application, line 1a. This should also be the same as the name you entered on the Form 1040/1040A/1040EZ you filed with your application.

b. **Sole proprietor or single-member LLC.** Enter your individual name as shown on your 1040/1040A/1040EZ on line 1. You may enter your business, trade, or "doing business as" (DBA) name on line 2.

c. **Partnership, LLC that is not a single-member LLC, C Corporation, or S Corporation.** Enter the entity's name as shown on the entity's tax return on line 1 and any business, trade, or DBA name on line 2.

d. **Other entities.** Enter your name as shown on required U.S. federal tax documents on line 1. This name should match the name shown on the charter or other legal document creating the entity. You may enter any business, trade, or DBA name on line 2.

e. **Disregarded entity.** For U.S. federal tax purposes, an entity that is disregarded as an entity separate from its owner is treated as a "disregarded entity." See Regulations section 301.7701-2(c)(2)(iii). Enter the owner's name on line 1. The name of the entity entered on line 1 should never be a disregarded entity. The name on line 1 should be the name shown on the income tax return on which the income should be reported. For example, if a foreign LLC that is treated as a disregarded entity for U.S. federal tax purposes has a single owner that is a U.S. person, the U.S. owner's name is required to be provided on line 1. If the direct owner of the entity is also a disregarded entity, enter the first owner that is not disregarded for federal tax purposes. Enter the disregarded entity's name on line 2, "Business name/disregarded entity name." If the owner of the disregarded entity is a foreign person, the owner must complete an appropriate Form W-8 instead of a Form W-9. This is the case even if the foreign person has a U.S. TIN.

## Line 2

If you have a business name, trade name, DBA name, or disregarded entity name, you may enter it on line 2.

## Line 3

Check the appropriate box in line 3 for the U.S. federal tax classification of the person whose name is entered on line 1. Check only one box in line 3.

**Limited Liability Company (LLC).** If the name on line 1 is an LLC treated as a partnership for U.S. federal tax purposes, check the "Limited Liability Company" box and enter "P" in the space provided. If the LLC has filed Form 8832 or 2553 to be taxed as a corporation, check the "Limited Liability Company" box and in the space provided enter "C" for C corporation or "S" for S corporation. If it is a single-member LLC that is a disregarded entity, do not check the "Limited Liability Company" box; instead check the first box in line 3 "Individual/sole proprietor or single-member LLC."

## Line 4, Exemptions

If you are exempt from backup withholding and/or FATCA reporting, enter in the appropriate space in line 4 any code(s) that may apply to you.

**Exempt payee code.**

- Generally, individuals (including sole proprietors) are not exempt from backup withholding.
- Except as provided below, corporations are exempt from backup withholding for certain payments, including interest and dividends.
- Corporations are not exempt from backup withholding for payments made in settlement of payment card or third party network transactions.
- Corporations are not exempt from backup withholding with respect to attorneys' fees or gross proceeds paid to attorneys, and corporations that provide medical or health care services are not exempt with respect to payments reportable on Form 1099-MISC.

The following codes identify payees that are exempt from backup withholding. Enter the appropriate code in the space in line 4.

1—An organization exempt from tax under section 501(a), any IRA, or a custodial account under section 403(b)(7) if the account satisfies the requirements of section 401(f)(2)

2—The United States or any of its agencies or instrumentalities

3—A state, the District of Columbia, a U.S. commonwealth or possession, or any of their political subdivisions or instrumentalities

4—A foreign government or any of its political subdivisions, agencies, or instrumentalities

5—A corporation

6—A dealer in securities or commodities required to register in the United States, the District of Columbia, or a U.S. commonwealth or possession

7—A futures commission merchant registered with the Commodity Futures Trading Commission

8—A real estate investment trust

9—An entity registered at all times during the tax year under the Investment Company Act of 1940

10—A common trust fund operated by a bank under section 584(a)

11—A financial institution

12—A middleman known in the investment community as a nominee or custodian

13—A trust exempt from tax under section 664 or described in section 4947

The following chart shows types of payments that may be exempt from backup withholding. The chart applies to the exempt payees listed above, 1 through 13.

| IF the payment is for . . . | THEN the payment is exempt for . . . |
|---|---|
| Interest and dividend payments | All exempt payees except for 7 |
| Broker transactions | Exempt payees 1 through 4 and 6 through 11 and all C corporations. S corporations must not enter an exempt payee code because they are exempt only for sales of noncovered securities acquired prior to 2012. |
| Barter exchange transactions and patronage dividends | Exempt payees 1 through 4 |
| Payments over $600 required to be reported and direct sales over $5,000[1] | Generally, exempt payees 1 through 5[2] |
| Payments made in settlement of payment card or third party network transactions | Exempt payees 1 through 4 |

[1] See Form 1099-MISC, Miscellaneous Income, and its instructions.

[2] However, the following payments made to a corporation and reportable on Form 1099-MISC are not exempt from backup withholding: medical and health care payments, attorneys' fees, gross proceeds paid to an attorney reportable under section 6045(f), and payments for services paid by a federal executive agency.

**Exemption from FATCA reporting code.** The following codes identify payees that are exempt from reporting under FATCA. These codes apply to persons submitting this form for accounts maintained outside of the United States by certain foreign financial institutions. Therefore, if you are only submitting this form for an account you hold in the United States, you may leave this field blank. Consult with the person requesting this form if you are uncertain if the financial institution is subject to these requirements. A requester may indicate that a code is not required by providing you with a Form W-9 with "Not Applicable" (or any similar indication) written or printed on the line for a FATCA exemption code.

A—An organization exempt from tax under section 501(a) or any individual retirement plan as defined in section 7701(a)(37)

B—The United States or any of its agencies or instrumentalities

C—A state, the District of Columbia, a U.S. commonwealth or possession, or any of their political subdivisions or instrumentalities

D—A corporation the stock of which is regularly traded on one or more established securities markets, as described in Regulations section 1.1472-1(c)(1)(i)

E—A corporation that is a member of the same expanded affiliated group as a corporation described in Regulations section 1.1472-1(c)(1)(i)

F—A dealer in securities, commodities, or derivative financial instruments (including notional principal contracts, futures, forwards, and options) that is registered as such under the laws of the United States or any state

G—A real estate investment trust

H—A regulated investment company as defined in section 851 or an entity registered at all times during the tax year under the Investment Company Act of 1940

I—A common trust fund as defined in section 584(a)

J—A bank as defined in section 581

K—A broker

L—A trust exempt from tax under section 664 or described in section 4947(a)(1)

M—A tax exempt trust under a section 403(b) plan or section 457(g) plan

**Note.** You may wish to consult with the financial institution requesting this form to determine whether the FATCA code and/or exempt payee code should be completed.

## Line 5

Enter your address (number, street, and apartment or suite number). This is where the requester of this Form W-9 will mail your information returns.

## Line 6

Enter your city, state, and ZIP code.

## Part I. Taxpayer Identification Number (TIN)

**Enter your TIN in the appropriate box.** If you are a resident alien and you do not have and are not eligible to get an SSN, your TIN is your IRS individual taxpayer identification number (ITIN). Enter it in the social security number box. If you do not have an ITIN, see *How to get a TIN* below.

If you are a sole proprietor and you have an EIN, you may enter either your SSN or EIN. However, the IRS prefers that you use your SSN.

If you are a single-member LLC that is disregarded as an entity separate from its owner (see *Limited Liability Company (LLC)* on this page), enter the owner's SSN (or EIN, if the owner has one). Do not enter the disregarded entity's EIN. If the LLC is classified as a corporation or partnership, enter the entity's EIN.

**Note.** See the chart on page 4 for further clarification of name and TIN combinations.

**How to get a TIN.** If you do not have a TIN, apply for one immediately. To apply for an SSN, get Form SS-5, Application for a Social Security Card, from your local SSA office or get this form online at *www.ssa.gov*. You may also get this form by calling 1-800-772-1213. Use Form W-7, Application for IRS Individual Taxpayer Identification Number, to apply for an ITIN, or Form SS-4, Application for Employer Identification Number, to apply for an EIN. You can apply for an EIN online by accessing the IRS website at *www.irs.gov/businesses* and clicking on Employer Identification Number (EIN) under Starting a Business. You can get Forms W-7 and SS-4 from the IRS by visiting IRS.gov or by calling 1-800-TAX-FORM (1-800-829-3676).

If you are asked to complete Form W-9 but do not have a TIN, apply for a TIN and write "Applied For" in the space for the TIN, sign and date the form, and give it to the requester. For interest and dividend payments, and certain payments made with respect to readily tradable instruments, generally you will have 60 days to get a TIN and give it to the requester before you are subject to backup withholding on payments. The 60-day rule does not apply to other types of payments. You will be subject to backup withholding on all such payments until you provide your TIN to the requester.

**Note.** Entering "Applied For" means that you have already applied for a TIN or that you intend to apply for one soon.

**Caution:** *A disregarded U.S. entity that has a foreign owner must use the appropriate Form W-8.*

## Part II. Certification

To establish to the withholding agent that you are a U.S. person, or resident alien, sign Form W-9. You may be requested to sign by the withholding agent even if items 1, 4, or 5 below indicate otherwise.

For a joint account, only the person whose TIN is shown in Part I should sign (when required). In the case of a disregarded entity, the person identified on line 1 must sign. Exempt payees, see *Exempt payee code* earlier.

**Signature requirements.** Complete the certification as indicated in items 1 through 5 below.

**1. Interest, dividend, and barter exchange accounts opened before 1984 and broker accounts considered active during 1983.** You must give your correct TIN, but you do not have to sign the certification.

**2. Interest, dividend, broker, and barter exchange accounts opened after 1983 and broker accounts considered inactive during 1983.** You must sign the certification or backup withholding will apply. If you are subject to backup withholding and you are merely providing your correct TIN to the requester, you must cross out item 2 in the certification before signing the form.

**3. Real estate transactions.** You must sign the certification. You may cross out item 2 of the certification.

**4. Other payments.** You must give your correct TIN, but you do not have to sign the certification unless you have been notified that you have previously given an incorrect TIN. "Other payments" include payments made in the course of the requester's trade or business for rents, royalties, goods (other than bills for merchandise), medical and health care services (including payments to corporations), payments to a nonemployee for services, payments made in settlement of payment card and third party network transactions, payments to certain fishing boat crew members and fishermen, and gross proceeds paid to attorneys (including payments to corporations).

**5. Mortgage interest paid by you, acquisition or abandonment of secured property, cancellation of debt, qualified tuition program payments (under section 529), IRA, Coverdell ESA, Archer MSA or HSA contributions or distributions, and pension distributions.** You must give your correct TIN, but you do not have to sign the certification.

## What Name and Number To Give the Requester

| For this type of account: | Give name and SSN of: |
|---|---|
| 1. Individual | The individual |
| 2. Two or more individuals (joint account) | The actual owner of the account or, if combined funds, the first individual on the account[1] |
| 3. Custodian account of a minor (Uniform Gift to Minors Act) | The minor[2] |
| 4. a. The usual revocable savings trust (grantor is also trustee) | The grantor-trustee[1] |
| b. So-called trust account that is not a legal or valid trust under state law | The actual owner[1] |
| 5. Sole proprietorship or disregarded entity owned by an individual | The owner[3] |
| 6. Grantor trust filing under Optional Form 1099 Filing Method 1 (see Regulations section 1.671-4(b)(2)(i)(A)) | The grantor* |
| **For this type of account:** | **Give name and EIN of:** |
| 7. Disregarded entity not owned by an individual | The owner |
| 8. A valid trust, estate, or pension trust | Legal entity[4] |
| 9. Corporation or LLC electing corporate status on Form 8832 or Form 2553 | The corporation |
| 10. Association, club, religious, charitable, educational, or other tax-exempt organization | The organization |
| 11. Partnership or multi-member LLC | The partnership |
| 12. A broker or registered nominee | The broker or nominee |
| 13. Account with the Department of Agriculture in the name of a public entity (such as a state or local government, school district, or prison) that receives agricultural program payments | The public entity |
| 14. Grantor trust filing under the Form 1041 Filing Method or the Optional Form 1099 Filing Method 2 (see Regulations section 1.671-4(b)(2)(i)(B)) | The trust |

[1] List first and circle the name of the person whose number you furnish. If only one person on a joint account has an SSN, that person's number must be furnished.

[2] Circle the minor's name and furnish the minor's SSN.

[3] You must show your individual name and you may also enter your business or DBA name on the "Business name/disregarded entity" name line. You may use either your SSN or EIN (if you have one), but the IRS encourages you to use your SSN.

[4] List first and circle the name of the trust, estate, or pension trust. (Do not furnish the TIN of the personal representative or trustee unless the legal entity itself is not designated in the account title.) Also see *Special rules for partnerships* on page 2.

***Note.** Grantor also must provide a Form W-9 to trustee of trust.

**Note.** If no name is circled when more than one name is listed, the number will be considered to be that of the first name listed.

## Secure Your Tax Records from Identity Theft

Identity theft occurs when someone uses your personal information such as your name, SSN, or other identifying information, without your permission, to commit fraud or other crimes. An identity thief may use your SSN to get a job or may file a tax return using your SSN to receive a refund.

To reduce your risk:

- Protect your SSN,
- Ensure your employer is protecting your SSN, and
- Be careful when choosing a tax preparer.

If your tax records are affected by identity theft and you receive a notice from the IRS, respond right away to the name and phone number printed on the IRS notice or letter.

If your tax records are not currently affected by identity theft but you think you are at risk due to a lost or stolen purse or wallet, questionable credit card activity or credit report, contact the IRS Identity Theft Hotline at 1-800-908-4490 or submit Form 14039.

For more information, see Publication 4535, Identity Theft Prevention and Victim Assistance.

Victims of identity theft who are experiencing economic harm or a system problem, or are seeking help in resolving tax problems that have not been resolved through normal channels, may be eligible for Taxpayer Advocate Service (TAS) assistance. You can reach TAS by calling the TAS toll-free case intake line at 1-877-777-4778 or TTY/TDD 1-800-829-4059.

**Protect yourself from suspicious emails or phishing schemes.** Phishing is the creation and use of email and websites designed to mimic legitimate business emails and websites. The most common act is sending an email to a user falsely claiming to be an established legitimate enterprise in an attempt to scam the user into surrendering private information that will be used for identity theft.

The IRS does not initiate contacts with taxpayers via emails. Also, the IRS does not request personal detailed information through email or ask taxpayers for the PIN numbers, passwords, or similar secret access information for their credit card, bank, or other financial accounts.

If you receive an unsolicited email claiming to be from the IRS, forward this message to *phishing@irs.gov*. You may also report misuse of the IRS name, logo, or other IRS property to the Treasury Inspector General for Tax Administration (TIGTA) at 1-800-366-4484. You can forward suspicious emails to the Federal Trade Commission at: *spam@uce.gov* or contact them at *www.ftc.gov/idtheft* or 1-877-IDTHEFT (1-877-438-4338).

Visit IRS.gov to learn more about identity theft and how to reduce your risk.

## Privacy Act Notice

Section 6109 of the Internal Revenue Code requires you to provide your correct TIN to persons (including federal agencies) who are required to file information returns with the IRS to report interest, dividends, or certain other income paid to you; mortgage interest you paid; the acquisition or abandonment of secured property; the cancellation of debt; or contributions you made to an IRA, Archer MSA, or HSA. The person collecting this form uses the information on the form to file information returns with the IRS, reporting the above information. Routine uses of this information include giving it to the Department of Justice for civil and criminal litigation and to cities, states, the District of Columbia, and U.S. commonwealths and possessions for use in administering their laws. The information also may be disclosed to other countries under a treaty, to federal and state agencies to enforce civil and criminal laws, or to federal law enforcement and intelligence agencies to combat terrorism. You must provide your TIN whether or not you are required to file a tax return. Under section 3406, payers must generally withhold a percentage of taxable interest, dividend, and certain other payments to a payee who does not give a TIN to the payer. Certain penalties may also apply for providing false or fraudulent information.

**Yumiko Odama**

**From:** Tiffany.Hancock@tdameritrade.com
**Sent:** Thursday, May 14, 2015 1:37 PM
**To:** Yumiko Odama
**Cc:** Carmen Garcia Hoffman; Jason Stauffer
**Subject:** RE: Acct. xxxxxx100 Patrick J. Denard - Coachman Energy VI, LP Purchase 05/14/2015

Hi,

I have submitted this for processing.

Thank you,
Tiffany Hancock
TD Ameritrade
Institutional Corporate Actions
5010 Wateridge Vista Dr.
San Diego CA 92121-5775
1-800-431-3500 (ext. 500286)
Fax 1-858-678-2854
TD Ameritrade Institutional, Division of TD Ameritrade, Inc., member FINRA/SIPC/NFA. TD Ameritrade is a trademark jointly owned by TD Ameritrade IP Company, Inc. and the Toronto-Dominion Bank. © 2015 TD Ameritrade IP Company, Inc. All rights reserved. Used with permission.
This electronic message transmission contains information from TD Ameritrade Holding Corporation, which may be confidential or privileged. The information is intended for the use of the individual or entity whose electronic mail address is named above. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this information is prohibited. If you have received this electronic transmission in error, please notify me by telephone (800-431-3500 x500286) immediately.

---

**From:** Yumiko Odama [mailto:yumiko@criterionwealth.com]
**Sent:** Thursday, May 14, 2015 1:13 PM
**To:** Hancock, C. Tiffany
**Cc:** Carmen Garcia Hoffman; Jason Stauffer
**Subject:** Acct. xxxxxx100 Patrick J. Denard - Coachman Energy VI, LP Purchase 05/14/2015

Tiffany,

Attached are the following documents to purchase Coachman Energy VI, LP for the **Patrick J. Denard (Acct. 934046100):**

- Letter of Authorization for Non-Publicly Traded Investment
- TD Ameritrade Clearing, Inc. Agreement Regarding Non-Publicly Traded Investments
- Letter of Direction
- Subscription Package

*Note: Originals were sent to the fund manager.*

Should you have any questions, please do not hesitate to contact me at (661) 254-2543.

Sincerely,

Yumiko Odama
Executive Assistant

Criterion Wealth Management
T 661 254 2543 TF 800 550 1095
26650 The Old Road, Ste. 212
Valencia, CA 91381
*CriterionWealth.com*

Criterion Insurance Services, Inc. DBA Criterion Wealth Management does not accept buy, sell or cancel orders by e-mail, or any instructions by e-mail that would require your signature. Securities and advisory services are offered through Ausdal Financial Partners, Inc., Member FINRA/SIPC 5187 Utica Ridge Road, Davenport, IA 52807 (563) 326-2064 Investment Advisory services offered through Criterion Wealth Management are independent of Ausdal Financial Partners, Inc. and any subsidiaries or affiliates. CA Insurance License # 0786906 Information contained in this communication is not considered an official record of your account and does not supersede normal trade confirmations or statements. Any information provided has been prepared from sources believed to be reliable but is not guaranteed, does not represent all available data necessary for making investment decisions and is for informational purposes only.
This e-mail may be privileged and/or confidential, and the sender does not waive any related rights and obligations. Any distribution, use or copying of this e-mail or the information it contains by other than an intended recipient is unauthorized. If you receive this e-mail in error, please advise me (by return e-mail or otherwise) immediately. Information received by or sent from this system is subject to review by supervisory personnel, is retained and may be produced to regulatory authorities or others with a legal right to the information.
E-mail messages are not encrypted

# Criterion Wealth Management
## Transaction Statement

**Date:** 4/19/2015

**Client:** **Patrick J. Denard**

**Account #:** **934046100 (Individual) - TD Ameritrade**

**Description of Transaction:**

Purchase **1.5 Units** ($100,000 per unit) of Coachman Energy VI, LP for a total purchase price of **$150,000.** Outgoing wire will be sent according to the information stated on the Coachman VI, LP per Subscription **(#E2005R)** and TD Ameritrade Letter of Authorization. Units will be registered at TD Ameritrade, Inc. per client's Letter of Direction. Note: $25 Transaction fee will apply from TD Ameritrade. In addition TD Ameritrade charges an annual fee of $25 per alternative investment held with a cap of $125 per acct/per year. Additional TD Ameritrade charges may be applicable.

***Note: As in any Alternative Investment, please contact your tax consultant for any tax consequences; such as Unrelated Business Tax Income. Tax extensions are recommended as tax documents from Investment Managers may be issued on or after the IRS deadline of April 15.***

**Reasons for Transaction:**

Per client's approval. The investment has a return expectation that is equal to and greater than the return of higher risk investments. This fund will increase return and reduce volatility. The skill and quality of the managers meet quality standards.

**Date Last Updated New Account Form/Profile:** 2015

[signature] 4/19/15

**Patrick J. Denard - Client** **Date**

[signature] 4/21/2015

**Robert A. Gravette – Financial Advisor** **Date**

[signature] 4/21/2015

**Mark A. MacArthur – Financial Advisor** **Date**

Securities and advisory services are offered through Ausdal Financial Partners, Inc , Member FINRA/SIPC 5187 Utica Ridge RoadDavenport, IA 52807 (563) 326-2064. Investment Advisory services offered through Criterion WealthManagement are independent of Ausdal Financial Partners, Inc and any subsidiaries or affiliates. CA Insurance License # 07806

# EXHIBIT 9A

Gmail **Patrick Denard, MD <pjdenard@gmail.com>**

# coachman SEC

15 messages

**Patrick Denard** <pjdenard@gmail.com> Tue, May 8, 2018 at 8:58 AM
To: Robert Gravette <robert@criterionwealth.com>

Bob,

Can I get an update on Coachman again?
I was looking into oil prices and noted they are up. However, at the same time I found that there is a legal firm in Chicago going after Coachman and found that Coachman recently settled with the SEC and has to back some management fees. Can you tell me what you know about this?

Thanks,
Patrick

--
Patrick Denard, MD
Southern Oregon Orthopedics
541-608-2595

***Important information for patients:***
*By choosing to use email for communication with me, you must agree to the following:*
*1. Email is an open network, which provides no protection for the confidential exchange of health-related information.*
*2. Email cannot be used to address medical urgencies or emergencies. Please contact me or the clinic staff at the above number regarding time-sensitive issues.*

**Robert Gravette** <robert@criterionwealth.com> Tue, May 8, 2018 at 11:37 AM
To: Patrick Denard <pjdenard@gmail.com>

Hi Patrick,

See attached CWM annual due diligence (item 16) and the letter sent to all investors regarding the issue you mentioned below.

Bob

**Robert A. Gravette | President, CEO**

**CRITERION WEALTH MANAGEMENT**

26650 The Old Road, Suite 110, Valencia, CA 91381

**T** 661.254.2543 **F** 661.254.5190

**www.criterionwealth.com**

**STEWARDING** WEALTH • **SIMPLIFYING** LIFE • **EMPOWERING** PURPOSE™

Criterion Insurance Services, Inc. DBA: Criterion Wealth Management does not accept buy, sell or cancel orders by e-mail, or any instructions by e-mail that would require your signature. Securities offered through Ausdal Financial Partners, Inc., Member FINRA/SIPC 5187 Utica Ridge Road, Davenport, IA 52807 (563) 326-2064. Investment Advisory services offered through Criterion Wealth Management are independent of Ausdal Financial Partners, Inc. and any subsidiaries or affiliates. CA Insurance License # 0786906. Information contained in this communication is not considered an official record of your account and does not supersede normal trade confirmations or statements. Any information provided has been prepared from sources believed to be reliable but is not guaranteed, does not represent all available data necessary for making investment decisions and is for informational purposes only.

This e-mail may be privileged and/or confidential, and the sender does not waive any related rights and obligations. Any distribution, use or copying of this e-mail or the information it contains by other than an intended recipient is unauthorized. If you receive this e-mail in error, please advise me (by return e-mail or otherwise) immediately. Information received by or sent from this system is subject to review by supervisory personnel, is retained and may be produced to regulatory authorities or others with a legal right to the information.

E-mail messages are not encrypted

**From:** Patrick Denard [mailto:pjdenard@gmail.com]
**Sent:** Tuesday, May 08, 2018 8:59 AM
**To:** Robert Grave e <robert@criterionwealth.com>
**Subject:** coachman SEC

Bob,

Can I get an update on Coachman again?

I was looking into oil prices and noted they are up. However, at the same time I found that there is a legal firm in Chicago going after Coachman and found that Coachman recently settled with the SEC and has to back some management fees. Can you tell me what you know about this?

Thanks,

Patrick

--

Patrick Denard, MD

Southern Oregon Orthopedics

541-608-2595

***Important information for patients:***
*By choosing to use email for communication with me, you must agree to the following:*
*1. Email is an open network, which provides no protection for the confidential exchange of health-related information.*
*2. Email cannot be used to address medical urgencies or emergencies. Please contact me or the clinic staff at the above number regarding time-sensitive issues.*

---

**2 attachments**

**2017.10.09 - Coachman ADV Update.pdf**
857K

**Annual Due Diligence Questionnaire - Coachman.doc**
334K

---

**Patrick Denard** <pjdenard@gmail.com> Tue, May 8, 2018 at 12:04 PM
To: Robert Gravette <robert@criterionwealth.com>

What's the lay translation on this?

