# EXHIBIT 80

630-590-9533

# PLACEMENT AGREEMENT

This Placement Agreement ("**Agreement**") is made as of the 2nd day of ~~February~~ March, 2015, by and among T2 Asset Opportunity Fund IV, LP (the "**Fund**"), T2 Asset Opportunity Fund IV GP, LLC ("**General Partner**") and Ausdal Financial Partners, Inc. ("**Ausdal**").

WHEREAS, the offering and sale of interests in the Fund ("**Interests**"), in accordance with the terms of (i) the Fund's confidential private placement memorandum, including any supplements thereto approved or provided by the Fund or General Partner (the "**Memorandum**"), (ii) the Fund's subscription documents (the "**Subscription Agreements**"), (collectively, the "**Offering Documents**"), and (iii) the Fund's organizational documents (as amended or supplemented from time to time, the "**Organizational Documents**," together with the Offering Documents, the "**Offering Materials**"), are exempt from the registration requirements of the Securities Act of 1933, as amended ("**Securities Act**"), pursuant to Section 4(2) and Regulation D thereunder with respect to offerings and sales to U.S. Persons (as defined in Regulation S under the Securities Act);

WHEREAS, the Fund desires to retain Ausdal effective as of the date hereof to introduce prospective investors to the Fund;

WHEREAS, Ausdal desires to be so retained, and to assist, in the offer and sale of the Interests;

NOW, THEREFORE, in consideration of the premises and the mutual agreements and agreements hereinafter contained, the parties hereto hereby agree as follows:

1. <u>Appointment of Ausdal</u>.

(a) Ausdal is hereby permitted during the term of this Agreement to refer potential investors to invest in the Interests through an offering that is exempt from registration under the Securities Act, pursuant to Section 4(2) thereof and Regulation D and Regulation S thereunder for offers and sales to U.S. Persons and non-U.S. Persons, respectively.

2. <u>Offering and Sale of Interests</u>.

(a) Ausdal will deliver or cause to be delivered to each person to whom Ausdal makes an offer of an Interest, the Offering Documents, as amended as of such time and a copy of the fee disclosure statement substantially in the form attached hereto as Exhibit A (the "**Fee Disclosure Statement**").

(b) Ausdal will not make any offer of Interests on the basis of any communications or documents relating to the Fund or the Interests, except the Offering Materials, any other documents supplied or prepared by the Fund or General Partner and delivered to Ausdal by the Fund or General Partner for use in making an offer of Interests, or any other materials expressly approved for such use by the Fund or General Partner.

(c) Except as otherwise agreed between the parties following the passage of rules under the Jumpstart Our Business Startups Act by the U.S. Securities and Exchange

EXHIBIT NO. 80
J Brown
5.29.19
Tracy Jones, CSR, RPR, CLR

Commission (the "**SEC**"), Ausdal will not use any form of "general solicitation" or "general advertising" (within the meaning of Rule 502(c) of Regulation D under the Securities Act) in making referrals, including any advertisement, article, notice or other communication published in any newspaper, magazine or similar media or broadcast over television or radio, any seminar or meeting whose attendees have been invited by any general solicitation or advertising or any general solicitation over the internet.

(d) Ausdal will reasonably believe immediately prior to making any offer or sale of Interests that any prospective investor solicited by Ausdal is an "accredited investor," as that term is defined in Rule 501(a) of Regulation D under the Securities Act and meets such other eligibility criteria as are set forth in the Offering Documents.

(e) Ausdal shall be responsible for timely making all filings applicable to its activities required under the local laws and regulations of the jurisdictions in which Ausdal conducts such placement activities with respect to the sale of the Interests.

(f) The Fund will provide, promptly and at no cost to Ausdal, a reasonable quantity of copies of the Offering Materials (which may be in electronic format) and such other materials as Ausdal is required to provide to prospective investors under this Agreement. If any Offering Materials are amended or supplemented, the Fund will promptly notify Ausdal, and provide copies of such amendments or supplements in accordance with the preceding sentence.

