# EXHIBIT 101

ROBERT B. AUSDAL & CO. INC.
Since 1979

# REGISTERED REPRESENTATIVE'S AGREEMENT

This agreement is made this 13th day of November, 2006, by and between Robert A. Gravette (hereinafter the "Representative") and Robert B. Ausdal & Co. Inc. (hereinafter called "RBA").

1. REPRESENTATIVE'S STATUS. Representative hereby warrants and represents to RBA that Representative is or shall be fully and appropriately licensed in all jurisdictions in which Representative will conduct any securities activity contemplated hereunder and has made full and accurate disclosure to all inquires contained within Representative's Uniform Application for Securities Industry Registration or Transfer ("Form U-4"). Representative covenants to timely file an amendment to Representative's Form U-4 whenever changes occur to answers previously reported, and to promptly provide RBA with a copy of Representative's U-4, and any amendment thereof.

2. APPOINTMENT AND AUTHORIZATION. Based upon, and in reliance of, Representative's status as stated in Section 1, RBA hereby appoints and authorizes Representative to solicit and remit to RBA applications and orders for the purchase of all securities products which RBA has approved for sale from time to time (hereinafter referred to as "Products").

3. APPLICATION PROCEDURES. Representative shall transmit, immediately upon execution, all applications and orders solicited by Representative, together with the full amount, without deduction, of all payments received from customers. Representative shall cause all checks or other orders for the payment of money received in connection with applications or orders for Products sold hereunder to be made payable only as directed from time to time by RBA. Representative shall comply with all other procedures for the handling of applications, orders or payments, which may be established by RBA from time to time.

4. RIGHT TO REJECT APPLICATIONS. RBA reserves the right, in its sole discretion, to reject any applications, orders or payments remitted by Representative and to refund to Representative's customers any payments made by them. If representative receives commissions on such refunded payments or RBA is otherwise charged back on commissions it has paid Representative, such commissions shall be repaid to RBA by Representative and RBA is hereby authorized to deduct any unpaid amounts thereof from commissions due or to become due Representative.

5. COMMISSIONS. Subject to the provisions of this agreement, RBA will pay Representative commissions on all payments received from Representative's customers pursuant to applications and orders for Products obtained by Representative and approved and accepted by RBA. Commissions will be paid on sales of Products purchased on an accumulation plan without any new solicitation of the customer as long as: (1) the Representative is recognized by the customer as the Representative servicing the account; and (2) the Representative, in the judgment of RBA, has continued to give satisfactory service to such customer. Commission payable on the sale of Products will be determined in accordance with RBA's commission schedule in effect when the Products are issued. The commission schedules presently in effect can be obtained from RBA or shall from time to time be distributed by RBA. Said schedules are subject to change by RBA at any time without notice, but no change shall affect commissions payable with respect to Products issued prior to the effective date of any such change if RBA receives the concession resulting from the Product sale prior to the effective date of the commission schedule change. Any concession for a product sale received by RBA subsequent to the effective date of the commission schedule change will result in a commission payment to the Representative under the revised commission schedule. Commissions will be paid to representative only during the term of this Agreement and in any event only so long as Representative is a duly licensed representative of RBA.

6. COMPLIANCE WITH RULES, REGULATIONS, AND STATUTES. Representative will strictly comply with the rules of the National Association of Securities Dealers, Inc. ("NASD"), the acts administered by the Securities and Exchange Commission ("SEC") and regulations promulgated there under, and applicable statutes and regulations of the United States and the state or states in which Representative solicits applications and orders hereunder. Representative understands that failure to comply with such rules, regulations, and acts or statutes may result in disciplinary action against representative by the NASD, RBA, and/or any governmental authorities having jurisdiction. Representative agrees to become familiar with and abide by all compliance procedures and rules and policies concerning sales practices and conduct within RBA's Compliance and Supervisory Procedure Manual, or other standards of conduct developed by RBA.

7. REPRESENTATIONS OF PRODUCTS. Representative shall make no representations concerning the products offered for sale by RBA except as are contained in current prospectuses and supplementary sales literature approved by RBA. Representative shall not solicit business through mailings or advertisements or any other media unless the contents thereof have been approved in writing by RBA.

