# EXHIBIT 167-1

SEC v Criterion
EXHIBIT
167
J. Jarcho 11.9.2021

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| Securities & Exchange Commission,<br><br>Plaintiff,<br><br>vs.<br><br>Criterion Wealth Management Insurance Services, Inc., Robert A. Gravette, and Mark A. MacArthur,<br><br>Defendants. | ) | Case No. 20 CV 01402 |

**REBUTTAL REPORT OF JANE JARCHO, EXPERT WITNESS, ON BEHALF OF CRITERION WEALTH MANAGEMENT INSURANCE SERVICES, INC., ROBERT A. GRAVETTE, AND MARK A. MACARTHUR**

1. I submit this rebuttal report in response to the Securities & Exchange Commission's (SEC) expert report of Sunil Wahal (Wahal Report) which contained numerous opinions unsupported by the law or facts in this case. The most significant and egregious of these are discussed below.

2. The Wahal Report ignores the legal standard by which disclosure of conflicts of interest should be evaluated and replaces it with an ambiguous, and in this case unsupported, standard that disclosures be consistent "with industry custom and practices." (See ¶¶ 8, 12, 51, 59, 80, 81, 84, 90, 100-103 and 111). Industry custom and practice has never been the standard for disclosure and the Wahal Report provides no support for this claim. In my 28 years at the SEC, this standard was routinely rejected by the staff when asserted as a defense to meeting regulatory requirements. Disclosure that "satisfies" an ambiguous industry standard may be either insufficient or exceed the required legal disclosure. In my experience, the SEC never

accepted a claim that disclosure met the required legal and regulatory standards by asserting it met industry practice nor did the SEC ever pursue claims for failing to meet an industry custom that exceeded the legal requirement. The Wahal Report and related opinions and conclusions apply the wrong standard to review disclosure and should be rejected for this reason alone.

3. The Wahal Report also incorrectly claims that disclosure of conflicts cannot be satisfied through multiple documents (¶ 23) or through documents provided by a third-party such as an issuer of the securities or a broker-dealer selling the securities (¶ 68). Again, this is wrong. As the SEC stated in *Commission Interpretation Regarding Standards of Conduct for Investment Advisers*,[1] disclosure of conflicts can be made "through a combination of Form ADV and other disclosure" (at footnote 68). As outlined in my expert report, full and fair disclosure was made through a combination of documents clients received from Criterion and from the private placement memoranda related to the investments. Wahal's desire to have the Court ignore the well-established materiality standard that focuses on the total mix of information available to investors is inconsistent with the SEC's statement above and decades of legal decisions. (See *Basic v. Levinson*, 485 U.S. 224, 231 (1988), quoting *TSC Indus., Inc. V. Northway, Inc.*, 426 U.S. 438, 449 (1976)).

4. The Wahal Report incorrectly claims that the disclosure of receipt of compensation by associated persons of Criterion when acting in their capacity as registered representatives of Ausdal was hypothetical and not sufficiently specific. (¶¶ 61-63). The Wahal Report relies on one part of Item 5 of Criterion's Form ADV Part II to support this claim. However, despite the Wahal Report's claim to the contrary, the fact that associated persons of CWM who are also

[1] The *Commission Interpretation Regarding Standards of Conduct for Investment Advisers*, issued on June 5, 2019, can be found here: https://www.sec.gov/rules/interp/2019/ia-5248.pdf .

registered representatives of Ausdal receive compensation for the sale of securities is clearly disclosed in Items 5 and 10 of Form ADV Part II. The disclosure states as follows:

> **Item 5 Fees and Compensation**
>
> ***Commission Compensation***
>
> As disclosed in Item 10, management and associated persons of our firm are separately licensed as registered representatives of Ausdal Financial Partners, Inc. a FINRA member broker dealer. Associated persons may also be licensed as insurance agents or brokers of various companies. **In their separate capacity(ies), these individuals are able to implement investment recommendations for advisory clients for separate and typical compensation (i.e. commissions, 12b-1 fees or other sales-related forms of compensation** ... This presents a conflict of interest to the extent that these individuals recommend that a client invest in a security which results in a commission being paid to the individuals. (emphasis added)
>
> **Item 10 Other Financial Industry Activities and Affiliations**
>
> *BROKER DEALER REGISTRATIONS*
>
> Associated persons of CWM are registered securities representatives and investment adviser representatives of Ausdal Financial Partners, Inc. a registered broker dealer, member of the [FINRA] and a registered investment adviser. **In these capacities associated persons may recommend securities, insurance, advisory, or other products or services, and receive compensation if products are purchased through Ausdal Financial Partners, Inc.** Thus, a conflict of interest exists between the interests of the associated persons and those of the advisory clients. (emphasis added)

These disclosures are clear that management (Gravette and MacArthur) and associated persons of Criterion who sell investments in their capacity as registered representatives of Ausdal receive separate compensation for such sales. The Wahal Report incorrectly focuses on the use of the word "may" which in Criterion's Form ADV modifies whether an alternative investment recommendation may be made. However, as shown in the disclosures above, the receipt of compensation for such a recommendation is made without the use of the word "may" and is unambiguous that compensation will be received.

