**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br>Plaintiff,<br>v.<br>CRITERION WEALTH MANAGEMENT INSURANCE SERVICES, INC., et al.<br>Defendants. | Case No. 2:20-cv-01402-SPG-JEM<br>**ORDER REGARDING *DAUBERT* MOTIONS [ECF Nos. 105, 106]** |

Before the Court is Plaintiff Securities and Exchange Commission's ("SEC") Motion to Exclude Expert Testimony of Jane Jarcho pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) ("SEC's Motion"), (ECF No. 105, 105-1 ("SEC's Mot.")), and Defendants Criterion Wealth Management Services, Inc.'s, Robert A. Gravette's, and Mark A. MacArthur's (collectively, "Defendants") Motion to Exclude Expert Testimony of Dr. Sunil Wahal pursuant to the same ("Defendant's Motion"). (ECF No. 106, 106-1 ("Defendants' Mot.")). Having considered the parties' submissions, the relevant law, the record in this case, and the arguments on each Motion, the Court GRANTS SEC's Motion and DENIES Defendants' Motion.

## I. BACKGROUND

The Court previously described the factual background of this case at length in its Order granting in part and denying in part SEC's motion for summary judgment, and denying Defendants' motion for summary judgment ("MSJ Order"). (ECF No. 81 ("MSJ Order")). Per the MSJ Order, the following issues remain for trial: (1) whether Defendants acted with scienter in failing to adequately disclose conflicts of interest, as required for the SEC to prevail on its first cause of action for violation of Section 206(1) of the Investment Advisers Act of 1940 ("Advisers Act"), 15 U.S.C. § 80b-6(1), (ECF No. 1 ¶¶ 122–127 ("Compl.")); (MSJ Order at 31–35 ("Here, the issue of scienter remains in genuine factual dispute.")); (2) whether Criterion and Gravette willfully failed to adequately disclose conflicts of interest in Criterion's Forms ADV, as required for the SEC to prevail on its third cause of action for violation of Section 207 of the Advisers Act, (Compl. ¶¶ 134–139); (3) whether Criterion acted negligently when it failed to update its compliance manual, as required for the SEC to prevail on its fourth cause of action for violation of Section 206(4) of the Advisers Act and Rule 206(4)-7, 15 U.S.C. § 80b-6(4) and 17 C.F.R. § 275.206(4)-7, (*id.* ¶¶ 140–143); (MSJ Order at 35–37 ("Although the SEC submits evidence suggesting that Criterion did not update its manual for several years . . . this showing does not require the Court to conclude as a matter of law that Criterion was *negligent* in not updating its manual." (emphasis in original))); and (4) whether Gravette and MacArthur (the "individual Defendants") aided and abetted Criterion's securities law violations, as required for the SEC to prevail on its fifth and sixth causes of action for aiding and abetting Criterion's violations of the Advisers Act, (Compl. ¶¶ 144–151); (MSJ Order at 38 ("[T]here is certainly a genuine factual dispute as to whether Gravette or MacArthur aided or abetted the other (or Criterion) in violating section 206(2).")).

The SEC filed its *Daubert* Motion on January 25, 2023. (SEC's Mot.). Defendants filed their *Daubert* Motion the same day. (Defendants' Mot.). Both parties filed oppositions to the other's *Daubert* Motion on February 22, 2023. (ECF Nos. 112, 113). Finally, on March 1, 2023, the parties filed their replies. (ECF Nos. 115, 117)

## II. LEGAL STANDARD

Federal Rule of Evidence 702 permits expert testimony so long as the witness is qualified, and the witness's opinion is relevant and reliable. *See Daubert*, 509 U.S. at 589. An expert witness may be qualified by "knowledge, skill, experience, training, or education" for the subject matter upon which he or she seeks to opine. Fed. R. Evid. 702. To be qualified, the expert's testimony must be "'based upon sufficient facts or data,' 'the product of reliable principles and methods,' and the expert must 'appl[y] the principles and methods reliably to the facts of the case.'" *Stilwell v. Smith & Nephew, Inc.*, 482 F.3d 1187, 1191–92 (9th Cir. 2007) (quoting Fed. R. Evid. 702). "[R]elevance means that the evidence will assist the trier of fact to understand or determine a fact in issue." *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007) (citing *Daubert*, 509 U.S. at 591–92); *see also Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) ("The requirement that the opinion testimony assist the trier of fact goes primarily to relevance." (internal quotations omitted)). To be reliable, the expert testimony must "ha[ve] a reliable basis in the knowledge and experience of the relevant discipline." *Primiano*, 598 F.3d at 565 (internal quotations omitted).