On Tue, May 8, 2018 at 11:37 AM, Robert Gravette <robert@criterionwealth.com> wrote:

> Hi Patrick,
>
> See attached CWM annual due diligence (item 16) and the letter sent to all investors regarding the issue you mentioned below.
>
> Bob
>
> **Robert A. Gravette I President, CEO**
>
> **CRITERION WEALTH MANAGEMENT**
>
> 26650 The Old Road, Suite 110, Valencia, CA 91381
>
> **T** 661.254.2543 **F** 661.254.5190
>
> **www.criterionwealth.com**
>
> **STEWARDING** WEALTH • **SIMPLIFYING** LIFE • **EMPOWERING** PURPOSE™
>
> Criterion Insurance Services, Inc. DBA: Criterion Wealth Management does not accept buy, sell or cancel orders by e-mail, or any instructions by e-mail that would require your signature. Securities offered through Ausdal Financial Partners, Inc., Member FINRA/SIPC 5187 Utica Ridge Road, Davenport, IA 52807 (563) 326-2064. Investment Advisory services offered through Criterion Wealth Management are independent of Ausdal Financial Partners, Inc. and any subsidiaries or affiliates. CA Insurance License # 0786906. Information contained in this communication is not considered an official record of your account and does not supersede normal trade confirmations or statements. Any information provided has been prepared from sources believed to be reliable but is not guaranteed, does not represent all available data necessary for making investment decisions and is for informational purposes only.
>
> This e-mail may be privileged and/or confidential, and the sender does not waive any related rights and obligations. Any distribution, use or copying of this e-mail or the information it contains by other than an intended recipient is unauthorized. If you receive this e-mail in error, please advise me (by return e-mail or otherwise) immediately. Information received by or sent from this system is subject to review by supervisory personnel, is retained and may be produced to regulatory authorities or others with a legal right to the information.
>
> E-mail messages are not encrypted
>
> **From:** Patrick Denard [mailto:pjdenard@gmail.com]
> **Sent:** Tuesday, May 08, 2018 8:59 AM
> **To:** Robert Grave e <robert@criterionwealth.com>
> **Subject:** coachman SEC

Bob,

Can I get an update on Coachman again?

I was looking into oil prices and noted they are up. However, at the same time I found that there is a legal firm in Chicago going after Coachman and found that Coachman recently settled with the SEC and has to back some management fees. Can you tell me what you know about this?

Thanks,

Patrick

--

Patrick Denard, MD

Southern Oregon Orthopedics

541-608-2595

***Important information for patients:***
*By choosing to use email for communication with me, you must agree to the following:*
*1. Email is an open network, which provides no protection for the confidential exchange of health-related information.*
*2. Email cannot be used to address medical urgencies or emergencies. Please contact me or the clinic staff at the above number regarding time-sensitive issues.*

--
Patrick Denard, MD
Southern Oregon Orthopedics
541-608-2595

***Important information for patients:***
*By choosing to use email for communication with me, you must agree to the following:*
*1. Email is an open network, which provides no protection for the confidential exchange of health-related information.*
*2. Email cannot be used to address medical urgencies or emergencies. Please contact me or the clinic staff at the above number regarding time-sensitive issues.*

---

**Robert Gravette** <robert@criterionwealth.com> Tue, May 8, 2018 at 12:59 PM
To: Patrick Denard <pjdenard@gmail.com>

Here is a summary:

On August 14, 2017, the U. S. Securities and Exchange Commission (SEC) filed a settled Order Instituting Administrative Proceedings (“OIP”) against Coachman and Mr. Kenworthy. According to the SEC, Coachman failed to adequately disclose how the firm calculated management fees and expenses, causing clients to overpay by roughly $1.5 million in fees and expenses. The SEC also found that the firm and Mr. Kenworthy failed to disclose a conflict of interest related to a fund's purchase of a certain receivable related to an oil and gas lease from a fund that Mr. Kenworthy had previously managed and in which he held a 50% stake. The SEC alleged that Coachman caused the fund to overpay for the receivable by approximately $510,000. Coachman and Mr. Kenworthy agreed, without admitting or denying the SEC’s findings, to repay certain funds approximately $2.2 million (which includes prejudgment interest). Approximately $1.5

million will be paid through an offset of management fees and expenses due to Coachman by the Funds leaving a remaining total of $891,507 to be paid by Coachman over the next three years. Coachman and Mr. Kenworthy also paid a civil penalty of $50,000 each. See Item 18 for 22 more information

**Robert A. Gravette | President, CEO**

**CRITERION WEALTH MANAGEMENT**

26650 The Old Road, Suite 110, Valencia, CA 91381

**T** 661.254.2543 **F** 661.254.5190

**www.criterionwealth.com**

**STEWARDING** WEALTH • **SIMPLIFYING** LIFE • **EMPOWERING** PURPOSE™

Criterion Insurance Services, Inc. DBA: Criterion Wealth Management does not accept buy, sell or cancel orders by e-mail, or any instructions by e-mail that would require your signature. Securities offered through Ausdal Financial Partners, Inc., Member FINRA/SIPC 5187 Utica Ridge Road, Davenport, IA 52807 (563) 326-2064. Investment Advisory services offered through Criterion Wealth Management are independent of Ausdal Financial Partners, Inc. and any subsidiaries or affiliates. CA Insurance License # 0786906. Information contained in this communication is not considered an official record of your account and does not supersede normal trade confirmations or statements. Any information provided has been prepared from sources believed to be reliable but is not guaranteed, does not represent all available data necessary for making investment decisions and is for informational purposes only.

This e-mail may be privileged and/or confidential, and the sender does not waive any related rights and obligations. Any distribution, use or copying of this e-mail or the information it contains by other than an intended recipient is unauthorized. If you receive this e-mail in error, please advise me (by return e-mail or otherwise) immediately. Information received by or sent from this system is subject to review by supervisory personnel, is retained and may be produced to regulatory authorities or others with a legal right to the information.

E-mail messages are not encrypted

**From:** Patrick Denard [mailto:pjdenard@gmail.com]
**Sent:** Tuesday, May 08, 2018 12:04 PM
**To:** Robert Grave e <robert@criterionwealth.com>
**Subject:** Re: coachman SEC

What's the lay translation on this?

On Tue, May 8, 2018 at 11:37 AM, Robert Gravette <robert@criterionwealth.com> wrote:

> Hi Patrick,

See attached CWM annual due diligence (item 16) and the letter sent to all investors regarding the issue you mentioned below.

Bob

**Robert A. Gravette | President, CEO**

**CRITERION WEALTH MANAGEMENT**

26650 The Old Road, Suite 110, Valencia, CA 91381

**T** 661.254.2543 **F** 661.254.5190

**www.criterionwealth.com**

**STEWARDING** WEALTH • **SIMPLIFYING** LIFE • **EMPOWERING** PURPOSE™

Criterion Insurance Services, Inc. DBA: Criterion Wealth Management does not accept buy, sell or cancel orders by e-mail, or any instructions by e-mail that would require your signature. Securities offered through Ausdal Financial Partners, Inc., Member FINRA/SIPC 5187 Utica Ridge Road, Davenport, IA 52807 (563) 326-2064. Investment Advisory services offered through Criterion Wealth Management are independent of Ausdal Financial Partners, Inc. and any subsidiaries or affiliates. CA Insurance License # 0786906. Information contained in this communication is not considered an official record of your account and does not supersede normal trade confirmations or statements. Any information provided has been prepared from sources believed to be reliable but is not guaranteed, does not represent all available data necessary for making investment decisions and is for informational purposes only.

This e-mail may be privileged and/or confidential, and the sender does not waive any related rights and obligations. Any distribution, use or copying of this e-mail or the information it contains by other than an intended recipient is unauthorized. If you receive this e-mail in error, please advise me (by return e-mail or otherwise) immediately. Information received by or sent from this system is subject to review by supervisory personnel, is retained and may be produced to regulatory authorities or others with a legal right to the information.

E-mail messages are not encrypted

**From:** Patrick Denard [mailto:pjdenard@gmail.com]
**Sent:** Tuesday, May 08, 2018 8:59 AM
**To:** Robert Grave e <robert@criterionwealth.com>
**Subject:** coachman SEC

Bob,

Can I get an update on Coachman again?

I was looking into oil prices and noted they are up. However, at the same time I found that there is a legal firm in Chicago going after Coachman and found that Coachman recently settled with the SEC and has to back some management fees. Can you tell me what you know about this?

Thanks,

Patrick

--

Patrick Denard, MD

Southern Oregon Orthopedics

541-608-2595

***Important information for patients:***
*By choosing to use email for communication with me, you must agree to the following:*
*1. Email is an open network, which provides no protection for the confidential exchange of health-related information.*
*2. Email cannot be used to address medical urgencies or emergencies. Please contact me or the clinic staff at the above number regarding time-sensitive issues.*

--

Patrick Denard, MD

Southern Oregon Orthopedics

541-608-2595

***Important information for patients:***
*By choosing to use email for communication with me, you must agree to the following:*
*1. Email is an open network, which provides no protection for the confidential exchange of health-related information.*
*2. Email cannot be used to address medical urgencies or emergencies. Please contact me or the clinic staff at the above number regarding time-sensitive issues.*

---

**Patrick Denard** <pjdenard@gmail.com> Tue, May 8, 2018 at 1:52 PM
To: Robert Gravette <robert@criterionwealth.com>

Does this mean they are paying back money to investors?

On Tue, May 8, 2018 at 4:01 PM Robert Gravette <robert@criterionwealth.com> wrote:

Here is a summary:

On August 14, 2017, the U. S. Securities and Exchange Commission (SEC) filed a settled Order Instituting Administrative Proceedings ("OIP") against Coachman and Mr. Kenworthy. According to the SEC, Coachman failed to adequately disclose how the firm calculated management fees and expenses, causing clients to overpay by roughly $1.5 million in fees and expenses. The SEC also found that the firm and Mr. Kenworthy failed to disclose a conflict of interest related to a fund's purchase of a certain receivable related to an oil and gas lease from a fund that Mr. Kenworthy had previously managed and in which he held a 50% stake. The SEC alleged that Coachman caused the fund to overpay for the receivable by approximately $510,000. Coachman and Mr. Kenworthy agreed, without admitting or denying the SEC's findings, to repay certain funds approximately $2.2 million (which includes prejudgment interest). Approximately $1.5 million will be paid through an offset of management fees and expenses due to Coachman by the Funds leaving a remaining total of $891,507 to be paid by Coachman over the next three years. Coachman and Mr. Kenworthy also paid a civil penalty of $50,000 each. See Item 18 for 22 more information

**Robert A. Gravette | President, CEO**

**CRITERION WEALTH MANAGEMENT**

26650 The Old Road, Suite 110, Valencia, CA 91381

**T** 661.254.2543 **F** 661.254.5190

**www.criterionwealth.com**

**STEWARDING** WEALTH • **SIMPLIFYING** LIFE • **EMPOWERING** PURPOSE™

Criterion Insurance Services, Inc. DBA: Criterion Wealth Management does not accept buy, sell or cancel orders by e-mail, or any instructions by e-mail that would require your signature. Securities offered through Ausdal Financial Partners, Inc., Member FINRA/SIPC 5187 Utica Ridge Road, Davenport, IA 52807 (563) 326-2064. Investment Advisory services offered through Criterion Wealth Management are independent of Ausdal Financial Partners, Inc. and any subsidiaries or affiliates. CA Insurance License # 0786906. Information contained in this communication is not considered an official record of your account and does not supersede normal trade confirmations or statements. Any information provided has been prepared from sources believed to be reliable but is not guaranteed, does not represent all available data necessary for making investment decisions and is for informational purposes only.

This e-mail may be privileged and/or confidential, and the sender does not waive any related rights and obligations. Any distribution, use or copying of this e-mail or the information it contains by other than an intended recipient is unauthorized. If you receive this e-mail in error, please advise me (by return e-mail or otherwise) immediately. Information received by or sent from this system is subject to review by supervisory personnel, is retained and may be produced to regulatory authorities or others with a legal right to the information.

E-mail messages are not encrypted

**From:** Patrick Denard [mailto:pjdenard@gmail.com]
**Sent:** Tuesday, May 08, 2018 12:04 PM
**To:** Robert Grave e <robert@criterionwealth.com>
**Subject:** Re: coachman SEC

What's the lay translation on this?

On Tue, May 8, 2018 at 11:37 AM, Robert Gravette <robert@criterionwealth.com> wrote:

> Hi Patrick,
>
> See attached CWM annual due diligence (item 16) and the letter sent to all investors regarding the issue you mentioned below.

Bob

**Robert A. Gravette I President, CEO**

**CRITERION WEALTH MANAGEMENT**

26650 The Old Road, Suite 110, Valencia, CA 91381

**T** 661.254.2543 **F** 661.254.5190

**www.criterionwealth.com**

**STEWARDING** WEALTH • **SIMPLIFYING** LIFE • **EMPOWERING** PURPOSE™

Criterion Insurance Services, Inc. DBA: Criterion Wealth Management does not accept buy, sell or cancel orders by e-mail, or any instructions by e-mail that would require your signature. Securities offered through Ausdal Financial Partners, Inc., Member FINRA/SIPC 5187 Utica Ridge Road, Davenport, IA 52807 (563) 326-2064. Investment Advisory services offered through Criterion Wealth Management are independent of Ausdal Financial Partners, Inc. and any subsidiaries or affiliates. CA Insurance License # 0786906. Information contained in this communication is not considered an official record of your account and does not supersede normal trade confirmations or statements. Any information provided has been prepared from sources believed to be reliable but is not guaranteed, does not represent all available data necessary for making investment decisions and is for informational purposes only.

This e-mail may be privileged and/or confidential, and the sender does not waive any related rights and obligations. Any distribution, use or copying of this e-mail or the information it contains by other than an intended recipient is unauthorized. If you receive this e-mail in error, please advise me (by return e-mail or otherwise) immediately. Information received by or sent from this system is subject to review by supervisory personnel, is retained and may be produced to regulatory authorities or others with a legal right to the information.

E-mail messages are not encrypted

**From:** Patrick Denard [mailto:pjdenard@gmail.com]
**Sent:** Tuesday, May 08, 2018 8:59 AM
**To:** Robert Grave e <robert@criterionwealth.com>
**Subject:** coachman SEC

Bob,

Can I get an update on Coachman again?

I was looking into oil prices and noted they are up. However, at the same time I found that there is a legal firm in Chicago going after Coachman and found that Coachman recently settled with the SEC and has to back some management fees. Can you tell me what you know about this?

Thanks,

Patrick

--

Patrick Denard, MD

Southern Oregon Orthopedics

541-608-2595

***Important information for patients:***
*By choosing to use email for communication with me, you must agree to the following:*
*1. Email is an open network, which provides no protection for the confidential exchange of health-related information.*
*2. Email cannot be used to address medical urgencies or emergencies. Please contact me or the clinic staff at the above number regarding time-sensitive issues.*

--

Patrick Denard, MD

Southern Oregon Orthopedics

541-608-2595

***Important information for patients:***
*By choosing to use email for communication with me, you must agree to the following:*
*1. Email is an open network, which provides no protection for the confidential exchange of health-related information.*
*2. Email cannot be used to address medical urgencies or emergencies. Please contact me or the clinic staff at the above number regarding time-sensitive issues.*

--
Patrick Denard, MD
Southern Oregon Orthopedics
541-608-2595

***Important information for patients:***
*By choosing to use email for communication with me, you must agree to the following:*
*1. Email is an open network, which provides no protection for the confidential exchange of health-related information.*
*2. Email cannot be used to address medical urgencies or emergencies. Please contact me or the clinic staff at the above number regarding time-sensitive issues.*

---

**Robert Gravette** <robert@criterionwealth.com> Tue, May 8, 2018 at 2:28 PM
To: Patrick Denard <pjdenard@gmail.com>

I believe it's a liability of Coachman along with bank debt. Once the sale of the assets are complete and the bank debt is paid off, then what ever is left goes to investors.

**Robert A. Gravette | President, CEO**

**CRITERION WEALTH MANAGEMENT**

26650 The Old Road, Suite 110, Valencia, CA 91381

**T** 661.254.2543 **F** 661.254.5190

**www.criterionwealth.com**

**STEWARDING** WEALTH • **SIMPLIFYING** LIFE • **EMPOWERING** PURPOSE™

Criterion Insurance Services, Inc. DBA: Criterion Wealth Management does not accept buy, sell or cancel orders by e-mail, or any instructions by e-mail that would require your signature. Securities offered through Ausdal Financial Partners, Inc., Member FINRA/SIPC 5187 Utica Ridge Road, Davenport, IA 52807 (563) 326-2064. Investment Advisory services offered through Criterion Wealth Management are independent of Ausdal Financial Partners, Inc. and any subsidiaries or affiliates. CA Insurance License # 0786906. Information contained in this communication is not considered an official record of your account and does not supersede normal trade confirmations or statements. Any information provided has been prepared from sources believed to be reliable but is not guaranteed, does not represent all available data necessary for making investment decisions and is for informational purposes only.

This e-mail may be privileged and/or confidential, and the sender does not waive any related rights and obligations. Any distribution, use or copying of this e-mail or the information it contains by other than an intended recipient is unauthorized. If you receive this e-mail in error, please advise me (by return e-mail or otherwise) immediately. Information received by or sent from this system is subject to review by supervisory personnel, is retained and may be produced to regulatory authorities or others with a legal right to the information.

E-mail messages are not encrypted

**From:** Patrick Denard [mailto:pjdenard@gmail.com]
**Sent:** Tuesday, May 08, 2018 1:52 PM
**To:** Robert Grave e <robert@criterionwealth.com>
**Subject:** Re: coachman SEC

Does this mean they are paying back money to investors?

On Tue, May 8, 2018 at 4:01 PM Robert Gravette <robert@criterionwealth.com> wrote:

> Here is a summary:
>
> On August 14, 2017, the U. S. Securities and Exchange Commission (SEC) filed a settled Order Instituting Administrative Proceedings (“OIP”) against Coachman and Mr. Kenworthy. According to the SEC, Coachman failed to adequately disclose how the firm calculated management fees and expenses, causing clients to overpay by roughly $1.5 million in fees and expenses. The SEC also found that the firm and Mr. Kenworthy failed to disclose a conflict of interest related to a fund's purchase of a certain receivable related to an oil and gas lease from a fund that Mr. Kenworthy had previously managed and in which he held a 50% stake. The SEC alleged that Coachman caused the fund to overpay for the receivable by approximately $510,000. Coachman and Mr. Kenworthy agreed, without admitting or denying the SEC’s findings, to repay certain funds approximately $2.2 million (which includes prejudgment interest). Approximately $1.5 million will be paid through an offset of management fees and expenses due to Coachman by the Funds leaving a remaining total of $891,507 to be paid by Coachman over the next three years. Coachman and Mr. Kenworthy also paid a civil penalty of $50,000 each. See Item 18 for 22 more information

**Robert A. Gravette l President, CEO**

**CRITERION WEALTH MANAGEMENT**

26650 The Old Road, Suite 110, Valencia, CA 91381

**T** 661.254.2543 **F** 661.254.5190

**www.criterionwealth.com**

**STEWARDING** WEALTH • **SIMPLIFYING** LIFE • **EMPOWERING** PURPOSE™

Criterion Insurance Services, Inc. DBA: Criterion Wealth Management does not accept buy, sell or cancel orders by e-mail, or any instructions by e-mail that would require your signature. Securities offered through Ausdal Financial Partners, Inc., Member FINRA/SIPC 5187 Utica Ridge Road, Davenport, IA 52807 (563) 326-2064. Investment Advisory services offered through Criterion Wealth Management are independent of Ausdal Financial Partners, Inc. and any subsidiaries or affiliates. CA Insurance License # 0786906. Information contained in this communication is not considered an official record of your account and does not supersede normal trade confirmations or statements. Any information provided has been prepared from sources believed to be reliable but is not guaranteed, does not represent all available data necessary for making investment decisions and is for informational purposes only.

This e-mail may be privileged and/or confidential, and the sender does not waive any related rights and obligations. Any distribution, use or copying of this e-mail or the information it contains by other than an intended recipient is unauthorized. If you receive this e-mail in error, please advise me (by return e-mail or otherwise) immediately. Information received by or sent from this system is subject to review by supervisory personnel, is retained and may be produced to regulatory authorities or others with a legal right to the information.

E-mail messages are not encrypted

**From:** Patrick Denard [mailto:pjdenard@gmail.com]
**Sent:** Tuesday, May 08, 2018 12:04 PM
**To:** Robert Grave e <robert@criterionwealth.com>
**Subject:** Re: coachman SEC

What's the lay translation on this?

On Tue, May 8, 2018 at 11:37 AM, Robert Gravette <robert@criterionwealth.com> wrote:

> Hi Patrick,
>
> See attached CWM annual due diligence (item 16) and the letter sent to all investors regarding the issue you mentioned below.
>
> Bob
>
> **Robert A. Gravette l President, CEO**

**CRITERION WEALTH MANAGEMENT**

26650 The Old Road, Suite 110, Valencia, CA 91381

**T** 661.254.2543 **F** 661.254.5190

**www.criterionwealth.com**

**STEWARDING** WEALTH • **SIMPLIFYING** LIFE • **EMPOWERING** PURPOSE™

Criterion Insurance Services, Inc. DBA: Criterion Wealth Management does not accept buy, sell or cancel orders by e-mail, or any instructions by e-mail that would require your signature. Securities offered through Ausdal Financial Partners, Inc., Member FINRA/SIPC 5187 Utica Ridge Road, Davenport, IA 52807 (563) 326-2064. Investment Advisory services offered through Criterion Wealth Management are independent of Ausdal Financial Partners, Inc. and any subsidiaries or affiliates. CA Insurance License # 0786906. Information contained in this communication is not considered an official record of your account and does not supersede normal trade confirmations or statements. Any information provided has been prepared from sources believed to be reliable but is not guaranteed, does not represent all available data necessary for making investment decisions and is for informational purposes only.

This e-mail may be privileged and/or confidential, and the sender does not waive any related rights and obligations. Any distribution, use or copying of this e-mail or the information it contains by other than an intended recipient is unauthorized. If you receive this e-mail in error, please advise me (by return e-mail or otherwise) immediately. Information received by or sent from this system is subject to review by supervisory personnel, is retained and may be produced to regulatory authorities or others with a legal right to the information.

E-mail messages are not encrypted

**From:** Patrick Denard [mailto:pjdenard@gmail.com]
**Sent:** Tuesday, May 08, 2018 8:59 AM
**To:** Robert Grave e <robert@criterionwealth.com>
**Subject:** coachman SEC

Bob,

Can I get an update on Coachman again?

I was looking into oil prices and noted they are up. However, at the same time I found that there is a legal firm in Chicago going after Coachman and found that Coachman recently settled with the SEC and has to back some management fees. Can you tell me what you know about this?

Thanks,

Patrick

--

Patrick Denard, MD

Southern Oregon Orthopedics

541-608-2595

***Important information for patients:***
*By choosing to use email for communication with me, you must agree to the following:*
*1. Email is an open network, which provides no protection for the confidential exchange of health-related information.*
*2. Email cannot be used to address medical urgencies or emergencies. Please contact me or the clinic staff at the above number regarding time-sensitive issues.*

--

Patrick Denard, MD

Southern Oregon Orthopedics

541-608-2595

***Important information for patients:***
*By choosing to use email for communication with me, you must agree to the following:*
*1. Email is an open network, which provides no protection for the confidential exchange of health-related information.*
*2. Email cannot be used to address medical urgencies or emergencies. Please contact me or the clinic staff at the above number regarding time-sensitive issues.*

--

Patrick Denard, MD

Southern Oregon Orthopedics

541-608-2595

***Important information for patients:***
*By choosing to use email for communication with me, you must agree to the following:*
*1. Email is an open network, which provides no protection for the confidential exchange of health-related information.*
*2. Email cannot be used to address medical urgencies or emergencies. Please contact me or the clinic staff at the above number regarding time-sensitive issues.*

---

**Patrick Denard** <pjdenard@gmail.com> Tue, May 8, 2018 at 2:35 PM
To: Robert Gravette <robert@criterionwealth.com>

And any update of When the sale will be complete?

On Tue, May 8, 2018 at 5:29 PM Robert Gravette <robert@criterionwealth.com> wrote:

I believe it's a liability of Coachman along with bank debt. Once the sale of the assets are complete and the bank debt is paid off, then what ever is left goes to investors.

**Robert A. Gravette | President, CEO**

**CRITERION WEALTH MANAGEMENT**

26650 The Old Road, Suite 110, Valencia, CA 91381

**T** 661.254.2543 **F** 661.254.5190

**www.criterionwealth.com**

**STEWARDING** WEALTH • **SIMPLIFYING** LIFE • **EMPOWERING** PURPOSE™

Criterion Insurance Services, Inc. DBA: Criterion Wealth Management does not accept buy, sell or cancel orders by e-mail, or any instructions by e-mail that would require your signature. Securities offered through Ausdal Financial Partners, Inc., Member FINRA/SIPC 5187 Utica Ridge Road, Davenport, IA 52807 (563) 326-2064. Investment Advisory services offered through Criterion Wealth Management are independent of Ausdal Financial Partners, Inc. and any subsidiaries or affiliates. CA Insurance License # 0786906. Information contained in this communication is not considered an official record of your account and does not supersede normal trade confirmations or statements. Any information provided has been prepared from sources believed to be reliable but is not guaranteed, does not represent all available data necessary for making investment decisions and is for informational purposes only.

This e-mail may be privileged and/or confidential, and the sender does not waive any related rights and obligations. Any distribution, use or copying of this e-mail or the information it contains by other than an intended recipient is unauthorized. If you receive this e-mail in error, please advise me (by return e-mail or otherwise) immediately. Information received by or sent from this system is subject to review by supervisory personnel, is retained and may be produced to regulatory authorities or others with a legal right to the information.

E-mail messages are not encrypted

**From:** Patrick Denard [mailto:pjdenard@gmail.com]
**Sent:** Tuesday, May 08, 2018 1:52 PM

**To:** Robert Grave e <robert@criterionwealth.com>
**Subject:** Re: coachman SEC

Does this mean they are paying back money to investors?