(g) All subscriptions to the Fund submitted by or through Ausdal will be subject to the Fund's approval. The Fund agrees that it has the ultimate responsibility to determine whether a prospective investor meets all applicable private placement accreditation, minimum investment, and other qualification requirements necessary to invest in the Fund. Subject to the foregoing, the Fund agrees that it will not unreasonably reject or delay accepting a subscription submitted by Ausdal if the prospective investor otherwise meets the eligibility criteria set forth in the Offering Materials.

(h) Ausdal shall keep records sufficient for General Partner to determine each prospective investor who has been provided the Memorandum. Such records shall include the name, address and date the Memorandum was sent.

3. Compensation.

(a) In consideration for its services under this Agreement, the General Partner will pay Ausdal, with respect to each investor referred by Ausdal that invests in the Fund (each, an "**Ausdal Client**"), a fee equal to fifty percent of the carried interest (as defined in the Offering Materials) that would otherwise be paid to General Partner attributable to the Ausdal Client for so long as the Ausdal Client remains invested in the Fund.

(b) As the General Partner receives carried interest, the General Partner shall promptly pay half of Ausdal's fifty percent share of the carried interest to Ausdal. The remaining half of Ausdal's fifty percent share of the carried interest shall be held in escrow for the benefit of Ausdal until the termination of the Fund or such earlier date as mutually agreed by the parties. To the extent Ausdal receives carried interest which is subject to the General Partner

Clawback (as such term is defined in the Offering Materials), Ausdal shall be obligated to pay the Fund its proportionate share of the General Partner Clawback.

(c) Notwithstanding the above, no payment will be made to Ausdal pursuant to Section 3(a) with respect to any Ausdal Client that terminates its relationship with Ausdal after such termination. Accordingly, Ausdal agrees to notify the General Partner, as soon as reasonably practicable, of the termination with any Ausdal Client.

(d) The parties to this Agreement will each bear their own expenses under this Agreement.

4. Representations, Warranties and Agreements of the Fund and General Partner. The Fund and General Partner represent and warrant to Ausdal and agree with Ausdal as follows:

(a) Each of the Fund and General Partner is duly organized, validly existing and in good standing under the laws of the jurisdiction of its formation or organization, and each of the foregoing has full power and authority under applicable laws, rules or regulations to conduct its business as contemplated by the Offering Materials.

(b) The execution, delivery and performance of this Agreement have been duly authorized by all necessary action of the Fund and General Partner, and upon the execution and delivery hereof, this Agreement will constitute a valid, binding and enforceable obligation of each of the foregoing.

(c) The execution, delivery and performance of this Agreement, the incurrence of the obligations set forth herein and the consummation of the transactions contemplated herein and in the Offering Materials, including the issuance and sale of the Interests, will not constitute a breach of or default under any agreement or instrument by which the Fund or General Partner is bound, or to which any of their assets is subject, or any order, rule or regulation applicable to either of them of any court or any governmental body or administrative agency having jurisdiction over them.

(d) The Interests have been duly authorized for issuance and sale, and, when issued and paid for in the amounts and for the consideration described in the Offering Materials, will be entitled to the rights and subject to the restrictions and conditions contained in the Organizational Documents.

(e) The Fund is not required to be registered as an investment company under the Investment Company Act of 1940, as amended, pursuant to Section 3(c)(1) or Section 3(c)(7) thereof, as applicable.

(f) The Fund and General Partner acknowledge that in performing the services contemplated hereby, Ausdal will be entitled to rely upon and assume, without independent verification, the accuracy and completeness of all information that has been provided to them by, or on behalf of, the Fund, or General Partner.

(g) General Partner will be an exempt reporting Ausdal under the Investment Advisers Act of 1940, as amended.

(h) The Fund and General Partner acknowledge that Ausdal enters into this Agreement in reliance on the representations, warranties and agreements of the Fund and General Partner contained herein.