8. REPRESENTATIVE'S MODE OF OPERATION. Representative shall be responsible for developing sales prospects and may freely determine, subject to compliance with applicable supervisory and regulatory requirements, when and where Representative shall solicit business. Representative shall not, subject to satisfying minimum production requirements established by RBA, be required to spend any particular amount of time acting as a registered representative of RBA. Representative shall not solicit or sell Products or any other type of securities for any other person, firm, or corporation. It is the intention of the parties hereto that the relationship of

Representative to RBA is that of an independent contractor, and nothing contained herein shall be construed to create an employer and employee relationship.

9. EXPENSES. RBA shall not be responsible for any Representative's expenses incidental to Representative's recruitment of customers, solicitation of business or sale of Products.

10. ACCESS TO MATERIALS. During the term of this Agreement, RBA shall have access to Representative's books and records which pertain to the activities contemplated herein. This right of access shall survive any termination of this Agreement. In the event of termination of this Agreement, any prospectuses, application forms, or other material or supplies furnished to representative by RBA shall be promptly returned to RBA.

11. CONTRACT NOT ASSIGNABLE. Except to the extent permitted under Paragraph 12, the rights and benefits accruing hereunder to Representative are not assignable.

12. ASSIGNMENT OF COMMISSIONS. No assignment of commissions by representative shall be permitted except in such cases, if any, as shall be expressly authorized in writing by RBA. Any purported assignment of commissions without the written consent of RBA shall be void.

13. AGREEMENT FOR REPAYMENT OF COMMISSIONS. Representative, in addition to the terms of Section 4, herein agrees and promises, upon the demand of RBA, to repay to RBA any and all of the commissions which may be reversed, charged back, or rescinded as a result of cancellation of the Product sale by operation of the Products's terms or by action of the Product owner or issuing company. Upon the expiration of thirty (30) days from the date of the demand by RBA for repayment of the commission, any unpaid balance shall accrue interest at the highest rate allowable by law. Representative agrees that any funds held or monies due, or which may become due, to the Representative by RBA, or from any affiliate of RBA, may be offset or otherwise withheld from payment to the Representative to satisfy any commission repayment obligation of Representative created herein. Representative further agrees to immediately repay any and all commission bonuses paid in advance in accordance with the grandfathering terms of the commission payout schedule upon termination with RBA. If Representative is not terminated with RBA, then Representative agrees to pay any and all commission bonuses paid in advance in accordance with the grandfathering terms of the commission payout schedule within 30 days of RBA's written request.

14. INDEMNIFICAITON. Representative shall indemnify and hold RBA harmless against all losses, claims, damages, liabilities, actions, cost or expenses insofar as such may arise or be attributed to activities unrelated to any action by RBA, or involve non-securities issues arising in disputes unrelated to any action by RBA.

15. ARBITRATION. Representative and RBA agree to arbitrate any dispute, claim, or controversy that my arise between Representative and RBA, or a customer, or any other person, that is required to be arbitrated under the statutes, regulations, rules, articles or incorporation, by laws of the NASD, SEC, federal or state government authority, or other self-regulatory

organization, and any arbitration award rendered against Representative or RBA may be entered as a judgment in any court of competent jurisdiction.

16. E & O INSURANCE COVERAGE. Representative shall, unless otherwise exempted by RBA, maintain a policy of insurance protecting Representative from any error or omission by Representative as may from time to time be required by RBA.

17. AUTHORIZATION TO PROVIDE OR OBTAIN INFORMATION. Representative herein consents and authorizes RBA to provide to or obtain from any governmental authorities having jurisdiction, the NASD, or affiliate of RBA any information concerning representative, which RBA may obtain or require.

18. SURVIVAL OF PROVISIONS. Notwithstanding the termination of this Agreement, the provisions of Sections 10, 13, 14, 15, and 17 shall survive and the rights and obligations of the parties as contained therein shall continue.

19. TERMINAITON. This Agreement may be terminated with or without cause by either party at any time upon 5 days written notice sent to the last known address of the other party.

20. MISCELLANEOUS. This Agreement supersedes all previous agreements, oral or written between the parties hereto, and no modification hereof shall be valid unless made in writing and signed by both parties. Any action by RBA inconsistent with any provision contained herein shall not be a waiver of or preclude RBA from otherwise requiring strict compliance with the terms hereof. This Agreement shall be governed by the laws of the State of Iowa.

Executed in duplicate on or as of the date above shown.

| REPRESENTATIVE: | ROBERT B. AUSDAL & CO. INC: |
|---|---|
| Name: (Print) Robert A. Gravette | By: [signature] |
| Signature: [signature] | Title: President |
| Date: 11/13/2006 | Date: 11/13/2006 |

07/26/2004