5. The Wahal Report focuses on two disclosures it claims were not made by Criterion or available to investors with respect to the Bird Rock investments (¶ 99) and an additional third disclosure with respect to the T2 investments (¶ 78). These are: (1) through Ausdal, Gravette and MacArthur received compensation for the sale of the investments at issue; (2) such compensation resulted in a conflict of interest that was not disclosed; and (3) in the case of the T2 investments, investors would receive a lower overall return than similarly situated investors in other classes of T2 units. I disagree with the Wahal report and in my opinion this information was sufficiently disclosed. As explained in more detail in my initial report, through a combination of Criterion's Form ADV, investment advisory agreements with clients and Bird Rock and T2 private placement memoranda, all of these facts were disclosed. There is no obligation to identify by name every individual at an advisory firm that is also a registered representative at a broker-dealer. It is more than sufficient to state, as Criterion did, that associated persons of the adviser are also registered representatives of a broker-dealer. Identifying people by individual names would create unnecessary and unreasonable burdens when people joined or left a firm or if a firm had hundreds of people. There is simply no support for the claim that because Gravette and MacArthur's names were not used in disclosures that disclosure was insufficient when their inclusion in the terms "management and associated persons" was clear. Moreover, the fact, source, nature and duration of the compensation paid by Bird Rock and T2 to Gravette and MacArthur were also disclosed in the private placement memoranda. (See Jarcho Expert Report at ¶ 22).

Similarly, the conflict of interest created by the receipt of the compensation was disclosed in at least three places in Criterion's Form ADV. See Items 5 and 10 cited above in

paragraph 4 and "Alternative Investment Fee" in Item 5 of Form ADV (cited in Jarcho Expert Report at paragraph 19). These multiple disclosures make it clear that there is no basis to claim the conflict of interest was not disclosed.

With respect to the alleged failure to disclose the alleged better returns available through a different share class for the T2 investments, this ignores that investor returns and compensation paid to Ausdal were dependent on achieving a certain rate of return (hurdle amount) which at the time of the sale of the investments was impossible to know. This claim also ignores the fact that if the investments were purchased through an investment adviser, there would have likely been, in my experience, an advisory fee which would have diminished returns. Thus, it is merely a hypothetical claim that Criterion's clients' returns would be worse. The carelessness of this analysis is underscored by the fact that the hurdle amount for the Asset Opportunity Fund IV was not met and Gravette and MacArthur did not receive any compensation from T2 related to this fund. Given that the hurdle amount was not satisfied, the SEC and Wahal Report have offered no evidence that when all fees are considered it was possible to know at the time of the investment which class of T2 units would have better returns or affirmatively state that Gravette and MacArthur's clients would receive lower returns than investors in the parallel Opportunity Fund IV.

6. Wahal fails to appreciate the sophistication of the investors in the private placement offerings. In order to invest in the private placement offerings investors had to establish that they were an "accredited investor" as defined in Rule 501(a) of Regulation D under the Securities Act of 1933. Additionally, Bird Rock and T2 had other suitability requirements investors had to acknowledge such as the speculative nature of the investment, having the economic means to bear the risk of total loss of investment and having "such knowledge and experience in financial

and business matters" in order to evaluate and protect their own interest in connection with the investment. (See Bird Rock private placement memoranda at "investor suitability requirements" and T2 subscription documents at Representations, Covenants and Warranties of the Investor.")

7. Finally, the Wahal Report fails to even discuss a dispositive issue in this case which is whether Gravette and MacArthur in the sale of the Bird Rock and T2 investments were acting in their capacity as registered representatives of Ausdal or associated persons of Criterion. As stated in my Expert Report, in my opinion, they were acting in their capacity as registered representatives of Ausdal. As such none of the analysis offered in the Wahal Report is relevant nor are the causes of actions against Gravette, MacArthur and Criterion for violations of the Investment Adviser Act of 1940 applicable.

**Conclusion**

For the reasons stated above, in my opinion, the Wahal Report fails to support the SEC's complaint against Gravette, MacArthur and Criterion. The analysis applies an incorrect "industry custom and practice" standard, ignores clear disclosures made about compensation and conflicts of interest and fails to address the dispositive issue of the capacity in which Gravette and MacArthur were acting when they sold the investments. For these reasons, I disagree with the Wahal Report opinions and believe that Gravette, MacArthur and Criterion have not violated the securities laws as alleged in the complaint.

Respectfully submitted,

Jane Jarcho

Date: October 15, 2021