The inquiry into the admissibility of expert testimony is "a flexible one" in which "[s]haky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Id.* at 564; *Daubert*, 509 U.S. at 596. The judge is "supposed to screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable." *Alaska Rent-A-Car, Inc. v. Avis Budget Grp.*, Inc., 738 F.3d 960, 969 (9th Cir. 2013). Simply put, "[t]he district court is not tasked with deciding whether the expert is right or wrong, just whether his testimony has substance such that it would be helpful to a jury." *Id.* at 969–70. The proponent of the expert testimony in question bears the burden of proving admissibility in accordance with Rule 702 by a preponderance of the evidence. *Lust by & Through Lust v. Merrell Dow Pharm.*, Inc., 89 F.3d 594, 598 (9th Cir. 1996); *see also* Fed. R. Evid. 702 advisory committee's note.

## III. DISCUSSION

### A. SEC's Motion to Exclude Expert Testimony of Jane Jarcho

SEC moves to exclude the expert testimony of Jane Jarcho, whom Defendants designated to provide an opinion on: (1) whether the individual Defendants acted in the capacity of an investment adviser representative or in the capacity of a registered representative of a broker-dealer in the sale of private placement investments to Criterion clients; and (2) assuming the individual Defendants acted in the capacity of an investment adviser, whether Defendants breached their fiduciary duty by failing to disclose conflicts of interests relating to compensation in the sale of the private placement investments to Criterion clients. (ECF No. 105-3 ¶ 2 ("Jarcho Rpt.")). Per her expert report, Jarcho seeks to testify that the individual Defendants did not violate the Advisers Act because neither Gravette nor MacArthur was acting as an investment adviser at the time of the sale of the private placement units; instead, they were acting in their capacities as registered representative broker dealers. (*Id.* ¶ 11). Jarcho also seeks to testify, "if the Court determines they acted in their capacity as investment adviser representatives . . . , Defendants satisfied their fiduciary as all compensation they received was disclosed and they did not sell investors a disadvantaged share class or feeder fund as the SEC alleges. (*Id.* ¶ 12).

SEC argues that Jarcho's proffered testimony is not relevant "because [Jarcho's] opinions have no bearing on the issues that remain for trial"; "[t]he Court has already determined that Defendants acted as investment advisers and that they breached their fiduciary duties . . . . Moreover, Ms. Jarcho offers no opinions relating to the SEC's claim under Section 206(4) and Rule 206(4)-7 or the claim under Section 207." (SEC's Mot. at 10). The Court agrees. On the issue of whether the individual Defendants were acting as investment advisers for purposes of Section 206(1), as opposed to broker dealers, this issue

was already decided by the prior district court judge before the matter was reassigned to this Court.[1] Judge Wright explicitly found:

> Simply put, when Gravette and MacArthur discussed or recommended *whether* a client should invest in a private placement, they were acting as investment advisers; when they discussed or recommended *how* to execute a private placement transaction (and actually brokered and executed the transaction), they were acting as broker dealers. Importantly, even after an investor decided to invest in a private placement and Gravette and MacArthur stepped into their roles as broker-dealers, their roles as investment advisors did not cease, and instead continued in full force with respect to Criterion's management of private placement investments. . . . The fact that Gravette and MacArthur at times stepped into their roles as broker-dealers did not invalidate their roles as investment advisers when they rendered services on behalf of Criterion.
>
> . . .
>
> To summarize . . . as a matter of law, when Gravette and MacArthur discussed whether an investor client should invest in a private placement, the advisability of the investment, and the effect of that investment on the client's overall portfolio, they were acting as investment advisers, and thus owed fiduciary duties to their clients. *Vernazza* [*v. SEC*], 327 F.3d [851,] 860 [(9th Cir. 2003)]. One of those duties is the duty to disclose all actual and potential material conflicts of interest inhering in the private placement offerings . . . .