On Tue, May 8, 2018 at 4:01 PM Robert Gravette <robert@criterionwealth.com> wrote:

> Here is a summary:
>
> On August 14, 2017, the U. S. Securities and Exchange Commission (SEC) filed a settled Order Instituting Administrative Proceedings ("OIP") against Coachman and Mr. Kenworthy. According to the SEC, Coachman failed to adequately disclose how the firm calculated management fees and expenses, causing clients to overpay by roughly $1.5 million in fees and expenses. The SEC also found that the firm and Mr. Kenworthy failed to disclose a conflict of interest related to a fund's purchase of a certain receivable related to an oil and gas lease from a fund that Mr. Kenworthy had previously managed and in which he held a 50% stake. The SEC alleged that Coachman caused the fund to overpay for the receivable by approximately $510,000. Coachman and Mr. Kenworthy agreed, without admitting or denying the SEC's findings, to repay certain funds approximately $2.2 million (which includes prejudgment interest). Approximately $1.5 million will be paid through an offset of management fees and expenses due to Coachman by the Funds leaving a remaining total of $891,507 to be paid by Coachman over the next three years. Coachman and Mr. Kenworthy also paid a civil penalty of $50,000 each. See Item 18 for 22 more information

**Robert A. Gravette | President, CEO**

**CRITERION WEALTH MANAGEMENT**

26650 The Old Road, Suite 110, Valencia, CA 91381

T 661.254.2543 F 661.254.5190

**www.criterionwealth.com**

**STEWARDING** WEALTH • **SIMPLIFYING** LIFE • **EMPOWERING** PURPOSE™

Criterion Insurance Services, Inc. DBA: Criterion Wealth Management does not accept buy, sell or cancel orders by e-mail, or any instructions by e-mail that would require your signature. Securities offered through Ausdal Financial Partners, Inc., Member FINRA/SIPC 5187 Utica Ridge Road, Davenport, IA 52807 (563) 326-2064. Investment Advisory services offered through Criterion Wealth Management are independent of Ausdal Financial Partners, Inc. and any subsidiaries or affiliates. CA Insurance License # 0786906. Information contained in this communication is not considered an official record of your account and does not supersede normal trade confirmations or statements. Any information provided has been prepared from sources believed to be reliable but is not guaranteed, does not represent all available data necessary for making investment decisions and is for informational purposes only.

This e-mail may be privileged and/or confidential, and the sender does not waive any related rights and obligations. Any distribution, use or copying of this e-mail or the information it contains by other than an intended recipient is unauthorized. If you receive this e-mail in error, please advise me (by return e-mail or otherwise) immediately. Information received by or sent from this system is subject to review by supervisory personnel, is retained and may be produced to regulatory authorities or others with a legal right to the information.

E-mail messages are not encrypted

**From:** Patrick Denard [mailto:pjdenard@gmail.com]
**Sent:** Tuesday, May 08, 2018 12:04 PM
**To:** Robert Grave e <robert@criterionwealth.com>
**Subject:** Re: coachman SEC

What's the lay translation on this?

On Tue, May 8, 2018 at 11:37 AM, Robert Gravette <robert@criterionwealth.com> wrote:

> Hi Patrick,
>
> See attached CWM annual due diligence (item 16) and the letter sent to all investors regarding the issue you mentioned below.
>
> Bob

**Robert A. Gravette | President, CEO**

**CRITERION WEALTH MANAGEMENT**

26650 The Old Road, Suite 110, Valencia, CA 91381

**T** 661.254.2543 **F** 661.254.5190

**www.criterionwealth.com**

**STEWARDING** WEALTH • **SIMPLIFYING** LIFE • **EMPOWERING** PURPOSE™

Criterion Insurance Services, Inc. DBA: Criterion Wealth Management does not accept buy, sell or cancel orders by e-mail, or any instructions by e-mail that would require your signature. Securities offered through Ausdal Financial Partners, Inc., Member FINRA/SIPC 5187 Utica Ridge Road, Davenport, IA 52807 (563) 326-2064. Investment Advisory services offered through Criterion Wealth Management are independent of Ausdal Financial Partners, Inc. and any subsidiaries or affiliates. CA Insurance License # 0786906. Information contained in this communication is not considered an official record of your account and does not supersede normal trade confirmations or statements. Any information provided has been prepared from sources believed to be reliable but is not guaranteed, does not represent all available data necessary for making investment decisions and is for informational purposes only.

This e-mail may be privileged and/or confidential, and the sender does not waive any related rights and obligations. Any distribution, use or copying of this e-mail or the information it contains by other than an intended recipient is unauthorized. If you receive this e-mail in error, please advise me (by return e-mail or otherwise) immediately. Information received by or sent from this system is subject to review by supervisory personnel, is retained and may be produced to regulatory authorities or others with a legal right to the information.

E-mail messages are not encrypted

**From:** Patrick Denard [mailto:pjdenard@gmail.com]
**Sent:** Tuesday, May 08, 2018 8:59 AM
**To:** Robert Grave e <robert@criterionwealth.com>
**Subject:** coachman SEC

Bob,

Can I get an update on Coachman again?

I was looking into oil prices and noted they are up. However, at the same time I found that there is a legal firm in Chicago going after Coachman and found that Coachman recently settled with the SEC and has to back some management fees. Can you tell me what you know about this?

Thanks,

Patrick

--

Patrick Denard, MD

Southern Oregon Orthopedics

541-608-2595

***Important information for patients:***
*By choosing to use email for communication with me, you must agree to the following:*
*1. Email is an open network, which provides no protection for the confidential exchange of health-related information.*
*2. Email cannot be used to address medical urgencies or emergencies. Please contact me or the clinic staff at the above number regarding time-sensitive issues.*

--

Patrick Denard, MD

Southern Oregon Orthopedics

541-608-2595

***Important information for patients:***
*By choosing to use email for communication with me, you must agree to the following:*
*1. Email is an open network, which provides no protection for the confidential exchange of health-related information.*
*2. Email cannot be used to address medical urgencies or emergencies. Please contact me or the clinic staff at the above number regarding time-sensitive issues.*

--

Patrick Denard, MD

Southern Oregon Orthopedics

541-608-2595

***Important information for patients:***
*By choosing to use email for communication with me, you must agree to the following:*
*1. Email is an open network, which provides no protection for the confidential exchange of health-related information.*
*2. Email cannot be used to address medical urgencies or emergencies. Please contact me or the clinic staff at the above number regarding time-sensitive issues.*

--
Patrick Denard, MD
Southern Oregon Orthopedics
541-608-2595

***Important information for patients:***
*By choosing to use email for communication with me, you must agree to the following:*
*1. Email is an open network, which provides no protection for the confidential exchange of health-related information.*
*2. Email cannot be used to address medical urgencies or emergencies. Please contact me or the clinic staff at the above number regarding time-sensitive issues.*

---

**Robert Gravette** <robert@criterionwealth.com> Tue, May 8, 2018 at 2:40 PM
To: Patrick Denard <pjdenard@gmail.com>

As of last month they were receiving and evaluating offers. I think sometime this year everything will be completed. I'll keep you updated on any info we receive.

**Robert A. Gravette | President, CEO**

**CRITERION WEALTH MANAGEMENT**

26650 The Old Road, Suite 110, Valencia, CA 91381

**T** 661.254.2543 **F** 661.254.5190

**www.criterionwealth.com**

**STEWARDING** WEALTH • **SIMPLIFYING** LIFE • **EMPOWERING** PURPOSE™

Criterion Insurance Services, Inc. DBA: Criterion Wealth Management does not accept buy, sell or cancel orders by e-mail, or any instructions by e-mail that would require your signature. Securities offered through Ausdal Financial Partners, Inc., Member FINRA/SIPC 5187 Utica Ridge Road, Davenport, IA 52807 (563) 326-2064. Investment Advisory services offered through Criterion Wealth Management are independent of Ausdal Financial Partners, Inc. and any subsidiaries or affiliates. CA Insurance License # 0786906. Information contained in this communication is not considered an official record of your account and does not supersede normal trade confirmations or statements. Any information provided has been prepared from sources believed to be reliable but is not guaranteed, does not represent all available data necessary for making investment decisions and is for informational purposes only.

This e-mail may be privileged and/or confidential, and the sender does not waive any related rights and obligations. Any distribution, use or copying of this e-mail or the information it contains by other than an intended recipient is unauthorized. If you receive this e-mail in error, please advise me (by return e-mail or otherwise) immediately. Information received by or sent from this system is subject to review by supervisory personnel, is retained and may be produced to regulatory authorities or others with a legal right to the information.

E-mail messages are not encrypted

**From:** Patrick Denard [mailto:pjdenard@gmail.com]
**Sent:** Tuesday, May 08, 2018 2:36 PM
**To:** Robert Grave e <robert@criterionwealth.com>
**Subject:** Re: coachman SEC

And any update of When the sale will be complete?

On Tue, May 8, 2018 at 5:29 PM Robert Gravette <robert@criterionwealth.com> wrote:

> I believe it’s a liability of Coachman along with bank debt. Once the sale of the assets are complete and the bank debt is paid off, then what ever is left goes to investors.
>
> **Robert A. Gravette | President, CEO**
>
> **CRITERION WEALTH MANAGEMENT**
>
> 26650 The Old Road, Suite 110, Valencia, CA 91381
>
> **T** 661.254.2543 **F** 661.254.5190

www.criterionwealth.com

**STEWARDING** WEALTH • **SIMPLIFYING** LIFE • **EMPOWERING** PURPOSE™

Criterion Insurance Services, Inc. DBA: Criterion Wealth Management does not accept buy, sell or cancel orders by e-mail, or any instructions by e-mail that would require your signature. Securities offered through Ausdal Financial Partners, Inc., Member FINRA/SIPC 5187 Utica Ridge Road, Davenport, IA 52807 (563) 326-2064. Investment Advisory services offered through Criterion Wealth Management are independent of Ausdal Financial Partners, Inc. and any subsidiaries or affiliates. CA Insurance License # 0786906. Information contained in this communication is not considered an official record of your account and does not supersede normal trade confirmations or statements. Any information provided has been prepared from sources believed to be reliable but is not guaranteed, does not represent all available data necessary for making investment decisions and is for informational purposes only.

This e-mail may be privileged and/or confidential, and the sender does not waive any related rights and obligations. Any distribution, use or copying of this e-mail or the information it contains by other than an intended recipient is unauthorized. If you receive this e-mail in error, please advise me (by return e-mail or otherwise) immediately. Information received by or sent from this system is subject to review by supervisory personnel, is retained and may be produced to regulatory authorities or others with a legal right to the information.

E-mail messages are not encrypted

**From:** Patrick Denard [mailto:pjdenard@gmail.com]
**Sent:** Tuesday, May 08, 2018 1:52 PM

**To:** Robert Grave e <robert@criterionwealth.com>
**Subject:** Re: coachman SEC

Does this mean they are paying back money to investors?

On Tue, May 8, 2018 at 4:01 PM Robert Gravette <robert@criterionwealth.com> wrote:

> Here is a summary:
>
> On August 14, 2017, the U. S. Securities and Exchange Commission (SEC) filed a settled Order Instituting Administrative Proceedings ("OIP") against Coachman and Mr. Kenworthy. According to the SEC, Coachman failed to adequately disclose how the firm calculated management fees and expenses, causing clients to overpay by roughly $1.5 million in fees and expenses. The SEC also found that the firm and Mr. Kenworthy failed to disclose a conflict of interest related to a fund's purchase of a certain receivable related to an oil and gas lease from a fund that Mr. Kenworthy had previously managed and in which he held a 50% stake. The SEC alleged that Coachman caused the fund to overpay for the receivable by approximately $510,000. Coachman and Mr. Kenworthy agreed, without admitting or denying the SEC's findings, to repay certain funds approximately $2.2 million (which includes prejudgment interest). Approximately $1.5 million will be paid through an offset of management fees and expenses due to Coachman by the Funds leaving a remaining total of $891,507 to be paid by Coachman over the next three years. Coachman and Mr. Kenworthy also paid a civil penalty of $50,000 each. See Item 18 for 22 more information

**Robert A. Gravette l President, CEO**

**CRITERION WEALTH MANAGEMENT**

26650 The Old Road, Suite 110, Valencia, CA 91381

**T** 661.254.2543 **F** 661.254.5190

**www.criterionwealth.com**

**STEWARDING** WEALTH • **SIMPLIFYING** LIFE • **EMPOWERING** PURPOSE™

Criterion Insurance Services, Inc. DBA: Criterion Wealth Management does not accept buy, sell or cancel orders by e-mail, or any instructions by e-mail that would require your signature. Securities offered through Ausdal Financial Partners, Inc., Member FINRA/SIPC 5187 Utica Ridge Road, Davenport, IA 52807 (563) 326-2064. Investment Advisory services offered through Criterion Wealth Management are independent of Ausdal Financial Partners, Inc. and any subsidiaries or affiliates. CA Insurance License # 0786906. Information contained in this communication is not considered an official record of your account and does not supersede normal trade confirmations or statements. Any information provided has been prepared from sources believed to be reliable but is not guaranteed, does not represent all available data necessary for making investment decisions and is for informational purposes only.

This e-mail may be privileged and/or confidential, and the sender does not waive any related rights and obligations. Any distribution, use or copying of this e-mail or the information it contains by other than an intended recipient is unauthorized. If you receive this e-mail in error, please advise me (by return e-mail or otherwise) immediately. Information received by or sent from this system is subject to review by supervisory personnel, is retained and may be produced to regulatory authorities or others with a legal right to the information.

E-mail messages are not encrypted

**From:** Patrick Denard [mailto:pjdenard@gmail.com]
**Sent:** Tuesday, May 08, 2018 12:04 PM
**To:** Robert Grave e <robert@criterionwealth.com>
**Subject:** Re: coachman SEC

What's the lay translation on this?

On Tue, May 8, 2018 at 11:37 AM, Robert Gravette <robert@criterionwealth.com> wrote:

> Hi Patrick,
>
> See attached CWM annual due diligence (item 16) and the letter sent to all investors regarding the issue you mentioned below.
>
> Bob
>
> **Robert A. Gravette l President, CEO**

**CRITERION WEALTH MANAGEMENT**

26650 The Old Road, Suite 110, Valencia, CA 91381

**T** 661.254.2543 **F** 661.254.5190

**www.criterionwealth.com**

**STEWARDING** WEALTH • **SIMPLIFYING** LIFE • **EMPOWERING** PURPOSE™

Criterion Insurance Services, Inc. DBA: Criterion Wealth Management does not accept buy, sell or cancel orders by e-mail, or any instructions by e-mail that would require your signature. Securities offered through Ausdal Financial Partners, Inc., Member FINRA/SIPC 5187 Utica Ridge Road, Davenport, IA 52807 (563) 326-2064. Investment Advisory services offered through Criterion Wealth Management are independent of Ausdal Financial Partners, Inc. and any subsidiaries or affiliates. CA Insurance License # 0786906. Information contained in this communication is not considered an official record of your account and does not supersede normal trade confirmations or statements. Any information provided has been prepared from sources believed to be reliable but is not guaranteed, does not represent all available data necessary for making investment decisions and is for informational purposes only.

This e-mail may be privileged and/or confidential, and the sender does not waive any related rights and obligations. Any distribution, use or copying of this e-mail or the information it contains by other than an intended recipient is unauthorized. If you receive this e-mail in error, please advise me (by return e-mail or otherwise) immediately. Information received by or sent from this system is subject to review by supervisory personnel, is retained and may be produced to regulatory authorities or others with a legal right to the information.

E-mail messages are not encrypted

**From:** Patrick Denard [mailto:pjdenard@gmail.com]
**Sent:** Tuesday, May 08, 2018 8:59 AM
**To:** Robert Grave e <robert@criterionwealth.com>
**Subject:** coachman SEC

Bob,

Can I get an update on Coachman again?

I was looking into oil prices and noted they are up. However, at the same time I found that there is a legal firm in Chicago going after Coachman and found that Coachman recently settled with the SEC and has to back some management fees. Can you tell me what you know about this?

Thanks,

Patrick

--

Patrick Denard, MD

Southern Oregon Orthopedics

541-608-2595

***Important information for patients:***
*By choosing to use email for communication with me, you must agree to the following:*
*1. Email is an open network, which provides no protection for the confidential exchange of health-related information.*
*2. Email cannot be used to address medical urgencies or emergencies. Please contact me or the clinic staff at the above number regarding time-sensitive issues.*

--

Patrick Denard, MD

Southern Oregon Orthopedics

541-608-2595

***Important information for patients:***
*By choosing to use email for communication with me, you must agree to the following:*
*1. Email is an open network, which provides no protection for the confidential exchange of health-related information.*
*2. Email cannot be used to address medical urgencies or emergencies. Please contact me or the clinic staff at the above number regarding time-sensitive issues.*

--

Patrick Denard, MD

Southern Oregon Orthopedics

541-608-2595

***Important information for patients:***
*By choosing to use email for communication with me, you must agree to the following:*
*1. Email is an open network, which provides no protection for the confidential exchange of health-related information.*
*2. Email cannot be used to address medical urgencies or emergencies. Please contact me or the clinic staff at the above number regarding time-sensitive issues.*

--

Patrick Denard, MD

Southern Oregon Orthopedics

541-608-2595

***Important information for patients:***
*By choosing to use email for communication with me, you must agree to the following:*
*1. Email is an open network, which provides no protection for the confidential exchange of health-related information.*
*2. Email cannot be used to address medical urgencies or emergencies. Please contact me or the clinic staff at the above number regarding time-sensitive issues.*

---

**Patrick Denard** <pjdenard@gmail.com> Tue, Jun 26, 2018 at 4:35 PM
To: Chetan Patil <cp@patillaw.com>

Chetan,

Unfortunately, I don't have much in the way of emails that I kept RE Coachman. This is the most recent one. If we really need I may be able to request through gmail somehow.

Best,
Patrick

---------- Forwarded message ----------
From: **Patrick Denard** <pjdenard@gmail.com>
Date: Tue, May 8, 2018 at 8:58 AM
Subject: coachman SEC
To: Robert Gravette <robert@criterionwealth.com>

Bob,

Can I get an update on Coachman again?
I was looking into oil prices and noted they are up. However, at the same time I found that there is a legal firm in Chicago going after Coachman and found that Coachman recently settled with the SEC and has to back some management fees. Can you tell me what you know about this?

Thanks,
Patrick

--
Patrick Denard, MD
Southern Oregon Orthopedics
541-608-2595

***Important information for patients:***
*By choosing to use email for communication with me, you must agree to the following:*
*1. Email is an open network, which provides no protection for the confidential exchange of health-related information.*
*2. Email cannot be used to address medical urgencies or emergencies. Please contact me or the clinic staff at the above number regarding time-sensitive issues.*

--
Patrick Denard, MD
Southern Oregon Orthopedics
541-608-2595

***Important information for patients:***
*By choosing to use email for communication with me, you must agree to the following:*
*1. Email is an open network, which provides no protection for the confidential exchange of health-related information.*
*2. Email cannot be used to address medical urgencies or emergencies. Please contact me or the clinic staff at the above number regarding time-sensitive issues.*

---

**Chetan Patil** <cp@patillaw.com> Tue, Jun 26, 2018 at 5:18 PM
To: Patrick Denard <pjdenard@gmail.com>

Thanks. Did Bob respond to this email?

On Tue, Jun 26, 2018 at 4:35 PM Patrick Denard <pjdenard@gmail.com> wrote:

> Chetan,
>
> Unfortunately, I don't have much in the way of emails that I kept RE Coachman. This is the most recent one. If we really need I may be able to request through gmail somehow.
>
> Best,
> Patrick
>
> ---------- Forwarded message ----------
> From: **Patrick Denard** <pjdenard@gmail.com>
> Date: Tue, May 8, 2018 at 8:58 AM

Subject: coachman SEC
To: Robert Gravette <robert@criterionwealth.com>

Bob,

Can I get an update on Coachman again?
I was looking into oil prices and noted they are up. However, at the same time I found that there is a legal firm in Chicago going after Coachman and found that Coachman recently settled with the SEC and has to back some management fees. Can you tell me what you know about this?

Thanks,
Patrick

--
Patrick Denard, MD
Southern Oregon Orthopedics
541-608-2595

***Important information for patients:***
*By choosing to use email for communication with me, you must agree to the following:*
*1. Email is an open network, which provides no protection for the confidential exchange of health-related information.*
*2. Email cannot be used to address medical urgencies or emergencies. Please contact me or the clinic staff at the above number regarding time-sensitive issues.*

--
Patrick Denard, MD
Southern Oregon Orthopedics
541-608-2595

***Important information for patients:***
*By choosing to use email for communication with me, you must agree to the following:*
*1. Email is an open network, which provides no protection for the confidential exchange of health-related information.*
*2. Email cannot be used to address medical urgencies or emergencies. Please contact me or the clinic staff at the above number regarding time-sensitive issues.*

--

PATIL LAW

**Chetan S. Patil**
cp@patillaw.com

1100 Glendon Avenue, 17th Floor
Los Angeles CA 90024

800-950-6553 Toll Free

---

**Patrick Denard** <pjdenard@gmail.com> Tue, Jun 26, 2018 at 5:24 PM
To: Chetan Patil <cp@patillaw.com>

---------- Forwarded message ----------
From: **Robert Gravette** <robert@criterionwealth.com>
Date: Tue, May 8, 2018 at 2:40 PM
Subject: RE: coachman SEC
To: Patrick Denard <pjdenard@gmail.com>

As of last month they were receiving and evaluating offers. I think sometime this year everything will be completed. I'll keep you updated on any info we receive.

**Robert A. Gravette I President, CEO**

**CRITERION WEALTH MANAGEMENT**

26650 The Old Road, Suite 110, Valencia, CA 91381

**T** 661.254.2543 **F** 661.254.5190

**www.criterionwealth.com**

**STEWARDING** WEALTH • **SIMPLIFYING** LIFE • **EMPOWERING** PURPOSE™

Criterion Insurance Services, Inc. DBA: Criterion Wealth Management does not accept buy, sell or cancel orders by e-mail, or any instructions by e-mail that would require your signature. Securities offered through Ausdal Financial Partners, Inc., Member FINRA/SIPC 5187 Utica Ridge Road, Davenport, IA 52807 (563) 326-2064. Investment Advisory services offered through Criterion Wealth Management are independent of Ausdal Financial Partners, Inc. and any subsidiaries or affiliates. CA Insurance License # 0786906. Information contained in this communication is not considered an official record of your account and does not supersede normal trade confirmations or statements. Any information provided has been prepared from sources believed to be reliable but is not guaranteed, does not represent all available data necessary for making investment decisions and is for informational purposes only.

This e-mail may be privileged and/or confidential, and the sender does not waive any related rights and obligations. Any distribution, use or copying of this e-mail or the information it contains by other than an intended recipient is unauthorized. If you receive this e-mail in error, please advise me (by return e-mail or otherwise) immediately. Information received by or sent from this system is subject to review by supervisory personnel, is retained and may be produced to regulatory authorities or others with a legal right to the information.

E-mail messages are not encrypted

**From:** Patrick Denard [mailto:pjdenard@gmail.com]
**Sent:** Tuesday, May 08, 2018 2:36 PM

**To:** Robert Gravette <robert@criterionwealth.com>
**Subject:** Re: coachman SEC

And any update of When the sale will be complete?

On Tue, May 8, 2018 at 5:29 PM Robert Gravette <robert@criterionwealth.com> wrote:

> I believe it's a liability of Coachman along with bank debt. Once the sale of the assets are complete and the bank debt is paid off, then what ever is left goes to investors.

**Robert A. Gravette I President, CEO**

**CRITERION WEALTH MANAGEMENT**

26650 The Old Road, Suite 110, Valencia, CA 91381

**T** 661.254.2543 **F** 661.254.5190

**www.criterionwealth.com**

**STEWARDING** WEALTH • **SIMPLIFYING** LIFE • **EMPOWERING** PURPOSE™

Criterion Insurance Services, Inc. DBA: Criterion Wealth Management does not accept buy, sell or cancel orders by e-mail, or any instructions by e-mail that would require your signature. Securities offered through Ausdal Financial Partners, Inc., Member FINRA/SIPC 5187 Utica Ridge Road, Davenport, IA 52807 (563) 326-2064. Investment Advisory services offered through Criterion Wealth Management are independent of Ausdal Financial Partners, Inc. and any subsidiaries or affiliates. CA Insurance License # 0786906. Information contained in this communication is not considered an official record of your account and does not supersede normal trade confirmations or statements. Any information provided has been prepared from sources believed to be reliable but is not guaranteed, does not represent all available data necessary for making investment decisions and is for informational purposes only.

This e-mail may be privileged and/or confidential, and the sender does not waive any related rights and obligations. Any distribution, use or copying of this e-mail or the information it contains by other than an intended recipient is unauthorized. If you receive this e-mail in error, please advise me (by return e-mail or otherwise) immediately. Information received by or sent from this system is subject to review by supervisory personnel, is retained and may be produced to regulatory authorities or others with a legal right to the information.

E-mail messages are not encrypted

**From:** Patrick Denard [mailto:pjdenard@gmail.com]
**Sent:** Tuesday, May 08, 2018 1:52 PM

**To:** Robert Grave e <robert@criterionwealth.com>
**Subject:** Re: coachman SEC

Does this mean they are paying back money to investors?