5. Representations, Warranties and Agreements of Ausdal. Ausdal represents and warrants to and agrees with the Fund and General Partner as follows:

(a) Ausdal is duly organized, validly existing and in good standing under the laws of the jurisdiction of its formation or organization and Ausdal has full power and authority under applicable laws, rules or regulations to engage in the activities contemplated under this Agreement.

(b) The execution, delivery and performance of this Agreement have been duly authorized by all necessary action of Ausdal, and upon the execution and delivery hereof, this Agreement will constitute a valid, binding and enforceable obligation of Ausdal.

(c) The execution, delivery and performance of this Agreement, the incurrence of the obligations set forth herein and the consummation of the transactions contemplated herein will not constitute a breach of or default under any agreement or instrument by which Ausdal is bound, or to which any of its assets is subject, or any order, rule or regulation applicable to it or of any court or any governmental body or administrative agency having jurisdiction over it.

(d) Ausdal is registered under the Securities Exchange Act of 1934, as amended, as a broker-dealer and is a member of the Financial Industry Regulatory Authority (“**FINRA**”).

(e) Ausdal has and will maintain all licenses and registrations necessary under applicable international, federal and state laws, rules and regulations, including the rules and regulations of any self-regulatory organization with competent jurisdiction, to provide the services required to be provided by Ausdal hereunder. Ausdal will also comply fully with the terms and conditions set forth in the Fund’s Offering Materials and with all applicable laws and the rules of FINRA, the SEC, state securities administrators and any other regulatory body in any jurisdiction in which it will offer Interests in the Fund.

(f) Ausdal acknowledges that the Fund and General Partner enter into this Agreement in reliance on the representations, warranties and agreements of Ausdal contained herein.

(g) Ausdal is permitted under all applicable laws and regulations to receive the compensation set forth in this Agreement.

(h) Ausdal acknowledges that General Partner will require any investor which commits to invest in the Fund as a result of services provided by Ausdal under the terms of this Agreement, in order for such investor to be accepted as an investor in the Fund, to sign and date a copy of the Fee Disclosure Statement.

(i) The representations and warranties set forth in this Agreement are continuing during the term of this Agreement and Ausdal agrees to notify General Partner promptly in writing if at any time during the term of this Agreement, any such representation or warranty becomes materially inaccurate or untrue.

(j) Ausdal represents and warrants that it has policies, procedures and internal controls in place that are reasonably designed to comply with anti-money laundering and anti terrorist laws and regulations applicable to it, including the regulations and sanction programs administered by U.S. Department of the Treasury's Office of Foreign Assets Control ("**OFAC**"). Additionally, Ausdal represents and warrants that it has policies, procedures and internal controls reasonably designed to ensure that it does not accept investments in any fund, directly or indirectly, from a person, government, organization or entity (a) who is or becomes subject to sanctions programs administered by OFAC, (b) who is included in any executive order or is on the list of specially designated nationals and blocked persons (the "**SDN List**") maintained by OFAC, or (c) whose name appears on such other lists of prohibited persons and entities as may be mandated by applicable local law or regulation. In addition, Ausdal represents and warrants that it has policies, procedures and internal controls reasonably designed to be in compliance with its "know your customer" policies and procedures and any "know your customer" regulations applicable to its activities as Ausdal and that it will consistently apply those procedures to ensure the foregoing representations and warranties remain true and correct at all times.

(k) Ausdal represents that it has not engaged in any disqualifying event as described in Rule 506(d) of Regulation D of the Securities Act and agrees to immediately notify the General Partner if any of the disqualifying events described in Rule 506(d) of Regulation D under the Securities Act are or become applicable to Ausdal. Moreover, if requested by the Fund, Ausdal agrees to provide any information, representations or certifications so requested by the Fund or the General Partner relevant to a determination as to whether any disqualifying event as contemplated by Rule 506(d) of Regulation D under the Securities Act is or may become applicable to Ausdal.