(MSJ Order at 20-22 (emphasis in original)). Further, on the issue of whether Gravette and MacArthur breached their fiduciary duties, Judge Wright explicitly concluded that the SEC had submitted sufficient evidence to substantiate its claims that Defendants failed to fully disclose the aforementioned material conflicts and that Defendants had failed to raise a genuine factual dispute on this conclusion. (*Id.* at 24).

Thus, Jarcho seeks to testify on facts and legal questions that are no longer at-issue in this case. For this reason, Jarcho's proffered testimony is not relevant for purposes of

---

[11] This Court recognizes it has some discretion not to apply Judge Wright's prior decision, but will apply the prior decision because the record does not reflect that it was clearly erroneous or that its enforcement would work a manifest injustice. *See Delta Savings Bank v. U.S.*, 265 F.3d 1017, 1027 (9th Cir. 2001) (citation omitted)

Federal Rule of Evidence 702 and, therefore, is inadmissible.[2] *See Daubert*, 509 U.S. at 591 ("Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful."); *United States v. 87.98 Acres*, 530 F.3d 899, 904 (9th Cir. 2008) ("Fed. R. Evid. 702 provides that a court may admit testimony from a qualified expert if it will help the trier of fact understand the evidence or determine a fact *in issue*." (emphasis added)).

In opposition, Defendants argue that Jarcho's proffered testimony is relevant on two grounds: First, it is relevant to the individual Defendants' good faith belief that they were acting solely as broker-dealers; and second, it is relevant to the extent to which the disclosures departed from the applicable legal standard. (ECF No. 113 at 9-15). On their first point, Defendants assert that the individual Defendants will testify that they believed they were acting solely as broker-dealers, and therefore were not acting as fiduciaries when recommending the private placement investments to their customers. (*Id.* at 9). In support of this testimony, Jarcho "will testify that (1) in her experience as Deputy Director of the SEC's Division of Examinations and other leadership roles within the SEC, a dual-registrant's duty is determined by the capacity in which the dual-registrant is acting; and (2) based on the applicable facts, Gravette and MacArthur were acting as registered representatives of a broker dealer, and not as investment adviser representatives concerning the recommendations at issue." (*Id.*). Thus, "Ms. Jarcho's testimony is directly relevant to the reasonableness of Gravette's and MacArthur's belief that they were not subject to a fiduciary duty when recommending the investments at issue and, consequently, whether they acted in good faith." (*Id.*).

The Court disagrees. Defendants have not cited to any legal authority supporting their position that an expert's incorrect legal conclusion concerning an issue previously decided by a court is appropriate subject matter for expert testimony, and the Court has not

[2] Jarcho's Rebuttal Report covers this same subject matter. *See* (ECF No. 106-4). For this reason, the proffered testimony found in this Report is also inadmissible.

found such legal authority. Moreover, nothing in Jarcho's proffered testimony suggests that the individual Defendants either knew of or shared her opinion. Thus, allowing Jarcho's proffered testimony to be admitted for this purpose would, essentially, allow Jarcho to testify to the individual Defendants' subjective beliefs, which is prohibited under Federal Rule of Evidence 702. *See, e.g.*, *Finjan, Inc. v. Blue Coat Sys., Inc.*, No. 13-CV-03999-BLF, 2015 WL 4272870, at *3 (N.D. Cal. July 14, 2015) (finding experts not "qualified to offer opinions regarding Defendant's subjective beliefs"). Further, admitting this testimony runs the risk of confusing a trier of fact by unnecessarily providing competing interpretations of the law. *In re Novatel Wireless Sec. Litig.*, No. 08cv1689 AJB (RBB), 2012 WL 5463214, at *3 (S.D. Cal. Nov. 8, 2012) ("Rule 403 bars expert testimony purporting to interpret the governing law, because such testimony will necessarily confuse the jury by providing competing interpretations of the law.").

On their second point, Defendants assert that "the extent to which" the Defendants' disclosures did not meet the applicable legal standard "remains relevant in determining whether Defendants acted with scienter" and, therefore, Jarcho's testimony is relevant. (ECF No. 113 at 9-10). Although "expert testimony might . . . be relevant to determine whether the [investment] adviser's conduct is so far outside the range of reasonable conduct so as to be considered reckless," *Vernazza*, 327 F.3d at 862, Defendants fail to explain how Jarcho's proffered testimony sheds any light on the extent to which the individual Defendants violated their fiduciary duties. *See* (*id.* at 9-11). To the contrary, Jarcho's report does not mention the applicable legal standard, it only states that the Defendants never violated their fiduciary duties, in contradiction to the Court's MSJ Order finding evidence of a violation. *See* (Jarcho's Rpt. ¶¶ 32-38).