On Tue, May 8, 2018 at 4:01 PM Robert Gravette <robert@criterionwealth.com> wrote:

> Here is a summary:
>
> On August 14, 2017, the U. S. Securities and Exchange Commission (SEC) filed a settled Order Instituting Administrative Proceedings ("OIP") against Coachman and Mr. Kenworthy. According to the SEC, Coachman failed to adequately disclose how the firm calculated management fees and expenses, causing clients to overpay by roughly $1.5 million in fees and expenses. The SEC also found that the firm and Mr. Kenworthy failed to disclose a conflict of interest related to a fund's purchase of a certain receivable related to an oil and gas lease from a fund that Mr. Kenworthy had previously managed and in which he held a 50% stake. The SEC alleged that Coachman caused the fund to overpay for the receivable by approximately $510,000. Coachman and Mr. Kenworthy agreed, without admitting or denying the SEC's findings, to repay certain funds approximately $2.2 million (which includes prejudgment interest). Approximately $1.5 million will be paid through an offset of management fees and expenses due to Coachman by the Funds leaving a remaining total of $891,507 to be paid by Coachman over the next three years. Coachman and Mr. Kenworthy also paid a civil penalty of $50,000 each. See Item 18 for 22 more information

**Robert A. Gravette I President, CEO**

**CRITERION WEALTH MANAGEMENT**

26650 The Old Road, Suite 110, Valencia, CA 91381

**T** 661.254.2543 **F** 661.254.5190

**www.criterionwealth.com**

**STEWARDING** WEALTH • **SIMPLIFYING** LIFE • **EMPOWERING** PURPOSE™

Criterion Insurance Services, Inc. DBA: Criterion Wealth Management does not accept buy, sell or cancel orders by e-mail, or any instructions by e-mail that would require your signature. Securities offered through Ausdal Financial Partners, Inc., Member FINRA/SIPC 5187 Utica Ridge Road, Davenport, IA 52807 (563) 326-2064. Investment Advisory services offered through Criterion Wealth Management are independent of Ausdal Financial Partners, Inc. and any subsidiaries or affiliates. CA Insurance License # 0786906. Information contained in this communication is not considered an official record of your account and does not supersede normal trade confirmations or statements. Any information provided has been prepared from sources believed to be reliable but is not guaranteed, does not represent all available data necessary for making investment decisions and is for informational purposes only.

This e-mail may be privileged and/or confidential, and the sender does not waive any related rights and obligations. Any distribution, use or copying of this e-mail or the information it contains by other than an intended recipient is unauthorized. If you receive this e-mail in error, please advise me (by return e-mail or otherwise) immediately. Information received by or sent from this system is subject to review by supervisory personnel, is retained and may be produced to regulatory authorities or others with a legal right to the information.

E-mail messages are not encrypted

**From:** Patrick Denard [mailto:pjdenard@gmail.com]
**Sent:** Tuesday, May 08, 2018 12:04 PM
**To:** Robert Grave e <robert@criterionwealth.com>
**Subject:** Re: coachman SEC

What's the lay translation on this?

On Tue, May 8, 2018 at 11:37 AM, Robert Gravette <robert@criterionwealth.com> wrote:

> Hi Patrick,
>
> See attached CWM annual due diligence (item 16) and the letter sent to all investors regarding the issue you mentioned below.

Bob

**Robert A. Gravette | President, CEO**

**CRITERION WEALTH MANAGEMENT**

26650 The Old Road, Suite 110, Valencia, CA 91381

**T** 661.254.2543 **F** 661.254.5190

**www.criterionwealth.com**

**STEWARDING** WEALTH • **SIMPLIFYING** LIFE • **EMPOWERING** PURPOSE™

Criterion Insurance Services, Inc. DBA: Criterion Wealth Management does not accept buy, sell or cancel orders by e-mail, or any instructions by e-mail that would require your signature. Securities offered through Ausdal Financial Partners, Inc., Member FINRA/SIPC 5187 Utica Ridge Road, Davenport, IA 52807 (563) 326-2064. Investment Advisory services offered through Criterion Wealth Management are independent of Ausdal Financial Partners, Inc. and any subsidiaries or affiliates. CA Insurance License # 0786906. Information contained in this communication is not considered an official record of your account and does not supersede normal trade confirmations or statements. Any information provided has been prepared from sources believed to be reliable but is not guaranteed, does not represent all available data necessary for making investment decisions and is for informational purposes only.

This e-mail may be privileged and/or confidential, and the sender does not waive any related rights and obligations. Any distribution, use or copying of this e-mail or the information it contains by other than an intended recipient is unauthorized. If you receive this e-mail in error, please advise me (by return e-mail or otherwise) immediately. Information received by or sent from this system is subject to review by supervisory personnel, is retained and may be produced to regulatory authorities or others with a legal right to the information.

E-mail messages are not encrypted

**From:** Patrick Denard [mailto:pjdenard@gmail.com]
**Sent:** Tuesday, May 08, 2018 8:59 AM
**To:** Robert Grave e <robert@criterionwealth.com>
**Subject:** coachman SEC

Bob,

Can I get an update on Coachman again?

I was looking into oil prices and noted they are up. However, at the same time I found that there is a legal firm in Chicago going after Coachman and found that Coachman recently settled with the SEC and has to back some management fees. Can you tell me what you know about this?

Thanks,

Patrick

--

Patrick Denard, MD

Southern Oregon Orthopedics

541-608-2595

***Important information for patients:***
*By choosing to use email for communication with me, you must agree to the following:*
*1. Email is an open network, which provides no protection for the confidential exchange of health-related information.*
*2. Email cannot be used to address medical urgencies or emergencies. Please contact me or the clinic staff at the above number regarding time-sensitive issues.*

--

Patrick Denard, MD

Southern Oregon Orthopedics

541-608-2595

***Important information for patients:***
*By choosing to use email for communication with me, you must agree to the following:*
*1. Email is an open network, which provides no protection for the confidential exchange of health-related information.*
*2. Email cannot be used to address medical urgencies or emergencies. Please contact me or the clinic staff at the above number regarding time-sensitive issues.*

--

Patrick Denard, MD

Southern Oregon Orthopedics

541-608-2595

***Important information for patients:***
*By choosing to use email for communication with me, you must agree to the following:*
*1. Email is an open network, which provides no protection for the confidential exchange of health-related information.*
*2. Email cannot be used to address medical urgencies or emergencies. Please contact me or the clinic staff at the above number regarding time-sensitive issues.*

--

Patrick Denard, MD

Southern Oregon Orthopedics

541-608-2595

***Important information for patients:***
*By choosing to use email for communication with me, you must agree to the following:*
*1. Email is an open network, which provides no protection for the confidential exchange of health-related information.*

*2. Email cannot be used to address medical urgencies or emergencies. Please contact me or the clinic staff at the above number regarding time-sensitive issues.*

--
Patrick Denard, MD
Southern Oregon Orthopedics
541-608-2595

***Important information for patients:***
*By choosing to use email for communication with me, you must agree to the following:*
*1. Email is an open network, which provides no protection for the confidential exchange of health-related information.*
*2. Email cannot be used to address medical urgencies or emergencies. Please contact me or the clinic staff at the above number regarding time-sensitive issues.*

---

**Chetan Patil** <cp@patillaw.com> Tue, Jun 26, 2018 at 5:30 PM
To: Patrick Denard <pjdenard@gmail.com>

Thanks, Patrick. If you have the original email rec'd from Bob on May 8 with the CWM annual due diligence document, then please forward that as well.

PATIL LAW

**Chetan S. Patil**
cp@patillaw.com

1100 Glendon Avenue, 17th Floor
Los Angeles CA 90024

800-950-6553 Toll Free

On Tue, Jun 26, 2018 at 5:24 PM, Patrick Denard <pjdenard@gmail.com> wrote:

> ---------- Forwarded message ----------
> From: **Robert Gravette** <robert@criterionwealth.com>
> Date: Tue, May 8, 2018 at 2:40 PM
> Subject: RE: coachman SEC
> To: Patrick Denard <pjdenard@gmail.com>
>
> As of last month they were receiving and evaluating offers. I think sometime this year everything will be completed. I'll keep you updated on any info we receive.
>
> **Robert A. Gravette l President, CEO**
>
> **CRITERION WEALTH MANAGEMENT**
>
> 26650 The Old Road, Suite 110, Valencia, CA 91381
>
> **T** 661.254.2543 **F** 661.254.5190
>
> **www.criterionwealth.com**

STEWARDING WEALTH • SIMPLIFYING LIFE • EMPOWERING PURPOSE™

Criterion Insurance Services, Inc. DBA: Criterion Wealth Management does not accept buy, sell or cancel orders by e-mail, or any instructions by e-mail that would require your signature. Securities offered through Ausdal Financial Partners, Inc., Member FINRA/SIPC 5187 Utica Ridge Road, Davenport, IA 52807 (563) 326-2064. Investment Advisory services offered through Criterion Wealth Management are independent of Ausdal Financial Partners, Inc. and any subsidiaries or affiliates. CA Insurance License # 0786906. Information contained in this communication is not considered an official record of your account and does not supersede normal trade confirmations or statements. Any information provided has been prepared from sources believed to be reliable but is not guaranteed, does not represent all available data necessary for making investment decisions and is for informational purposes only.

This e-mail may be privileged and/or confidential, and the sender does not waive any related rights and obligations. Any distribution, use or copying of this e-mail or the information it contains by other than an intended recipient is unauthorized. If you receive this e-mail in error, please advise me (by return e-mail or otherwise) immediately. Information received by or sent from this system is subject to review by supervisory personnel, is retained and may be produced to regulatory authorities or others with a legal right to the information.

E-mail messages are not encrypted

**From:** Patrick Denard [mailto:pjdenard@gmail.com]
**Sent:** Tuesday, May 08, 2018 2:36 PM

**To:** Robert Gravette <robert@criterionwealth.com>
**Subject:** Re: coachman SEC

And any update of When the sale will be complete?

On Tue, May 8, 2018 at 5:29 PM Robert Gravette <robert@criterionwealth.com> wrote:

> I believe it's a liability of Coachman along with bank debt. Once the sale of the assets are complete and the bank debt is paid off, then what ever is left goes to investors.
>
> **Robert A. Gravette I President, CEO**
>
> **CRITERION WEALTH MANAGEMENT**
>
> 26650 The Old Road, Suite 110, Valencia, CA 91381
>
> T 661.254.2543 F 661.254.5190
>
> **www.criterionwealth.com**
>
> STEWARDING WEALTH • SIMPLIFYING LIFE • EMPOWERING PURPOSE™

Criterion Insurance Services, Inc. DBA: Criterion Wealth Management does not accept buy, sell or cancel orders by e-mail, or any instructions by e-mail that would require your signature. Securities offered through Ausdal Financial Partners, Inc., Member FINRA/SIPC 5187 Utica Ridge Road, Davenport, IA 52807 (563) 326-2064. Investment Advisory services offered through Criterion Wealth Management are independent of Ausdal Financial Partners, Inc. and any subsidiaries or affiliates. CA Insurance License # 0786906. Information contained in this communication is not considered an official record of your account and does not supersede normal trade confirmations or statements. Any information provided has been prepared from sources believed to be reliable but is not guaranteed, does not represent all available data necessary for making investment decisions and is for informational purposes only.

This e-mail may be privileged and/or confidential, and the sender does not waive any related rights and obligations. Any distribution, use or copying of this e-mail or the information it contains by other than an intended recipient is unauthorized. If you receive this e-mail in error, please advise me (by return e-mail or otherwise) immediately. Information received by or sent from this system is subject to review by supervisory personnel, is retained and may be produced to regulatory authorities or others with a legal right to the information.

E-mail messages are not encrypted

**From:** Patrick Denard [mailto:pjdenard@gmail.com]
**Sent:** Tuesday, May 08, 2018 1:52 PM

**To:** Robert Grave e <robert@criterionwealth.com>
**Subject:** Re: coachman SEC

Does this mean they are paying back money to investors?

On Tue, May 8, 2018 at 4:01 PM Robert Gravette <robert@criterionwealth.com> wrote:

> Here is a summary:
>
> On August 14, 2017, the U. S. Securities and Exchange Commission (SEC) filed a settled Order Instituting Administrative Proceedings (“OIP”) against Coachman and Mr. Kenworthy. According to the SEC, Coachman failed to adequately disclose how the firm calculated management fees and expenses, causing clients to overpay by roughly $1.5 million in fees and expenses. The SEC also found that the firm and Mr. Kenworthy failed to disclose a conflict of interest related to a fund's purchase of a certain receivable related to an oil and gas lease from a fund that Mr. Kenworthy had previously managed and in which he held a 50% stake. The SEC alleged that Coachman caused the fund to overpay for the receivable by approximately $510,000. Coachman and Mr. Kenworthy agreed, without admitting or denying the SEC’s findings, to repay certain funds approximately $2.2 million (which includes prejudgment interest). Approximately $1.5 million will be paid through an offset of management fees and expenses due to Coachman by the Funds leaving a remaining total of $891,507 to be paid by Coachman over the next three years. Coachman and Mr. Kenworthy also paid a civil penalty of $50,000 each. See Item 18 for 22 more information
>
> **Robert A. Gravette | President, CEO**
>
> **CRITERION WEALTH MANAGEMENT**
>
> 26650 The Old Road, Suite 110, Valencia, CA 91381

T 661.254.2543 F 661.254.5190

**www.criterionwealth.com**

**STEWARDING** WEALTH • **SIMPLIFYING** LIFE • **EMPOWERING** PURPOSE™

Criterion Insurance Services, Inc. DBA: Criterion Wealth Management does not accept buy, sell or cancel orders by e-mail, or any instructions by e-mail that would require your signature. Securities offered through Ausdal Financial Partners, Inc., Member FINRA/SIPC 5187 Utica Ridge Road, Davenport, IA 52807 (563) 326-2064. Investment Advisory services offered through Criterion Wealth Management are independent of Ausdal Financial Partners, Inc. and any subsidiaries or affiliates. CA Insurance License # 0786906. Information contained in this communication is not considered an official record of your account and does not supersede normal trade confirmations or statements. Any information provided has been prepared from sources believed to be reliable but is not guaranteed, does not represent all available data necessary for making investment decisions and is for informational purposes only.

This e-mail may be privileged and/or confidential, and the sender does not waive any related rights and obligations. Any distribution, use or copying of this e-mail or the information it contains by other than an intended recipient is unauthorized. If you receive this e-mail in error, please advise me (by return e-mail or otherwise) immediately. Information received by or sent from this system is subject to review by supervisory personnel, is retained and may be produced to regulatory authorities or others with a legal right to the information.

E-mail messages are not encrypted

**From:** Patrick Denard [mailto:pjdenard@gmail.com]
**Sent:** Tuesday, May 08, 2018 12:04 PM
**To:** Robert Grave e <robert@criterionwealth.com>
**Subject:** Re: coachman SEC

What's the lay translation on this?

On Tue, May 8, 2018 at 11:37 AM, Robert Gravette <robert@criterionwealth.com> wrote:

> Hi Patrick,
>
> See attached CWM annual due diligence (item 16) and the letter sent to all investors regarding the issue you mentioned below.
>
> Bob
>
> **Robert A. Gravette I President, CEO**
>
> **CRITERION WEALTH MANAGEMENT**
>
> 26650 The Old Road, Suite 110, Valencia, CA 91381
>
> T 661.254.2543 F 661.254.5190
>
> **www.criterionwealth.com**

**STEWARDING** WEALTH • **SIMPLIFYING** LIFE • **EMPOWERING** PURPOSE™

Criterion Insurance Services, Inc. DBA: Criterion Wealth Management does not accept buy, sell or cancel orders by e-mail, or any instructions by e-mail that would require your signature. Securities offered through Ausdal Financial Partners, Inc., Member FINRA/SIPC 5187 Utica Ridge Road, Davenport, IA 52807 (563) 326-2064. Investment Advisory services offered through Criterion Wealth Management are independent of Ausdal Financial Partners, Inc. and any subsidiaries or affiliates. CA Insurance License # 0786906. Information contained in this communication is not considered an official record of your account and does not supersede normal trade confirmations or statements. Any information provided has been prepared from sources believed to be reliable but is not guaranteed, does not represent all available data necessary for making investment decisions and is for informational purposes only.

This e-mail may be privileged and/or confidential, and the sender does not waive any related rights and obligations. Any distribution, use or copying of this e-mail or the information it contains by other than an intended recipient is unauthorized. If you receive this e-mail in error, please advise me (by return e-mail or otherwise) immediately. Information received by or sent from this system is subject to review by supervisory personnel, is retained and may be produced to regulatory authorities or others with a legal right to the information.

E-mail messages are not encrypted

**From:** Patrick Denard [mailto:pjdenard@gmail.com]
**Sent:** Tuesday, May 08, 2018 8:59 AM
**To:** Robert Grave e <robert@criterionwealth.com>
**Subject:** coachman SEC

Bob,

Can I get an update on Coachman again?

I was looking into oil prices and noted they are up. However, at the same time I found that there is a legal firm in Chicago going after Coachman and found that Coachman recently settled with the SEC and has to back some management fees. Can you tell me what you know about this?

Thanks,

Patrick

--

Patrick Denard, MD

Southern Oregon Orthopedics

541-608-2595

***Important information for patients:***
*By choosing to use email for communication with me, you must agree to the following:*
*1. Email is an open network, which provides no protection for the confidential exchange of health-related information.*
*2. Email cannot be used to address medical urgencies or emergencies. Please contact me or the clinic staff at the above number regarding time-sensitive issues.*

--

Patrick Denard, MD

Southern Oregon Orthopedics

541-608-2595

***Important information for patients:***
*By choosing to use email for communication with me, you must agree to the following:*
*1. Email is an open network, which provides no protection for the confidential exchange of health-related information.*
*2. Email cannot be used to address medical urgencies or emergencies. Please contact me or the clinic staff at the above number regarding time-sensitive issues.*

--

Patrick Denard, MD

Southern Oregon Orthopedics

541-608-2595

***Important information for patients:***
*By choosing to use email for communication with me, you must agree to the following:*
*1. Email is an open network, which provides no protection for the confidential exchange of health-related information.*
*2. Email cannot be used to address medical urgencies or emergencies. Please contact me or the clinic staff at the above number regarding time-sensitive issues.*

--

Patrick Denard, MD

Southern Oregon Orthopedics

541-608-2595

***Important information for patients:***
*By choosing to use email for communication with me, you must agree to the following:*
*1. Email is an open network, which provides no protection for the confidential exchange of health-related information.*
*2. Email cannot be used to address medical urgencies or emergencies. Please contact me or the clinic staff at the above number regarding time-sensitive issues.*

--
Patrick Denard, MD
Southern Oregon Orthopedics
541-608-2595

***Important information for patients:***
*By choosing to use email for communication with me, you must agree to the following:*
*1. Email is an open network, which provides no protection for the confidential exchange of health-related information.*
*2. Email cannot be used to address medical urgencies or emergencies. Please contact me or the clinic staff at the above number regarding time-sensitive issues.*

---

**Patrick Denard** <pjdenard@gmail.com> Tue, Jun 26, 2018 at 5:31 PM
To: Chetan Patil <cp@patillaw.com>

5/8 email...

---------- Forwarded message ----------
From: **Robert Gravette** <robert@criterionwealth.com>
Date: Tue, May 8, 2018 at 11:37 AM
Subject: RE: coachman SEC
To: Patrick Denard <pjdenard@gmail.com>

Hi Patrick,

See attached CWM annual due diligence (item 16) and the letter sent to all investors regarding the issue you mentioned below.

Bob

**Robert A. Gravette l President, CEO**

**CRITERION WEALTH MANAGEMENT**

26650 The Old Road, Suite 110, Valencia, CA 91381

**T** 661.254.2543 **F** 661.254.5190

**www.criterionwealth.com**

**STEWARDING** WEALTH • **SIMPLIFYING** LIFE • **EMPOWERING** PURPOSE™

Criterion Insurance Services, Inc. DBA: Criterion Wealth Management does not accept buy, sell or cancel orders by e-mail, or any instructions by e-mail that would require your signature. Securities offered through Ausdal Financial Partners, Inc., Member FINRA/SIPC 5187 Utica Ridge Road, Davenport, IA 52807 (563) 326-2064. Investment Advisory services offered through Criterion Wealth Management are independent of Ausdal Financial Partners, Inc. and any subsidiaries or affiliates. CA Insurance License # 0786906. Information contained in this communication is not considered an official record of your account and does not supersede normal trade confirmations or statements. Any information provided has been prepared from sources believed to be reliable but is not guaranteed, does not represent all available data necessary for making investment decisions and is for informational purposes only.

This e-mail may be privileged and/or confidential, and the sender does not waive any related rights and obligations. Any distribution, use or copying of this e-mail or the information it contains by other than an intended recipient is unauthorized. If you receive this e-mail in error, please advise me (by return e-mail or otherwise) immediately. Information received by or sent from this system is subject to review by supervisory personnel, is retained and may be produced to regulatory authorities or others with a legal right to the information.

E-mail messages are not encrypted

**From:** Patrick Denard [mailto:pjdenard@gmail.com]
**Sent:** Tuesday, May 08, 2018 8:59 AM
**To:** Robert Grave e <robert@criterionwealth.com>
**Subject:** coachman SEC

Bob,

Can I get an update on Coachman again?

I was looking into oil prices and noted they are up. However, at the same time I found that there is a legal firm in Chicago going after Coachman and found that Coachman recently settled with the SEC and has to back some management fees. Can you tell me what you know about this?

Thanks,

Patrick

--

Patrick Denard, MD

Southern Oregon Orthopedics

541-608-2595

***Important information for patients:***
*By choosing to use email for communication with me, you must agree to the following:*
*1. Email is an open network, which provides no protection for the confidential exchange of health-related information.*
*2. Email cannot be used to address medical urgencies or emergencies. Please contact me or the clinic staff at the above number regarding time-sensitive issues.*

--
Patrick Denard, MD
Southern Oregon Orthopedics
541-608-2595

***Important information for patients:***
*By choosing to use email for communication with me, you must agree to the following:*
*1. Email is an open network, which provides no protection for the confidential exchange of health-related information.*
*2. Email cannot be used to address medical urgencies or emergencies. Please contact me or the clinic staff at the above number regarding time-sensitive issues.*

**2 attachments**

**2017.10.09 - Coachman ADV Update.pdf**
857K

**Annual Due Diligence Questionnaire - Coachman.doc**
334K

**Patrick Denard** <pjdenard@gmail.com> Tue, Jan 14, 2020 at 7:58 PM
To: "Duong, DoHoang T." <DuongDo@sec.gov>

More emails about Coachman...

---------- Forwarded message ---------
From: **Patrick Denard** <pjdenard@gmail.com>
Date: Tue, Jun 26, 2018 at 5:31 PM
Subject: Fwd: coachman SEC
To: Chetan Patil <cp@patillaw.com>

5/8 email...

---------- Forwarded message ----------
From: **Robert Gravette** <robert@criterionwealth.com>
Date: Tue, May 8, 2018 at 11:37 AM
Subject: RE: coachman SEC
To: Patrick Denard <pjdenard@gmail.com>

Hi Patrick,

See attached CWM annual due diligence (item 16) and the letter sent to all investors regarding the issue you mentioned below.

Bob

**Robert A. Gravette l President, CEO**

**CRITERION WEALTH MANAGEMENT**

26650 The Old Road, Suite 110, Valencia, CA 91381

**T** 661.254.2543 **F** 661.254.5190

**www.criterionwealth.com**

**STEWARDING** WEALTH • **SIMPLIFYING** LIFE • **EMPOWERING** PURPOSE™

Criterion Insurance Services, Inc. DBA: Criterion Wealth Management does not accept buy, sell or cancel orders by e-mail, or any instructions by e-mail that would require your signature. Securities offered through Ausdal Financial Partners, Inc., Member FINRA/SIPC 5187 Utica Ridge Road, Davenport, IA 52807 (563) 326-2064. Investment Advisory services offered through Criterion Wealth Management are independent of Ausdal Financial Partners, Inc. and any subsidiaries or affiliates. CA Insurance License # 0786906. Information contained in this communication is not considered an official record of your account and does not supersede normal trade confirmations or statements. Any information provided has been prepared from sources believed to be reliable but is not guaranteed, does not represent all available data necessary for making investment decisions and is for informational purposes only.

This e-mail may be privileged and/or confidential, and the sender does not waive any related rights and obligations. Any distribution, use or copying of this e-mail or the information it contains by other than an intended recipient is unauthorized. If you receive this e-mail in error, please advise me (by return e-mail or otherwise) immediately. Information received by or sent from this system is subject to review by supervisory personnel, is retained and may be produced to regulatory authorities or others with a legal right to the information.

E-mail messages are not encrypted

**From:** Patrick Denard [mailto:pjdenard@gmail.com]
**Sent:** Tuesday, May 08, 2018 8:59 AM
**To:** Robert Grave e <robert@criterionwealth.com>
**Subject:** coachman SEC

Bob,

Can I get an update on Coachman again?

I was looking into oil prices and noted they are up. However, at the same time I found that there is a legal firm in Chicago going after Coachman and found that Coachman recently settled with the SEC and has to back some management fees. Can you tell me what you know about this?

Thanks,

Patrick

--

Patrick Denard, MD

Southern Oregon Orthopedics

541-608-2595

***Important information for patients:***
*By choosing to use email for communication with me, you must agree to the following:*
*1. Email is an open network, which provides no protection for the confidential exchange of health-related information.*
*2. Email cannot be used to address medical urgencies or emergencies. Please contact me or the clinic staff at the above number regarding time-sensitive issues.*

--
Patrick Denard, MD
Southern Oregon Orthopedics
541-608-2595

***Important information for patients:***
*By choosing to use email for communication with me, you must agree to the following:*
*1. Email is an open network, which provides no protection for the confidential exchange of health-related information.*
*2. Email cannot be used to address medical urgencies or emergencies. Please contact me or the clinic staff at the above number regarding time-sensitive issues.*

--
Patrick Denard, MD
Southern Oregon Orthopedics
541-608-2595

***Important information for patients:***
*By choosing to use email for communication with me, you must agree to the following:*
*1. Email is an open network, which provides no protection for the confidential exchange of health-related information.*
*2. Email cannot be used to address medical urgencies or emergencies. Please contact me or the clinic staff at the above number regarding time-sensitive issues.*

---

**2 attachments**

**2017.10.09 - Coachman ADV Update.pdf**
857K

Annual Due Diligence Questionnaire - Coachman.doc
334K

---

**Patrick Denard** <pjdenard@gmail.com> Thu, Jan 16, 2020 at 2:56 PM
Draft To: "Duong, DoHoang T." <DuongDo@sec.gov>

---------- Forwarded message ---------
From: **Patrick Denard** <pjdenard@gmail.com>
Date: Tue, Jan 14, 2020 at 7:58 PM
Subject: Fwd: coachman SEC
To: Duong, DoHoang T. <DuongDo@sec.gov>

More emails about Coachman...