6. Indemnification.

(a) The Fund shall indemnify, hold harmless and defend Ausdal and its affiliates and their respective employees, principals, members, stockholders, directors, officers, and agents and their respective successors and assigns, from and against any loss, liability, claim, demand, damage, cost, and expense, joint or several (including reasonable attorneys' and accountants' fees and expenses and including any investigatory, legal and other expenses incurred in connection with, and any amounts paid in, any settlement, provided that General Partner or the Fund, shall have approved such settlement), resulting from a demand, claim, lawsuit, action or proceeding arising out of this Agreement or the offer and sale of Interests of the Fund; provided that the Fund shall not indemnify and hold harmless Ausdal or its employees, principals, members, stockholders, directors, officers, or agents for any such loss, claim, damage, liability, cost or expenses relating to, based upon or arising out of an act or omission by Ausdal, its employees, principals, members, stockholders, directors, officers or agents constituting negligence, misconduct, a violation of law or a breach of a representation or covenant contained in this Agreement.

(b) Ausdal shall indemnify, hold harmless, and defend the Fund, General Partner, their affiliates and their respective employees, principals, members, stockholders, directors, officers, and agents, and their respective successors and assigns, from and against any loss, liability, claim, demand, damage, cost and expense, joint or several (including reasonable attorneys' and accountants' fees and expenses and including any investigatory, legal and other expenses incurred in connection with, and any amounts paid in, any settlement, provided that Ausdal shall have approved such settlement), resulting from a demand, claim, lawsuit, action or proceeding arising out of an act or omission by Ausdal, its employees, principals, members, stockholders, directors, officers, or agents constituting negligence, misconduct, a violation of law or a breach of a representation or covenant contained in this Agreement.

(c) In no case shall an indemnifying party be liable under this indemnity agreement with respect to any claim made against any indemnified party unless such indemnifying party shall be notified in writing of the nature of the claim within a reasonable time after the assertion thereof, but failure to so notify such indemnifying party shall not relieve such indemnifying party from any liability which it may have otherwise than on account of this indemnity agreement. Such indemnifying party shall be entitled to participate at its own expense in the defense or, if it so elects within a reasonable time after receipt of such notice, to assume the defense of any suit so brought, which defense shall be conducted by counsel chosen by it and satisfactory to the indemnified party or parties, defendant or defendants therein. In the event that such indemnifying party elects to assume the defense of any such suit and retain such counsel, the indemnifying party or parties, defendant or defendants in the suit, shall bear the fees and expenses of any additional counsel thereafter retained by it or them.

(d) The foregoing agreements of indemnity shall be in addition to, and shall in no respect limit or restrict, any other remedies which may be available to an indemnified party. The foregoing indemnity provisions shall not increase the liability of any holder of the Fund's Interests beyond the amount of such investor's ownership interest in the Fund.

7. <u>Confidentiality</u>.

(a) The Fund and General Partner hereby acknowledge that they have received or will receive written and/or oral information, (such information being referred to in this Section 7 as "**Customer Information**") from Ausdal regarding certain Ausdal Clients (including the names thereof) that subscribe for Interests as well as the Ausdal Clients that contemplated but did not subscribe for Interests and that all such Customer Information has been or will be furnished to it subject to the provisions of this Section 7. The Fund and General Partner agree that they will use, and that they will ensure that all of their employees, officers, directors, representatives and agents and other entities providing services with respect to the Fund use, the Customer Information solely for the purposes of (i) effecting the subscription for Interests by the Ausdal Client, (ii) the booking of such Interests, (iii) communicating with the Ausdal Clients with respect to their rights and obligations under the Interests and the affairs and performance of the Fund, and (iv) performing their respective roles with respect to the Fund and the Interests. The Fund and General Partner each agree that they will not communicate with the Ausdal Clients for any other purpose whatsoever. Furthermore, except as set forth under the Offering Materials, the General Partner agrees that it will not disclose or make available, and will ensure that none of its employees, officers, directors, representatives or agents or other

entities providing services with respect to the Fund discloses or makes available, any Customer Information to any person or entity that does not have a need to know such Customer Information in connection with the foregoing.