As the offering party, Defendants bear the burden of demonstrating the admissibility of Jorcha's expert testimony. *In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 549 (C.D. Cal. 2014). For the foregoing reasons, the Court finds that Defendants have not shown Jorcha's testimony is relevant to the remaining issues in this case. For this reason, SEC's Motion is granted.

**B. Defendants' Motion to Exclude Expert Testimony of Dr. Sunil Wahal**

Defendants move to exclude the expert testimony of Dr. Sunil Wahal, whom SEC designated to: (1) analyze the disclosures the Defendants made to their clients regarding the compensation arrangements Defendants had, through Ausdal Financial Partners, Inc., with T2 Holdings, LLC, Bird Rock Ventures, T2's Strategic Real Estate Income Fund, T2's Asset Opportunity Fund IV, and the Bird Rock Companies into which Criterion clients invested from 2014 to 2017 (the "Relevant Period"); (2) opine on whether Defendants' disclosures were consistent with industry customs; and (3) evaluate the adequacy of Criterion's policies and procedures manual during the Relevant Period. (ECF No. 106-2 ¶ 8 ("Wahal Rpt.")). Defendants argue that Wahal's proffered testimony is neither relevant nor reliable. (Defendants' Mot. at 4-8). The Court addresses each in turn.

1. <u>Wahal's Proffered Testimony is Relevant</u>

Defendants argue that Wahal's proffered testimony should be excluded for not being relevant because Wahal "does not opine on, or offer any analysis that would be helpful to the trier of fact in determining, Defendants' state of mind or Criterion's alleged negligent upkeep of its Compliance Manual." (*Id.* at 5). The Court disagrees.

As previously discussed, one of the remaining issues for trial is whether Defendants acted with scienter in failing to adequately disclose various conflicts of interest, as required by Section 206(1) of the Advisers Act. Section 206(1) prohibits "any investment adviser" from "directly or indirectly employ[ing] any device, scheme, or artifice to defraud any client or prospective client." 15 U.S.C. § 80b-6(1). The scienter requirement may be supported by "knowing or reckless conduct." *Vernazza*, 327 F.3d at 860 (citations omitted). Recklessness in the securities fraud context is "a highly unreasonable act, or omission, that is an 'extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is obvious that the actor must have been aware of it." *SEC v. Dain Raushcer, Inc.*, 254 F.3d 852, 856 (9th Cir. 2001) (quoting *Hollinger v. Titan Cap. Corp.*, 914 F.2d 1564, 1568-69 (9th Cir. 1990) (en banc)). "In general, expert testimony as to industry practice is

relevant to show the standard of care necessary to a recklessness inquiry," including for the scienter requirement of Section 206(1). *See Vernazza*, 327 F.3d at 861 (citing *Dain Rauscher, Inc.*, 254 F.3d at 856-57). Nonetheless, adherence to industry customs and practices is not dispositive of the scienter inquiry. *See Dain Rauscher, Inc.*, 254 F.3d at 856-57. Rather, the conduct of securities professionals is judged "by a more expansive standard of reasonable prudence, for which the industry standard is but one factor to consider." *Dain Rauscher, Inc.*, 254 F.3d at 856; *Vernazza*, 327 F.3d at 861.

Pursuant to this expert report, Wahal intends to testify that Defendants' various disclosures were inconsistent with industry customs and practices because Defendants failed to make sufficiently specific disclosures regarding the nature, source, duration, and potential magnitude of Gravette's and MacArthur's compensation, the potential impact of said compensation on investor's returns, and the conflicts of interest they created for the Defendants. (Wahal Rpt. ¶¶ 12(a); 12(b)). Wahal also intends to testify that Criterion's handling of their policies and procedures manual was inconsistent with industry customs and practices due to the manual not being regularly updated. *See* (*id.* ¶ 12(c)). Though not dispositive of the issue of whether Defendants acted recklessly, the Ninth Circuit has made clear that such testimony is relevant to proving the scienter requirement for Section 206(1) of the Advisers Act. *See Dain Rauscher, Inc.*, 254 F.3d at 856; *Vernazza*, 327 F.3d at 861. For this reason, the Court finds Wahal's proffered testimony to be relevant.