---------- Forwarded message ---------
From: **Patrick Denard** <pjdenard@gmail.com>
Date: Tue, Jun 26, 2018 at 5:31 PM
Subject: Fwd: coachman SEC
To: Chetan Patil <cp@patillaw.com>

5/8 email...

---------- Forwarded message ----------
From: **Robert Gravette** <robert@criterionwealth.com>
Date: Tue, May 8, 2018 at 11:37 AM
Subject: RE: coachman SEC
To: Patrick Denard <pjdenard@gmail.com>

Hi Patrick,

See attached CWM annual due diligence (item 16) and the letter sent to all investors regarding the issue you mentioned below.

Bob

**Robert A. Gravette | President, CEO**

**CRITERION WEALTH MANAGEMENT**

26650 The Old Road, Suite 110, Valencia, CA 91381

**T** 661.254.2543 **F** 661.254.5190

**www.criterionwealth.com**

**STEWARDING** WEALTH • **SIMPLIFYING** LIFE • **EMPOWERING** PURPOSE™

Criterion Insurance Services, Inc. DBA: Criterion Wealth Management does not accept buy, sell or cancel orders by e-mail, or any instructions by e-mail that would require your signature. Securities offered through Ausdal Financial Partners, Inc., Member FINRA/SIPC 5187 Utica Ridge Road, Davenport, IA 52807 (563) 326-2064. Investment Advisory services offered through Criterion Wealth Management are independent of Ausdal Financial Partners, Inc. and any subsidiaries or affiliates. CA Insurance License # 0786906. Information contained in this communication is not considered an official record of your account and does not supersede normal trade confirmations or statements. Any information provided has been prepared from sources believed to be reliable but is not guaranteed, does not represent all available data necessary for making investment decisions and is for informational purposes only.

This e-mail may be privileged and/or confidential, and the sender does not waive any related rights and obligations. Any distribution, use or copying of this e-mail or the information it contains by other than an intended recipient is unauthorized. If you receive this e-mail in error, please advise me (by return e-mail or otherwise) immediately. Information received by or sent from this system is subject to review by supervisory personnel, is retained and may be produced to regulatory authorities or others with a legal right to the information.

E-mail messages are not encrypted

**From:** Patrick Denard [mailto:pjdenard@gmail.com]
**Sent:** Tuesday, May 08, 2018 8:59 AM
**To:** Robert Grave e <robert@criterionwealth.com>
**Subject:** coachman SEC

Bob,

Can I get an update on Coachman again?

I was looking into oil prices and noted they are up. However, at the same time I found that there is a legal firm in Chicago going after Coachman and found that Coachman recently settled with the SEC and has to back some management fees. Can you tell me what you know about this?

Thanks,

Patrick

--

Patrick Denard, MD

Southern Oregon Orthopedics

541-608-2595

***Important information for patients:***
*By choosing to use email for communication with me, you must agree to the following:*
*1. Email is an open network, which provides no protection for the confidential exchange of health-related information.*
*2. Email cannot be used to address medical urgencies or emergencies. Please contact me or the clinic staff at the above number regarding time-sensitive issues.*

--
Patrick Denard, MD
Southern Oregon Orthopedics
541-608-2595

***Important information for patients:***
*By choosing to use email for communication with me, you must agree to the following:*
*1. Email is an open network, which provides no protection for the confidential exchange of health-related information.*
*2. Email cannot be used to address medical urgencies or emergencies. Please contact me or the clinic staff at the above number regarding time-sensitive issues.*

--
Patrick Denard, MD
Southern Oregon Orthopedics
541-608-2595

***Important information for patients:***
*By choosing to use email for communication with me, you must agree to the following:*
*1. Email is an open network, which provides no protection for the confidential exchange of health-related information.*
*2. Email cannot be used to address medical urgencies or emergencies. Please contact me or the clinic staff at the above number regarding time-sensitive issues.*

--
Patrick Denard, MD
Southern Oregon Orthopedics
541-608-2595

***Important information for patients:***
*By choosing to use email for communication with me, you must agree to the following:*
*1. Email is an open network, which provides no protection for the confidential exchange of health-related information.*
*2. Email cannot be used to address medical urgencies or emergencies. Please contact me or the clinic staff at the above number regarding time-sensitive issues.*

---

**2 attachments**

**2017.10.09 - Coachman ADV Update.pdf**
857K

**Annual Due Diligence Questionnaire - Coachman.doc**
334K

# EXHIBIT 9B

COACHMAN energy

October 9, 2017

Dear Investor,

As you may be aware, Coachman Energy Partners (the Adviser) and its CEO, Randall Kenworthy, have reached a settlement with the U.S. Securities and Exchange Commission. More specifically, without admitting or denying the SEC's findings, Coachman resolved the SEC's concerns that Coachman did not adequately disclose its methodology for calculating certain fees and expenses, charged from 2011 through 2014, and that the firm did not properly disclose a conflict around one of the funds when entering a transaction with an affiliated entity. The settlement fully resolves the agency's inquiry and does not limit Coachman's or Mr. Kenworthy's activities in any respect. Coachman does not expect this settlement to have any impact on the operation or performance of the firm's funds.

The Firm's Brochure (Form ADV Part 2A) has been amended to disclose the settlement, a copy of which is included with this correspondence.

Coachman takes its fiduciary responsibilities seriously and remains fully committed to upholding the highest reporting standards and continuously enhancing internal protocols and disclosure practices. As such, we have enhanced our disclosures regarding fees and expenses and will include detailed scenario examples in future PPMs to better illustrate fee structures going forward. We have also taken steps to enhance our compliance program and internal controls.

We remain focused on building value for our investor base through targeted acquisition and development in unconventional and conventional basins throughout the Lower 48.

Coachman Energy Partners Investor Relations
Investor.relations@coachmanenergy.com
855-899-8576

Enclosure: *Firm Brochure (Form ADV Part 2A)*

5251 DTC Parkway // Suite 200 // Greenwood Village, CO 80111
P 720-279-0072 F 303-534-0220
CoachmanEnergy.com

## Item 1 – Cover Page

# Coachman Energy Partners LLC

**5251 DTC Parkway, Suite 200**
**Greenwood Village, CO 80111**
**www.coachmanenergy.com**
**(720) 279-0072**

September 2017

**This brochure provides information about the qualifications and business practices of Coachman Energy Partners LLC ("Coachman"). If you have any questions about the contents of this brochure, please contact us at (720) 279-0072. The information in this brochure has not been approved or verified by the United States Securities and Exchange Commission (the "SEC") or by any state securities authority.**

**Coachman is registered as an investment adviser with the SEC pursuant to the Investment Advisers Act of 1940, as amended. Recipients of this Brochure should be aware that registration with the SEC does not in any way constitute an endorsement by the SEC of an investment adviser's skill or expertise. Further, registration does not imply or guarantee that a registered adviser has achieved a certain level of skill, competency, sophistication, expertise or training in providing advisory services to its clients.**

**Additional information about Coachman (IARD/CRD #166776) also is available on the SEC's website at www.adviserinfo.sec.gov.**

## Item 2 Material Changes

This amended Form ADV Part 2 Disclosure Brochure (the "Brochure") for Coachman Energy Partners LLC ("Coachman" or the "Adviser") is amended herein as of September 2017. As part of this amendment, Coachman has made the following material changes that have occurred since its last annual updating amendment filed in March 2017 for the period ending December 31, 2016:

**Item 4** of this Brochure has been revised to disclose the Adviser's affiliated entities ("Affiliates") and the corresponding activities of each as well as its relationship to the Adviser. This Item has also been revised to reflect Coachman's (unaudited) assets under management ("AUM") as of June 30, 2017[1] as well as its registration status as an investment adviser.

**Item 5** of this Brochure has been amended to clarify the methodology used by the Firm to calculate management fees and expenses charged to the Funds.

**Item 8** of this Brochure has been amended to make revisions to the Firm's investment strategy.

**Item 9** of this Brochure has been revised to disclose a disciplinary action taken by the U. S. Securities & Exchange Commission ("SEC") against Coachman Energy Partners LLC and Randy Kenworthy.

**Item 18** of this Brochure has been revised to disclose the financial impact of the SEC Order described in amended Item 9.

From time to time, we may amend this Disclosure Brochure to reflect changes in our business practices, changes in regulations and routine annual updates as required under the Investment Advisers Act of 1940, as amended (the "Advisers Act") or the rules adopted by the U.S. Securities and Exchange Commission. This complete Disclosure Brochure or a Summary of Material Changes shall be provided to each Client annually and if a material change occurs in the business practices of Coachman.

At any time, you may view the current Disclosure Brochure on-line at the SEC's Investment Adviser Public Disclosure website at www.adviserinfo.sec.gov.

[1] As is common in the oil and gas industry, assets owned by the Fund(s), which are advised by Coachman are valued twice a year, in June and December by third-party engineering firms.

## Item 3 - Table of Contents


Item 1 – Cover Page ..... 1

Item 2 Material Changes ..... 2

Item 3 - Table of Contents ..... 3

Item 4 - Advisory Business ..... 4

Item 5 - Fees and Compensation ..... 6

Item 6 - Performance-Based Fees and Side-By-Side Management ..... 10

Item 7 - Types of Clients ..... 12

Item 8 - Methods of Analysis, Investment Strategies and Risk of Loss ..... 13

Item 9 - Disciplinary Information ..... 21

Item 10 - Other Financial Industry Activities and Affiliations ..... 22

Item 11 - Code of Ethics, Participation or Interest in Client Transactions & Personal Trading ..... 23

Item 12 - Brokerage Practices ..... 24

Item 13 - Review of Accounts ..... 25

Item 14 - Client Referrals and Other Compensation ..... 25

Item 15 - Custody ..... 26

Item 16 - Investment Discretion ..... 26

Item 17 - Voting Client Securities ..... 26

Item 18 - Financial Information ..... 26

Item 19 - Requirements for State-Registered Advisers ..... 27

Brochure Supplement – Form ADV – Part 2B ..... 28

## Item 4 - Advisory Business

### *Coachman Energy Partners LLC*

Coachman Energy Partners LLC, a Delaware limited liability company, was formed on January 14, 2013. The Adviser maintains its principal office at 5251 DTC Parkway, Suite 200, Greenwood Village, Colorado 80111.

### *Affiliated Entities*

Coachman Energy Partners LLC ("CEP") is the 100% equity owner of Coachman Energy Operating Company ("CEOC"), Coachman Energy Managing General Partners LLC ("CEMGP"), Coachman Energy Administrator ("CEA") and CE Managing General Partners II LLC ("CEMGP II"), collectively "Affiliates".

The Managing General Partner (s)or Manager(s) ("Manager(s)") of a Fund may be either Coachman Energy Managing General Partners LLC or CE Managing General Partners II LLC depending on the Fund. Coachman Energy Administrator LLC ("CEA") may have an administration agreement with the Fund and/or the corresponding Manager

Coachman provides investment advisory services to certain pooled investment vehicles (individually, a "Fund" and collectively, the "Funds") that invest in various domestic oil and gas interests pursuant to an investment management agreement. As a general matter, Coachman is granted discretion by the Manager via an Investment Management Agreement with regard to which oil and gas interests the Fund will acquire and whether or not the Fund will participate in drilling oil and gas wells on acreage in which the Fund holds an interest. As of the date of this filing, COACHMAN manages the following Funds/Entities:

- Bakken Drilling Fund III LP ("BDF III");
- Coachman Energy Land II LLC ("CEL II");
- Bakken Drilling Fund IV LP ("BDF IV");
- Bakken Drilling Fund IVB LLC ("BDF IVB");
- Bakken Income Fund LLC ("BIF");
- Coachman Energy VI LP ("CE VI");
- Coachman Energy VIB LLC ("CE VIB"); and,
- Coachman Energy VII LLC ("CE VII").

The advisory relationship between each Fund and Coachman is governed by an investment management agreement (each, a "Management Agreement" and collectively, the "Management Agreements"). The Management Agreements are generally negotiated between related parties and, as such, their terms, including the fees payable to Coachman and/or an Affiliate, may not be as favorable to the Funds as if they had been negotiated with an unaffiliated, unrelated third party. Subject to the terms of each Management Agreement, Coachman generally performs the following services on behalf of each Fund[2]:

- find, evaluate, and conduct diligence on oil and gas production acquisition and mineral acreage investment opportunities;
- negotiate terms of investments in various properties and working interests, including joint operating agreements, participation agreements and related governing documents;
- engage and contract third party professionals such as geologists, geophysicists, and petroleum engineers to evaluate potential plays, evaluate proposals from operators, and provide production and reserve valuation opinions;
- conduct diligence on oil and gas production acquisition and mineral acreage investment opportunities;
- manage any reporting and compliance with the Internal Revenue Service (the "IRS"), SEC and any other federal, state and local laws and regulations;
- negotiate and enter into hedging facilities; and
- provide the pre-closing and post-closing accounting platforms to support the investment and prepare the requisite financial statements and reports on an ongoing basis.

Coachman may offer advice to the Funds to invest in instruments that are consistent with each respective Fund's investment strategy and objective, including to: (1) sell hydrocarbons; (2) acquire mineral leases and producing oil and gas wells; and (3) participate in drilling gross horizontal and vertical oil and gas wells.

Without prior consultation with the Funds, Coachman may provide investment management services to additional pooled investment vehicles. or to additional feeder funds that may be established from time to time to accommodate tax-qualified investors.

The investments of the Funds are tailored to the Fund. Investors in the Funds (the "Investors" or "Limited Partners") do not enter into investment management agreements with Coachman and are not considered advisory clients of Coachman. Investors may not impose restrictions on the Funds'

---

[2] The listed services generally apply to all of the Funds, except Bakken Drilling Fund IVB LLC which is a feeder fund in a master-feeder arrangement that invests 100% of its capital into Bakken Drilling Fund IV LP and Coachman Energy VIB LLC which is a feeder fund in a master-feeder arrangement that invests 100% of its capital into Coachman Energy VI LP. In addition, Coachman Energy VII LLC is a master fund in a master-feeder arrangement. Coachman Energy Partners LLC is not the investment manager of the feeder funds.

investments in certain securities or types of securities. This Brochure is provided to the Investors and is also qualified in its entirety by the Funds' governing documents (collectively, the Offering Memorandum and other applicable agreements—the "Offering Documents").

Further, the Manager or the Funds may enter into side letters or other similar arrangements with certain Investors that may provide more favorable terms to these Investors than those described in the Offering Documents.

Coachman does not manage or participate in any wrap fee programs.

As of June 30, 2017[3], the Adviser had $64,372,218 in discretionary assets under management. Since the Firm's current assets under management no longer exceed $90 million, the amount required to register with the SEC, Coachman is in the process of registering as a state adviser with the State of Colorado and any other state in which registration is required.

### *Principal Owner(s)*

The principal owner of the Adviser is Randall Kenworthy. Mr. Kenworthy is the only principal who owns 25% or more of the Adviser and Mr. Kenworthy holds 100% of the Class A interest of the Adviser.

## Item 5 - Fees and Compensation

The fees and expenses applicable to each Fund are set forth in detail in each Fund's respective Offering Documents. A brief summary of those fees and expenses is provided below. The Adviser bills the Funds for the fees incurred.

### *Management Fees*

Generally, Coachman receives an annual Management Fee between 1% and 2.5% per year from each Fund until the Manager begins receiving distributions of performance allocations/carried interest allocations. The Management Fee is billed and payable monthly or quarterly in advance, based on a percentage of each Fund's capital contributions on December 31 of the prior year.

The management fee is allocated *pro rata* among all investors in accordance with their percentage interest in the applicable Fund, regardless of when during the year the individual investor invested in the Fund. On or before February 15 of the following year, Coachman shall determine if the aggregate management fee paid during the prior fiscal year equals the fee when calculated based on the aggregate capital contributions under management at the end of the year; if not a true-up or true-down payment shall be made by the Fund or the Adviser (or its Affiliate).

[3] As is common in the oil and gas industry, assets owned by the Fund(s), which are advised by Coachman are valued twice a year, in June and December by third-party engineering firms.

*CEVII*. This Fund's annual management fees are billed and payable in arrears quarterly on the last day of each calendar quarter based on 1.75% per annum of the aggregate committed capital during the investment period, and thereafter, in an amount equal to 1.75% per annum of the amount of Capital Contributions invested by the Fund in any Project or portion of a Project which has not been disposed of, written down or written off by the Fund, as of any date of determination ("Invested Capital"); provided, however, that no Management Fee shall be paid to the Manager after the seventh (7th) anniversary of the Final Closing Date.

All investors are advised to consult the offering documents for more detailed information regarding fees and expenses as well as how they are calculated and when they are assessed.

### *Organizational Fees*

The organizational fee is intended to reimburse actual expenses incurred by a Fund's Manager related to the startup and marketing of a Fund. Organizational fees are not transaction-based commissions. Instead, each Fund, upon receiving its minimum offering amount and after each subsequent closing, will pay the Manager an organizational fee of up to 5% of the Fund's aggregate capital contributions as reimbursement of expenses including, but not limited to, legal fees, printing costs, marketing costs, administrative expenses and due diligence costs as well as the time of the Fund's Manager, as provided by the Fund's offering or other operative documents. Not all Funds will have the same fees, costs and expenses.

### *Management Expenses*

The Funds will reimburse the Manager for expenses incurred in providing management services to the Funds, including without limitation, a portion of the overhead. Overhead expenses include such costs as salaries and benefits of administrative personnel, office rent and expenses, corporate insurance, corporate legal costs, corporate audit costs, and other professional services such as marketing, consulting, and compliance. Management expense reimbursements are based upon the average amount of capital contributions under management during the course of the year. Management expense reimbursements may or may not be capped as a percentage of the aggregate Capital Contributions for expenses incurred in providing management services to the Fund, including overhead expenses (the "Management Expenses), based on the capital raised in each Fund. The general and administrative costs associated with administering the Funds is shared among the Funds on a *pro rata* basis based on the total amount of capital raised for each of the Funds.

### *Operating Expenses*

In addition, each Fund, subject to its governing documents, will typically pay or otherwise bear all fees, costs, expenses and other liabilities arising in connection with its operations (collectively, the "<u>Operating Expenses</u>"). The Operating Expenses of a particular Fund are set forth in its constituent documents, but may include, without limitation, the following:

- Fees, costs and expenses related to the identification, evaluation, negotiation, acquisition, due diligence, restructuring, closing, holding, monitoring and disposition of Fund investments (whether or not consummated) and other assets, including, without limitation, travel expenses, commissions or brokerage fees or similar charges in connection therewith;

- Operated and non-operated oil and gas accounting expenses related to the Fund's investments;

- Employee and contractor compensation expenses to the extent related to the Fund, including but not limited to the salaries paid to Coachman employees to the extent related to the Fund;

- Office and other general and administrative expenses to the extent related to the Fund, including but not limited to rent, supplies and other overhead incurred by Coachman to the extent related to the Fund;

- Information technology expenses to the extent related to the Fund, including but not limited information technology expenses related to Fund operations, in-field operations, hydrocarbon development, production, and marketing;

- Planning and petroleum engineering costs and fees, geoscience expenses and fees, and similar costs and fees related to the acquisition, development, and operation of the Fund's investments;

- Production management expenses related to the Fund's investments;

- Expenses related to organizing and maintaining entities, such as holding companies, through or in which investments will be made;

- Legal, auditing, consulting, third-party administration, investment and commercial banking, appraisal, custodial, accounting, registration, valuation and other professional expenses;

- Expenses for preparation of the Fund's financial statements, tax returns and filings (including Partners' Schedule K-1s), and otherwise associated with reporting and providing information to Partners;

- Insurance premiums related to errors and omission liability insurance or other insurance as deemed appropriate by the MGP to protect the Fund, the MGP, the Investment Manager, their respective affiliates and any of their directors, officers, members, partners, employees, agents or to indemnify the MGP, the Investment Manager and their respective affiliates against any liability related to a Fund investment and the operation of the Fund. Such policies are also intended to protect and indemnify the Investor General Partners;

- Indemnification and indemnity contributions or reimbursement obligations of the Fund with respect to any person, whether payable in connection with a Proceeding (as defined in the Partnership Agreement) involving the Fund or otherwise;

- Taxes, fees or governmental charges that may be assessed against the Fund;

- Fees incurred in connection with the maintenance of bank or custodian accounts;
- Costs associated with borrowings including principal, interest, placement and other fees, charges and costs associated with the borrowing of funds to the extent permitted hereunder;
- Costs and expenses of any Proceeding (including investigations or threatened investigations) or threatened litigation involving Fund activities, including indemnification expenses;
- Any extraordinary expense of the Fund, including fees and expenses associated with any tax or other audit, investigation, settlement or review of the Fund;
- Out-of-pocket costs and expenses incurred by the Fund, the MGP or Investment Manager in connection with any meeting or conference with any Limited Partner, including the annual meeting of Unitholders, if any;
- Expenses incurred by the MGP in serving as the tax matters representative;
- Costs and expenses for terminating, dissolving and winding up the Fund; and
- All other expenses properly chargeable to the activities of the Fund.

To the extent such costs and expenses are incurred for the account or benefit of more than one Fund or multiple Funds, Coachman will allocate such costs and expenses to each Fund in proportion to the size of its investment in the activity or entity to which the expense relates (subject to the type of expense and the terms of each Fund's applicable governing documents) or in such other manner as Coachman considers fair, reasonable and consistent with its governing documents.

***Broker-Dealer Feess***

Coachman may solicit capital through registered broker dealers and pay commissions to participating broker dealer companies that execute valid selling agreements with the Fund through a Managing Broker Dealer. Coachman requires broker-dealers with which it engages to be registered with the United States Securities and Exchange Commission (SEC) and be a member of the Financial Industry Regulatory Authority (FINRA) and to have all licenses and registrations required to conduct a securities business.

Consistent with the disclosures made in a Fund’s Offering Documents, compensation paid to a broker dealer will generally be based on a percentage of the gross amount raised by that broker dealer. An additional due diligence allowance may also be paid to a participating broker-dealer based on a percentage of the gross amount raised by that broker dealer. Further, a Fund may employ a Managing Broker Dealer to which it will pay an additional fee based on a certain percentage of the Capital Contributed. Such fees will be paid in accordance with that which is allowed pursuant to disclosures made in the Fund’s offering documents. Finally, a Fund may pay commissions with respect to investment funds received through registered investment advisers or directly through the Manager, in which case, the sales charge will be deducted from the subscription

and will not be treated as part of the investor's capital contribution to the Fund.

### *Gatekeeper*

The Firm has engaged an independent representative to act as a "Gatekeeper" to the Funds. The Gatekeeper is a CPA tasked with reviewing the payment of all fees, expenses and capital withdrawals from the Funds. Coachman must send all invoices or receipts to the Gatekeeper, detailing the amount of the fee, expenses or capital withdrawal and the method of calculation such that the independent representative can:

- Determine that the payment is in accordance with the pooled investment vehicle standards (generally the partnership agreement or membership agreement); and
- Forward, to the fund administrator, approval for payment of the invoice with a copy to the investment adviser.

### *Cross Trades*

The Adviser and the Affiliates will not receive any compensation for facilitating cross trades between the Funds, including any commission or transaction-based fee, other than its ordinary advisory fees. Coachman will engage in a cross trade only if such transaction is in the best interests of each participating Fund and no Fund is disadvantaged by such transaction.

## Item 6 - Performance-Based Fees and Side-By-Side Management

### *Performance-Based Compensation*

Generally Coachman may be entitled to receive a performance-based allocation based on the proceeds realized upon the disposition of the assets of each Fund, subject to the return of capital contributions to investors and subject further to a preferred return to investors. In addition to this performance-based compensation, Coachman may be entitled to receive management and other fees and expenses as detailed in Item 5 above.

The existence of performance-based compensation with respect to the Funds may create an incentive for Coachman and/or an Affiliate to make more speculative investments on behalf of the Funds than they might otherwise make in the absence of such performance-based compensation. Further, Coachman may be incentivized to allocate investment opportunities to the Funds that either pay performance-based compensation or higher performance-based compensation to the Manager of such Fund. Similarly, the management fees, or higher management fees, may incentivize the Adviser to dedicate increased resources and allocate more profitable investment opportunities to the Funds that are charged such management fees or higher management fees.

*Timing of Investment Realization.* In addition, the terms applicable to Fund distributions could incentivize Coachman and/or an Affiliate to make decisions regarding the timing and structure of realizations of portfolio investments that may not be in the best interests of the Funds. Coachman and/or an Affiliate may be incentivized to hold on to investments that have poor prospects for improvement in order to receive ongoing management fees in the interim and, potentially, a more likely or larger carried interest distribution if such asset's value appreciates in the future. This incentive may be increased by the presence of clawbacks in certain Funds where the Manager is under an obligation to return to the Fund's investors any excess carried interest distributions received by such Manager upon the Fund's termination. While the governing documents of a Fund typically specify an investment period within which investments may be consummated, there is generally more flexibility in the discretion of the Adviser or Affiliates regarding when investments must be realized. In addition, a Fund may make portfolio investments that may not be advantageously disposed of prior to such Fund's dissolution, either by expiration of its terms or otherwise. Although Coachman expects that investments will be disposed of prior to dissolution, the Funds may sell, distribute or otherwise dispose of investments at a disadvantageous time as a result of dissolution. Further, the Funds' governing documents do not typically impose a strict obligation on a Manager or liquidator to realize investments within a certain period of time after dissolution, and there can be no assurances with respect to the time frame in which the winding-up and the final distribution of proceeds to investors will occur.

*Reserves.* The governing documents of most of the Funds provide that distributions, including final distributions, to investors are generally subject to reserves or holdbacks for estimated accrued expenses, liabilities and contingencies. In addition, investors may be required to return amounts distributed to them to, among other things, fund indemnification obligations. The applicable laws in certain jurisdictions may also require investors that received a distribution in error or in violation of such law to, under certain circumstances, re-contribute such distributions back to the respective Funds.

*Conflicts Related to Fund Valuation.* For certain Funds, the existence of the carried interest or performance allocation may create a potential conflict of interest for the Adviser and the Affiliates in valuing investments. For example, because distributions to the partners in such Funds are generally calculated in a "deal-by-deal" waterfall, Coachman and/or an Affiliate will not receive carried interest until the investors receive distributions equal to their share of write-downs not taken into account in prior distributions. This may create an incentive for the Advisor and Affiliates to avoid writing down the value of assets that are not readily marketable or difficult to value, because the Advisor and Affiliates will be in a position to receive a higher carried interest. In addition, in the case where distributions-in-kind are made to a Fund's investors, the Advisor and Affiliates may be incentivized to employ valuation methodologies that may give rise to a higher valuation of such assets. The Adviser has adopted written valuation policies and procedures intended to address potential conflicts of interests that arise in respect of valuation of the Funds' assets.

*Allocation Among Funds.* Coachman is committed to allocating investment opportunities among the Funds in a manner that, over time, is on a fair and equitable basis. Some of the Funds provide in their governing documents the ability for the Manager of each such Fund to form one or more advisory committees to assist Coachman in making decisions related to the applicable Fund.

*Affiliated Transactions*. The Advisory Committee will evaluate and advise Coachman with respect to any affiliated transactions that Coachman may recommend to the Funds. Coachman will also create policies and procedures for the Advisory Committee to consider when it evaluates any potential affiliated transactions. Coachman's Advisory Committee members are appointed by the Manager to: (1) advise the Manager on such matters related to the Fund, as the Manager may request; or (2) review and recommend or not recommend the resolution of any conflict related to the Fund presented to the advisory committee; *provided, however*, that any investment decisions made on behalf of the Fund by Coachman, will not be subject to review by any such advisory committee. The advisory committee may be designated as either a binding or non-binding authority. If formed, the advisory committees consist of at least three (3) representatives selected by the Manager. Neither a Manager nor any principal of such entities will be a member of the advisory committee, and no more than one (1) advisory committee member will be an affiliate of a Manager. The Advisory Committee will also review conflicts between Coachman and its Affiliates and recommend resolution options.

*Valuation of Client Assets.* Certain assets owned by or managed for the Funds are those for which there is no, or only a limited, liquid market, and the fair value of such assets may not be readily determinable. There is no assurance that the value assigned to an investment at a certain time will accurately reflect the value that will be realized upon the eventual disposition of the investment, and a Fund's performance could be adversely affected if such valuation determinations are materially higher than the value ultimately realized upon the disposition of the investment. There may be situations in which Coachman may be incentivized to: (i) employ valuation methodologies that may improve a Fund's track record; (ii) minimize losses from write-downs that must be returned prior to an affiliate receiving a carried interest; or (iii) for certain Funds, employ valuation methodologies that may give rise to a higher valuation in order to increase fees, such as in the case of a management fee that is calculated as a percentage of the value of such Fund's assets. The Adviser has adopted valuation policies to address these potential conflicts.
The Adviser recognizes that it is a fiduciary and as such, must act in the best interests of the Funds. The Adviser has adopted compliance policies and procedures intended to address conflicts of interest relating to the management of multiple funds, including an allocation policy.

## Item 7 - Types of Clients

Coachman intends to advise only pooled investment vehicles.

The minimum investment for each of the Funds is stated in each Fund's respective offering documents and is generally set at between $25,000 and $250,000. The Manager of each Fund may generally waive the applicable minimum at its discretion. Some of the Funds allow for an investor to participate as a limited partner or an investor general partner of the applicable Fund.

Generally, investors are required to meet certain suitability and net worth qualifications, such as (i) an "accredited investor" within the meaning of Rule 501 of Regulation D under the Securities Act of 1933, as amended (the "Securities Act"), (ii) a "qualified client" as defined in Rule 205-3 of the Investment Advisers Act of 1940, (iii) a "qualified purchaser" as defined in Section 2(a)(51) of the Investment Company Act of 1940, as amended (the "Investment Company Act") and/or or (iv)

a "knowledgeable employee" within the meaning of Rule 3c-5 promulgated under the Investment Company Act, depending on the applicable eligibility requirements of the respective Fund. Each Investor will be required to make certain representations concerning the appropriateness of this investment in the subscription documents that will be furnished to the Managing Broker Dealer and the Managing General Partner for suitability review.

## Item 8 - Methods of Analysis, Investment Strategies and Risk of Loss

The following is a summary of the investment strategies and methods of analysis employed by Coachman and/or its Affiliates on behalf of the Funds. This summary should not be interpreted to limit the investment activities in any way. Coachman may offer any advisory services, provide advice with respect to any investment strategies and make any investments, subject to each of the Fund's governing documents. The specific investment strategies of each Fund are more fully described in each Fund's respective Offering Documents.

### *Investment Strategy*

Coachman's current program is focused on conventional programs while from 2011 to 2014, Coachman focused on non-operated unconventional oil and gas opportunities in North America, seeking attractive acquisition opportunities resulting from our knowledge of the areas, key industry relationships, and a senior resource team. During this time, Coachman primarily invested in projects in known production zones, which it believed had a higher likelihood of successfully producing hydrocarbons. Coachman's strategy continues to focus on maximizing reserve values and accelerating cash flow.

In response to falling oil prices in the latter half of 2014, Coachman shifted its focus to acquiring large operated acreage blocks in conventional fields that usually feature lower costs of entry and more favorable drilling and completion cost structures.

In its advisory role to the Managers of its Funds, Coachman evaluates the reserve reports, cost, timing, projected oil and gas prices, and other relevant information to determine whether a Fund should participate in leasing acreage, drilling wells or holding or selling production.

Coachman's affiliate, Coachman Energy Operating Company, is responsible for drilling and developing the Funds' operated prospects.

### *Risk Factors*

Potential investors should be aware that an investment in a pooled investment vehicle involves a high degree of risk. There can be no assurance that the investment objectives will be achieved, or that an Investor will receive a return of its capital. In addition, there will be occasions when Coachman and its Affiliates may encounter potential conflicts of interest in connection with the Funds' investment strategies.

Below is a list of risk factors of the Funds. However, the risk factors are specific to each Fund are more fully described in each Fund's respective Offering Documents.

***Projections, Assumptions and Models***

Information contained in each of the Funds' Offering Documents were obtained or derived from sources believed to be reliable, but the Funds do not represent that it is accurate or complete. The analyses contained therein are based on numerous assumptions. Different assumptions could result in materially different results. Past performance is not indicative of future results. Before making any investment, prospective investors should examine the private placement memoranda carefully and conduct appropriate due diligence.

***Sophisticated Investment***

The investment objectives of each of the Funds involve a variety of risks and a wide range of assumptions. Investors should not invest in a Fund if they do not fully comprehend the nature of these risks and assumptions.

***General Economic and Market Conditions***

The success of the activities of each of the Funds may be affected by general economic and market conditions, such as interest rates, commodity prices, availability of credit, inflation rates, economic uncertainty, changes in laws as well as domestic and global political circumstances. These factors may affect the level and volatility of prices for mineral leases and the ability to develop and sell the undeveloped mineral leases and hydrocarbon production. Unexpected volatility or illiquidity could impair profitability or result in losses.

***No Operating History or Revenues***

Each of the Funds were formed for the initial purpose of raising capital to drill oil and gas wells on select leasehold acreage in the Bakken and Three Forks production zones in North Dakota, and other conventional and unconventional oil and natural gas producing basins in North America. The Funds had no historical operations for potential investors to evaluate.

***Limited Diversification***

Each of the Funds' results depends primarily on their ability to facilitate the drilling and completion of wells on undeveloped mineral acreage. The Funds will acquire and drill a limited number of oil and gas wells and as such will have limited asset diversification. Concentration in an industry and geographic area subjects the Funds to the risks associated with that industry and geographic area. Additionally, the oil and gas industry involves a high degree of volatility and substantial risk of loss. There is no assurance that any of the operations in which the Funds participate will obtain

production or, if production is obtained, that the price of resulting commodities will be sufficient to recover the Funds' investment. Among other things, drilling operations and related activities can be significantly impacted by the accuracy of the estimation of reserves and the effect of those reserves on fluctuating market prices.

***Crude Oil Pricing and Transportation Capacity***

Crude oil prices at any production location are impacted by the cost to transport the physical barrel to either a refining center or a trading center where different crude types are fungible and where pricing (especially of high volume or marker grades) is transparent. Lack of transport capacity or high cost alternatives to pipeline transport can result in significant locational discounts or differentials relative to market prices. Differentials can move negatively for producers when production increases or transportation capacity disruptions create a shortage of the least expensive transportation alternative (generally a pipeline). These differential moves can be of variable duration based on the remedies employed to reduce cost or increase capacity.

North Dakota and Montana have limited refinery capacity. As production increased significantly over the last decade, transportation infrastructure struggled to keep pace and as a result, price differentials have moved against producers. Increases in transport capacity exiting North Dakota over the past two years have driven the price differential from negative $15 per barrel to even par with WTI (at Cushing), the market crude price for onshore production. As a result of the limited transportation infrastructure and refining capacity, the Funds' production may be interrupted, or shut in, from time to time for numerous reasons, including weather conditions, accidents, loss of pipeline or gathering system access, field labor issues or strikes, or voluntary production curtailment in response to market conditions. A substantial reduction in production could materially affect the Funds' cash flow.

***Regulation Relating to Hydraulic Fracturing***

Hydraulic fracturing is a common practice that is used to stimulate production of hydrocarbons from tight formations, such as the Bakken/Three Forks Region. The process involves the injection of water, sand and chemicals under pressure into rock formations to fracture the surrounding rock and stimulate production. There has been increasing public controversy regarding hydraulic fracturing with regard to use of fracturing fluids, impacts on drinking water supplies, use of waters, and the potential for impacts to surface water, groundwater, air quality and the environment generally. A number of lawsuits and enforcement actions have been initiated implicating hydraulic fracturing practices. Additional legislation or regulation could make it more difficult to perform hydraulic fracturing, cause operational delays, increase our operating costs or make it easier for third parties opposing the hydraulic fracturing process to initiate legal proceedings. New legislation or regulations in the future could have the effect of prohibiting the use of hydraulic fracturing, which would prevent the Funds from completing their wells as planned and have a material adverse effect on production from their wells. If these legislative and regulatory initiatives cause a material delay or decrease in the Funds' drilling or hydraulic fracturing activities, the Funds' business and profitability could be materially impacted.

### *Depletion*

Oil and gas wells by their nature are depleting assets; production could last anywhere from a few months to more than 30 years. As a result, annual production will naturally decline over the life of a well, and so too will returns to investors.

### *Hedging*

To the extent that the Funds engage in commodity-price-risk management (or hedging) activities to protect their cash flows from commodity price declines, the Funds may be prevented from realizing the full benefits of price increases above the levels of the derivative instruments used to manage price risk. Additionally, the Funds' hedging activities may expose the Funds to the risk of financial loss in certain circumstances, including instances in which: i) production is less than the hedged volumes, ii) there is a widening of price basis differentials between delivery points for production and the delivery point assumed in the hedge arrangement, iii) the counterparties to the hedging or other price-risk management contracts fail to perform under those arrangements, or iv) a sudden unexpected event materially impacts oil and natural-gas prices.

### *Derivative Regulations*

The United States Congress in 2010 adopted comprehensive financial reform legislation that establishes federal oversight and regulation of the over-the-counter derivatives market and entities that participate in that market. The legislation, known as the Dodd-Frank Wall Street Reform and Consumer Protection Act (the "Dodd-Frank Act"), was signed into law by the President on July 21, 2010, and requires the Commodity Futures Trading Commission (the "CFTC"), the SEC and other regulators to promulgate rules and regulations implementing the new legislation. In its rulemaking under the Dodd-Frank Act, the CFTC has issued final regulations to set position limits for certain futures and option contracts in the major energy markets and for swaps that are their economic equivalents. Certain bona fide hedging transactions would be exempt from these position limits. The position limits rule was vacated by the United States District Court for the District of Columbia in September of 2012 although the CFTC has stated that it will appeal the District Court's decision. The CFTC also has finalized other regulations, including critical rulemakings on the definition of "swap", "security-based swap", "swap dealer" and "major swap participant". The Dodd-Frank Act and CFTC Rules also will require the Funds, in connection with certain derivatives activities, to comply with clearing and trade-execution requirements (or take steps to qualify for an exemption to such requirements). In addition, new regulations may require the Funds to comply with margin requirements although these regulations are not finalized and their application to the Funds is uncertain at this time. Other regulations also remain to be finalized, and the CFTC recently has delayed the compliance dates for various regulations already finalized. As a result it is not possible at this time to predict with certainty the full effects of the Dodd-Frank Act and CFTC rules on the Funds and the timing of such effects. The Dodd-Frank Act may also require the counterparties to our derivative instruments to spin off some of their derivatives activities into a separate entity, which may not be as creditworthy as the current counterparty. The Dodd-Frank Act and any implementing regulations could significantly increase

the cost of derivative contracts (including from swap recordkeeping and reporting requirements and through requirements to post collateral which could adversely affect our available liquidity), materially alter the terms of derivative contracts, reduce the availability of derivatives to protect against risks the Funds encounter, reduce the Funds' ability to monetize or restructure existing derivative contracts, and increase exposure to less creditworthy counterparties. If the Funds reduce their use of derivatives as a result of the legislation and regulations, results of operations may become more volatile and cash flows may be less predictable, which could adversely affect the Funds' ability to plan for and fund capital expenditures or to make distributions. Finally, the legislation was intended, in part, to reduce the volatility of oil and natural gas prices, which some legislators attributed to speculative trading in derivatives and commodity instruments related to oil and natural gas. The Funds' revenues could therefore be adversely affected if a consequence of the legislation and regulations is to lower commodity prices. Any of these consequences could have a material adverse effect on the Funds', their financial condition and their results of operations.

***Dependence on Key Individuals***

The Funds rely heavily on the skills, talents, abilities and activities of Coachman and their respective principals. The loss of the services of any of such principals could have a significant impact on the investment performance of the Funds. Moreover, investors have no right or power to take part in the management of the Funds. Accordingly, each investor should critically assess the information concerning the principals of each of the Adviser and the Affiliates and should not purchase units in the Funds unless such investor is willing to entrust all aspects of the Fund's investment management to the Adviser and the Affiliates.

***Insufficient Insurance***

It is possible that some or all of the insurance coverage which a Fund has available may become unavailable or prohibitively expensive. In that case, the Manager may elect to change the insurance coverage. Consequently, investor general partners, in the Funds where applicable, could be exposed to additional financial risk due to the reduced insurance coverage and due to the fact that investor general partners would continue to be individually liable for the Funds' obligations and liabilities. Investors could also be subject to greater risk of loss of their investment since less insurance would be available to protect the Funds from casualty losses.

***Operational Hazards***

Projects in which the Funds may invest are subject to all of the risks inherent in natural resource exploration, drilling, and production, including, but not limited to, extreme weather conditions, pollution, mechanical failures, cratering, and fires. Any of these events could result in damage to or destruction of projects or production facilities or harm to persons and property. These risks may not be insurable. The occurrence of an event not fully insured against may have a materially adverse effect on a Fund's investment and create liability for the investor general partners.

### *Dependence on Operators*

The Funds will not be operators of wells and therefore will depend on well third party operators to provide cost estimates and manage the physical drilling, completion and production operations. The Funds may use multiple operators but cannot assure that each or all of the operators will not incur operational hazards or financial difficulties. In the case of CEVII, CEOC is an operator.

### *Environmental Regulations*

Drilling operations upon which a Fund is dependent are subject to extensive energy, environmental and other laws and regulations of federal, state and local authorities. These laws and regulations may require the acquisition of a permit before drilling commences or prohibit these activities on certain lands lying within wilderness and other protected areas. In the course of complying with these requirements, an operator may incur significant additional costs. If it fails to comply with these requirements, it could be subject to civil or criminal liability and the imposition of liens or fines. In addition, existing regulations may be revised or reinterpreted, new laws and regulations may be adopted or become applicable to such companies or their facilities, and future changes in laws and regulations may have a detrimental effect on their business. In acquiring some of the acreage or drilling rights, companies upon which a Fund is dependent may have assumed on-site liabilities associated with the environmental condition of the acreage, regardless of when such liabilities arose and whether known or unknown, and in some cases agreed to indemnify the former owners of those facilities for on-site environmental liabilities. Steps required to bring facilities into compliance, if necessary, could be expensive, and thus could adversely affect a company's financial condition. Furthermore, with the continuing trend toward stricter standards, greater regulation, and more extensive permitting requirements, most natural resource companies expect their environmental expenditures to be substantial in the future. Tougher new environmental laws might be imposed on the industry that could result in higher costs and greater risk exposure for the Funds' investments and any investor general partners.

### *Financial Difficulties of Customers and Partners*

If the companies with which the Funds maintain customer relationships or participate in joint ventures experience financial difficulties, the Funds may be subject to increased exposure to credit risk. Any inability of these companies to continue their relationships with a Fund, participate in the joint ventures or meet their financial or performance obligations to a Fund could have a material adverse effect on such Fund's financial condition, results of operations, and cash flows.

### *Uncertain Production*

Properties that the Funds acquire may not produce oil or natural gas as projected; consequently, the applicable Fund(s) may be unable to determine reserve potential, identify liabilities associated with the properties or obtain protection from sellers against such liabilities, all of which could cause the Fund(s) to incur losses. One of the Funds' growth strategies is to pursue selective

acquisitions of undeveloped leasehold oil and natural gas reserves. When Coachman chooses to pursue an acquisition, it will perform an informal review of the target properties that it believes is consistent with industry practices. However, these informal reviews are inherently incomplete. Generally, it is not feasible to review in depth every individual property involved in each acquisition, and the Funds have generally not done so in connection with historical acquisitions. Even a detailed review of records and properties may not necessarily reveal existing or potential problems, nor will it permit the Funds to become sufficiently familiar with the properties to assess fully their deficiencies and potential. The Funds may not perform an inspection on every potential acquisition.

***Determination of Offering Price***

The offering prices were arbitrarily determined and bear no relationship to the Funds' assets, equity or any other recognized criteria of value.

***Unlimited Liability of Investor General Partners (as applicable)***

Under Delaware law, general partners of a limited partnership have unlimited liability for obligations and liabilities of that partnership. If an investor purchases interests in a Fund as an investor general partner, in those Funds that have the option to invest as an investor general partner, such investor general partner will be liable for all obligations and liabilities arising from such Fund's operations if these liabilities exceed both the assets and insurance of the applicable Fund. Even if an investor general partner converts his general partner interest into a limited partner interest, such investor will continue to be liable as a general partner for matters that occurred while such investor owned a general partner interest. An investor's liability as an investor general partner may exceed the amount of his capital contributions.

***Non-Indemnification of Investor General Partners (as applicable)***

Each Fund, as applicable, will not indemnify any of the investor general partners for obligations related to casualty and business losses, which exceed, or are otherwise not covered by, available insurance coverage and the Fund's assets. As a result, the value of an investment interest in the applicable Fund could be reduced in the case of a claim that exceeds the available insurance coverage to such Fund. In the event of a successful claim, an investor general partner could lose his entire investment in such Fund.

***Industry and Economic Risks***

The oil and gas business is fundamentally a commodity business. The operations and earnings of each Fund may be affected significantly by changes in oil, gas and petrochemical prices and by changes in margins on gasoline and other refined products. Such prices and margins depend on local, regional and global events or conditions that affect supply and demand for the relevant commodity. These events or conditions generally are not predictable and include, among other

things:

- general economic growth rates and the occurrence of economic recessions;
- the development of new supply sources;
- adherence by countries to the Organization of the Petroleum Exporting Countries (OPEC) quotas;
- weather, including seasonal patterns that affect regional energy demand (such as the demand for heating oil or gas in winter) as well as severe weather events (such as hurricanes) that can disrupt supplies or interrupt the operation of the wells;
- technological advances, including advances in exploration, production, refining and petrochemical manufacturing technology and advances in technology relating to energy usage;
- changes in demographics, including population growth rates and consumer preferences;
- the proximity and availability of transportation facilities; and,
- the competitiveness of alternative hydrocarbon or other energy sources.

***Competitive Factors***

The oil and gas industry is highly competitive. Each Fund will compete with other firms in the sale or purchase of needed goods and services for its production and will employ methods of competition that are lawful and appropriate for such purposes. The success of such competitors may affect the success of each Fund.

The Manager of each Fund may form additional entities in the future to engage in activities similar to those of each Fund, and may be engaged in sponsoring one or more such additional entities at approximately the same time as a Fund's investments are being made. Due to competition among such Funds for availability of equipment, contractors and personnel, it may make the completion of drilling activities by a Fund more difficult.

***Political Risks***

Each Fund may be affected from time to time in varying degree by political factors including:

- political developments and laws and regulations (such as expropriation or forced divestiture of assets and unilateral cancellation or modification of contract terms, as well as de-regulation of certain energy markets);
- environmental regulations;
- restrictions on exploration, production, imports and exports;
- restrictions on the Fund's ability to engage in certain areas of business within a local or national jurisdiction;

- price controls;
- tax or royalty increases (including retroactive claims);
- war or other international conflicts;
- currency exchange; and
- civil unrest.

Both the likelihood of these occurrences and their overall effect upon each Fund are not accurately predictable.

***Project Risks***

The success of each of the Funds depends upon each Fund's ability to acquire, drill and complete oil wells at an economic price and its results will therefore be affected by events or conditions that impact the advancement, operation, cost or results of such projects, including:

- the outcome of negotiations with mineral owners, joint ventures, governments, suppliers, customers or others;
- reservoir performance and natural field decline;
- changes in operating conditions and costs, including costs of third party equipment or services such as drilling rigs and shipping;
- security concerns or acts of terrorism that threaten or disrupt the safe operation of company facilities; and
- the occurrence of unforeseen technical difficulties (including technical problems that may delay start-up or interrupt production or that may lead to unexpected downtime of refineries or petrochemical plants).

## Item 9 - Disciplinary Information

On August 14, 2017, the U. S. Securities and Exchange Commission (SEC) filed a settled Order Instituting Administrative Proceedings ("OIP") against Coachman and Mr. Kenworthy. According to the SEC, Coachman failed to adequately disclose how the firm calculated management fees and expenses, causing clients to overpay by roughly $1.5 million in fees and expenses. The SEC also found that the firm and Mr. Kenworthy failed to disclose a conflict of interest related to a fund's purchase of a certain receivable related to an oil and gas lease from a fund that Mr. Kenworthy had previously managed and in which he held a 50% stake. The SEC alleged that Coachman caused the fund to overpay for the receivable by approximately $510,000. Coachman and Mr. Kenworthy agreed, without admitting or denying the SEC's findings, to repay certain funds approximately $2.2 million (which includes prejudgment interest). Approximately $1.5 million will be paid through an offset of management fees and expenses due to Coachman by the Funds leaving a remaining total of $891,507 to be paid by Coachman over the next three years. Coachman and Mr. Kenworthy also paid a civil penalty of $50,000 each. See Item 18 for

more information.

There are no other legal or disciplinary events required to be disclosed.

## Item 10 - Other Financial Industry Activities and Affiliations

As previously disclosed herein, the Adviser is affiliated with each of the Funds it manages. The principals of the Adviser may also be the principals of the Manager of each Fund. Certain inherent conflicts of interest arise as a result of the fact that: (1) Coachman will provide investment management services to more than one Fund; and (2) the Funds may have one or more overlapping investment objectives. Also, the portfolio strategies employed by Coachman for current and future Funds could conflict with and may affect the prices and availability of investments in which the Funds may invest. The Funds have similar investment strategies and participation in specific investment opportunities may be more appropriate for more than one Fund. In such cases, participating in such opportunities will be allocated pursuant to the allocation policy and procedures, as further discussed in Item 6.

From time to time, Coachman may give advice or take action with respect to the investments of one or more Funds that may not be given or taken with respect to other Funds with similar investment programs, objectives and strategies. Accordingly, Funds with similar strategies may not hold the same investments or achieve the same performance. Coachman may also advise Funds with conflicting investment objectives and strategies. These activities may also adversely affect the prices and availability of other investments held by or potentially considered for one or more Funds.

In addition, various potential and actual conflicts of interest may arise from the overall advisory, investment and other activities of the Adviser, Affiliates and their personnel. Coachman will endeavor to resolve conflicts with respect to investment opportunities in a manner it deems equitable to the extent possible under the prevailing facts and circumstances. Coachman may invest, on behalf of itself, in investments that would be appropriate for, are held by, or may fall within the investment guidelines of a Fund. Coachman may give advice or take action for their own accounts that may differ from, conflict with, or be adverse to, advice given to or action taken for the Funds. These activities may adversely affect the prices and availability of investments held by or potentially considered for, one or more Funds. Potential conflicts may also arise due to the fact that the Affiliates may have investments in some Funds but not in others, or may have different levels of investments in the various Funds, and that each of the Funds may pay different levels of fees.

Additional conflicts of interest may arise if the principals of the Adviser and/or the Managers of each Fund may serve as directors of the companies in which the Funds invest or may have beneficial ownership of the operator or companies in which the Funds invest. Coachman is the sole owner of Coachman Energy Operating Company LLC ("CEOC"), a Delaware limited liability company formed on December 17, 2014. CEOC is acting as the operator for properties that are owned and controlled by the Funds. Currently, BIF, BDF III, BDF IV, CE VI and CE VII are invested in properties operated by CEOC. The Adviser owns 51% of Cynosure

Energy LLC ("Cynosure") as of January 1, 2015. Cynosure is acting as the operator for properties that are owned and controlled by the Funds. In general, such ownerships are often important to enhancing the ability of Coachman to manage the investments; however, such positions may have the effect of impairing the ability of Coachman to terminate agreements with operating companies when, and upon the terms, they may otherwise desire. Coachman addresses these conflicts by disclosing them to clients and making investment decisions without a bias in regards to operator affiliations. In order to further mitigate this conflict, principals of the Adviser, Manager, who are not directors or beneficial owners of the Funds, are involved in the investment management decisions.

In addition to any fiduciary duties the principals owe to the Funds, as directors of portfolio companies, the principals owe fiduciary duties to the shareholders of the portfolio companies, which in many cases are the Funds, and to persons other than the Funds and their investors. In general, such positions are often important to enhancing the ability of Coachman to manage the investments; however, such positions may have the effect of impairing the ability of Coachman to sell the related investments when, and upon the terms, they may otherwise desire. In addition, such positions may place the principals in a position where they must make a decision that is either not in the best interests of the Funds or not in the best interests of the shareholders of the portfolio company. Coachman addresses this conflict by disclosing it to clients and making investment decisions without a bias in regards to company affiliations. In order to further mitigate this conflict, principals of the Adviser, Manager, who are not directors or beneficial owners of the Funds, are involved in the investment management decisions.

In the event that a potential conflict of interest arises between the Adviser and its affiliates, between the Adviser and the Manager or between a Fund and its Members, a resolution or course of action will be permitted and deemed approved by the Members if the resolution or course of action is, among other things, approved by the Advisory Committee.

## Item 11 - Code of Ethics, Participation or Interest in Client Transactions & Personal Trading

The Adviser has adopted policies and procedures designed to address conflicts of interest, including procedures regarding the allocation and aggregation of investment opportunities among Funds and a Code of Ethics, which includes a standard of business conduct and establishes policies and procedures with regard to personal securities transactions of the personnel of Coachman.

The Adviser's Code of Ethics includes, among other things:

- a standard of business conduct required of the Adviser's supervised persons, consistent with fiduciary obligations applicable to the Adviser;
- requirements that all supervised persons comply with applicable Federal securities laws;
- provisions that require all access persons to report relevant personal securities transactions and holdings periodically for review by the Adviser; and

- provisions requiring supervised persons to report any violations of the Code of Ethics promptly.

The Adviser will provide each of its clients with a copy of its Code of Ethics upon request.

Coachman expects to provide advisory services to several oil and gas Funds and may conduct investment activities for its own accounts. A Fund may have investment objectives or may implement investment strategies similar to those of other Funds managed by Coachman. In that regard, Coachman may give advice or take action with respect to a Fund that differs from the advice given with respect to another Fund. To the extent that a particular investment is suitable for more than one Fund and the timing for the purchase or sale of such investment is the same for all such Funds, such an investment will be allocated among the Funds in a manner in which Coachman determines is fair, reasonable, and equitable under the circumstances to all Funds, taking into account available capital, diversification considerations, other anticipated opportunities, and other relevant factors, in accordance with the Adviser's allocation procedures, applicable statutory fiduciary standards, as well as standards set forth in the Fund documents and Code of Ethics.

Coachman will devote such business time and effort as it believes necessary to implement the objectives of the Funds. Coachman is not required to devote all of its working time to the affairs of the Funds. Conflicts may arise regarding the time it devotes to the Funds and time it devotes to interests outside of the Funds.

Coachman does not have a formal policy that limits it in its ability to invest in the same or similar investments as the Funds. The timing and allocation of such investments will be made in a manner deemed equitable by Coachman, taking into consideration applicable rules and regulations, location and strategic fit, required ongoing funding commitments, and other factors it deems necessary. In making such investment decisions, Coachman will act consistently with applicable statutory fiduciary standards, as well as the standards set forth in the fund documents and Code of Ethics. Coachman will also endeavor to act in a fair and equitable manner as described in more detail in Item 10 above.

To the extent that Coachman is engaged in any related party transactions, Coachman will use its Advisory Committee to consider each related party transaction and to determine whether the transaction is permitted by the controlling documents. The Advisory Committee will also consider any disclosure obligations that are triggered by the proposed transaction.

## Item 12 - Brokerage Practices

Coachman does not ordinarily engage in public securities transactions; however, from time to time for hedging purposes or otherwise, Coachman may engage in such transactions and in such instances adheres to the following practices. Portfolio transactions will be executed by brokers selected by Coachman, as applicable, in its discretion. In placing portfolio transactions, Coachman will use reasonable diligence to ascertain the "best" market price for all securities

bought or sold in that market so that the price to the Funds is as favorable as possible under prevailing market conditions. The determinative factor is whether the transaction represents the best qualitative execution for the Fund and not whether the lowest possible commission cost is obtained. Coachman considers the full range of quality of the broker's service in selecting brokers to meet best execution obligations and may not pay the lowest commission rates available.

Coachman generally takes into account the following factors when selecting brokers for portfolio transactions: (1) the ability to effect prompt and reliable executions at favorable prices, (2) the operational efficiency with which transactions are effected, taking into account the size of order and difficulty of execution, (3) the financial strength, integrity and stability of the broker, (4) the broker firm's risk in positioning a block of securities, (5) the quality, comprehensiveness and frequency of available research services considered to be of value, and (6) the competitiveness of commission rates in comparison with other brokers satisfying the Adviser's other selection criteria. We are not required to weigh any of these factors equally. Coachman does not receive any soft dollar benefits from any brokers.

## Item 13 - Review of Accounts

Coachman's CEO will review the Funds' investments on a quarterly basis and will oversee the preparation of quarterly reports to be distributed to each Fund. These reports will provide information regarding the Funds' quarterly production, a market update and financial summary.

## Item 14 - Client Referrals and Other Compensation

Coachman will not compensate any third parties for client referrals, nor will the Adviser or Affiliates receive compensation from third parties for providing investment advice to the Adviser's clients. However, the Funds may elect to solicit capital for the Funds through registered broker dealers and will pay commissions to participating broker dealers that execute valid selling agreements with each Fund through its managing broker dealer. Commissions equal up to 7.0% of the gross amount raised by a broker dealer (the "Capital Contributed"). An additional 1.0% of the Capital Contributed raised by a broker dealer will be paid to the participating broker dealer as a due diligence allowance.

In addition, some of the Funds have employed a managing broker dealer and will pay such managing broker dealer a 1.0% fee of the Capital Contributed. The managing broker dealer will also receive 1.0% of the ongoing distributions once the Managing General Partner of the applicable Fund becomes entitled to receive 30% of the cash available for distribution, which will be allocated from the distributions owed to Manager of such Fund. In addition, the Funds will pay the managing broker dealer a fee equal to 1.35% of Capital Contributed as a wholesaling fee for internal or external wholesaling efforts related to marketing and selling units of the applicable Funds.

## Item 15 - Custody

Coachman is generally deemed to have custody of the Funds' assets and securities where they have authority to obtain the Funds' assets or securities, for example because (1) it has affiliated entities acting as (i) the Managing General Partner of a Fund formed as a limited partnership or (ii) the managing member of a Fund formed as a limited liability company (collectively, "Managers"); or (2) it has the authority to withdraw the Funds' assets from an account or withdraw fees.

With respect to the Funds, Coachman will be deemed to have complied with the Rule 206(4)-2 under the Advisers Act because each Fund will be audited at least annually by an independent public accountant that is registered with, and subject to regular inspection by, the Public Company Accounting Oversight Board, and each Fund will distribute its audited financial statements to all investors no later than 120 days after the end of the Fund's fiscal year.

## Item 16 - Investment Discretion

Coachman has full discretionary authority with respect to investment decisions and its advice with respect to the Funds is provided in accordance with the investment objectives and guidelines as set forth in their respective offering memoranda and constituent documents. Coachman is delegated the authority to consummate investments on behalf of the Funds by the terms of the governing documents of the Funds and the Management Agreement of each Fund.

## Item 17 - Voting Client Securities

The securities expected to be held by the Funds will consist solely of working interests in oil and gas leases that do not have corporate voting rights. To the extent any contractual consent of working interest owners is required under the applicable oil and gas operating agreement, Coachman have generally retained authority to vote Fund securities although, in some cases, voting authority for certain Fund securities may be assigned to Fund investors at the sole discretion of Coachman or an Affiliate. As such, Coachman has adopted and implemented written policies and procedures reasonably designed to ensure that it votes fund securities in the best interests of fund investors when applicable, a copy of which will be provided to investors upon request. While voting Fund securities is unlikely to occur, in the event it does, Coachman will inform Fund investors as to how they can obtain information from us on how Fund securities were voted. Any records related to voting Fund securities will be maintained in Coachman's books and records.

## Item 18 - Financial Information

### *Bakken Income Fund LLC*

On 10/17/16 Bakken Income Fund LLC filed a voluntary petition in the United States Bankruptcy Court for the District of Colorado seeking relief under the provisions of Chapter 11 of Title 11 of the United States Code. (This has been previously disclosed to all investors in the fund).

***Oil & Gas Prices***

As a manager of oil and gas Funds, Coachman Energy Partners LLC has been impacted by the recent volatility in oil and gas prices over the last few years in a number of ways. The most significant impacts are in the valuation of the assets under management and the profitability of the Funds. Depressed oil and gas prices have a significant influence on certain estimates made by management. Changes in pricing directly affect estimated reserve quantities and valuations, which are the basis for the calculation of the fair value of the assets under management. Low oil prices also decrease the profitability of the Funds which has resulted in operating losses and decreased liquidity within the Funds. Notwithstanding the foregoing, Coachman does not foresee an imminent impairment of its ability to meet contractual obligations to its clients.

***SEC Settlement***

Pursuant to the SEC settled Order referenced in Item 9, Coachman and Mr. Kenworthy agreed, without admitting or denying the SEC's findings, to repay certain funds approximately $2.2 million satisfied by offsets of approximately $1.4 in management fees and expenses owed by the funds to Coachman. Coachman will make additional cash payments of approximately $891,507 over the next three years to the Bakken Drilling Fund IV, LP, a fund that Coachman advises. Coachman agreed to reimburse the Bakken Drilling Fund IV, LP approximately $510,000 relating to the purchase of a certain account receivable described upon. Coachman and Mr. Kenworthy also paid a civil penalty of $50,000 each.

The disgorgement of approximately $2.2 million will be offset by approximately $1.4 in management fees and expenses owed by the funds to Coachman. Coachman will make additional cash payments of approximately $891,507 over the next three years to the Bakken Drilling Fund IV, LP, a fund that Coachman advises.

Notwithstanding the foregoing, Coachman does not foresee any imminent disruption to its ability to meet contractual obligations to its investors.

## Item 19 - Requirements for State-Registered Advisers

See ADV Brochure Supplement – Part 2B

**Brochure Supplement – Form ADV – Part 2B**

# Coachman Energy Partners LLC

**5251 DTC Parkway, Suite 200**
**Greenwood Village, CO 80111**
**www.coachmanenergy.com**
**(720) 279-0072**

September 2017

This Brochure Supplement provides information about Coachman Energy Partners, LLC that supplements the Firm's Brochure, a copy of which you should have received. Please contact Randall Kenworthy at (720) 279-0072 or Randy.Kenworthy@coachmanergy.com if you did not receive Coachman's Brochure or if you have any questions about the contents of this Supplement.

The information in this Brochure has not been approved or verified by the United States Securities and Exchange Commission or ay any state securities authority.

Additional information about Coachman Energy Partners, LLC is also available on the SEC's website at www.advisorinfo.sec.gov. You can search this site for our information by a unique identifying number, known as a "CRD Number." Our firm's CRD number is #166766.

## SUPERVISED PERSONS, EDUCATION & BUSINESS STANDARDS AND PROFESSIONAL CERTIFICATIONS

### Education and Business Standards

Coachman Energy Partners, LLC ("Coachman") requires that those involved in determining or giving investment advice must be properly licensed employees who are knowledgeable and experienced in portfolio analysis.

### Supervised Persons

## RANDALL KENWORTHY

**Registrations/Certifications**

Mr. Kenworthy obtained a Series 65 license in August 2017 and was born in March 1960.

**Educational Background**

Graduated John R. Rogers High School, Spokane, Washington, 1978
Attended Portland State University, Portland Oregon, 1979

**Business Experience**

Mr. Kenworthy serves as the sole Manager and Chief Executive Officer of the Adviser. In 2007 and 2008, Mr. Kenworthy co-founded two Funds, Coachman Energy I LLC ("CEI") and Coachman Energy II LLC ("CEII"), which focused on acquiring ownership positions in mineral acres in the Bakken Shale. CEI and CEII participated in the acquisition of 66,000 Net Mineral Acres in Williams and McKenzie Counties, North Dakota, and participated in the drilling of some of the state's first Bakken wells drilled west of the Nesson Anticline. Ultimately CEI and CEII participated in 105 Bakken and Three Forks wells, increasing the asset value of the combined funds 65% in 180 days (per the 2011 Cawley Gillespie and Associates reserve report) from $65 million in January 2011, to $111 million in January 2012. Mr. Kenworthy led the effort to sell the CEI and CEII assets to a Fortune 100 company in 2012, generating investor returns. In 2011, Mr. Kenworthy formed Coachman Energy Holdings and launched Bakken Drilling Fund III LP with an equity capital target of $25 million. Over his thirty-year career, Mr. Kenworthy has closed over $1 billion in transactions.

Mr. Kenworthy maintains a strong personal commitment to mentoring young entrepreneurs and business professionals. For the past 18 years, Mr. Kenworthy has been an annual speaker for the Southern Methodist University Cox School of Business Executive MBA and Caruth

Institute for Entrepreneurship programs. He has authored two custom training programs used by 7,000 sales personnel on three continents, and continues to be a sought after speaker and expert in the areas of sales, marketing, business development, private investment and financing.

### Disciplinary Actions

On August 14, 2017, the U. S. Securities and Exchange Commission (SEC) filed a settled Order Instituting Administrative Proceedings ("OIP") against Coachman and Mr. Kenworthy. According to the SEC, Coachman failed to adequately disclose how the firm calculated management fees and expenses, causing clients to overpay by roughly $1.5 million in fees and expenses. The SEC also found that the firm and Mr. Kenworthy failed to disclose a conflict of interest related to a fund's purchase of a certain receivable related to an oil and gas lease from a fund that Mr. Kenworthy had previously managed and in which he held a 50% stake. The SEC alleged that Coachman caused the fund to overpay for the receivable by approximately $510,000. Coachman and Mr. Kenworthy agreed, without admitting or denying the SEC's findings, to repay certain funds approximately $2.2 million (which includes prejudgment interest). Approximately $1.5 million will be paid through an offset of management fees and expenses due to Coachman by the Funds leaving a remaining total of $891,507 to be paid by Coachman over the next three years.. Coachman and Mr. Kenworthy also paid a civil penalty of $50,000 each.

### Other Business Activities (not previously disclosed above)

Mr. Kenworthy is engaged in other outside business activities including Get Stay Sober LLC (5% of his time), Teal Energy (1% of his time) and Coachman Energy Partners II (50% of his time).

### Additional Compensation

Mr. Kenworthy receives additional compensation from the activities listed in the foregoing "Other Business Activities" section.

### Supervision

Mr. Kenworthy is supervised by himself. He reviews his monthly, quarterly and annual disclosures and any trade pre-clearances.

**Randy Kenworthy's contact information:**

Telephone: 720 279-0072
Email: Randy.Kenworthy@coachmanenergy.com

### State-Adviser Required Information

In accordance with its requirements as a state-registered adviser, the following information is

provided:

> Mr. Kenworthy has had no arbitrations, bankruptcies or regulatory actions other than those previously disclosed herein.

## MICHELLE MALLOY

### Registrations/Certifications

Ms. Malloy obtained a Series 65 license in August 2017 and was born in April 1966

### Educational Background

Michelle graduated cum laude from the University of Colorado, Denver, with a Bachelor of Science degree in Business Administration with an emphasis in Accounting. She is a Certified Public Accountant and a Certified Treasury Professional. Additional professional affiliations include Association of Financial Professionals, American Institute of Certified Public Accounts, and Council of Petroleum Accountants Societies (COPAS

### Business Experience

Michelle Malloy serves as the Chief Financial Officer of the Investment Manager brings over twenty years of accounting and finance experience to Coachman including internal and external financial reporting, operational accounting, tax and compliance, treasury management, developing and managing internal controls, accounting systems administration and financial modeling / analysis. As CFO, Michelle is responsible for developing and implementing the Company's financial strategies by contributing financial and accounting information, analysis, and recommendations that guide Coachman's strategic thinking and direction to meet organizational objectives. Prior to joining Coachman, Michelle was the corporate controller for Inflection Energy LLC, a natural gas exploration and production company and Linc Energy Operations, a division of a global energy company; and Director of General Accounting with MarkWest Energy Partners LLC, a publicly traded, mid-stream gas company. She also has over 10 years in public accounting.

### Disciplinary Actions

Ms. Malloy has not been the subject of disciplinary events that would be material to a client's evaluation of her.

### Other Business Activities (not previously disclosed above)

Furthermore, Ms. Malloy is not actively engaged in any other investment-related business or occupation other than those already disclosed from which a material conflict might arise.

**Additional Compensation**

Ms. Malloy does not receive economic benefit from any other business activity.

**Supervision**

Ms. Malloy is supervised by Randy Kenworthy. He reviews Ms. Malloy's's work through frequent office interactions as well as remote interactions if Ms. Malloy is traveling. He also reviews Ms. Malloy's activities by reviewing her monthly, quarterly and annual disclosures and any trade pre-clearances.

**Randy Kenworthy's contact information:**

Telephone: 720 279-0072
Email: Randy.Kenworthy@coachmanenergy.com

**State-Adviser Required Information**

In accordance with its requirements as a state-registered adviser, the following information is provided:

Ms. Malloy has had no arbitrations, bankruptcies or regulatory actions.

## CAROLINE GASH

**Registrations/Certifications**

Ms. Gash obtained a Series 65 license in April 2017 and was born in May 1982

**Educational Background**

Ms. Gash holds a Masters of Science in Finance and a Masters of Business Administration from the University of Denver and a Bachelors of Science in Pre-professional Studies, Science- Business from the University of Notre Dame

**Business Experience**

Ms. Gash has spent a decade in the investment industry. She entered the industry by providing research and analysis for a private wealth manager for a global investment advisory firm. On passing the Level I CFA Exam, Caroline was recruited to provide equity analytical and statistical support for a small quantitative equity portfolio management firm in Denver. In 2009, Ms. Gash joined a

boutique private equity firm as an Associate Analyst and was responsible for covering the oil and gas, real estate, and gaming industries. She joined the Adviser in the role of an Associate Analyst at its inception in 2011 and has held the titles of CFO, Chief Analytics & Performance Officer, and is currently the Vice-President of Acquisitions & Divestitures.

### Disciplinary Actions

Ms. Gash has not been the subject of disciplinary events that would be material to a client's evaluation of her.

### Other Business Activities (not previously disclosed above)

Furthermore, Ms. Gash is not actively engaged in any other investment-related business or occupation other than those already disclosed from which a material conflict might arise.

### Additional Compensation

Ms. Gash does not receive economic benefit from any other business activity.

### Supervision

Ms. Gash is supervised by Randy Kenworthy. He reviews Ms. Gash's work through frequent office interactions as well as remote interactions if Ms. Gash is traveling. He also reviews Ms. Gash's activities by reviewing her monthly, quarterly and annual disclosures and any trade pre-clearances.

**Randy Kenworthy's contact information:**

Telephone: 720 279-0072
Email: Randy.Kenworthy@coachmanenergy.com

### State-Adviser Required Information

In accordance with its requirements as a state-registered adviser, the following information is provided:

Ms. Gash has had no arbitrations, bankruptcies or regulatory actions.

## KAREN A STEIGHNER

**Year of Birth**: 1957

**Education**: MBA – University of Colorado Denver
BA Communication – University of Colorado Boulder

**Professional Designations/Licenses**: Series 7, 24, 27, 63, 65, 79, 99

**Business Experience**

Ms. Steighner spent her entire career working in the securities industry in various capacities and has developed comprehensive knowledge of securities laws as well as broker dealer, adviser, and private & public fund regulations. As CEO of Compliance Advisers, Inc. since 2001, she has had extensive experience with designing robust, customized compliance and supervisory programs for small and mid-sized broker dealers, investment advisers and funds as well as direction and oversight of enterprise-wide audits, risk assessments, investigations and compliance reviews. In addition, she has served as a CCO, CFO and Financial Principal for multiple broker/dealer and investment adviser firms.

**Disciplinary Information**

Ms. Steighner does not have any disciplinary issues to disclose.

**Other Business Activities**

Ms. Steighner is the CEO of Compliance Advisers, Inc., a regulatory compliance consulting firm in Denver, CO, through engagements of which, she is currently registered as the CCO and Financial principal for three registered broker/dealers.

**Additional Compensation**

As the CEO of Compliance Advisers, Inc., Ms. Steighner receives a regular salary and intermittent bonuses

**Supervision**

Ms. Steighner is supervised by Randy Kenworthy. He reviews Ms. Steighner's work related to the Adviser through frequent office interactions as well as remote interactions if Ms. Steighner is traveling. He also reviews Ms. Steighner's activities by reviewing her monthly, quarterly and annual disclosures and any trade pre-clearances.

**Randy Kenworthy's contact information:**

Telephone: 720 279-0072
Email: Randy.Kenworthy@coachmanenergy.com

Supervision also pertains to the supervised person's personal securities transactions, books are records which are signed by clients and proper training so that the supervised person is aware of their responsibilities towards the client and towards best practices/industry standards.

# EXHIBIT 9C

CRITERION
WEALTH MANAGEMENT

# Alternative Investment Annual Due Diligence Questionnaire

Version 1.0 - July 2017

(To be completed by fund management or other appropriate personnel)

Investment: Coachman Energy VI

Period Ended: December 31st, 2016

## Company/Fund Principals

1. Please list the names of each Principal of the Company/Fund.

   **Randy Kenworthy**
   **Steve Mut**
   **Caroline Gash**

2. Was there any change in Principals of the Company or Fund since the previous review? If so, please explain.

   **There have not been any changes to the principals of Coachman Energy Partners LLC since the previous review (2015).**

3. Is this fund registered with a Securities Regulatory Agency (either state or federal)? If no, please provide the grounds for exemption.

   **Per the Coachman Energy VI LP Amended & Restated PPM:**
   ***THE SECURITIES OFFERED HEREBY ARE BEING OFFERED AND WILL BE SOLD IN RELIANCE ON THE EXEMPTION FROM THE REGISTRATION REQUIREMENTS OF THE SECURITIES ACT PROVIDED IN SECTION 4(A)(2) TO A LIMITED NUMBER OF INVESTORS THAT ARE "ACCREDITED INVESTORS" WITHIN THE MEANING OF RULE 501 OF REGULATION D UNDER THE SECURITIES ACT AS AMENDED (THE "SECURITIES ACT") AND THAT HAVE SUFFICIENT KNOWLEDGE AND EXPERIENCE IN FINANCIAL AND BUSINESS MATTERS TO BE CAPABLE OF EVALUATING THE MERITS AND RISKS OF INVESTING IN THE SECURITIES.***

   **Per the Coachman Energy VIB LLC Amended and Restated PPM:**
   ***THE SECURITIES OFFERED HEREBY ARE BEING OFFERED AND WILL BE SOLD IN RELIANCE ON THE EXEMPTION FROM THE REGISTRATION REQUIREMENTS OF THE SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), PROVIDED IN SECTION 4(A)(2) TO A LIMITED NUMBER OF INVESTORS THAT ARE "ACCREDITED INVESTORS" WITHIN THE MEANING OF RULE 501 OF REGULATION D UNDER THE SECURITIES ACT AND THAT HAVE SUFFICIENT KNOWLEDGE AND EXPERIENCE IN FINANCIAL AND BUSINESS MATTERS TO BE CAPABLE OF EVALUATING THE MERITS AND RISKS OF INVESTING IN THE SECURITIES.***

## Professional Providers

*(Please list the names and contact information for the following professional relationships. If the professional relationship is a new relationship, since the previous review, please provide a reason for the change from the previous professional.)*

4. Prime Broker – **N/A**

5. Accounting Firm

   **Audit:**
   **Ed Schenkein MBA, CPA, ABV/CFF, CGMA**
   **SingerLewak LLP**
   **Partner, Assurance and Advisory**
   **(303) 226-5473**
   **Tax:**
   **Gary Rand**
   **SingerLewak LLP**
   **Partner, Tax**
   **(303) 226-5481**

6. Commercial Lender – **N/A**

7. Attorney

   **Baker, Donelson, Bearman, Caldwell & Berkowitz PC**
   **Tonya Mitchem Grindon**
   **Chair of Corporate Finance/ Securities Practice Group**
   **(615) 726-5607**

8. Administrator – **N/A**

## Updates on Business of Company/Fund

9. Full Time Employees – Please provide the number of Company or Fund full time employees at beginning and end of most recently completed fiscal year. Explain any significant increase or decrease.

   **Coachman Energy had ~13 employees as of December 31, 2015**
   **Coachman Energy had ~11 full time employees as of December 31, 2016**

10. Total Assets Under Management – Please provide the Company's total assets or Fund's total assets under management at the beginning and end of the most recently completed fiscal year. Explain any significant increase or decrease.

    **Coachman Energy VI LP had $0.30MM of total assets under management as of December 31. 2015.**
    **Coachman Energy VI LP had $0.09MM of total assests under management as of December 31, 2016**

11. Total Partners' Capital or Total Members' Equity – Please provide the total amount of partners' capital, or members' equity, at the beginning and end of the most recently completed fiscal year. Explain any significant increase or decrease.

    **Capital Raised in CE VI & CE VIB as of 12/31/15 - $3,100,500**
    **Capital Raised in CE VI & CE VIB as of 12/31/16 - $3,100,500**

12. Number of Funds Managed – If the investment is a hedge fund, please provide the number of funds managed by the Fund at the beginning and end of the most recently completed fiscal year. Explain any significant increase or decrease.

    **Coachman Energy Partners LLC managed eight (8) Funds as of 12/31/15**
    **Coachman Energy Partners LLC managed eight (8) Funds as of 12/31/16**

13. Tax Issues – Inquire about the following tax issues and/or review any appropriate tax documents:

    - Has the company or fund been audited by federal or state taxing authorities in the last year? If so, please describe the issues leading to the audit and the outcome of the audit.

      **No, Coachman Energy VI LP and Coachman Energy VIB LLC have not been audited by federal or state taxing authorities in the last year**

    - Does the company or fund have any material tax delinquencies or penalties outstanding (including payroll taxes)? If so, please explain below and provide copies of supporting documentation.

      **No, Coachman Energy VI LP and Coachman Energy VIB LLC do not have any material tax delinquencies or penalties outstanding.**

    - Were properly completed federal and state K-1s issued for the most recently completed tax year? Did the K-1s provide Unrelated Business Taxable Income information?

      **Yes, the 2016 Federal and State K-1s were issued to investor partners in Coachman Energy VI LP at the end of March 2017. Yes, the CE VI 2016 K-1s provided UBTI information.**

    - Please confirm that all real estate and property taxes have been paid for the most recently completed tax year. If not, please provide an explanation.

      **N/A**

14. Has the company or fund entered into any new loan, line of credit, or other financing arrangements during the last year? If so, please provide copies of the loan or financing documents.

    **No, Coachman Energy VI did not enter into any new loans, lines of credit, or other financing arrangements in 2016**.

15. Within the last year, has the company entered into any other significant agreements (i.e. management service agreements, personnel sharing agreements, guarantees, leases, etc.), that could impact the value of the investment? If so, please provide copies of the agreements.

**No, Coachman Energy VI did not enter into any significant agreements that could impact the value of the investments.**

16. Litigation – If applicable, please list all pending or threatened litigation, arbitration, administrative actions or other adjunctive proceedings. And please provide supporting documentation related to the pending or threatened actions.

    **Coachman Energy Partners (the Adviser) and its CEO, Randall Kenworthy, have reached a settlement dated August 14, 2017 with the U.S. Securities and Exchange Commission. More specifically, without admitting or denying the SEC's findings, Coachman and Mr. Kenworthy resolved the SEC's concerns that Coachman did not adequately disclose its methodology for calculating certain fees and expenses, charged from 2011 through 2014, and that the firm did not properly disclose a conflict around one of the funds when entering a transaction with an affiliated entity. The settlement fully resolves the agency's inquiry and does not limit Coachman's or Mr. Kenworthy's activities in any respect. Coachman does not expect this settlement to have any impact on the operation or performance of the firm's funds.**

    **An amendment to the Firm's Brochure (Form ADV Part 2) with required disclosures is being prepared and will be sent to investors via USPS within 30 days of the order's signing as required.**
    **Coachman takes its fiduciary responsibilities seriously and remains fully committed to upholding the highest reporting standards and continuously enhancing internal protocols and disclosure practices. As such, we have voluntarily elected to enhance our reporting practices and will include detailed scenario examples in PPMs to better illustrate fee structures going forward. We have also taken steps to enhance our compliance program and internal controls.**

    **Coachman remains focused on building value for our investor base through targeted acquisition and development in unconventional and conventional basins throughout the Lower 48.**

- If applicable, do these pending or threatened actions present significant risk to the value of this investment? – **NO, See Explanation Above**

17. Changes in political, regulatory, operational, legal, or environmental factors – Please describe if there have been any changes in the political, regulatory, operational, legal, or environmental risks that could potentially affect the value of the investment in a negative way

    **2016 presented another very challenging environment for the oil and gas industry with oil prices averaging just $42.75 per barrel, down from 2015's $50.13, based on SEC pricing. The approximate 15% percent additional drop in pricing in 2016 has resulted in sustained operating losses and continued poor liquidity within the Fund.**

- Have these changes resulted in a more than temporary impairment to the value of the investment? If so, please explain.

    **While we have not seen a significant recovery, oil pricing seems to have stabilized above the $46 per barrel mark over the past six months, surpassing $50 per barrel for much of that time. We believe that this stabilization has resulted in more market certainty, which has opened industry deal flow by narrowing bid/ask spreads and allowing for more advantageous asset valuations on the sell side.**

    Going forward, the managing general partner will continue to closely manage the Fund's cash on hand, carefully evaluating each drilling opportunity for profitability of the well. In addition, we will continue to look for additional debt financing or acquisition opportunities. Lastly, now that we believe oil pricing has stabilized

more in the Fund's favor, we are in a better position to evaluate the value of the Fund's assets as we move towards determining the right time for the Fund to deploy an exit strategy.

## Update on the Investment Strategy

18. Investment Objective and Strategy – Document any significant change in the Investment Objective or Investment Strategy since the previous review.

- Has there been any change in the company's investment objective? If so, please explain.

  **No, there were not any changes to the investment objective as of December 31, 2016**

- Has there been any change in the company's investment strategy? If so, please explain.

  **No, there were not any changes to the investment strategy as of December 31, 2016.**

- Within the last year, have there been any material changes to the composition of the portfolio holdings? If so, please describe.
  **N/A**

## Investment Performance/Valuation

19. Investment Performance – Document your evaluation of the investments performance since the previous review.

- For the most recently completed fiscal year, were the actual results from operations in-line with expected results from operations? If not, please provide an explanation. **N/A**

20. Please provide, based on any of the changes listed in this annual review, an update to the fair value of the investment? **N/A**

21. What methodology is used for this valuation and are there comparable assets or transactions that you can reference? **N/A**

## Documents

22. Private Placement Memorandum – Within the last year, have there been any amendments or changes to the PPM? If so, please provide copies of the amendments or changes.

    **Supplement Number 3 to the Amended and Restated Confidential PPM of Coachman Energy VI LP and Supplement Number 2 to the Amended and Restated Confidential PPM of Coachman Energy VIB LLC notify the offerees that the Final Closing date has been extended until June 30, 2017.**

23. Form ADV – Within the last year, have there been any amendments or changes to the Form ADV? If so, please provide an updated copy of Form ADV.

    **Attached. As discussed above, an amendment to the Firm's Brochure (Form ADV Part 2) with required disclosures is being prepared and will be sent to investors via USPS within 30 days of the order's signing as required**

24. Organizational Documents – Within the last year, have there been any amendments or changes to the organizational documents (i.e. partnership agreements, operating agreements, etc.)? If so, please provide copies of the amendments or changes.
    **N/A**

25. Financial Statements – Please provide a copy of the Company's/Fund's financial statements for the most recently completed fiscal year.

    - Were the statements prepared in accordance with U.S. generally accepted accounting principles?
      **Yes, the statements were prepared in accordance with U.S. GAAP**

    - Were the financial statements audited in accordance with U.S. generally accepted auditing standards?
      **Yes, the statements were prepared in accordance with U.S. GAAP**

    - Was an unqualified opinion expressed? If not, please explain.
      **Yes, an unqualified opinion was expressed.**

    - What is the name of the accounting firm that performed the audit?
      **SingerLewak LLP**

    - Is this the same accounting firm that performed the audit in the previous year? If not, why was a change in auditors made?
      **Yes, the 2015 audits were performed by SingerLewak LLP.**

    - Was there a change to the NAV computation methodology described in the Notes to the financial statements? If so, please explain.
      **N/A**

26. Insurance
    - Please provide a listing of insurance policies and coverage amounts for coverage related to real estate, equipment, employment, and liability (including fire and casualty, life title, worker's compensation, D&O liability, etc.).
    - Please confirm that adequate levels of insurance are maintained for assets listed on the balance sheet of the company.

    **Attached is the Coachman Energy Managing General Partners LLC et al Executive Insurance Summary. Adequate levels of insurance are maintained for the assets listed on the balance sheet of the company.**

27. SSAE 16 Report (previously SAS 70 Report) – If applicable, please provide a copy of the most recently issued report, if any, for the Company, Fund, or a third party responsible for investment valuations.

    **N/A**

## Conclusions (Internal Use Only)

28. **Comments**

- Don Scott is no longer a Principal of the Fund
- They have changed accounting firms
- They have had 2 employees leave
- Coachman was able to settle a dispute with the SEC regarding inadequate disclosures.
- Recent Economic issues and depressed oil prices could pose a material impact to the investment in the future



Securities offered through Ausdal Financial Partners, Inc., Member FINRA/SIPC 5187 Utica Ridge Road, Davenport, IA 52807 (563) 326-2064. Investment Advisory services offered through Criterion Wealth Management are independent of Ausdal Financial Partners, Inc. and any subsidiaries or affiliates. CA Insurance License # 0786906

# EXHIBIT 10

**SETTLEMENT AGREEMENT AND MUTUAL RELEASE**

This Settlement Agreement and Mutual Release ("Settlement Agreement") is made and entered into on this 15th day of October 2018 by Patrick J. Denard ("Denard"), on the one hand, and Robert A. Gravette ("Gravette") and Ausdal Financial Partners, Inc. ("Ausdal") on the other hand (collectively referred to as the "Parties").

WHEREAS, in September 2018, counsel for Denard contacted counsel for Gravette and Ausdal and threatened to file suit unless he received a response to an initial settlement demand.

WHEREAS, counsel for Denard took issue with, among other things, Gravette's alleged recommendations that Denard purchase two alternative investments;

WHEREAS, Gravette and Ausdal denied all allegations of wrongdoing and impropriety alleged by counsel for Denard and took the position that – if Denard were to file suit - all claims asserted by Denard be denied and dismissed in their entirety;

WHEREAS, counsel for the parties subsequently engaged in settlement negotiations and were ultimately able to reach an agreement as to a settlement amount as reflected in this Settlement Agreement;

WHEREAS, each party to this Settlement Agreement has had the benefit of counsel throughout the settlement negotiations;

WHEREAS, the Parties desire and wish to avoid further costs of litigation and, fully and for all time, to resolve any and all claims among themselves as well as their agents, attorneys, insurers, representatives, assigns, heirs and spouses; and

WHEREAS, Denard agrees to release any and all claims which he has, had and may have had against Gravette, Criterion Wealth Management ("Criterion"), Ausdal and any of their agents,

affiliates, attorneys, insurers, representatives, assigns, heirs and/or spouses under the terms of this Agreement;

NOW, THEREFORE, in consideration of the mutual covenants, promises, representations, and releases set forth below, the Parties agree as follows:

**1. Nature of Settlement:**

Denard acknowledges that the consideration tendered and received herein, along with all promises, undertakings, representations and releases made or given and the execution of this Settlement Agreement, are in full and complete compromise, satisfaction and settlement of any and all claims which Denard has, had and may have had against Gravette, Criterion, Ausdal and any of their past and present agents, affiliates, attorneys, representatives, assigns, insurers, heirs, spouses and predecessors and successors in interest.

**2. Release:**

A. Denard, for himself and his present and former agents, attorneys, insurers, representatives, assigns, heirs and spouses, does hereby forever and irrevocably release, remise, acquit and discharge Gravette, Criterion, Ausdal and any of their past and present agents, affiliates, attorneys, representatives, assigns, insurers, heirs, spouses and predecessors and successors in interest from any and all manner of claims, demands, causes of action, debts, liabilities, obligations, damages, judgments, or sums of money which Denard has, had, and may have had based upon or arising out of any event, cause or thing whatsoever occurring at or before the date of this Settlement Agreement. The Settlement Agreement and Release shall include, but without limiting the generality of the foregoing, any and all claims, demands, causes of action, debts, liabilities, obligations, damages, judgments, or sums of money in, arising out of, related to, or in

connection with the matters alleged or which could have been alleged by Denard relating to any investment he purchased with Gravette, Criterion and/or Ausdal.

B. Gravette and Ausdal, for themselves and their present and former agents, attorneys, insurers, representatives, assigns, heirs and spouses, do hereby forever and irrevocably release, remise, acquit and discharge Denard and his former and current agents, attorneys, insurers, representatives, assigns, heirs and spouses, from any and all manner of claims, demands, causes of action, debts, liabilities, obligations, damages, judgments, or sums of money which Gravette and Ausdal have, had, and may have had based upon or arising out of any event, cause or thing whatsoever occurring at or before the date hereof, including, but without limiting the generality of the foregoing, any and all claims, demands, causes of action, debts, liabilities, obligations, damages, judgments, or sums of money in, arising out of, related to, or in connection with the investments which Denard purchased with Gravette, Criterion and/or Ausdal.

3. **Payment:**

Within thirty (30) days after receipt of an original copy of this Settlement Agreement which has been executed by Denard, and in consideration of the conditions, obligations and duties set forth herein, Gravette and Ausdal shall pay the sum of Forty-Two Thousand and Five Hundred Dollars ($42,500.00) in full and complete satisfaction, settlement and release of any and all claims that Denard has, had and may have had against Gravette, Criterion and Ausdal and their former and present affiliates, agents, representatives, attorneys, insurers, predecessors and successors in interest. The settlement check shall be made payable and delivered as follows: one check in the amount of $42,500.00 payable to Patil Law, P.C.; 2029 Century Park East, Suite 400; Los Angeles, CA 90067. Upon receipt of a fully executed Settlement Agreement and receipt of cleared funds

of the above amount, Denard and his counsel will promptly purge their records of the 2014 Ausdal policies and procedures manual which was provided to counsel for Denard in July 2018.

4. **Confidentiality:**

As a material condition to this Settlement Agreement and Release, the Parties and their agents, attorneys and representatives understand and agree that the terms, provisions and conditions of this Settlement Agreement shall remain confidential and shall not be disclosed to any third party, in any manner or at any time, unless otherwise required by process of law or unless agreed upon in writing by a duly authorized agent of each party. Moreover, the Parties and their agents, attorneys and representatives agree that this Settlement Agreement and its terms and conditions shall neither be used nor disclosed in any judicial, administrative, executive, arbitration, mediation or other proceeding, except in proceedings to enforce the provisions of this Settlement Agreement, unless otherwise agreed in writing by an authorized agent of Gravette and Ausdal or as otherwise may be required by law.

However, nothing contained herein is intended to prohibit nor shall prohibit any party from responding to an inquiry by a securities regulator, including the Securities and Exchange Commission ("SEC"), FINRA or any other self-regulatory organization or its tribunals, regarding the underlying facts and circumstances of this case. In fact, the parties acknowledge and agree that any non-disclosure provision in this Settlement Agreement does not prohibit or restrict any party from responding to any inquiry or providing testimony about this Settlement Agreement or its underlying facts and circumstances by, or before, the SEC, FINRA, any other self-regulatory organization, or any other federal or state regulatory authority. Further, nothing contained herein shall prevent any party from making further reference to this Settlement Agreement in order to identify which matters were and were not compromised herein to a regulatory or judicial entity or

from referring to information set forth in a Form U-4 or U-5.

5. **Non-Disparagement:**

The Parties and their counsel agree not to take any action relating in any way to this matter which is intended to, or would reasonably be expected to, harm the Parties or their reputations or which would reasonably be expected to lead to unwanted or unfavorable publicity for any of the parties.

6. **Miscellaneous**

a. This Settlement Agreement shall be governed by and construed under the laws of Illinois as applied to contracts made and to be performed wholly within Illinois.

b. Each party also reserves and retains any and all other rights, remedies and causes, whether equitable, legal or otherwise, which may arise from a breach of this provision or any portion of this Settlement Agreement. All disputes regarding this Settlement Agreement, as well as the enforcement of the same, shall be resolved through FINRA Dispute Resolution.

c. Each party will bear the costs of their own attorney's fees and all other expenses incurred in connection with this matter.

d. This Settlement Agreement may not be altered, modified, or amended except in writing signed by the Parties.

e. The Parties have read this Settlement Agreement, understand all of its terms and conditions, and represent and warrant that each has authority to enter into this Settlement Agreement, and intend to be legally bound thereby.

f. Denard warrants that no claim or potential which is subject to the terms of this Settlement Agreement has been assigned.

g. This Settlement Agreement may be executed in one or more identical counterparts, each of which shall be deemed an original, but all of which together shall constitute but a single document.

h. This Settlement Agreement is the result of arms-length negotiations among the parties and their attorneys, none of whom acted under any duress, coercion or compulsion whatsoever. Accordingly, the parties waive the application of any rule or law, which otherwise may be applicable in connection with the construction or interpretation of this Settlement Agreement, that ambiguous, vague or conflicting terms or provisions should be construed against the party who or whose attorney prepared the executed Settlement Agreement or earlier draft of the same.

i. The recitals set forth at the beginning of this Settlement Agreement are incorporated herein by reference.

j. The Parties stipulate and agree that all releases and understandings among the parties are embodied and expressed in this Settlement Agreement and that the terms of this Settlement Agreement are contractual and not merely recitals.

k. The Parties further declare and agree that, other than the representations, promises and agreements expressly set forth in this Settlement Agreement, no other representations, promises or agreements have been made to either party, and that, by executing this Settlement Agreement, neither party is relying upon any representation, promise or agreement made by the parties hereby released, including their agents and attorneys, or any other person, concerning the nature or extent of this Settlement Agreement, or concerning any other thing or matter.

l. The Parties have had the benefit of counsel throughout these settlement negotiations and have had ample opportunity to consult with their attorneys regarding any potential claims and defenses and the terms and provisions of this Settlement Agreement, and the Parties represent that they are fully competent, understand the terms of this Settlement Agreement, and freely and voluntarily enter into this Agreement.

m. The Parties represent and warrant that they have authority to enter into this Settlement Agreement and agree to be legally bound thereby.

n. This Settlement Agreement is intended to be performed in accordance with, and only to the extent permitted by, all applicable state and federal laws, ordinance, rules and regulations. If any provision of this Settlement Agreement, or application thereof to any person or circumstances, shall for any reason and to any extent be invalid or unenforceable, the remainder of this Settlement Agreement shall not be affected thereby, but shall be enforced to the greatest extent permitted by law.

IN WITNESS WHEREOF, the parties have entered into this Settlement Agreement and Mutual Release on this 15th day of October, 2018 and have executed this Settlement Agreement and Mutual Release on the dates set forth below.

**Read, Agreed and Understood:**

By: ______________________
Patrick J. Denard

**SUBSCRIBED AND SWORN** to before me this 15th day of October 2018.

______________________
Notary Public

OFFICIAL STAMP
TRICIA ARLINE ELLIS
NOTARY PUBLIC-OREGON
COMMISSION NO. 970696
MY COMMISSION EXPIRES JANUARY 24, 2022

**Read, Agreed and Understood:**

By: ______________________
Robert A. Gravette

**SUBSCRIBED AND SWORN** to before me this 16 day of October 2018.

______________________
Notary Public

NANCY JO LORRAINE
Notary Public - California
Los Angeles County
Commission # 2229815
My Comm. Expires Feb 25, 2022

**Read, Agreed and Understood:**

By: ______________________
Ausdal Financial Partners, Inc.

**SUBSCRIBED AND SWORN** to before me this 17 day of October 2018.

______________________
Notary Public

MARY C SIGALA
Official Seal
Notary Public - State of Illinois
My Commission Expires May 14, 2022

# EXHIBIT 11

**From**: Jeff Baxter [jbaxter@t2investments.com]
on behalf of Jeff Baxter <jbaxter@t2investments.com> [jbaxter@t2investments.com]
**Sent**: 9/24/2018 6:37:59 AM
**To**: Patrick Denard [Patrick Denard <pjdenard@gmail.com>]
**Subject**: Re: follow-up
**Attachments**: Investor Report - SREI 2018 Q2.pdf; T2 SREI Fact Sheet 18_0630.pdf

Good morning, Patrick.

No problem to take it slow. I know you've been through a negative experience with Criterion - hopefully T2 has been and will continue to be a bright spot.

I'm attaching the Fund Fact Sheet and most recent Investor Report for the T2 Strategic Real Estate Income Fund. We update these documents quarterly and I'll put you on the list to receive a copy.

The investment period for Fund IV expired on 9/30/17; as a result, all harvested investments will lead to the distribution of principal and gains vs. recycling the capital. Given current (favorable) market conditions to sell, I'd expect Fund IV to be wrapped up by 3/31/21. Any extension beyond that date would have to be approved by a majority of fund investors. As we near the end of the fund term, we will increase our communication with investors.

Just an idea here - I'd be happy to connect you with one of our advisory board members so you can hear about an investor experience from someone other than T2 personnel. Again, no pressure and no problem to take it slow.

Last, I know that you and many of your colleagues have invested in T2 via Criterion. If you think it would be beneficial, I'd be happy to travel to meet with a group of you over a dinner or at a location of your choosing. We'd love to provide an update on your current T2 investment(s) and walk through our value proposition. Thoughts?

Thank you for the opportunity.

Jeff Baxter
Vice President
T2 Capital Management, LLC
120 N Hale Street, Suite #300
Wheaton, IL 60187
O (630) 590-9511 x103
C (630) 988-0334
T2INVESTMENTS.COM

THIS MESSAGE AND ANY ATTACHMENTS ARE CONFIDENTIAL, PROPRIETARY, AND MAY BE PRIVILEGED. If this message was misdirected, T2 Capital Management, LLC ("T2") does not waive any confidentiality or privilege. If you are not the intended recipient, please notify the sender immediately and destroy the message without disclosing its contents to anyone. Any distribution, use or copying of this e-mail or the information it contains by other than an intended recipient is unauthorized. The views and opinions expressed in this e-mail message are the author's own and may not reflect the views and opinions of T2, unless the author is authorized by T2 to express such views or opinions on its behalf. All email sent to or from this address is subject to electronic storage and review by T2. Although T2 operates anti-virus programs, it does not accept responsibility for any damage whatsoever caused by viruses being passed.

On Sep 23, 2018, at 6:26 PM, Patrick Denard <pjdenard@gmail.com> wrote:

Thanks Jeff,

This looks interesting. However, I'm going to hold off at this point.
Here's the thing - as you know I came to T2 via Criterion. The other investment I have with them was a 100% loss on 150K and they've been dishonest with their cut on the T2 fund. So needless to say I'm feeling a bit skittish right now. I've enjoyed talking to you and I like the philosophy/direction of your company. What I'd like to do is keep your contact info and realize some returns on my first investment with you. Then, assuming those returns come in I would to like to consider re-investing that money with you, perhaps adding to it. Sound reasonable? Over what timeline do you expect those to return again? I believe on the phone you said the next 2 years?

Thanks,
Patrick

On Fri, Sep 21, 2018 at 4:40 PM, Jeff Baxter <jbaxter@t2investments.com> wrote:
Patrick-

My apologies. Our COO has been out of the office and I've been handling a capital call. Got distracted. Poor form.

See attached for the documents required to participate in the T2 Strategic Real Estate Income Fund, LLC.

1. PPM
2. LLC Agreement
3. Subscription Document
4. Form W9

The PPM and LLC Agreement are for review only and do not contain actionable items. The Sub Doc and W9 are required to be completed, scanned and emailed to investorservices@t2investments.com. We also require a copy of your drivers license.

Let me know if you would like to connect for a ~30 minute call to walk through the documents. If so, what day/time works best for you? I'll be in San Diego next week Monday - Wednesday but will have decent availability for a call.

Thank you,

Jeff

Jeff Baxter
Vice President
T2 Capital Management, LLC
120 N Hale Street, Suite #300
Wheaton, IL 60187
O (630) 590-9511 x103
C (630) 988-0334
T2INVESTMENTS.COM

THIS MESSAGE AND ANY ATTACHMENTS ARE CONFIDENTIAL, PROPRIETARY, AND MAY BE PRIVILEGED. If this message was misdirected, T2 Capital Management, LLC ("T2") does not waive any confidentiality or privilege. If you are not the intended recipient, please notify the sender immediately and destroy the message without disclosing its contents to anyone. Any distribution, use or copying of this e-mail or the information it contains by other than an intended recipient is unauthorized. The views and opinions expressed in this e-mail message are the author's own and may not reflect the views and opinions of T2, unless the author is authorized by T2 to express such views or opinions on its behalf. All email sent to or from this

address is subject to electronic storage and review by T2. Although T2 operates anti-virus programs, it does not accept responsibility for any damage whatsoever caused by viruses being passed.

On Sep 21, 2018, at 6:09 PM, Patrick Denard <pjdenard@gmail.com> wrote:

Hey Jeff,

I didn't see an email from you yet. Did I miss something?

Thanks,
Patrick

--
Patrick Denard, MD
Southern Oregon Orthopedics
541-608-2595

***Important information for patients:***
*By choosing to use email for communication with me, you must agree to the following:*
*1. Email is an open network, which provides no protection for the confidential exchange of health-related information.*
*2. Email cannot be used to address medical urgencies or emergencies. Please contact me or the clinic staff at the above number regarding time-sensitive issues.*

--
Patrick Denard, MD
Southern Oregon Orthopedics
541-608-2595

***Important information for patients:***
*By choosing to use email for communication with me, you must agree to the following:*
*1. Email is an open network, which provides no protection for the confidential exchange of health-related information.*
*2. Email cannot be used to address medical urgencies or emergencies. Please contact me or the clinic staff at the above number regarding time-sensitive issues.*