(b) Ausdal acknowledges and agrees that General Partner, the Fund, the Fund's administrator and their respective officers or directors may disclose Customer Information or portions thereof (i) to each other and their affiliates involved in the provision of services to the Fund; (ii) at the request of or as required by a government, regulatory or tax agency (including any self-regulatory agency) or in connection with an examination of General Partner, the Fund or an affiliate thereof by regulatory examiners; (iii) to its internal or external attorneys or auditors; and (iv) as required by law, regulation or court order. In any of the circumstances mentioned in clauses (ii) or (iv), General Partner and the Fund shall (to the extent permitted by law) give Ausdal notice of any such disclosure promptly after it is made.

(c) Ausdal hereby acknowledges that it has received or will receive written and/or oral information from the Fund and/or General Partner that the Fund and/or General Partner consider confidential and/or proprietary (such information being referred to in this Section 7 as "**Confidential Information**"). For purposes of this Agreement, Confidential Information means any information relating to or disclosed by the Fund or General Partner to Ausdal in the course of performing this Agreement, which is or should reasonably be understood to be, confidential and/or proprietary to the Fund and/or General Partner, including, but not limited to, information about the Fund's or General Partner's actual or potential portfolio holdings and investments, and the amount of assets under management by General Partner. Ausdal agrees that it will use any Confidential Information solely in connection with its obligations, duties and undertakings pursuant to this Agreement or for the benefit of Ausdal's Clients and for no other purpose whatsoever. In addition, Ausdal shall be prohibited from sharing Confidential Information with its affiliates that serve as the investment adviser to any private funds.

(d) The Fund and General Partner acknowledge and agree that Ausdal may disclose Confidential Information or portions thereof (i) at the request of or as required by a government, regulatory or tax agency (including any self-regulatory agency) or in connection with an examination of Ausdal or an affiliate by regulatory examiners; (ii) to its internal or external attorneys or auditors; or (iii) as required by law, regulation or court order. In any of the circumstances mentioned in clauses (i) or (iii), Ausdal or the applicable affiliate shall (to the extent permitted by law) give the Fund and General Partner notice of any such disclosure and shall, in any event, advise the Fund and General Partner (to the extent permitted by law) of any such disclosure promptly after it is made.

(e) For purposes of this Agreement, the term Confidential Information shall not include information that (i) is or becomes generally available to the public other than as a result of a disclosure in connection with the performance of this Agreement; (ii) becomes available to Ausdal on a non-confidential basis from a source other than the Fund, General Partner or any of their respective representatives; provided, that such source is not bound, to Ausdal's reasonable knowledge, by a confidentiality agreement with or other legally enforceable obligation of secrecy to or for the benefit of the Fund, General Partner or any of their respective representatives; or (iii) is disclosed by Ausdal or Ausdal's representative pursuant to a

governmental, self-regulatory organization or regulatory order or demand or under compulsion of law (whether by oral question, interrogatory, subpoena, civil or regulatory investigative demand, examination or similar process) or by order of any court, in which event Ausdal or Ausdal's representative, as the case may be, will promptly inform General Partner of such disclosure.

(f) In the event of a breach or threatened breach by any party of the provisions of this Section 7 of this Agreement, the parties agree that a remedy at law to the aggrieved party may be inadequate and that the aggrieved party shall be entitled to seek an injunction or another appropriate remedy in equity restraining the breaching party from disclosing or using either the Customer Information or Confidential Information, as the case may be, in whole or in part. Nothing herein shall be construed as limiting or prohibiting the aggrieved party from pursuing any other remedies in addition to injunctive relief available hereunder for such breach or threatened breach, including the recovery of damages and reasonable attorney fees.

8. Covenants. Ausdal will not use the trademarks, service marks, logos, names or any other proprietary designations of the Fund or General Partner in any written material prepared for solicitation of investors without the prior review and written approval of the relevant party (which approval may be withheld or delayed in such party's discretion), *provided* that the foregoing shall not require Ausdal to obtain such approval (nor limit Ausdal) with respect to Ausdal's delivery of the Offering Materials in connection with this Agreement.

9. Injunctive Relief. Each party agrees that certain breaches of this Agreement with respect to confidentiality (Section 7) may cause potentially irreparable harm, and that monetary damages would not be sufficient to compensate the non-breaching party for such harm. In the event of a breach of these provisions by a party, the non-breaching parties may seek temporary and permanent injunctive relief (without the necessity of proving actual damages or the posting of a bond) as well as other equitable relief, and will be entitled to commence an action for any such relief in any court of competent jurisdiction.

10. Term and Termination.

(a) This Agreement will remain in full force and effect until terminated by a party on thirty (30) days' prior written notice to the other parties. This Agreement may be terminated with respect to any party immediately on written notice to the other parties hereto on the dissolution, insolvency or bankruptcy of any party.

(b) On termination of this Agreement with respect to Ausdal, the General Partner will continue to pay Ausdal the compensation set forth in Section 3 for the duration of the Ausdal Client's investment in the Fund.

11. Notices. Any notice required or desired to be delivered under this Agreement will be effective on actual receipt and will be in writing and (i) delivered personally; (ii) sent by first class mail or overnight delivery, postage prepaid, or (iii) transmitted by e-mail or fax (with confirmation by first class mail, postage prepaid) to the parties at the following address or such other address as the parties from time to time specify in writing:

If to the Fund or General Partner:

T2 Asset Opportunity Fund IV GP, LLC
111 W. Wesley Street, Suite 5
Wheaton, Illinois 60187
E-mail: isouthard@t2investments.com

If to Ausdal:

Ausdal Financial Partners, Inc.
220 North Main Street
Suite 400
Davenport, Iowa 52801
Email: jeffsimpson@ausdal.com

12. Status of Parties. In referring potential investors, Ausdal will be an independent contractor (rather than an employee, agent or representative) of the Fund and General Partner, and Ausdal will not have the right, power or authority to enter into any contract or to create any obligation on behalf of the Fund or General Partner or otherwise bind the Fund or General Partner in any way. Nothing in this Agreement will create a partnership, joint venture, agency, association, syndicate, unincorporated business or any other similar relationship between the parties. Nothing in this Agreement will be construed to imply that Ausdal is a partner, shareholder, manager, managing member or member of the Fund or General Partner.

13. Miscellaneous. Headings to sections and subsections in this Agreement are for the convenience of the parties only and are not intended to be a part of or affect the meaning or interpretation hereof. Section references refer to Sections of this Agreement except as otherwise indicated. As used herein references to the plural include the singular and references to the singular include the plural as applicable. This Agreement embodies the entire agreement and understanding of the parties with respect to the subject matter hereof, and supersedes all other agreements and understandings, whether written or oral, between the parties relating to the subject matter hereof entered into prior to this Agreement. This Agreement may not be amended except by a writing signed by all parties hereto. No waiver of any provision of this Agreement will be implied from any course of dealing between the parties hereto either before or after the effective date of this Agreement or from any failure by any party hereto to assert its rights hereunder on any occasion or series of occasions. This Agreement will be governed by and construed in accordance with the laws of the State of Illinois, without regard to the conflict or choice of law provisions thereof. The provisions of Sections 3, 6 (including with respect to breaches of Section 4 or 5), 7, 8, 9, 10(b) and this Section 13 will survive termination of this Agreement. If any provision of this Agreement is or should become inconsistent with any present or future law, rule, or regulation of any governmental or regulatory authority having jurisdiction over the subject matter of this Agreement, such provision will be deemed rescinded or modified in accordance with any such law, rule or regulation. In all other respects, this Agreement will continue and remain in full force and effect. This Agreement will inure to the benefit of and be binding on the parties hereto and such parties' respective successors and permitted assigns. No party may assign this Agreement without the prior written consent of the other parties. Any purported assignment in violation of this Section 14 will be void.

**Except for a breach of Section 7 of this Agreement, the parties waive their rights to seek remedies in court, including any right to a jury trial.** Any claim for money damages between the parties in connection with any matter hereunder will be resolved by binding arbitration on an expedited basis in Chicago, Illinois in accordance with the then prevailing rules of the American Arbitration Association and any judgment may be entered into any court having jurisdiction thereof. There will be three arbitrators selected within ten (10) days of notification to the other party of the dispute being referred to arbitration; each side to any controversy, dispute, disagreement, or claim will select an arbitrator and the two arbitrators so selected will select the third arbitrator; provided that: (i) the arbitrators will be practicing attorneys who are members of the Illinois State Bar, (ii) the arbitrators will be knowledgeable in industry standards and practices, (iii) the authority of the arbitrators will be limited to construing and enforcing the express terms hereunder, and (iv) the arbitrators will only state the reasons for the award in a written opinion if all parties to the arbitration so request.

THE PARTIES HERETO IRREVOCABLY SUBMIT TO THE EXCLUSIVE JURISDICTION OF ANY STATE OR FEDERAL COURT SITTING IN ILLINOIS OVER ANY SUIT, ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT AND WAIVE TRIAL BY JURY. EACH OF THE PARTIES IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY LAW, ANY OBJECTION IT MAY NOW OR HEREAFTER HAVE TO THE LAYING OF VENUE OF ANY SUCH SUIT, ACTION OR PROCEEDING BROUGHT IN ANY SUCH COURT AND ANY CLAIM THAT SUCH SUIT, ACTION OR PROCEEDING BROUGHT IN ANY SUCH COURT HAS BEEN BROUGHT IN AN INCONVENIENT FORUM. EACH OF THE PARTIES AGREES THAT A FINAL JUDGMENT IN ANY SUCH SUIT, ACTION OR PROCEEDING SHALL BE CONCLUSIVE AND BINDING UPON THE PARTIES AND MAY BE ENFORCED IN ANY OTHER COURTS TO WHOSE JURISDICTION A PARTY IS OR MAY BE SUBJECT, BY SUIT UPON SUCH JUDGMENT.

EACH PARTY HEREBY CONSENTS TO THE SERVICE OF ANY AND ALL PROCESS WHICH MAY BE SERVED IN ANY SUIT, ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT BY MEANS OF PERSONAL DELIVERY OR COURIER SERVICE, ADDRESSED TO ITS ADDRESS PROVIDED ABOVE AND TO THE ATTENTION OF ANY SECRETARY, ASSISTANT SECRETARY OR ANY OTHER OFFICER, DIRECTOR, MANAGING AGENT OR GENERAL AGENT OF SUCH PARTY, AND SUCH PARTY HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY LAW, ANY OBJECTION IT MAY NOW OR HEREAFTER HAVE UNDER ILLINOIS LAW OR UNDER ANY LAW OF ANY STATE OF THE UNITED STATES OR OF ANY OTHER JURISDICTION OR OTHERWISE TO SERVICE OF PROCESS IN SUCH MANNER.

This Agreement may be executed in several counterparts, each of which will be deemed an original but all of which together will constitute one and the same instrument. Facsimiles (including facsimiles of the signature pages of this Agreement) will have the same legal effect hereunder as originals.

IN WITNESS WHEREOF, the undersigned parties have caused this Agreement to be executed as of the day and year first above written.

**T2 Asset Opportunity Fund IV GP, LLC**

By: [signature]
Name: Jeff Brown
Title: Manager

**Ausdal Financial Partners, Inc.**

By: [signature]
Name: David B Roberts
Title: SVP

**T2 Asset Opportunity Fund IV, LP**
By: T2 Asset Opportunity Fund IV GP, LLC, its General Partner

By: [signature]
Name: Jeff Brown
Title: Manager

# EXHIBIT A

Fee Disclosure Statement