2. <u>Wahal's Proffered Testimony is Reliable</u>

Next, Defendants argue that Wahal's proffered testimony should be excluded for lack of reliability. (ECF No. 106-1 at 6-8). The Court disagrees. The reliability requirement ensures "that an expert, whether basing testimony on professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). Under Ninth Circuit law, an expert may be qualified through either practical training or academic experience. *See Rogers v. Raymark Indus., Inc.*, 922 F.2d 1426, 1429 (9th Cir.1991). Moreover, the threshold for qualification

is low: a minimal foundation of knowledge, skill, and experience suffices. *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1015-16 (9th Cir.2004); *see also Thomas v. Newton Int'l Enterprises*, 42 F.3d 1266, 1269 (9th Cir.1994).

Defendants assert that Wahal is not qualified to render opinions regarding investment adviser disclosure obligations in this case because:

> Dr. Wahal (a) is not a lawyer . . .; (b) is not an investment adviser . . .; (c) has no specific work experience focusing on disclosure obligations under the federal securities laws . . .; (d) has not worked in a compliance function of a registered investment adviser . . .; (e) has not had responsibility for drafting investment adviser disclosures . . .; (f) has not worked for the SEC . . .; (g) has not worked for any securities regulator . . .; (h) has not had responsibility for drafting rules relating to investment adviser disclosure obligations . . .; (i) has not had responsibility for enforcing investment adviser disclosure obligations . . .; (j) has not given speeches or presentations relating to investment adviser disclosure obligations . . .; (k) has not conducted academic research focusing on disclosure obligations under the federal securities laws . . .; and (l) has not published papers focusing on disclosure obligations under the federal securities laws . . . .

(ECF No. 106-1 at 6). However, there are multiple flaws with Defendants' argument. First, Wahal's proffered testimony does not concern investment adviser disclosure *obligations*. Instead, as previously discussed, Wahal seeks to testify that Defendants' conduct did not conform to industry customs and practices. Second, contrary to Defendants' assertions, Federal Rule of Evidence 702 does not require specific experience in the precise subject of testimony. *United States v. Smith*, 520 F.3d 1097 (9th Cir.2008) ("[W]e have previously held that an expert need not have official credentials in the relevant subject matter to meet Rule 702's requirements." (citing *United States v. Garcia*, 7 F.3d 885, 889-90 (9th Cir. 1993)). Third, the Court finds that Wahal's education and experience sufficiently demonstrates that he is qualified to testify on this subject matter. As explained in his expert report, Wahal is the Jack D. Furst Professor of Finance at Arizona State University, a position he has held since 2005. (Wahal Rpt. at 52). He also holds editorial positions for

several academic journals, including the *Journal of Banking and Finance* and the *Annals of Finance*. (*Id.* at 58). In his deposition testimony, Wahal explained that he teaches courses at Arizona State that address various aspects of securities laws, including disclosure. (ECF No. 106-3 at 15:3-16:22 (discussing Portfolio Engineering course, explaining that it "discusses various aspects of securities law, including disclosure, in part of the course.")). He has also discussed disclosure of conflicts of interest in speaking engagements, (*id.* at 28:4-29:3 (discussing at least one example where he presented on conflicts of interest)), and in academic papers, (*id.* at 29:14-30:3). Outside of academia, Wahal has more than 20 years of experience in the investment industry, and has evaluated investment adviser disclosures in the course of his work on various investment committees, including through evaluation of the appropriateness of investment products. (*Id.* at 26:16-27:15, 43:8-23). Finally, as explained in his deposition, Wahal's two-plus decades of industry experience has led not only to his own first-hand understanding of industry customs and practices but also to the written sources relied upon in subindustry to inform those customs and practices. *See* (*id.* at 41:5-25 (noting familiarity with customs and practice through industry experience), 52:24-53:10 (referring to RAND report entitled "Investor and Industry Perspectives on Investment Advisors and Broker-Dealers)). For these reasons, the Court finds Wahal to be qualified to proffer this testimony under Federal Rule of Evidence 702 and thus, his testimony is reliable.

## IV. CONCLUSION

For the foregoing reasons, SEC's Motion is GRANTED. Defendants' Motion is DENIED.

**IT IS SO ORDERED.**

Dated: April 6, 2023

HON. SHERILYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE